U.S. DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

M&M SISTERS, LLC
BERTHA MENENDEZ GARCIA &
MARIA MENDEZ,

   Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,

   Defendant.

_____/

**COPIES OF ALL PROCESS, PLEADINGS AND ORDERS, WITH THE
EXCEPTION OF DISCOVERY SERVED WITH THE COMPLAINT, IN THE
CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT, MIAMI-DADE
COUNTY, FLORIDA SERVED IN THE STATE PROCEEDINGS**



**null / ALL**
**Transmittal Number: 20601156**
**Date Processed: 10/28/2019**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215 |
| **Electronic copy provided to:** | Ashley Roberts |

| | |
|---|---|
| **Entity:** | Scottsdale Insurance Company<br>Entity ID Number  3286058 |
| **Entity Served:** | Scottsdale Insurance Company |
| **Title of Action:** | M&M Sisters LLC., Bertha Menendez Garcia & Maria Mendez vs. Scottsdale Insurance Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Miami-Dade County Circuit Court, FL |
| **Case/Reference No:** | 2019-030409-CA-01 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 10/28/2019 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | FL Chief of Financial Services on 10/25/2019 |
| **How Served:** | Electronic SOP |
| Sender Information: | Strems Law Firm<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

*19-000281925*

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

| | |
|---|---|
| M&M SISTERS LLC., BERTHA MENENDEZ GARCIA & MARIA MENDEZ | **CASE #:**  **2019-030409-CA-01** |
| | **COURT:**  **CIRCUIT COURT** |
| PLAINTIFF(S) | **COUNTY:**  **MIAMI-DADE** |
| | **DFS-SOP #:** 19-000281925 |

VS.

SCOTTSDALE INSURANCE COMPANY

DEFENDANT(S)

_____ /

SUMMONS, COMPLAINT

# **NOTICE OF SERVICE OF PROCESS**

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Friday, October 25, 2019 and a copy was forwarded by ELECTRONIC DELIVERY on Monday, October 28, 2019 to the designated agent for the named entity as shown below.

      SCOTTSDALE INSURANCE COMPANY
      LYNETTE COLEMAN
      1201 HAYS STREET
      TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

Jimmy Patronis
Chief Financial Officer

SCOT STREMS
CHIEF OPERATING OFFICER
THE STREMS LAW FIRM, P.A.
2555 PONCE DE LEON BLVD.
SUITE 210
CORAL GABLES, FL 33134

JJ1

RECEIVED AS STATUTORY REGISTERED AGENT
on 25 October, 2019 and served on defendant or named party on 28 October, 2019
by the Florida Department of Financial Services

**IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION**

**CASE NO: 2019-030409-CA-01**

M&M SISTERS LLC.,
BERTHA MENENDEZ GARCIA &
MARIA MENDEZ,,

      Plaintiff(s),

vs.

SCOTTSDALE INSURANCE COMPANY,

      Defendant.

_____/    **CIVIL ACTION SUMMONS**

**STATE OF FLORIDA:**

To Each Sheriff of Said State:

**YOU ARE HEREBY COMMANDED** to serve this summons and a copy of the complaint or petition in this action on Defendants:

**SCOTTSDALE INSURANCE COMPANY**
**c/o Department of Financial Services**
**PO Box 6200**
**200 Gaines Street**
**Tallahassee, FL 32314-6200**

Each Defendant is required to serve written defenses to the complaint or petition on Plaintiff's Attorney, to-wit:

**MICHAEL P. PATRICK, ESQUIRE**

2525 Ponce de Leon Boulevard, Suite 600 Coral Gables, Florida 33134
(786) 430-0882; (305) 459-1589(fax)
E-Service: pleadings@stremslaw.com   team9@stremslaw.com

within twenty (20) days after service of this summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of the Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the complaint or petition.

**DATED** on   10/23/2019  .

      HARVEY RUVIN,
      As Clerk of said Court

      #9691

      By: _____
           As Deputy Clerk

      (Court Seal)

**IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT**
**IN AND FOR MIAMI-DADE COUNTY, FLORIDA CIVIL DIVISION**

M&M SISTERS LLC.,
BERTHA MENENDEZ GARCIA &
MARIA MENDEZ,

      Plaintiffs,

vs.                                     **CASE NO.:**

SCOTTSDALE INSURANCE
COMPANY,

      Defendant.

_____/

## COMPLAINT

    **COMES NOW,** the Plaintiffs, M&M SISTERS LLC. AND BERTHA MENDEZ & MARIA MENDEZ (hereinafter "Plaintiffs"), by and through their undersigned counsel, and sue the Defendant, SCOTTSDALE INSURANCE COMPANY (hereinafter "Defendant"), and would allege as follows:

## GENERAL ALLEGATIONS

    1.    This is an action for declaratory relief regarding the rights of the parties under the policy and the use of audio/video recording during inspections, and otherwise within the jurisdictional limits of this Court.

    2.    This is an action for declaratory judgment filed pursuant to Chapter 86 of the Florida Statutes.

    3.    At all times material hereto, Defendant, SCOTTSDALE INSURANCE COMPANY is a Florida corporation authorized and doing business in MIAMI, FLORIDA.

4.       At all times material hereto, Plaintiffs, M&M SISTERS LLC. and BERTHA MENDEZ, own the property insured by Defendant located at 1111 NW 43RD AVE., 33126, MIAMI, FLORIDA, MIAMI-DADE COUNTY (hereinafter "subject property").

5.       Venue is proper in MIAMI-DADE COUNTY pursuant to Florida Statute 47.011, because the cause of action upon which these allegations are based accrued in MIAMI-DADE COUNTY, Florida, and the property at issue is located in MIAMI-DADE COUNTY, Florida.

6.       That Plaintiffs were insured at the time of loss, on 05/06/2019, under Defendant's insurance policy number CPS3064779 (hereinafter "Subject Policy").

7.       The Policy in question is attached hereto as **Exhibit "A"**.

8.       Plaintiffs paid all insurance premiums, performed all post loss conditions, and performed all conditions precedent.  In the alternative, all conditions precedent have been waived.

9.       On or about 05/06/2019, Plaintiff suffered a physical loss due to water damage involving the Property which was under the policy at that time (hereinafter "Subject Loss").

10.      This is a covered peril under the Subject Policy involving the Subject Property.

11.      Defendant acknowledged coverage for the Loss as claim number 01892450 and assigned an insurance adjuster to adjust the Subject Loss.

12.      Plaintiffs are ready and willing to meet with Defendant as reasonably necessary to inspect the Subject Property, and to comply with Plaintiffs' obligations under the Subject Policy.

13.      Plaintiff requested that any inspection of the Subject Property be conducted with Audio and Video recording, however, Defendant refuses to complete the inspection under such requests, and as such, has caused serious delays.

14.      Defendant asserts it is illegal to record the inspection as it is a violation of the law, and Defendant has improperly asserted privacy rights within the inspection.

15.     However, there is no term in the Subject Policy, no relevant case law, or court opinion, nor applicable statutory code, or section prohibiting the recorded inspection of the Subject Property.

16.     In fact, such a recording is allowable under the Florida Law, and not prohibited under the Subject Policy, and will benefit both parties assuring them transparency and accountability and providing an appropriate estimate for damages.

17.     As of the date of the filing of this instant action, there are no pending requests from Defendant to Plaintiff related to information, documentation, and/or compliance with conditions under the Subject policy.

18.     As of the date of the filing of this instant action, Defendant has failed to inspect the damages and has failed to make a coverage determination accusing Plaintiff of impeding Defendant's investigation of the claim and breaching the Subject Policy's cooperation clause.

## DECLARATORY ACTION

19.     Plaintiff adopts and incorporates paragraphs one (1) through eighteen (18) as if restated fully herein.

20.     This is an action for declaratory judgment filed pursuant to Chapter 86 of the Florida Statutes.

21.     This action is filed for the purpose of determining an actual controversy between Plaintiff and Defendant which has left the parties uncertain with respect to their legal rights and responsibilities.

22.     The Subject Policy states:

b. As often as we reasonably require, allow us
and our representatives:
(1) Access to the "residence premises"; and

**THE STREMS LAW FIRM, P.A.**
420 South Orange Avenue; Suite 140 Orlando, FL 32801

(2) To inspect, subject to **2.a.** above, the "residence premises" and all damaged property prior to its removal from the "residence premises";

**CIT HO-3 07 17**                    **Page 19 0f 34**

23.    Plaintiffs are in doubt about their rights under the insurance contract, Florida Statutes and relevant case law as a result of Defendant's refusal to allow the inspection of the Subject Property to be video recorded with audio.

24.    Plaintiffs have made the Subject Property available for Defendant to inspect the damaged property pursuant to Section I Conditions of the Policy.

25.    Plaintiffs have cooperated in the investigation of the claim.

26.    On or about September 20, 2019, counsel for Plaintiff requested the inspection to be audio/video recorded.

27.    On or about September 27, 2019, Defendant responded refusing to comply with Plaintiff's request for a recorded inspection via audio and video reasoning that the request is "beyond the scope of Florida law".

28.    Plaintiffs have doubts as to whether they have violated the terms of the Subject Insurance Policy by requesting that any inspections of the property by Defendant, and/or its agents, by recorded with video and audio recording.

29.    Furthermore, Florida Statutes §627.877 states that:

Adjustments to comply with insurance contract and law. Every adjuster shall adjust or investigate every claim, damage, or loss made or occurring under an insurance contract, in accordance with the terms and conditions of the contract and of the applicable laws of this state.

30.     The Defendant is obligated to investigate the claim in accordance with the terms and conditions of the contract, and there is nothing set forth in the attached Subject Policy prohibiting the recordation of said inspection.

31.     Furthermore, Defendant has not distinguished between the recordation via photos versus the recordation via an audio and video recording. Since both methods record the inspection, Defendant has not provided any substantive reasonings supporting the prohibition of an audio and video recording.

32.     Despite numerous attempts to set a date for a recorded inspection, Defendant has been unreasonable in expecting a decorum of privacy and outright refused, and ostensibly, has not provided any policy provision, case law, or rule within the Florida administrative code prohibiting a homeowner from recording an inspection within their own home.

33.     Defendant's actions begs the question what shroud of secrecy are they placing on these inspections, when as stated previously, the recording will be useful to both parties.

34.     As of the date of filing, there were objectively no other factors, beyond the control of the insurer, which reasonably prevents such inspection to explain Defendant's failure to make a coverage determination related to the Subject Claim.

35.     As a result of the facts set forth above, a dispute has arisen which has left Plaintiffs insecure, uncertain, and in doubt with respect to their rights, and status of other equitable or legal responsibilities under the insurance contract, to wit: (1) whether Defendant's prolonged refusal to make a coverage decision was the functional equivalent of a de facto denial of coverage of the Subject Claim; and, (2) whether Florida law or the Insurance contract prohibit Plaintiffs from recording any inspections of their property through video and audio recording.

36.     There exists a bona fide, actual, present and practical need for declaratory relief as to whether: (1) Florida law or the Insurance contract prohibit Plaintiffs from recording any inspections of their property through video and audio recording; and, (2) Defendant's failure to make a coverage determination constitutes the functional equivalent of a de facto constructive denial of the Subject Claim as Plaintiffs cannot wait an indefinite period of time to seek relief under Florida law and the Subject Policy.

37.     There exists a present and ascertainable state of facts concerning the rights and obligations of both Plaintiffs and Defendant as to whether Florida law or the Insurance contract prohibit Plaintiffs from recording any inspections of their property through video and audio recording.

38.     The rights and obligations of both Plaintiff and Defendant under the Subject Policy are dependent upon the facts, and law applicable to the facts, effecting coverage under the Subject Policy.

39.     As previously stated, on its face, the Subject Policy does not expressly prohibit the use of recording devices during the inspection and Florida law allows Plaintiffs to secure this right.

40.     As a result of Defendant's failure to make a coverage determination of the Subject Claim, by way of refusing a recorded inspection, it has become necessary for Plaintiffs to incur and become obligated for attorney's fees and costs in the prosecution of this action.

41.     That Plaintiff has further had to retain the undersigned attorney and agreed to pay him a reasonable fee for which the Defendant is liable under § 627.428 and § 626.9373.

Florida Statute 627.428(1) states:

Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus

insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

Florida Statute 626.9373 states:

(1) Upon the rendition of a judgment or decree by any court of this state against a surplus lines insurer in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer on or after the effective date of this act, the trial court or, if the insured or beneficiary prevails on appeal, the appellate court, shall adjudge or decree against the insurer in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the lawsuit for which recovery is awarded.

(2) If awarded, attorney's fees or compensation shall be included in the judgment or decree rendered in the case.

42. The Plaintiff respectfully seeks a declaration that:

A. The Plaintiff be able to record the inspection by way of video and audio.
B. The Insured Property was covered under the Defendant's policy at the time of the Subject Loss;
C. Plaintiff substantially complied with all post-loss conditions of the Subject Policy;
D. That the inspection of the property can proceed with Plaintiffs and/or their representatives/agents recording the inspection with video and audio;
E. Defendant's failure to inspect the property, and failure to make a coverage determination amounts to a de facto constructive denial of the Subject Claim;
F. Plaintiffs are entitled to their reasonable attorneys fees and costs associated with this action, and;
G. And any such further declaration by the Court as is supported by the law and the facts.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, plus costs, prejudgment interest and attorneys fees pursuant to Florida Statute § 627.428 and § 626.9373.

**THE STREMS LAW FIRM, P.A.**
420 South Orange Avenue; Suite 140 Orlando, FL 32801

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

## DESIGNATION OF E-MAIL ADDRESS PURSUANT TO RULE 2.516

Pursuant to Florida Rule of Judicial Administration 2.516, Plaintiff hereby files its notice of designation of email address for the purpose of service of all documents required to be served in this proceeding: **pleadings@stremslaw.com and team9@stremslaw.com**

**DATED** this October 14, 2019.

Respectfully submitted,
**STREMS LAW FIRM**
Attorney for Plaintiff
420 South Orange Ave, Suite 140
Orlando, Florida 32801
Telephone: (321) 234-3600
Facsimile: (321) 256-5367
Primary E-Service: pleadings@stremslaw.com
Secondary E-Service: Team9@stremslaw.com
Email: mpatrick@stremslaw.com
Email: jrodriguez@stremslaw.com

By: _____
**MICHAEL P. PATRICK, ESQUIRE**
**FLORIDA BAR NO.: 1002537**
**HUNTER PATTERSON, ESQUIRE**
**FLORIDA BAR NO.: 0102788**

# EXHIBIT "A"



Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza ▪Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive ▪Scottsdale, Arizona 85258
1-800-423-7675▪ A Stock Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                                          President

The information contained herein replaces any similar information contained elsewhere in the policy.

# COMMON POLICY DECLARATIONS

| | | |
|---|---|---|
| Renewal of<br>CPS2687540 | Underwritten by: Scottsdale Insurance Company<br>Home Office:<br>One Nationwide Plaza ▪ Columbus, Ohio 43215<br>Administrative Office:<br>8877 North Gainey Center Drive ▪ Scottsdale, Arizona 85258<br>1-800-423-7675 ▪ A STOCK COMPANY | Policy Number<br>**CPS3064779** |

**ITEM 1.** Named Insured and Mailing Address

```
M&M SISTERS LLC; BERTHA MENENDEZ
GARCIA & MARIA MENENDEZ
1710 PIZARRO STREET
CORAL GABLES, FL  33134
```

Agent Name and Address

```
SCU, A DIVISION OF CRC INSURANCE
SERVICES INC
1000 NW 57TH COURT, STE 670
MIAMI, FL 33126
```

Agent No.: 09020      Program No.: 79

**ITEM 2.** Policy Period    From: 07/13/2018    To: 07/13/2019    Term: 365 DAYS

**12:01 A.M., Standard Time at the mailing address shown in ITEM 1.**

Business Description:    APARTMENT BUILDING

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Premium Summary |
|---|---|
| Commercial General Liability Coverage Part | $ 1,732 |
| Commercial Property Coverage Part | $ 6,722 |
| Commercial Crime And Fidelity Coverage Part | $ NOT COVERED |
| Commercial Inland Marine Coverage Part | $ NOT COVERED |
| Commercial Auto Coverage Part | $ NOT COVERED |
| Professional Liability Coverage Part | $ NOT COVERED |
| | $ |
| | $ |
| Total Policy Premium: | $ 8,454.00 |
| POLICY FEE | $ 35.00 |
| SURPLUS LINES TAX | $ 424.45 |
| SERVICE FEE | $ 8.49 |
| SURCHARGE FEE | $ 4.00 |
| | $ |
| | $ |
| Policy Total: | $ 8,925.94 |

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

```
EXCELLENCE INSURANCE LLC
3801 SW 107TH AVENUE
MIAMI, FL 33165
EB 07/17/18
```

*Esteban Alvarez*

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH
THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORM(S)
AND ENDORSEMENT(S), IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

OPS-D-1 (1-17)                    INSURED



**POLICY NUMBER**  CPS3064779

**NAME OF INSURED:**  **M&M SISTERS, LLC; BERTHA MENENDEZ GARCIA & MARIA**

**CARRIER:**  **SCOTTSDALE INSURANCE COMPANY**

**POLICY TERM:  FROM**      **7/13/2018**      **TO**  **7/13/2019**

**TRANSACTION EFFECTIVE DATE**  **7/13/2018**

| | |
|---|---|
| Premium | $8,454.00 |
| Tax | 424.45 |
| Policy Fee | 35.00 |
| Service Fee | 8.49 |
| Surcharge Fee | 4.00 |

# NO FLAT
# CANCELLATIONS

| | |
|---|---|
| Total Premium | 8925.94 |

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.  PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY**

SURPLUS LINES AGENT:  Marcia Whisman
SURPLUS LINES  AGENT'S ADDRESS: 7700 West Camino Real, Suite 201 Boca Raton, FL 33433
SURPLUS LINES AGENT'S LICENSE:  P134922
PRODUCING AGENT INFORMATION:    MARCOS ALVAREZ

EXCELLENCE INSURANCE, LLC

3801 SW 107 AVENUE

MIAMI                              FL      33165

Surplus Lines Agent's Countersignature:  *Marcia Whisman*



# SCOTTSDALE INSURANCE COMPANY®
## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. _CPS3064779_                    Effective Date: _07/13/2018_

                                           12:01 A.M., Standard Time

Named Insured _M&M SISTERS LLC; BERTHA MENENDEZ_     Agent No. _09020_

```
          UTS-COVPG  1-16        Cover Page
          OPS-D-1   1-17         Common Policy Declarations
          UTS-SP-2   12-95       Schedule Of Forms and Endorsements
          COMMON FORMS
          UTS-SP-3  8-96         Locations Schedule
          IL 00 17  11-98        Common Policy Conditions
          IL 09 53  1-15         Excl-Certified Acts Terrorism
          UTS-9g  5-96           Service Of Suit Clause
          UTS-119g  6-14         Minimum Earned Cancellation Premium

          GENERAL LIABILITY FORMS
          CLS-SD-1L  8-01        GL Supplemental Dec
          CLS-SP-1L  10-93       GL Ext Supplemental Dec
          CG 00 01  4-13         General Liab Coverage
          CG 20 18  4-13         AI-Mortgagee-Assignee-Receiver
          CG 21 06  5-14         Excl-Access Of Confidential Or Personal Info
          CG 21 44  4-17         Designated Premises/Project/Operation Limitation
          CG 21 47  12-07        Employment-Related Practices Exclusion
          CG 21 67  12-04        Fungi Or Bacteria Excl
          CG 21 73  1-15         Exclusion-Certified Acts Of Terrorism
          CG 24 26  4-13         Amend Of Insured Contract Definition
          GLS-30s  1-15          Contractors Special Conditions
          GLS-47s  10-07         Minimum & Advance Prem Endt
          GLS-152s  8-16         Amendment To Other Insurance Condition
          GLS-282s  7-16         Multi-Unit Habitational Conversion Excl
          GLS-289s  11-07        Known Injury/Dmg Excl-Personal/Advertise Injury
          GLS-341s  8-12         Hydraulic Fracturing Excl
          GLS-457s  10-14        Aircraft Exclusion
          IL 00 21  9-08         Nuclear Energy Exclusion
          UTS-74g  8-95          Punitive/Exemplary Damage Exclusion
          UTS-266g  5-98         Asbestos Exclusion
          UTS-267g  5-98         Lead Contamination Exclusion
          UTS-365g  2-09         Amend Of Nonpayment Cancel Condition
          UTS-428g  11-12        Premium Audit

          PROPERTY FORMS
          CPS-SD-1  2-16         Property Supplemental Dec
          CPS-SP-5L  6-92        Mortgage Holders Schedule
          CP 00 10  10-12        Building & Personal Prop Cov
          CP 00 30  10-12        Business Income With Extra Expense Cov
          CP 00 90  7-88         Property Conditions
          CP 01 40  7-06         Excl Of Loss Due To Virus Or Bacteria
          CP 10 30  9-17         Causes Of Loss-Special Form
          FS-18  11-86           Total-Constructive Loss Clause
          UTS-183g  12-16        Windstorm Or Hail Deductible

          STATE FORMS
          CFS-68s-FL  1-12       FL-Changes
          CFS-103-FL  1-16       FL-Sewer Or Drain Definition Endorsement
          IL 04 01  2-12         FL-Sinkhole Loss Coverage
          UTS-29-FL  6-97        FL-Cancel-Nonrenew

          POLICYHOLDER NOTICES
          NOTX0178CW  3-16       Claim Reporting Information
          NOTX0423CW  2-15       Notice Of Terrorism Ins Cov
          NOTS0381FL  7-09       FL-Policyholder Notice
```



# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF LOCATIONS

Policy No. _CPS3064779_          Effective Date _07/13/2018_

12:01 A.M. Standard Time

Named Insured _M&M SISTERS LLC; BERTHA MENENDEZ_          Agent No. _09020_

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 1 | 1 | 1111 NW 43 AVENUE<br>MIAMI, FL 33126 | APARTMENT BLDG |

UTS-SP-3 (8-96)                    INSURED

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

INSURED

**POLICY NUMBER:** CPS3064779                                    IL 09 53 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**SCHEDULE**

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C.** **Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D.  Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

Copyright, Insurance Services Office, Inc., 2015

IL 09 53 01 15

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The officer named below is authorized and directed to accept service of process on behalf of the Company:

CHIEF FINANCIAL OFFICER; DEPARTMENT OF FINANCIAL SERVICES

200 EAST GAINES STREET

TALLAHASSEE, FL 32399

Having accepted service of process on behalf of the Company, the officer is authorized to mail the process or a true copy to:

NOT REQUIRED

_____
**AUTHORIZED REPRESENTATIVE**                    **DATE**
INSURED

UTS-9g (5-96)                                                                uts9gc.fap

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM EARNED CANCELLATION PREMIUM

The following provision is added to the Cancellation Condition:

If You request cancellation of this policy, We will retain not less than ___25%___ of the original premium.

/

AUTHORIZED REPRESENTATIVE                    DATE



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy No. _____ CPS3064779 _____         Effective Date _____ 07/13/2018 _____
                                                              12:01 A.M., Standard Time

Named Insured  M&M SISTERS LLC; BERTHA MENENDEZ   Agent No. _____ 09020 _____

**Item 1.** Limits of Insurance

| Coverage | Limit of Liability |
|---|---|
| Aggregate Limits of Liability | $ 1,000,000   Products/ Completed Operations Aggregate |
| | $ 2,000,000   General Aggregate (other than Products/ Completed Operations) |
| Coverage A - Bodily Injury and Property Damage Liability | $ 1,000,000   any one occurrence subject to the Products/ Completed Operations and General Aggregate Limits of Liability |
| Damage to Premises Rented to You Limit | $ 100,000   any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B - Personal and Advertising Injury Liability | $ 1,000,000   any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C - Medical Payments | $ 5,000   any one person subject to the Coverage A occurrence and the General Aggregate Limits |

**Item 2.** Description of Business

Form of Business:

☐ Individual    ☐ Partnership    ☐ Joint Venture    ☐ Trust    ☒ Limited Liability Company

☐ Organization including a corporation (other than Partnership, Joint Venture or Limited Liability Company)

Location of All Premises You Own, Rent or Occupy:
   **See Schedule of Locations**

**Item 3.** Forms and Endorsements

Form(s) and Endorsement(s) made a part of this policy at time of issue:
   **See Schedule of Forms and Endorsements**

**Item 4.** Premiums

| | | |
|---|---|---|
| Coverage Part Premium: | $ | 1,732 |
| Other Premium: | $ | |
| Total Premium: | $ | 1,732 |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. __CPS3064779__

Effective Date: __07/13/2018__
12:01 A.M., Standard Time

Named Insured __M&M SISTERS LLC; BERTHA MENENDEZ__

Agent No. __09020__

| Prem. No.<br>1 | Bldg. No.<br>1 | Class Code<br>60010 | Exposure<br>15 | Basis<br>UNITS | |
|---|---|---|---|---|---|
| Class Description:<br>APARTMENT BUILDINGS (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | | | Premises/ Operations | |
| | | | | Rate | Premium |
| | | | | 115.83 | 1,732 |
| | | | | Products/ Comp Operations | |
| | | | | Rate | Premium |
| | | | | INCL | INCL |
| Prem. No.<br>1 | Bldg. No.<br>1 | Class Code<br>49950 | Exposure | Basis | |
| Class Description:<br>ADDITIONAL INSURED- CG2018 | | | | Premises/ Operations | |
| | | | | Rate | Premium |
| | | | | INCL | INCL |
| | | | | Products/ Comp Operations | |
| | | | | Rate | Premium |
| | | | | | |
| Prem. No. | Bldg. No. | Class Code | Exposure | Basis | |
| Class Description: | | | | Premises/ Operations | |
| | | | | Rate | Premium |
| | | | | | |
| | | | | Products/ Comp Operations | |
| | | | | Rate | Premium |
| | | | | | |
| Prem. No. | Bldg. No. | Class Code | Exposure | Basis | |
| Class Description: | | | | Premises/ Operations | |
| | | | | Rate | Premium |
| | | | | | |
| | | | | Products/ Comp Operations | |
| | | | | Rate | Premium |
| | | | | | |

CLS-SP-1L (10-93)

INSURED

clsspllf.fap

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

## COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Copyright, Insurance Services Office, Inc., 2012

INSURED

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

Copyright, Insurance Services Office, Inc., 2012

**f.  Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

       Copyright, Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.** **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.** **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.** **War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.** **Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** - Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.** **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.** **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.** **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.** **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.** **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.** **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q.** **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** - Limits Of Insurance.

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

Copyright, Insurance Services Office, Inc., 2012

**i.  Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j.  Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.  Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l.  Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.  Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n.  Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o.  War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p.  Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 Copyright, Insurance Services Office, Inc., 2012

**COVERAGE C - MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", in cluding actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these costs do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

Copyright, Insurance Services Office, Inc., 2012

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

Copyright, Insurance Services Office, Inc., 2012

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by;

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

Copyright, Insurance Services Office, Inc., 2012

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

 Copyright, Insurance Services Office, Inc., 2012

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I - Coverage **A** - Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    b. While it is in or on an aircraft, watercraft or "auto"; or

    c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

    but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    b. Vehicles maintained for use solely on or next to premises you own or rent;

    c. Vehicles that travel on crawler treads;

    d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

       (1) Power cranes, shovels, loaders, diggers or drills; or

       (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

    e. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

       (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

       (2) Cherry pickers and similar devices used to raise or lower workers;

    f. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

          Copyright, Insurance Services Office, Inc., 2012          CG 00 01 04 13

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

 Copyright, Insurance Services Office, Inc., 2012

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 2012

POLICY NUMBER:  CPS3064779

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED -
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| MERCANTILE COMMERCEBANK N.A. ISAOA<br>12496 NW 25 STREET<br>MIAMI, FL 33182 | REFER TO LOCATION SCHEDULE |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

Copyright, Insurance Services Office, Inc., 2012
INSURED

cg20180413.fap

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Copyright, Insurance Services Office, Inc., 2013

I N S U R E D

POLICY NUMBER:   CPS3064779                          **COMMERCIAL GENERAL LIABILITY**
                                                     **CG 21 44 04 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Premises: |
| --- |
| REFER TO LOCATION SCHEDULE |

| Project Or Operation: |
| --- |
|  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01,** the provisions under this Paragraph **A.** apply:

1. Paragraph **1.b.** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

   **b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

   **(1)** The "bodily injury" or "property damage":

   **(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

   **(b)** Arises out of the project or operation shown in the Schedule;

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

2. Paragraph **1.b.** under **Section I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

   **b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

   **(1)** The offense arises out of your business:

   **(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule; and

**(2)** The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I - Coverage C - Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**B.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 02**, the provisions under this Paragraph **B.** apply:

**1.** Paragraph **1.b.** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V -** Extended Reporting Periods.

**2.** Paragraph **1.b.** under **Section I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule;

**(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

   Copyright, Insurance Services Office, Inc., 2016   CG 21 44 04 17

**(3)** A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V - Extended Reporting Periods.**

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I - Coverage C - Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

 Copyright, Insurance Services Office, Inc., 2016

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, ISO Properties, Inc., 2006
INSURED

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **Fungi Or Bacteria**

  **a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

  **b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

  This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

  **2. Exclusions**

  This insurance does not apply to:

  **Fungi Or Bacteria**

  **a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

  **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

  "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Copyright, ISO Properties, Inc., 2003
INSURED

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

 Copyright, Insurance Services Office, Inc., 2014
INSURED

COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL  LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

Copyright, Insurance Services Office, Inc., 2012

INSURED

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTORS SPECIAL CONDITIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:**

**Contractors Special Conditions**

You will obtain current certificates of insurance from all independent contractors providing evidence of:

1. "Bodily injury" and "property damage" liability Limits of Insurance equal to or greater than the limits provided by this policy;

2. Coverage equal to or greater than the coverage provided by this policy; and

3. Effective dates of coverage that "coincide" with the effective dates of coverage on this policy.

Failure to comply with this condition does not alter the coverage provided by this policy, but will result in an additional premium charge.

The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS,** paragraph **5. Premium Audit:**

Should you fail to provide current certificates of insurance from all independent contractors at such times as we request to complete a premium audit, a premium charge will be made. The premium charge will be computed by multiplying the "total cost" of all work sublet that fails to meet the above condition, by the rate per $1,000 payroll for the applicable classification of the work performed. The premium charge will be computed by multiplying our usual and customary rate per $1,000 payroll for that classification.

For purposes of this endorsement the following definitions apply:

"Total cost" means the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work and all fees, bonuses or commissions paid.

"Coincide" means that the effective dates of coverage for all policies of all independent contractors covers that period of time during which work was performed for you within the effective dates covered by this policy.

/

_____    _____
AUTHORIZED REPRESENTATIVE                          DATE

INSURED

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM AND ADVANCE PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

MINIMUM PREMIUM _____100_____%

Item **5.b.** of the **Premium Audit** condition under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, SECTION IV - LIQUOR LIABILITY CONDITIONS** and **SECTION IV - PRODUCTS/ COMPLETED OPERATIONS LIABILITY CONDITIONS** is amended to read:

**b.** The advance premium for this Coverage Part is a deposit premium only. The final premium shall be subject to audit. At the close of each audit period we will compute the earned premium for that period. Any audit premiums are due and payable to us on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured, subject to the minimum premium as defined below. In the event the first Named Insured fails or refuses to allow our representative to audit your books and records, we may unilaterally charge a final premium for the Policy Period at double the minimum or advance premium, whichever is greater, and such final premium shall be immediately due and payable on notice to the first Named Insured.

For purposes of this endorsement, the terms advance premium, earned premium, and minimum premium are defined as follows:

Advance Premium - the premium that is stated in the applicable initial policy Declarations or Renewal Certificate and payable in full by the first Named Insured at the inception of each Policy Period.

Earned Premium - the premium that is developed by applying the rate(s) scheduled in the policy to the actual premium basis for the audit period.

Minimum Premium - the lowest premium for which this insurance will be written for the Policy Period stated in **Item 2.** of the Declarations of the applicable initial policy or subsequent Renewal Certificate. This minimum premium is equal to 100% (unless a different percentage [%] is shown in the Schedule above) of the advance premium including any premium adjustments made by endorsement to this policy during the Policy Period. Premium adjustments do not include the audit premium developed for the Policy Period stated in **Item 2.** of the Declarations.

/
_____    _____
AUTHORIZED REPRESENTATIVE           DATE

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT TO OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Condition **4. Other Insurance** of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted in its entirety and is replaced by the following:

**4.   Other Insurance**

  **a.   Primary Insurance**

  This insurance is primary except when **b.** below applies.

  **b.   Excess Insurance**

  **(1)** This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

   **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

   **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

   **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

   **(d)** If the loss arises out of the maintenance or use of aircraft, "auto" or watercraft to the extent not subject to Exclusion **g.** of Coverage **A (SECTION I);** or

   **(e)** That is valid and collectible insurance available to any insured under any other policy.

  **(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

  **(3)** When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:

   **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

**(b)** The total of all deductible and self-insured amounts under all other insurance.

If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

_/_

AUTHORIZED REPRESENTATIVE                                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MULTI-UNIT HABITATIONAL CONVERSION EXCLUSION

This insurance modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**ERRORS AND OMISSIONS COVERAGE PART**

This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury" or any "error or omission" arising out of, related to, caused by, or associated with, in whole or part, the following:

"Your work," ownership or financial interest in any building which is converted to "residential property," whether prior to, during or after the Policy Period set forth in the Declarations. This exclusion applies regardless of whether:

    **a.** The conversion was performed by you or on your behalf; or

    **b.** The conversion takes place before or after "your work" is completed.

However, this exclusion does not apply to:

    **a.** "Your work" on "residential property" which meets all of the following criteria:

        **(1)** The work has been for repair and/ or renovation only;

        **(2)** The work has been performed on an existing structure that already has a Certificate of Occupancy at the time that such operations first commenced; and

        **(3)** The repair and/ or renovation work is contracted directly with an individual unit owner or individual home owner.

    **b.** "Your work" on or associated with that portion of "mixed-use building(s)" that is not residential property.

For the purposes of this endorsement, the following definitions apply:

"Apartments" are defined as a multi-family residence where there is common ownership of individual units and common areas, but where all individual units are held for lease or rent by tenants who have no ownership interest in the units they lease or rent.

"Mixed-use building(s)" is defined as a building or a group of buildings that contain both "residential property" and commercial space.

"Residential property" is defined as property designed for domicile, including, but not limited to: single family dwelling, multi-unit subdivision, master planned community, cooperative, tract housing, townhome/ townhouses, duplex, condominiums, lofts, timeshares, and "mixed-use building(s)"; as well as all common areas. However, this definition does not apply to "apartments," military barracks, multi-unit dormitory buildings, hotels, motels, nursing homes or assisted living facilities.

We shall have no duty or obligation to defend any loss, claim or "suit" excluded by this endorsement; nor to pay any investigation or other loss adjustment expense.

_____ / _____
AUTHORIZED REPRESENTATIVE                DATE

—

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO._____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## KNOWN INJURY OR DAMAGE EXCLUSION - PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following exclusion is added to Paragraph **2. Exclusions** of SECTION I - COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:

**Known Injury Or Damage**

This insurance does not apply to "personal and advertising injury" arising from an offense:

a. That occurs during the policy period and, prior to the policy period, an insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, knew that the "personal and advertising injury" had occurred prior to the policy period, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "personal and advertising injury" occurred, then any continuation, change or resumption of such offense during or after the policy period will be deemed to have been known prior to the policy period; or

b. That occurs during the policy period and was, prior to the policy period, known to have

occurred by any insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, includes any continuation, change or resumption of that "personal and advertising injury" after the end of the policy period.

A "personal and advertising injury" arising from an offense will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim:

(1) Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "personal and advertising injury"; or

(3) Becomes aware by any other means that "personal and advertising injury" has occurred or has begun to occur.

/

_____    _____
AUTHORIZED REPRESENTATIVE              DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006



**SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO._____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HYDRAULIC FRACTURING EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ERRORS AND OMISSIONS COVERAGE PART

**A.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage A. Bodily Injury And Property Damage Liability** of the Commercial General Liability Coverage Part and Paragraph **2. Exclusions** of **SECTION I - COVERAGE** of the Errors And Omissions Coverage Part:

This insurance does not apply to:

**Hydraulic Fracturing**

**1.** "Bodily injury," "property damage" or "error or omission":

   **a.** Arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing," "gas fracking" and/or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any insured or by any other person or entity; or

   **b.** Caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing" or "gas fracking."

**2.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, remediating or disposing of, or in any way responding to or assessing the effects of "hydraulic fracturing," "gas fracking" or "flowback," by any insured or by any other person or entity.

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to items **1.** or **2.** above.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B. Personal And Advertising Injury** Liability of the Commercial General Liability Coverage Part:

This insurance does not apply to:

**Hydraulic Fracturing**

**1.** "Personal and advertising injury":

   **a.** Arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include,

INSURED

but are not limited to, "hydraulic fracturing," "gas fracking" and/or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any "insured" or by any other person or entity; or

b. Caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing" or "gas fracking."

2. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, remediating or disposing of, or in any way responding to or assessing the effects of "hydraulic fracturing," "gas fracking" or "flowback," by any insured or by any other person or entity.

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to items 1. or 2. above.

For purposes of this endorsement, the following definitions apply:

1. "Hydraulic fracturing," or hydrofracking means the process by which water, "proppants," chemicals and/or other fluid additives are injected at high pressure into underground geologic formations to create fractures, to facilitate the extraction of any hydrocarbons including but not limited to natural gas and/or oil.

2. "Flowback" means any substance containing returned "hydraulic fracturing" fluid, including but not limited to water, "proppants," "hydraulic fracturing" fluid additives; and, any hydrocarbon compounds, salts, conventional pollutants, organics, metals, and naturally occurring radioactive material brought to the surface with the water.

3. "Gas fracking" or liquefied propane/butane gas fracturing means the waterless process by which propane gel and "proppants" are injected at high pressure into underground geologic formations to create fractures, to facilitate the release and extraction of natural gas.

4. "Proppant" means particles that are used to keep fractures open after a hydraulic fracturing treatment.

/

AUTHORIZED REPRESENTATIVE             DATE

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AIRCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to paragraph **2. Exclusions** of **SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to:

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft. Use includes operation and "loading and unloading."

This exclusion applies even if claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured.

_____  /
AUTHORIZED REPRESENTATIVE                DATE

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

Copyright, ISO Properties, Inc., 2007
INSURED

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 Copyright, ISO Properties, Inc., 2007 IL 00 21 09 08

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

_____/_____
AUTHORIZED REPRESENTATIVE          DATE

INSURED

UTS-74g (8-95)

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ASBESTOS EXCLUSION

This policy does not apply to:

(1) Damages in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

(2) Any economic loss, diminution of property value, abatement costs, or any other loss, cost or expense including equitable relief, in any way or to any extent arising out of or involving asbestos, asbestos fibers or any product containing asbestos or asbestos fibers.

(3) Any fees, fines, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or suit arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

_____          /
AUTHORIZED REPRESENTATIVE          DATE

INSURED

UTS-266g (5-98)

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEAD CONTAMINATION EXCLUSION

This policy does not apply to:

1. Any damages arising out of the ingestion, inhalation or absorption of lead in any form.

2. Any loss, cost or expense arising out of any:

   (a) Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

_____ /
AUTHORIZED REPRESENTATIVE                DATE

INSURED

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF NONPAYMENT CANCELLATION CONDITION

Wherever a Cancellation Condition for nonpayment of premium is found in the policy, the following is added:

If the insured failed to pay premium charged on a prior policy we issued and payment was due during the current renewal policy term, we may cancel this policy by mailing or delivering to the first Named Insured and mortgagee, if any, written notice of cancellation at least ten (10) days before the effective date of cancellation.

_____ /
AUTHORIZED REPRESENTATIVE                DATE

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PREMIUM AUDIT

The following is added to the Premium Audit provision:

If the first Named Insured fails or refuses to provide documentation adequate to determine the apportionment of exposures by class code, we may unilaterally apply all exposures to the class code with the highest rate stated in the policy including any class code adjustments made by endorsement.

/

_____      _____
AUTHORIZED REPRESENTATIVE                              DATE

INSURED



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL PROPERTY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy No.: CPS3064779   Effective Date: 07/13/2018

12:01 A.M. Standard Time

Named Insured: M&M SISTERS LLC; BERTHA MENENDEZ   Agent No.: 09020

| **Item 1.** | Business Description: APARTMENT BUILDING |
| --- | --- |

| **Item 2.** | Premises Described: |
| --- | --- |
| | **See Schedule of Locations** |

| **Item 3.** | $500 Deductible unless otherwise indicated. |
| --- | --- |

**Item 4.** Coverages Provided:

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
| --- | --- | --- | --- | --- | --- |
| 1 | 1 | BUILDING | 1,163,195 | SPECIAL | 90% |

**Other Provisions**

Construction: FIRE RESISTIVE   Year Built: 1985   No. of Stories: 3
☐ Agreed Value: _____   Expires: _____   ☒ Replacement Cost
☐ Business Income Indemnity: Monthly Limit: _____   Maximum Period: _____   Extended Period: _____
☐ Reporting   ☐ Inflation Guard: _____%
Deductible: 2,500 AOP   Earthquake Deductible: _____%   Exceptions: _____

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
| --- | --- | --- | --- | --- | --- |
| 1 | 1 | BUSINESS INCOME | 15,000 | SPECIAL | |

**Other Provisions**

Construction: _____   Year Built: _____   No. of Stories: _____
☐ Agreed Value: _____   Expires: _____   ☐ Replacement Cost
☒ Business Income Indemnity: Monthly Limit: 1/6   Maximum Period: _____   Extended Period: _____
☐ Reporting   ☐ Inflation Guard: _____%
Deductible: _____   Earthquake Deductible: _____%   Exceptions: _____

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
| --- | --- | --- | --- | --- | --- |
| | | | | | |

**Other Provisions**

Construction: _____   Year Built: _____   No. of Stories: _____
☐ Agreed Value: _____   Expires: _____   ☐ Replacement Cost
☐ Business Income Indemnity: Monthly Limit: _____   Maximum Period: _____   Extended Period: _____
☐ Reporting   ☐ Inflation Guard: _____%
Deductible: _____   Earthquake Deductible: _____%   Exceptions: _____

| **Item 5.** | Forms and Endorsements: |
| --- | --- |
| Form(s) and Endorsement(s) made a part of this policy at time of issue: |
| **See Schedule of Forms and Endorsements** |

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER WITH
THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENT(S), IF ANY, COMPLETE
THE ABOVE-NUMBERED POLICY



## SCHEDULE OF MORTGAGE HOLDER(S)

Policy No. CPS3064779        Effective Date 07/13/2018

12:01 A.M. Standard Time

Named Insured M&M SISTERS LLC; BERTHA MENENDEZ        Agent No. 09020

| Prem. No. | Bldg. No. | Mortgage Holder Name and Mailing Address |
|---|---|---|
| 1 | 1 | MERCANTIL COMMERCEBANK N.A. ISAOA<br>12496 NW 25 STREET, MIAMI, FL 33182 |

CPS-SP-5L (6-92)             INSURED

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

Copyright, Insurance Services Office, Inc., 2011
I N S U R E D

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

Copyright, Insurance Services Office, Inc., 2011

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers;

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3.** **Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4.** **Additional Coverages**

**a.** **Debris Removal**

**(1)** Subject to Paragraphs **(2), (3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

 Copyright, Insurance Services Office, Inc., 2011

Therefore, if **(4)(a)** and/ or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5)  Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $    500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,000 |
| | ($50,000 - $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |

($10,000 is 20% of $50,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $    500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 - $500) |
| Debris Removal Expense | $ 40,000 |
| Debris Removal Expense Payable: | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b.  Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c.  Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

      Copyright, Insurance Services Office, Inc., 2011      CP 00 10 10 12

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f.  Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss - Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss - Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

Copyright, Insurance Services Office, Inc., 2011

(4) The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

(1) **Buildings**

If this policy covers Building, you may extend that insurance to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at locations, other than the described premises, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

(2) **Your Business Personal Property**

(a) If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

(i) Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

(ii) Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(b) This Extension does not apply to:

(i) Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

(ii) Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

(3) **Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

Copyright, Insurance Services Office, Inc., 2011

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss - Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss - Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

Copyright, Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f.  Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g.  Business Personal Property Temporarily In Portable Storage Units**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations within 100 feet of the premises described in the Declarations, whichever distance is greater.

**(2)** If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the business personal property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B.  Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C.  Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

1. Fire Department Service Charge;

2. Pollutant Clean-up And Removal;

3. Increased Cost Of Construction; and

4. Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**EXAMPLE # 1**

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance - Building 1: | $ | 60,000 |
| Limit of Insurance - Building 2: | $ | 80,000 |
| Loss to Building 1: | $ | 60,100 |
| Loss to Building 2: | $ | 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100
-      250
$ 59,850 Loss Payable - Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**EXAMPLE 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | | |
|---|---|---|
| Loss to Building 1: | $ | 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss to Building 2: | $ | 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss Payable - Building 1: | $ | 60,000 |
| (Limit of Insurance) | | |
| Loss Payable - Building 2: | $ | 80,000 |
| (Limit of Insurance) | | |
| Total amount of loss payable: | $ | 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

    Copyright, Insurance Services Office, Inc., 2011

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

 Copyright, Insurance Services Office, Inc., 2011

h. A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

5. **Recovered Property**

   If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

6. **Vacancy**

   a. **Description Of Terms**

      **(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

      **(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

      **(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

         **(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/ or

         **(ii)** Used by the building owner to conduct customary operations.

      **(2)** Buildings under construction or renovation are not considered vacant.

   b. **Vacancy Provisions**

      If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

      **(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

         **(a)** Vandalism;

         **(b)** Sprinkler leakage, unless you have protected the system against freezing;

         **(c)** Building glass breakage;

         **(d)** Water damage;

         **(e)** Theft; or

         **(f)** Attempted theft.

      **(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

7. **Valuation**

   We will determine the value of Covered Property in the event of loss or damage as follows:

   a. At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

   b. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

Copyright, Insurance Services Office, Inc., 2011

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F.  Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1.  Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | | |
|---|---|---|
| The value of the property is: | $ 250,000 | |
| The Coinsurance percentage for it is: | 80% | |
| The Limit of Insurance for it is: | $ 100,000 | |
| The Deductible is: | $    250 | |
| The Amount of Loss is: | $  40,000 | |

Step **(1)**:  $250,000 x 80% - $200,000

(the minimum amount of Insurance to meet your Coinsurance requirements)

Step **(2)**:  $100,000 ÷ $200,000 = .50

Step **(3)**:  $40,000 x .50 = $20,000

Step **(4)**:  $20,000 - $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | | |
|---|---|---|
| The value of the property is: | $ 250,000 | |
| The Coinsurance percentage for it is: | 80% | |
| The Limit of Insurance for it is: | $ 200,000 | |
| The Deductible is: | $    250 | |
| The amount of loss is: | $  40,000 | |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

 Copyright, Insurance Services Office, Inc., 2011

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When: The value of the property is:

| | |
|---|---:|
| Building at Location 1: | $ 75,000 |
| Building at Location 2: | $ 100,000 |
| Personal Property at Location 2: | $ 75,000 |
| | $ 250,000 |

| | |
|---|---:|
| The Coinsurance percentage for it is: | 90% |
| The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $ 180,000 |
| The Deductible is: | $ 1,000 |

The amount of loss is:

| | |
|---|---:|
| Building at Location 2: | $ 30,000 |
| Personal Property at Location 2: | $ 20,000 |
| | $ 50,000 |

**Step (1):** $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

**Step (2):** $180,000 ÷ $225,000 = .80

**Step (3):** $50,000 x .80 = $40,000

**Step (4):** $40,000 - $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

Copyright, Insurance Services Office, Inc., 2011

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

    **(1)** On or after the effective date of this Optional Coverage; and

    **(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

    **(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

    **(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

    **(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| If: | The applicable Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The annual percentage increase is: | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| | The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $ 3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

    **(1)** Personal property of others;

    **(2)** Contents of a residence;

    **(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

    **(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

    **(1)** Until the lost or damaged property is actually repaired or replaced; and

    **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

    **(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

    **(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

    **(1)** The Limit of Insurance applicable to the lost or damaged property;

    **(2)** The cost to replace the lost or damaged property with other property:

        **(a)** Of comparable material and quality; and

        **(b)** Used for the same purpose; or

    **(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

 Copyright, Insurance Services Office, Inc., 2011

f. The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

a. If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

b. With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

3. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

<div align="right">
COMMERCIAL PROPERTY
CP 00 30 10 12
</div>

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

(2) Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation - Interruption Of Computer Operations**

a. Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

b. Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

c. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

d. This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

a. **Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

(1) Four consecutive weeks after the date of that action; or

(2) When your Civil Authority Coverage for Business Income ends;

whichever is later.

Copyright, Insurance Services Office, Inc., 2011

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

**(a)** Used in the construction, alterations or additions; or

**(b)** Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation - Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation - Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss - Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss - Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

**B. Limits Of Insurance**

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

**C. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

3. **Loss Determination**

a. The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

b. The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

c. **Resumption Of Operations**

We will reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

4. **Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

a. We have reached agreement with you on the amount of loss; or

b. An appraisal award has been made.

D. **Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

1. The Coinsurance percentage shown for Business Income in the Declarations; times

2. The sum of:

a. The Net Income (Net Profit or Loss before income taxes), and

b. Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Copyright, Insurance Services Office, Inc., 2011

Instead, we will determine the most we will pay using the following steps:

Step **(1)**:    Multiply the Net Income and operating expense for the 12 monts following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2)**:    Divide the Limit of Insurance for the described premises by the figure determined in Step **(1)**; and

Step **(3)**:    Multiply the total amount of loss by the figure determined in Step **(2)**.

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

   **(1)** Prepaid freight - outgoing;

   **(2)** Returns and allowances;

   **(3)** Discounts;

   **(4)** Bad debts;

   **(5)** Collection expenses;

   **(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

   **(7)** Cost of merchandise sold (including transportation charges);

   **(8)** Cost of other supplies consumed (including transportation charges);

   **(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

   **(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

   **(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

   **(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion - not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

When:    The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described

premises would have been:    $ 400,000

The Coinsurance percentage is:    50%

The Limit of Insurance is:    $ 150,000

The amount of loss is:    $  80,000

Step **(1)**: $400,000 x 50% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $150,000 ÷ $200,00 = .75

Step (3): $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

When:    The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described

premises would have been:    $ 400,000

The Coinsurance percentage is:    50%

The Limit of Insurance is:    $ 200,000

The amount of loss is:    $  80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E.  Optional Coverages**

   If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

   **1.  Maximum Period Of Indemnity**

      a.  The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b. The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

(1) The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

(2) The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b. The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

(1) The Limit of Insurance, multiplied by

(2) The fraction shown in the Declarations for this Optional Coverage.

**Example**

| When: | | |
|---|---|---|
| The Limit of Insurance is: | $ 120,000 | |
| The fraction shown in the Declarations for this Optional Coverage is: | | 1/4 |
| The most we will pay for loss in each period of 30 consecutve days is: | $ 30,000 | |
| ($120,000 x 1/4 = $30,000) | | |
| If, in this example, the actual amount of loss is: | | |
| Days 1-30 | $ 40,000 | |
| Days 31-60: | $ 20,000 | |
| Days 61-90: | $ 30,000 | |
| | $ 90,000 | |
| We will pay: | | |
| Days 1-30: | $ 30,000 | |
| Days 31-60: | $ 20,000 | |
| Days 61-90: | $ 30,000 | |
| | $ 80,000 | |

**3. Business Income Agreed Value 2**

a. To activate this Optional Coverage:

(1) A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

(a) During the 12 months prior to the date of the Work Sheet; and

(b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

(2) The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

(a) The Coinsurance percentage shown in the Declarations; multiplied by

(b) The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

b. The Additional Condition, Coinsurance, is suspended until:

(1) 12 months after the effective date of this Optional Coverage; or

(2) The expiration date of this policy;

whichever occurs first.

c. We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

(1) Within 12 months of the effective date of this Optional Coverage; or

(2) When you request a change in your Business Income Limit of Insurance.

d. If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

(1) The Business Income Limit of Insurance; divided by

(2) The Agreed Value.

**Example**

| When: | | |
|---|---|---|
| The Limit of Insurane is: | $ 100,000 | |
| The Agreed Value is: | $ 200,000 | |
| The amount of loss is: | $ 80,000 | |

Step (1): $100,000 ÷ $200,000 = .50

Step (2): .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c.**, **Extended Business Income**, the number 60 Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

Copyright, Insurance Services Office, Inc., 2011

## F.  Definitions

1.  "Finished stock" means stock you have manufactured.

    "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

    "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2.  "Operations" means:

    a.  Your business activities occurring at the described premises; and

    b.  The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3.  "Period of restoration" means the period of time that:

    a.  Begins:

        (1)  72 hours after the time of direct physical loss or damage for Business Income Coverage; or

        (2)  Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

        caused by or resulting from any Covered Cause of Loss at the described premises; and

    b.  Ends on the earlier of:

        (1)  The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        (2)  The date when business is resumed at a new permanent location.

    "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

        (1)  Regulates the construction, use or repair, or requires the tearing down, of any property; or

        (2)  Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

    The expiration date of this policy will not cut short the "period of restoration".

4.  "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5.  "Rental Value" means Business Income that consists of:

    a.  Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

    b.  Continuing normal operating expenses incurred in connection with that premises, including:

        (1)  Payroll; and

        (2)  The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6.  "Suspension" means:

    a.  The slowdown or cessation of your business activities; or

    b.  That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

Copyright, Insurance Services Office, Inc., 2011

CP 00 90 07 88

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits Of Insurance of all insurance covering on the same basis.
2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.
2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

## I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.
2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:
   a. Someone insured by this insurance;
   b. A business firm:
      (1) Owned or controlled by you; or
      (2) That owns or controls you; or
   c. Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

INSURED

COMMERCIAL PROPERTY
CP 01 40 07 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage - Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

INSURED

# CAUSES OF LOSS - SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

**A. Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**B. Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance Or Law**

   The enforcement of or compliance with any ordinance or law:

   **(1)** Regulating the construction, use or repair of any property; or

   **(2)** Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance Or Law, applies whether the loss results from:

   **(a)** An ordinance or law that is enforced even if the property has not been damaged; or

   **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   **b. Earth Movement**

   **(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

   **(2)** Landslide, including any earth sinking, rising or shifting related to such event;

   **(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   **(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   **(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

   Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

   **(a)** Airborne volcanic blast or airborne shock waves;

   **(b)** Ash, dust or particulate matter; or

   **(c)** Lava flow.

   With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

 Copyright, Insurance Services Office, Inc., 2016

INSURED

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

          Copyright, Insurance Services Office, Inc., 2016          CP 10 30 09 17

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h.** **"Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.** **(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

        Copyright, Insurance Services Office, Inc., 2016        CP 10 30 09 17

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period Of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.**, Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.** Ordinance Or Law;

**(b)** Paragraph **B.1.c.** Governmental Action;

**(c)** Paragraph **B.1.d.** Nuclear Hazard;

**(d)** Paragraph **B.1.e.** Utility Services; and

**(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

 Copyright, Insurance Services Office, Inc., 2016

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

      However, this limitation does not apply to:

      (1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

      (2) Business Income Coverage or Extra Expense Coverage.

   e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

   f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

   g. Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

      (1) Dampness or dryness of atmosphere or of soil supporting the vegetation;

      (2) Changes in or extremes of temperature;

      (3) Disease;

      (4) Frost or hail; or

      (5) Rain, snow, ice or sleet.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Animals, and then only if they are killed or their destruction is made necessary.

   b. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      (1) Glass; or

      (2) Containers of property held for sale.

   c. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

      However, this limitation does not apply:

      (1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

Copyright, Insurance Services Office, Inc., 2016
CP 10 30 09 17

**(2)** To Business Income Coverage or to Extra Expense Coverage.

**3.** The special limit shown for each category, **a.** through **d.**, is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

**a.** $2,500 for furs, fur garments and garments trimmed with fur.

**b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**c.** $2,500 for patterns, dies, molds and forms.

**d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system; or

**b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage - Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(1)** A cause of loss listed in **2.a.** or **2.b.;**

**(2)** One or more of the "specified causes of loss";

**(3)** Breakage of building glass;

**(4)** Weight of people or personal property; or

**(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage - Collapse** does **not** apply to:

**a.** A building or any part of a building that is in danger of falling down or caving in;

**b.** A part of a building that is standing, even if it has separated from another part of the building; or

**c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

**a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

Copyright, Insurance Services Office, Inc., 2016

b.   Awnings, gutters and downspouts;

c.   Yard fixtures;

d.   Outdoor swimming pools;

e.   Fences;

f.   Piers, wharves and docks;

g.   Beach or diving platforms or appurtenances;

h.   Retaining walls; and

i.   Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.**, we will pay for loss or damage to that property only if:

(1)  Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

(2)  The property is Covered Property under this Coverage Form.

5.   If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a.   The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.**;

b.   The personal property which collapses is inside a building; and

c.   The property which collapses is not of a kind listed in **4.**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

6.   This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

7.   This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

8.   The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E.   Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

1.   The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

a.   A "specified cause of loss" other than fire or lightning; or

b.   Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

2.   We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a.   Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b.   The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c.   The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3.   The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

6. The following, **6.a.** or **6.b.,** applies only if Business Income and/ or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/ or Extra Expense Coverage Form:

    a. If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/ or Extra Expense is limited to the amount of loss and/ or expense sustained in a period of not more than 30 days. The days need not be consecutive.

    b. If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/ or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

1. **Property In Transit**

    This Extension applies only to your personal property to which this form applies.

    a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

    b. Loss or damage must be caused by or result from one of the following causes of loss:

        (1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

        (2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

        (3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

    c. The most we will pay for loss or damage under this Extension is $5,000.

    This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2. **Water Damage, Other Liquids, Powder Or Molten Material Damage**

    If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

 Copyright, Insurance Services Office, Inc., 2016

**3. Glass**

   **a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

   **b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

**G. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

   **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

      **(1)** The cost of filling sinkholes; or

      **(2)** Sinking or collapse of land into man-made underground cavities.

   **b.** Falling objects does not include loss or damage to:

      **(1)** Personal property in the open; or

      **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

   **c.** Water damage means:

      **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

      **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

Copyright, Insurance Services Office, Inc., 2016
CP 10 30 09 17

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TOTAL OR CONSTRUCTIVE LOSS CLAUSE

It is understood and agreed that in the event of a total loss or constructive total loss under the policy, the entire policy premium shall be earned in full and no return premium shall be due the named insured.

/

_____   _____
AUTHORIZED REPRESENTATIVE                              DATE

INSURED

FS-18 (11-86)

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WIND OR HAIL DEDUCTIBLE

This endorsement modifies insurance provided under the following:

**BUILDERS RISK COVERAGE FORM**
**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
**CONDOMINIUM ASSOCIATION COVERAGE FORM**

### Schedule

| Deductible |
|---|
| Flat Dollar $ _____ or Percentage ____3____%, subject to $ ____2,500____ minimum deductible |
| Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. |

With respect to loss or damage caused by or resulting from wind or hail, Item **D. Deductible** is deleted in its entirety and is replaced by the following:

**D. Deductible**

1. In any one occurrence of loss or damage to covered property by wind or hail (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

2. The Wind or Hail Deductible is calculated separately for, and applies separately to:

   a. Each building that sustains loss or damage.

   b. Personal property at each building, if there is loss or damage to that personal property, subject to **3.b.** below.

   c. Personal property in the open.

   d. Each separately scheduled item not described in items **a.-c.**

3. When a Flat Dollar deductible is shown, the following provisions apply in addition to paragraphs **1.** and **2.:**

   a. We will pay only that part of your loss over the deductible amount.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

    **b.** If there is damage to both a building and personal property in that building, one deductible will apply to the building and to the personal property in that building.

**4.** When a Percentage deductible is shown, the following provisions apply in addition to paragraphs **1.** and **2.**:

    **a.** We will calculate the deductible as follows:

        In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the percentage (as shown in the Schedule) of the Limit(s) of Insurance of covered property that has sustained loss or damage, subject to any minimum Deductible shown in the Schedule.

    **b.** If there is damage to both a building and personal property in that building, separate deductibles apply to the building and to the personal property in that building.

---

_____ / _____

           AUTHORIZED REPRESENTATIVE           DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007


## SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES - FLORIDA

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99**, the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following provision applies when a Coinsurance percentage is shown in the Declarations:

Florida law states as follows:

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the Insured.

**C.** The following is added:

If windstorm is a Covered Cause of Loss and loss or damage to Covered Property is caused by or results from windstorm, the following exclusion applies in:

1. Broward County;

2. Dade County;

3. Martin County;

4. Monroe County;

5. Palm Beach County; and

6. All the areas east of the west bank of the Intra-Coastal Waterway in the Counties of:

   a. Indian River; and

   b. St. Lucie.

**WINDSTORM EXTERIOR PAINT AND WATER-PROOFING EXCLUSION**

We will not pay for loss or damage caused by windstorm to:

1. Paint; or

2. Waterproofing material;

applied to the exterior of Buildings unless the Building to which such loss or damage occurs also sustains other loss or damage by windstorm in the course of the same storm event. But such coverage applies only if windstorm is a Covered Cause of Loss.

When loss or damage to exterior paint or waterproofing material is excluded, we will not include the value of paint or waterproofing material to determine:

   a. The amount of the Windstorm or Hail Deductible; or

   b. The value of Covered Property when applying the Coinsurance Condition.

**D.** Sinkhole Collapse Coverage Removed

Sinkhole Collapse coverage is removed as indicated in Paragraphs **D.1.** through **D.4.** ; and coverage for Catastrophic Ground Cover Collapse is added instead as set forth in Paragraph **E.**

1. In the Causes of Loss - Basic Form and in the Standard Property Policy, Sinkhole Collapse is deleted from the Covered Causes of Loss and sinkhole collapse is no longer an exception to the Earth Movement exclusion.

2. In the Causes of Loss - Broad Form, Sinkhole Collapse is deleted from the Covered Causes of Loss and from the Additional Coverage - Collapse; and sinkhole collapse is no longer an exception to the Earth Movement exclusion.

3. In the Causes of Loss - Special Form, sinkhole collapse is deleted from the "specified causes of

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2009

loss" and is no longer an exception to the Earth Movement exclusion.

4.  In the Mortgageholders Errors And Omissions Coverage Form, sinkhole collapse is deleted from the Covered Causes of Loss under Coverage B and from the "specified causes of loss, and is no longer an exception to the Earth Movement exclusion.

Further, this Coverage Part does not insure against Sinkhole Loss as defined in Florida law unless an endorsement for Sinkhole Loss is made part of this policy. However, if Sinkhole Loss causes Catastrophic Ground Cover Collapse, coverage is provided for the resulting Catastrophic Ground Cover Collapse even if an endorsement for Sinkhole Loss is not made part of this policy.

E.  The following is added to this Coverage Part as a Covered Cause Of Loss. In the Causes Of Loss - Special Form and Mortgageholders Errors And Omissions Coverage Form, the following is also added as a "specified cause of loss." However, as a "specified cause of loss, the following does not apply to the Additional Coverage - Collapse.

**CATASTROPHIC GROUND COVER COLLAPSE**

We will pay for direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

1.  The abrupt collapse of the ground cover;

2.  A depression in the ground cover clearly visible to the naked eye;

3.  Structural damage to the building, including the foundation; and

4.  The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, structural damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

The Earth Movement exclusion and the Collapse exclusion do not apply to coverage for Catastrophic Ground Cover Collapse.

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earthquake (if either or both of those causes of loss are covered under this Coverage Part), only one Limit of Insurance will apply to such loss or damage.

F.  The following applies to the **Additional Coverage - Civil Authority** under the Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form and Extra Expense Coverage Form:

1.  The Additional Coverage - Civil Authority includes a requirement that the described premises are not more than one mile from the damaged property. With respect to described premises located in Florida, such one-mile radius does not apply.

2.  The Additional Coverage - Civil Authority is limited to a coverage period of up to four weeks. With respect to described premises located in Florida, such four week period is replaced by a three-week period.

3.  Civil Authority coverage is subject to all other provisions of that Additional Coverage.

G.  In the event where more than one peril causes damage to covered property and the damage cannot be separated by the cause(s) of loss, we will:

Deduct the amount paid by the other carriers from the amount payable under our policy subject to the policy terms and conditions if a cause of the loss is covered under our policy;

If the cause of loss under our policy is also covered under another policy payment will be prorated among all companies providing coverage for the covered cause(s) of loss; and,

In no event can payments made by all carriers total more than the full replacement cost of the insured building. Payment will be subject to the policy terms and conditions of the policy of the covered property regardless of the number of covered perils or policies covering the property, even if the insured property is totally destroyed by combined perils.

_/_

_____

AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2009

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SEWER OR DRAIN DEFINITION ENDORSEMENT - FLORIDA

This insurance modifies insurance provided under the following:

**CAUSES OF LOSS - BASIC FORM**
**CAUSES OF LOSS - BROAD FORM**
**CAUSES OF LOSS - SPECIAL FORM**

Under Section **B. Exclusions,** paragraph **g. Water,** subsection **(3)** the following is added:

For the purpose of this exclusion, "sewer" and "drain" are defined as:

1.  "Sewer" means any underground pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations;

2.  "Drain" means any pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations to a "sewer."

_____ /_____

AUTHORIZED REPRESENTATIVE                                    DATE

INSURED

POLICY NUMBER:  CPS3064779

IL 04 01 02 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

**SCHEDULE**

| Premises Number | Building Number |
|---|---|
| 1 | 1 |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

With respect to the location(s) indicated in the Schedule, the following provisions apply:

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99**, the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** When this endorsement is attached to the Farm Livestock Coverage Form, reference to loss (other than in the term Sinkhole Loss itself) means "loss" as defined in that coverage form.

**C.** The following is added to this Coverage Part as a Covered Cause of Loss. In the forms which address "specified causes of loss", the following is also added as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss**, meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation, provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

Copyright, Insurance Services Office, Inc., 2012
INSURED

You must enter into a contract for the performance of building stabilization and/ or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your Sinkhole Loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

The stabilization and all other repairs to the Covered Property must be completed within 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

D. Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

E. With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

F. With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential or farm residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy, except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

G. Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this Coverage Part) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

**H.** The following provision is added to the **Duties In The Event Of Loss Or Damage** Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**I.** The following definitions are added with respect to the coverage provided under this endorsement:

**1.** "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

    **a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

    **b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" and that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

    **c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

    **d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

    **e.** Damage occurrring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

**2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.** "Primary structural system" means an assemblage of "primary structural members".

**J.** If we deny your claim for Sinkhole Loss without performing testing under section 627.702, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**K.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**L.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**M.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

 Copyright, Insurance Services Office, Inc., 2012

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO._____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CANCELLATION AND NONRENEWAL - FLORIDA

The Cancellation Condition is deleted in its entirety and replaced by the following:

A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. If this policy has been in effect for ninety (90) days or less and is not a renewal of a policy we issued, we may cancel by mailing or delivering written notice of cancellation, including the specific reasons for cancellation, to the first Named Insured at least:

   a. Ten (10) days before the effective date of cancellation, if we cancel for nonpayment of any premium when due; or

   b. Twenty (20) days before the effective date of cancellation, if we cancel for any other reason, except, we may cancel immediately if there has been:

      (1) A material misstatement or misrepresentation; or

      (2) A failure to comply with underwriting requirements established by us.

3. If this policy has been in effect for more than ninety (90) days or is a renewal or continuation of a policy we issued, we may cancel by mailing or deliver-ing written notice of cancellation, including the specific reasons for cancellation, to the first Named Insured at least:

   a. Ten (10) days before the effective date of cancellation, if we cancel for nonpayment of any premium when due; or

   b. Forty-five (45) days before the effective date of cancellation, if we cancel for any other reason.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

5. Notice of cancellation by us will state the effective date of the cancellation. The policy period will end on that date.

6. If we fail to mail or deliver our written notice of cancellation to the first Named Insured at least forty-five (45) days or twenty (20) days as required in A.2.b. and A.3.b. above, the coverage will remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the first Named Insured, whichever occurs first. The premium for the coverage shall remain the same during any such extension period.

7. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first

Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

8. If notice is mailed, proof of mailing will be sufficient proof of notice.

The following Condition is added to the policy and supersedes any other provision to the contrary:

B. Nonrenewal

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, including the specific reasons for nonrenewal, to the first Named Insured at least forty-five (45) days prior to the expiration of the policy.

2. If notice is mailed, we will mail it to the last mailing address known to us of the first Named Insured. Proof of mailing will be sufficient proof of notice.

3. If we fail to mail or deliver written notice of non-renewal to the first Named Insured at least forty-five (45) days prior to the effective date of nonrenewal, the coverage will remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the first Named Insured, whichever occurs first. The premium for the coverage shall remain the same during any such extension period.

/

AUTHORIZED REPRESENTATIVE                              DATE



**Scottsdale Insurance Company**
**National Casualty Company**
**Scottsdale Indemnity Company**
**Scottsdale Surplus Lines Insurance Company**

## CLAIM REPORTING INFORMATION

Your insurance policy has been placed with a Nationwide® insurance company.

Our commitment to you is to provide fast, fair claim service. Promptly reporting an event that could lead to a claim, as required by your policy, helps us fulfill this commitment to you. Please refer to your policy for this and all other terms and conditions.

To report a claim, you may contact us 24 hours a day, 7 days a week, by calling 1-800-423-7675 or via our website at www.nationwideexcessandsurplus.com.

Thank you for your business and as always, we appreciate the opportunity to serve you.

| **HOW TO REPORT A CLAIM** |
|---|
| Call **1-800-423-7675** or visit our website at www.nationwideexcessandsurplus.com. In order to expedite this process, please be prepared to furnish as much of the following information as possible: <ul><li>Your policy number</li><li>Date, time and location of the loss/ accident</li><li>Details of the loss/ accident</li><li>Name, address and phone number of any involved parties</li><li>If applicable, name of law enforcement agency or fire department along with the incident number</li></ul> **Please refer to your policy for specific claim reporting requirements.** |

**SCOTTSDALE INSURANCE COMPANY**®

Scottsdale Indemnity Company

**SCOTTSDALE**
SURPLUS LINES INSURANCE COMPANY

## POLICYHOLDER DISCLOSURE

### NOTICE OF TERRORISM INSURANCE COVERAGE

**TERRORISM RISK INSURANCE ACT**

Under the Terrorism Risk Insurance Act of 2002, as amended pursuant to the Terrorism Risk Insurance Program Reauthorization Act of 2015, effective January 1, 2015 (the "Act"), you have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act: The term "certified acts of terrorism" means any act that is certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security,  and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that where coverage is provided by this policy for losses resulting from "certified acts of terrorism," such losses may be partially reimbursed by the United States Government under a formula established by federal law. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government agrees to reimburse eighty-five percent (85%) of covered terrorism losses in calendar year 2015 that exceed the statutorily established deductible paid by the insurance company providing the coverage. This percentage of United States Government reimbursement decreases by one percent (1%) every calendar year beginning in 2016 until it equals eighty percent (80%) in 2020. The premium charged for this coverage is provided below and does not include any charges for the portion of loss that may be covered by the Federal Government under the Act.

You should also know that the Act, as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from "certified acts of terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

**CONDITIONAL TERRORISM COVERAGE**

The federal Terrorism Risk Insurance Program Reauthorization Act of 2015 is scheduled to terminate at the end of December 31, 2020, unless renewed, extended or otherwise continued by the federal government. Should you select Terrorism Coverage provided under the Act and the Act is terminated December 31, 2020, any terrorism coverage as defined by the Act provided in the policy will also terminate.

**IN ACCORDANCE WITH THE ACT, YOU MUST CHOOSE TO SELECT OR REJECT COVERAGE FOR "CERTIFIED ACTS OF TERRORISM" BELOW:**

**The Note below applies for risks in these states:** California, Connecticut, Georgia, Hawaii, Illinois, Iowa, Maine, Missouri, New Jersey, New York, North Carolina, Oregon, Rhode Island, Virginia, Washington, West Virginia, Wisconsin.

**NOTE:** In these states, a terrorism exclusion makes an exception for (and thereby provides coverage for) fire losses resulting from an act of terrorism. Therefore, if you reject the offer of terrorism coverage, that rejection does not apply to fire losses resulting from an act of terrorism coverage for such fire losses will be provided in your policy.

**If you do not respond to our offer and do not return this notice to the Company, you will have no Terrorism Coverage under this policy.**

|   | I hereby elect to purchase certified terrorism coverage for a premium of \$_____ . I understand that the federal Terrorism Risk Insurance Program Reauthorization Act of 2015 may terminate on December 31, 2020. Should that occur my coverage for terrorism as defined by the Act will also terminate. |
|---|---|
| X | I hereby reject the purchase of certified terrorism coverage. |

_____          M&M SISTERS LLC; BERTHA MENENDEZ
Policyholder/ Applicant's Signature          Named Insured/ Firm

_____          CPS3064779
Print Name          Policy Number, if available

_____
Date

 SCOTTSDALE INSURANCE COMPANY®

# FLORIDA POLICYHOLDER NOTICE

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

Case No. 2019-030409-CA-01

M&M SISTERS, LLC BERTHA MENENDEZ GARCIA & MARIA MENDEZ

    Plaintiff,

vs.

SCOTTSDALE INSURANCE COMPANY,

    Defendant.

_____/

### DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION TO ABATE PENDING COMPLETION OF INVESTIGATION

DEFENDANT, SCOTTSDALE INSURANCE COMPANY ("SCOTTSDALE"), hereby files this Motion to Dismiss, or in the Alternative, Motion to Abate Pending Completion of Investigation in response to the Complaint filed by M & M SISTERS, INC. ("M&M SISTERS"), stating as follows:

### Statement of Facts

1.    On or about October 16, 2019, M&M SISTERS filed the subject declaratory action against SCOTTSDALE relative to an alleged "water damage" insurance claim with a date of loss of May 6, 2019. (*See Complaint at ¶ 9.*)

2.    In its Complaint, M&M SISTERS states that it "requested that any inspection of the Subject Property be conducted with Audio and Video recording, however, Defendant refuses to complete the inspection under such requests, and as such, has caused serious delays. (*See Complaint at ¶ 13.*)

1

3.    M&M SISTERS seeks declarations from this Honorable Court regarding whether M&M SISTERS may record SCOTTSDALE's inspection by video and audio without SCOTTSDALE's consent and whether M&M SISTERS' insurance claim is covered under the policy. (*See Complaint at ¶ 42.*)

4.    The subject policy of insurance contains the following applicable provision:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**

\*        \*        \*

*E. Loss Conditions*

*The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:*

\*        \*        \*

*3. Duties In The Event Of Loss Or Damage*

   *a.   You must see that the following are done in the event of loss or damage to Covered Property:*

\*        \*        \*

   *(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.*

(*See policy of insurance at page 64, attached to the Complaint as Exhibit "A."*)

5.    As M&M SISTERS admits in its Complaint, SCOTTSDALE has been unable to complete its investigation of the underlying claim. Specifically, SCOTTSDALE previously requested to inspect the subject property with Donan Engineering; however, M&M SISTERS will not permit Donan Engineering to inspect the property unless the inspection is videotaped and recorded. (*See Complaint at ¶ 13, and Reservations of Rights letter dated September 20, 2019, attached hereto as **Exhibit "A."**)

2

6.      As M&M SISTERS has failed to comply with the policy's conditions precedent to filing the subject lawsuit by not permitting SCOTTSDALE to inspect the subject property, SCOTTSDALE moves to dismiss this action as premature. In the alternative, SCOTTSDALE respectfully requests that this Honorable Court abate the litigation to permit SCOTTSDALE an opportunity to complete its investigation, including inspecting the subject property.

## **Legal Argument**

**II.     M&M SISTERS' Complaint is subject to dismissal for failure to satisfy policy conditions precedent to filing the subject lawsuit.**

7.      The subject policy of insurance provides in pertinent per part:

*E. Loss Conditions*

*The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:*

<p style="text-align:center">*     *     *</p>

*3. Duties In The Event Of Loss Or Damage*

 *a. You must see that the following are done in the event of loss or damage to Covered Property:*

<p style="text-align:center">*     *     *</p>

  *(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.*

<p style="text-align:center">*     *     *</p>

*COMMERCIAL PROPERTY CONDITIONS*

*This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.*

*D. LEGAL ACTION AGAINST US*

*No one may bring a legal action against us under this Coverage Part unless:*

*1. There has been full compliance with all of the terms of this Coverage Part; and*
*2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.*

<p style="text-align:center">3</p>

*(See policy of insurance at pages 64 and 80, attached to the Complaint as Exhibit "A.")*

8.      M&M SISTERS has failed to cooperate with SCOTTSDALE in its investigation of the subject claim by failing to allow SCOTTSDALE's engineer to conduct an inspection of the property unless the inspection is videotaped and audio recorded. *(See Complaint at ¶ 13.)* This is a violation of a material policy condition.

9.      Consistent with the policy language, Florida Courts have held that insureds' compliance with duties set forth in insurance contracts is a condition precedent to suit. *See, e.g., Goldman v. State Farm Fire General Ins. Co.*, 660 So.2d 300 (Fla. 4th DCA, 1995) (examination under oath is a condition precedent to suit); *U.S. Fire Ins. Co. v. Franko*, 443 So.2d 170 (Fla. 1st DCA, 1983) (compliance with appraisal provision is a condition precedent to suit); *Ginger Starling v. Allstate Floridian Ins. Co.*, 956 So.2d 511 (Fla. 5th DCA, 2007) (providing a timely sworn statement in proof of loss is a condition precedent to litigation). Such duties encompass, generally, a duty to cooperate in the insurer's investigation of the claim.

10.     Where an insured fails to comply with policy conditions precedent to the filing of a lawsuit, that insured will be barred from recovery, and the insurer will be entitled to judgment. *See, e.g., Starling v. Allstate Floridian Ins. Co.*, 956 So.2d 511 (Fla. 5th DCA 2007) (affirming summary judgment for insurer where insured failed to provide sworn statement in proof of loss, and such failure was a breach of a condition precedent to suit; further holding that the insurer need not demonstrate prejudice); *Stringer v. Fireman's Fund Ins. Co.*, 622 So.2d 145, 146 (Fla. 3d DCA 1993) ("'[T]he failure to submit to an examination under oath is a material breach of the policy which will relieve the insurer of its liability to pay'"); *First Home Ins. Co. v. Fleurimond*, 36 So.3d 172 (3d DCA 2010) (same).

4

11.    Until policy conditions are met and the insurer "has a reasonable opportunity to investigate and adjust the claim, there is no 'disagreement'…regarding the value of the property or the amount of loss." *Citizens Property Ins. Corp. v. Galeria Villas Condo. Assoc., Inc.*, 48 So.3d 188, 191 (Fla. 3d DCA 2010) (holding that insured was not entitled to appraisal, as there could not be any "real difference in fact, arising out of an actual and honest effort to reach an agreement between the insured and the insurer" where the insured refused to permit the insurer to inspect the damaged property).

12.    SCOTTSDALE has been substantially prejudiced by M&M SISTER's failure to cooperate with SCOTTSDALE's investigation, as SCOTTSDALE has been prevented from inspecting the claimed damages and rendering a coverage determination as to M&M SISTER's claim, and, as appropriate, determining the scope of covered damages, prior to the filing of the subject lawsuit.

13.    Further, Florida is a "two-party consent" state, making it unlawful to record an oral communication in Florida, unless all parties to the communication consent. Section 934.03(2)(d), *Florida Statutes.*

14.    For all of the foregoing reasons, M&M SISTER's Complaint should be dismissed, with prejudice.

## III.   In the alternative, SCOTTSDALE respectfully requests that this matter be abated, so that SCOTTSDALE may complete its investigation of the subject claim.

15.    In the event this Court is not inclined to dismiss M&M SISTER's Complaint, SCOTTSDALE respectfully requests that the Court stay litigation of this matter, so that SCOTTSDALE may investigate the underlying claim(s) and make a determination of coverage, for the same reasons set forth above in support of dismissal. An Order Abating this Litigation such that SCOTTSDALE may assess the alleged loss, make its coverage determination and, as

5

appropriate, tender insurance benefits, potentially may render this litigation moot, and, at least, will serve to narrow the contested issues in this litigation, thereby promoting an efficient resolution of this matter, and conserving resources of this Court, of the parties, and of the parties' respective counsel.

## Conclusion

16.    In view of all of the foregoing, SCOTTSDALE respectfully requests that this Court enter an order dismissing this action, with prejudice, or, alternatively, enter an order abating this action so that SCOTTSDALE may complete its investigation of the underlying claim.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic mail on the 5th day of December 2019 to: Michael P. Patrick, Esquire, Strems Law Firm, pleadings@stremslaw.com; Team9@stremslaw.com.

/s/ *Erin R. Kreiser*
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Erin R. Kreiser, Esquire
Florida Bar No. 108062
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
ekreiser@rocklawpa.com
lherbert@rocklawpa.com
ERK/lh
Attorneys for Defendant, Scottsdale
Insurance Company

# THE ROCK LAW GROUP, P. A.

ROCKLAWPA.COM

1760 FENNELL STREET
MAITLAND, FL 32751
TELEPHONE: 407-647-9881
FACSIMILE: 407-647-9966

September 20, 2019

*Via Email Transmission Only*

Hunter Patterson, Esquire
Strems Law Firm
420 S. Orange Avenue, Suite 140
Orlando FL 32801

|      | Re:              | Our File No.:  | 2141-78779                          |
|------|------------------|----------------|-------------------------------------|
|      |                  | Claim No.:     | 01892450                            |
|      |                  | Insured:       | M&M Sisters, LLC Bertha Menendez Etal |
|      |                  | D/Occurrence:  | May 06, 2019                        |

Dear Mr. Patterson:

My office represents Scottsdale Insurance Company ("Scottsdale") in the above-referenced mater. Please direct all future correspondence regarding this claim to my attention.

Scottsdale previously requested to inspect the property with Donan Engineering. Donan Engineering has been unable to inspect the property, as your client's public adjuster, American Premier Claim Consultants, will not allow the inspection to proceed unless the engineer is videotaped and recorded during the inspection.

Scottsdale is undertaking an investigation of this matter subject to a reservation of its right to assert all defenses to coverage available to it under the policy. By investigating this claim we are not waiving any rights or admitting any obligations under the policy. We specifically reserve the right to assert defenses regarding any of the terms, conditions or exclusions of this policy which may now exist or may later become apparent. None of our actions in investigating this claim shall be construed in any way as waiving or creating an estoppel of our rights under the policy.

This is not a denial of your claim and should not be understood as a denial. This letter is merely notifying you that some or all of your damage may not be covered under the policy. Whether your damage is covered by your policy is under investigation at this time. We will complete our investigation of this matter as expeditiously as possible and your cooperation with this investigation is greatly appreciated.



EXHIBIT
A

Hunter Patterson, Esq.
September 20, 2019
Page 2 of 2


      Upon completion of our investigation, we will advise you of our findings. Should you have any questions, please do not hesitate to contact us.

                Very truly yours,

                Andrew P. Rock
                Erin R. Kreiser

ERK/rdd

IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

Case No. 2019-030409-CA-01

M & M SISTERS, LLC., BERTHA MENENDEZ GARCIA & MARIA MENDEZ.,

  Plaintiff,

vs.

SCOTTSDALE INSURANCE COMPANY,

  Defendant.

_____/

IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

Case No. 2019-030861-CA-01

A1A RESTORATION, INC. (A/A/O M & M SISTERS, INC.),

  Plaintiff,

vs.

SCOTTSDALE INSURANCE COMPANY,

  Defendant.

_____/

## **DEFENDANT'S MOTION TO CONSOLIDATE RELATED CASES**

DEFENDANT, SCOTTSDALE INSURANCE COMPANY ("SCOTTSDALE"), hereby requests this Court enter an Order granting this Motion to Consolidate Related Cases, and consolidating the above-styled case captioned *A1A Restoration, Inc. (a/a/o M & M Sisters, Inc.) v.*

1

*Scottsdale Insurance Company*, Case No. 2019-030861-CA-01, currently pending in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (the "*AOB Case*"), with and into the case captioned *M & M Sisters, Inc. v. Scottsdale Insurance Company*, Case No. 2019-030409-CA-01, pending in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (the "*Insured Case*"), pursuant to Fla. R. Civ. P. 1.270, stating as follows:

1.     On or about October 16, 2019, PLAINTIFF, M & M SISTERS, INC., filed the *Insured Case* in the Circuit Court of the Eleventh Judicial Circuit in Miami-Dade County. (*See copy of M & M SISTERS, INC.'s Complaint, Case No.* 2019-030409-CA-01*, attached hereto as* "**Exhibit A**"), purportedly seeking relief for an alleged breach by SCOTTSDALE, of a common policy of insurance, Number CPS3064779 (the "Policy"), issued to M & M SISTERS, INC., for a claim of damages to real property located at 1111 NW 43rd Ave., Miami, Florida 33126 (the "Property"), as a result of alleged water damage, which occurred on or about May 6, 2019, Claim Number 01892450 (the "Loss"), and which was caused by a Hurricane Irma.

2.     On or about November 5, 2019, PLAINTIFF, A1A RESTORATION, INC. (A/A/O M & M SISTERS, INC., filed the *AOB Case* in the **same** county (*See, copy of A1A RESTORATION's Complaint, Case No. 2019-030861-CA-01, attached hereto as* "**Exhibit B**"), seeking coverage as an assignee of M & M SISTERS, INC., for benefits arising out of the **same** claim, for the **same** Loss, at the **same** Property, against the **same** insurer, SCOTTSDALE, under the **same** Policy to the **same** Insured.

3.     In addition, the *Insured Case* and the *AOB Case* both involve the same questions of law, same discovery issues, same facts, and the same witnesses.

4.      Florida courts have recognized the propriety of consolidating related actions involving "common issues of law and fact," where "there exists the possibility of inconsistent rulings of law or jury findings in the two cases" if they are not consolidated.  *See, Holiday Inns, Inc. v. Spevak*, 639 So. 2d 1110, 1111 (Fla. 1st DCA 1994) (quashing an order denying a motion to consolidate and ordering consolidation because "there are common issues of law and fact involved in the pending actions, and there exists the possibility of inconsistent rulings or law or jury findings in the two cases"); *See also, Meyers v. Shore Industries, Inc.*, 575 So. 2d 783, 785 (Fla. 2d DCA 1991) (quashing an order denying a motion to consolidate and ordering consolidation because "[t]he possibility of inconsistent verdicts or outcomes for the petitioners does exist").  Consolidation is proper also to forestall duplicative, and therefore needless, litigation.  *See, Spevak* at 1111.

5.      Consolidation of the *Insured Case* and the *AOB Case* will streamline the litigation, promote efficient administration of justice, conserve judicial resources, and further judicial economy by avoiding the necessity of duplicate court appearances, depositions, hearings, and trials, by the same parties, on the same issues.  Moreover, consolidation will prevent the potential of inconsistent rulings and/or verdicts, and it will avoid the risk of imposing double and/or duplicative liability upon SCOTTSDALE.

6.      No party to either of the cases sought to be consolidated will be prejudiced by the consolidation of these matters.

**WHEREFORE**, Defendant, SCOTTSDALE INSURANCE COMPANY, requests that this Honorable Court enter an Order consolidating the above-styled case captioned *A1A Restoration, Inc. (a/a/o M & M Sisters, Inc.) v. Scottsdale Insurance Company, Case No. 2019-030861-CA-01*, pending in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-

3

Dade County, Florida (the "*AOB Case*"), with and into the case captioned *M & M Sisters, Inc. v. Scottsdale Insurance Company, Case No. 2019-030409-CA-01*, pending in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (the "*Insured Case*"), and any other relief this Court deems appropriate and just under the circumstances.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic mail on the 5th day of December 2019 to: Kevin J. Weisser, Esquire, Weisser, Elazar & Kantor, PLLC, kw@weklaw.com; pb@weklaw.com; and ps@weklaw.com and Michael P. Patrick, Esquire, Strems Law Firm, pleadings@stremslaw.com; Team9@stremslaw.com.

<div style="text-align:right">

*/s/Erin R. Kreiser*
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Erin R. Kreiser, Esquire
Florida Bar No. 108062
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
ekreiser@rocklawpa.com
lherbert@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

</div>

ERK/lh

**EXHIBIT "A"**



## Notice of Service of Process

null / ALL
**Transmittal Number: 20601156**
**Date Processed: 10/28/2019**

| | |
|---|---|
| Primary Contact: | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215 |
| Electronic copy provided to: | Ashley Roberts |
| Entity: | Scottsdale Insurance Company<br>Entity ID Number  3286058 |
| Entity Served: | Scottsdale Insurance Company |
| Title of Action: | M&M Sisters LLC., Bertha Menendez Garcia & Maria Mendez vs. Scottsdale Insurance Company |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court/Agency: | Miami-Dade County Circuit Court, FL |
| Case/Reference No: | 2019-030409-CA-01 |
| Jurisdiction Served: | Florida |
| Date Served on CSC: | 10/28/2019 |
| Answer or Appearance Due: | 20 Days |
| Originally Served On: | FL Chief of Financial Services on 10/25/2019 |
| How Served: | Electronic SOP |
| Sender Information: | Strems Law Firm<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

*19-000281925*

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

M&M SISTERS LLC., BERTHA MENENDEZ
GARCIA & MARIA MENDEZ

PLAINTIFF(S)

VS.

SCOTTSDALE INSURANCE COMPANY

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT

**CASE #:** 2019-030409-CA-01
**COURT:** CIRCUIT COURT
**COUNTY:** MIAMI-DADE
**DFS-SOP #:** 19-000281925

# NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the
State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Friday,
October 25, 2019 and a copy was forwarded by ELECTRONIC DELIVERY on Monday, October 28,
2019 to the designated agent for the named entity as shown below.

SCOTTSDALE INSURANCE COMPANY
LYNETTE COLEMAN
1201 HAYS STREET
TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible
for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court
pursuant to Florida Rules of Civil Procedure, Rule #1.080**

Jimmy Patronis

Jimmy Patronis
Chief Financial Officer

SCOT STREMS
CHIEF OPERATING OFFICER
THE STREMS LAW FIRM, P.A.
2555 PONCE DE LEON BLVD.
SUITE 210
CORAL GABLES, FL 33134

JJ1

RECEIVED AS STATUTORY REGISTERED AGENT on 25 October, 2019 and served on defendant or named party on 28 October, 2019 by the Florida Department of Financial Services

## IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA
## CIVIL DIVISION

**CASE NO: 2019-030409-CA-01**

M&M SISTERS LLC.,
BERTHA MENENDEZ GARCIA &
MARIA MENDEZ,,

      Plaintiff(s),

vs.

SCOTTSDALE INSURANCE COMPANY,

      Defendant.
_____/     __CIVIL ACTION SUMMONS__

**STATE OF FLORIDA:**
To Each Sheriff of Said State:
**YOU ARE HEREBY COMMANDED** to serve this summons and a copy of the complaint or petition in this action on Defendants:

### SCOTTSDALE INSURANCE COMPANY
#### c/o Department of Financial Services
#### PO Box 6200
#### 200 Gaines Street
#### Tallahassee, FL 32314-6200

Each Defendant is required to serve written defenses to the complaint or petition on Plaintiff's Attorney, to-wit:

### MICHAEL P. PATRICK, ESQUIRE
2525 Ponce de Leon Boulevard, Suite 600 Coral Gables, Florida 33134
(786) 430-0882; (305) 459-1589(fax)
E-Service: pleadings@stremslaw.com   team9@stremslaw.com

within twenty (20) days after service of this summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of the Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the complaint or petition.
**DATED** on   10/23/2019  .

                HARVEY RUVIN,
                As Clerk of said Court

                        #9691
              By: _____
                  As Deputy Clerk

          (Court Seal)

**IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA CIVIL DIVISION**

M&M SISTERS LLC.,
BERTHA MENENDEZ GARCIA &
MARIA MENDEZ,

      Plaintiffs,

vs.                        **CASE NO.:**

SCOTTSDALE INSURANCE
COMPANY,

      Defendant.

_____/

## COMPLAINT

**COMES NOW,** the Plaintiffs, M&M SISTERS LLC. AND BERTHA MENDEZ &

MARIA MENDEZ (hereinafter "Plaintiffs"), by and through their undersigned counsel, and sue

the Defendant, SCOTTSDALE INSURANCE COMPANY (hereinafter "Defendant"), and would

allege as follows:

## GENERAL ALLEGATIONS

1.     This is an action for declaratory relief regarding the rights of the parties under the

policy and the use of audio/video recording during inspections, and otherwise within the

jurisdictional limits of this Court.

2.     This is an action for declaratory judgment filed pursuant to Chapter 86 of the

Florida Statutes.

3.     At all times material hereto, Defendant, SCOTTSDALE INSURANCE

COMPANY is a Florida corporation authorized and doing business in MIAMI, FLORIDA.

4.   At all times material hereto, Plaintiffs, M&M SISTERS LLC. and BERTHA MENDEZ, own the property insured by Defendant located at 1111 NW 43RD AVE., 33126, MIAMI, FLORIDA, MIAMI-DADE COUNTY (hereinafter "subject property").

5.   Venue is proper in MIAMI-DADE COUNTY pursuant to Florida Statute 47.011, because the cause of action upon which these allegations are based accrued in MIAMI-DADE COUNTY, Florida, and the property at issue is located in MIAMI-DADE COUNTY, Florida.

6.   That Plaintiffs were insured at the time of loss, on 05/06/2019, under Defendant's insurance policy number CPS3064779 (hereinafter "Subject Policy").

7.   The Policy in question is attached hereto as **Exhibit "A".**

8.   Plaintiffs paid all insurance premiums, performed all post loss conditions, and performed all conditions precedent. In the alternative, all conditions precedent have been waived.

9.   On or about 05/06/2019, Plaintiff suffered a physical loss due to water damage involving the Property which was under the policy at that time (hereinafter "Subject Loss").

10.   This is a covered peril under the Subject Policy involving the Subject Property.

11.   Defendant acknowledged coverage for the Loss as claim number 01892450 and assigned an insurance adjuster to adjust the Subject Loss.

12.   Plaintiffs are ready and willing to meet with Defendant as reasonably necessary to inspect the Subject Property, and to comply with Plaintiffs' obligations under the Subject Policy.

13.   Plaintiff requested that any inspection of the Subject Property be conducted with Audio and Video recording, however, Defendant refuses to complete the inspection under such requests, and as such, has caused serious delays.

14.   Defendant asserts it is illegal to record the inspection as it is a violation of the law, and Defendant has improperly asserted privacy rights within the inspection.

15.     However, there is no term in the Subject Policy, no relevant case law, or court opinion, nor applicable statutory code, or section prohibiting the recorded inspection of the Subject Property.

16.     In fact, such a recording is allowable under the Florida Law, and not prohibited under the Subject Policy, and will benefit both parties assuring them transparency and accountability and providing an appropriate estimate for damages.

17.     As of the date of the filing of this instant action, there are no pending requests from Defendant to Plaintiff related to information, documentation, and/or compliance with conditions under the Subject policy.

18.     As of the date of the filing of this instant action, Defendant has failed to inspect the damages and has failed to make a coverage determination accusing Plaintiff of impeding Defendant's investigation of the claim and breaching the Subject Policy's cooperation clause.

## DECLARATORY ACTION

19.     Plaintiff adopts and incorporates paragraphs one (1) through eighteen (18) as if restated fully herein.

20.     This is an action for declaratory judgment filed pursuant to Chapter 86 of the Florida Statutes.

21.     This action is filed for the purpose of determining an actual controversy between Plaintiff and Defendant which has left the parties uncertain with respect to their legal rights and responsibilities.

22.     The Subject Policy states:

> **b.** As often as we reasonably require, allow us
> and our representatives:
> > **(1)** Access to the "residence premises"; and

**(2)** To inspect, subject to **2.a.** above, the "residence premises" and all damaged property prior to its removal from the "residence premises";

**CIT HO-3 07 17**                    **Page 19 0f 34**

23.      Plaintiffs are in doubt about their rights under the insurance contract, Florida Statutes and relevant case law as a result of Defendant's refusal to allow the inspection of the Subject Property to be video recorded with audio.

24.      Plaintiffs have made the Subject Property available for Defendant to inspect the damaged property pursuant to Section I Conditions of the Policy.

25.      Plaintiffs have cooperated in the investigation of the claim.

26.      On or about September 20, 2019, counsel for Plaintiff requested the inspection to be audio/video recorded.

27.      On or about September 27, 2019, Defendant responded refusing to comply with Plaintiff's request for a recorded inspection via audio and video reasoning that the request is "beyond the scope of Florida law".

28.      Plaintiffs have doubts as to whether they have violated the terms of the Subject Insurance Policy by requesting that any inspections of the property by Defendant, and/or its agents, by recorded with video and audio recording.

29.      Furthermore, Florida Statutes §627.877 states that:

Adjustments to comply with insurance contract and law. Every adjuster shall adjust or investigate every claim, damage, or loss made or occurring under an insurance contract, in accordance with the terms and conditions of the contract and of the applicable laws of this state.

30.   The Defendant is obligated to investigate the claim in accordance with the terms and conditions of the contract, and there is nothing set forth in the attached Subject Policy prohibiting the recordation of said inspection.

31.   Furthermore, Defendant has not distinguished between the recordation via photos versus the recordation via an audio and video recording. Since both methods record the inspection, Defendant has not provided any substantive reasonings supporting the prohibition of an audio and video recording.

32.   Despite numerous attempts to set a date for a recorded inspection, Defendant has been unreasonable in expecting a decorum of privacy and outright refused, and ostensibly, has not provided any policy provision, case law, or rule within the Florida administrative code prohibiting a homeowner from recording an inspection within their own home.

33.   Defendant's actions begs the question what shroud of secrecy are they placing on these inspections, when as stated previously, the recording will be useful to both parties.

34.   As of the date of filing, there were objectively no other factors, beyond the control of the insurer, which reasonably prevents such inspection to explain Defendant's failure to make a coverage determination related to the Subject Claim.

35.   As a result of the facts set forth above, a dispute has arisen which has left Plaintiffs insecure, uncertain, and in doubt with respect to their rights, and status of other equitable or legal responsibilities under the insurance contract, to wit: (1) whether Defendant's prolonged refusal to make a coverage decision was the functional equivalent of a de facto denial of coverage of the Subject Claim; and, (2) whether Florida law or the Insurance contract prohibit Plaintiffs from recording any inspections of their property through video and audio recording.

36.     There exists a bona fide, actual, present and practical need for declaratory relief as to whether: (1) Florida law or the Insurance contract prohibit Plaintiffs from recording any inspections of their property through video and audio recording; and, (2) Defendant's failure to make a coverage determination constitutes the functional equivalent of a de facto constructive denial of the Subject Claim as Plaintiffs cannot wait an indefinite period of time to seek relief under Florida law and the Subject Policy.

37.     There exists a present and ascertainable state of facts concerning the rights and obligations of both Plaintiffs and Defendant as to whether Florida law or the Insurance contract prohibit Plaintiffs from recording any inspections of their property through video and audio recording.

38.     The rights and obligations of both Plaintiff and Defendant under the Subject Policy are dependent upon the facts, and law applicable to the facts, effecting coverage under the Subject Policy.

39.     As previously stated, on its face, the Subject Policy does not expressly prohibit the use of recording devices during the inspection and Florida law allows Plaintiffs to secure this right.

40.     As a result of Defendant's failure to make a coverage determination of the Subject Claim, by way of refusing a recorded inspection, it has become necessary for Plaintiffs to incur and become obligated for attorney's fees and costs in the prosecution of this action.

41.     That Plaintiff has further had to retain the undersigned attorney and agreed to pay him a reasonable fee for which the Defendant is liable under § 627.428 and § 626.9373

Florida Statute 627.428(1) states:

Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus

insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

Florida Statute 626.9373 states:

(1) Upon the rendition of a judgment or decree by any court of this state against a surplus lines insurer in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer on or after the effective date of this act, the trial court or, if the insured or beneficiary prevails on appeal, the appellate court, shall adjudge or decree against the insurer in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the lawsuit for which recovery is awarded.

(2) If awarded, attorney's fees or compensation shall be included in the judgment or decree rendered in the case.

42.     The Plaintiff respectfully seeks a declaration that:

A.     The Plaintiff be able to record the inspection by way of video and audio.

B.     The Insured Property was covered under the Defendant's policy at the time of the Subject Loss;

C.     Plaintiff substantially complied with all post-loss conditions of the Subject Policy;

D.     That the inspection of the property can proceed with Plaintiffs and/or their representatives/agents recording the inspection with video and audio;

E.     Defendant's failure to inspect the property, and failure to make a coverage determination amounts to a de facto constructive denial of the Subject Claim;

F.     Plaintiffs are entitled to their reasonable attorneys fees and costs associated with this action, and;

G.     And any such further declaration by the Court as is supported by the law and the facts.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, plus costs, prejudgment interest and attorneys fees pursuant to Florida Statute § 627.428 and § 626.9373.

**THE STREMS LAW FIRM, P.A.**
420 South Orange Avenue, Suite 140 Orlando, FL 32801

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

## DESIGNATION OF E-MAIL ADDRESS PURSUANT TO RULE 2.516

Pursuant to Florida Rule of Judicial Administration 2.516, Plaintiff hereby files its notice of designation of email address for the purpose of service of all documents required to be served in this proceeding: **pleadings@stremslaw.com and team9@stremslaw.com**

**DATED** this October 14, 2019.

Respectfully submitted,
**STREMS LAW FIRM**
Attorney for Plaintiff
420 South Orange Ave, Suite 140
Orlando, Florida 32801
Telephone: (321) 234-3600
Facsimile: (321) 256-5367
Primary E-Service: pleadings@stremslaw.com
Secondary E-Service: Team9@stremslaw.com
Email: mpatrick@stremslaw.com
Email: jrodriguez@stremslaw.com

By: _____

**MICHAEL P. PATRICK, ESQUIRE**
**FLORIDA BAR NO.: 1002537**
**HUNTER PATTERSON, ESQUIRE**
**FLORIDA BAR NO.: 0102788**

# EXHIBIT "A"



Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza ■Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive ■Scottsdale, Arizona 85258
1-800-423-7675 ■ A Stock Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                                          President

The information contained herein replaces any similar information contained elsewhere in the policy.

UTS-COVPG (1-16)                          INSURED

## ═ COMMON POLICY DECLARATIONS ═

| Renewal of | | Policy Number |
|---|---|---|
| CPS2687540 | Underwritten by: Scottsdale Insurance Company<br>Home Office:<br>One Nationwide Plaza ▪ Columbus, Ohio 43215<br>Administrative Office:<br>8877 North Gainey Center Drive ▪ Scottsdale, Arizona 85258<br>1-800-423-7675 ▪ A STOCK COMPANY | **CPS3064779** |

**ITEM 1.** Named Insured and Mailing Address

M&M SISTERS LLC; BERTHA MENENDEZ
GARCIA & MARIA MENENDEZ
1710 PIZARRO STREET
CORAL GABLES, FL 33134

Agent Name and Address

SCU, A DIVISION OF CRC INSURANCE
SERVICES INC
1000 NW 57TH COURT, STE 670
MIAMI, FL 33126

Agent No.: __09020__    Program No.: __79__

**ITEM 2.** Policy Period       From: 07/13/2018     To: 07/13/2019     Term: 365 DAYS

**12:01 A.M., Standard Time at the mailing address shown in ITEM 1.**

Business Description:   APARTMENT BUILDING

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | | Premium Summary |
|---|---|---|
| Commercial General Liability Coverage Part | $ | 1,732 |
| Commercial Property Coverage Part | $ | 6,722 |
| Commercial Crime And Fidelity Coverage Part | $ | NOT COVERED |
| Commercial Inland Marine Coverage Part | $ | NOT COVERED |
| Commercial Auto Coverage Part | $ | NOT COVERED |
| Professional Liability Coverage Part | $ | NOT COVERED |
| | $ | |
| | $ | |
| **Total Policy Premium:** | $ | 8,454.00 |
| POLICY FEE | $ | 35.00 |
| SURPLUS LINES TAX | $ | 424.45 |
| SERVICE FEE | $ | 8.49 |
| SURCHARGE FEE | $ | 4.00 |
| | $ | |
| | $ | |
| **Policy Total:** | $ | 8,925.94 |

Form(s) and Endorsement(s) made a part of this policy at time of issue:
**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

EXCELLENCE INSURANCE LLC
3801 SW 107TH AVENUE
MIAMI, FL 33165
EB 07/17/18

*Esteban Alvarez*

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH
THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORM(S)
AND ENDORSEMENT(S), IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

OPS-D-1 (1-17)                    INSURED                     Nationwide

**POLICY NUMBER**  CPS3064779

**NAME OF INSURED  M&M SISTERS, LLC; BERTHA MENENDEZ GARCIA & MARIA**

**CARRIER:  SCOTTSDALE INSURANCE COMPANY**

**POLICY TERM: FROM      7/13/2018     TO  7/13/2019**

**TRANSACTION EFFECTIVE DATE  7/13/2018**

| | |
|---|---|
| Premium | $8,454.00 |
| Tax | 424.45 |
| Policy Fee | 35.00 |
| Service Fee | 8.49 |
| Surcharge Fee | 4.00 |

## NO FLAT CANCELLATIONS

| | |
|---|---|
| Total Premium | 8925.94 |

**THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.  PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.**

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY**

SURPLUS LINES AGENT: Marcia Whisman
SURPLUS LINES  AGENT'S ADDRESS: 7700 West Camino Real, Suite 201 Boca Raton, FL 33433
SURPLUS LINES AGENT'S LICENSE: P134922
PRODUCING AGENT INFORMATION:   MARCOS ALVAREZ
EXCELLENCE INSURANCE, LLC
3801 SW 107 AVENUE

MIAMI                          FL      33165

Surplus Lines Agent's Countersignature:  *Marcia Whisman*

# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. _____ CPS3064779 _____         Effective Date: _____ 07/13/2018 _____

12:01 A.M., Standard Time

Named Insured  M&M SISTERS LLC; BERTHA MENENDEZ         Agent No. _____ 09020 _____

```
            UTS-COVPG   1-16        Cover Page
            OPS-D-1   1-17          Common Policy Declarations
            UTS-SP-2    12-95       Schedule Of Forms and Endorsements
            COMMON FORMS
            UTS-SP-3   8-96         Locations Schedule
            IL 00 17   11-98        Common Policy Conditions
            IL 09 53   1-15         Excl-Certified Acts Terrorism
            UTS-9g   5-96           Service Of Suit Clause
            UTS-119g   6-14         Minimum Earned Cancellation Premium

            GENERAL LIABILITY FORMS
            CLS-SD-1L   8-01        GL Supplemental Dec
            CLS-SP-1L   10-93       GL Ext Supplemental Dec
            CG 00 01   4-13         General Liab Coverage
            CG 20 18   4-13         AI-Mortgagee-Assignee-Receiver
            CG 21 06   5-14         Excl-Access Of Confidential Or Personal Info
            CG 21 44   4-17         Designated Premises/Project/Operation Limitation
            CG 21 47   12-07        Employment-Related Practices Exclusion
            CG 21 67   12-04        Fungi Or Bacteria Excl
            CG 21 73   1-15         Exclusion-Certified Acts Of Terrorism
            CG 24 26   4-13         Amend Of Insured Contract Definition
            GLS-30s   1-15          Contractors Special Conditions
            GLS-47s   10-07         Minimum & Advance Prem Endt
            GLS-152s   8-16         Amendment To Other Insurance Condition
            GLS-282s   7-16         Multi-Unit Habitational Conversion Excl
            GLS-289s   11-07        Known Injury/Dmg Excl-Personal/Advertise Injury
            GLS-341s   8-12         Hydraulic Fracturing Excl
            GLS-457s   10-14        Aircraft Exclusion
            IL 00 21   9-08         Nuclear Energy Exclusion
            UTS-74g   8-95          Punitive/Exemplary Damage Exclusion
            UTS-266g   5-98         Asbestos Exclusion
            UTS-267g   5-98         Lead Contamination Exclusion
            UTS-365s   2-09         Amend Of Nonpayment Cancel Condition
            UTS-428g   11-12        Premium Audit

            PROPERTY FORMS
            CPS-SD-1   2-16         Property Supplemental Dec
            CPS-SP-5L   6-92        Mortgage Holders Schedule
            CP 00 10   10-12        Building & Personal Prop Cov
            CP 00 30   10-12        Business Income With Extra Expense Cov
            CP 00 90   7-88         Property Conditions
            CP 01 40   7-06         Excl Of Loss Due To Virus Or Bacteria
            CP 10 30   9-17         Causes Of Loss-Special Form
            FS-18   11-86           Total-Constructive Loss Clause
            UTS-183g   12-16        Windstorm Or Hail Deductible

            STATE FORMS
            CFS-68s-FL   1-12       FL-Changes
            CFS-103-FL   1-16       FL-Sewer Or Drain Definition Endorsement
            IL 04 01   2-12         FL-Sinkhole Loss Coverage
            UTS-29-FL   6-97        FL-Cancel-Nonrenew

            POLICYHOLDER NOTICES
            NOTX0178CW   3-16       Claim Reporting Information
            NOTX0423CW   2-15       Notice Of Terrorism Ins Cov
            NOTS0381FL   7-09       FL-Policyholder Notice
```

UTS-SP-2 (12-95)                    INSURED                    utssp2j.fap



# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF LOCATIONS

Policy No. ___CPS3064779___

Effective Date___07/13/2018___

12:01 A.M. Standard Time

Named Insured ___M&M SISTERS LLC; BERTHA MENENDEZ___

Agent No. ___09020___

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 1 | 1 | 1111 NW 43 AVENUE MIAMI, FL 33126 | APARTMENT BLDG |

UTS-SP-3 (8-96)

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

INSURED

POLICY NUMBER: CPS3064779                                                    IL 09 53 01 15

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

>    BOILER AND MACHINERY COVERAGE PART
>    COMMERCIAL INLAND MARINE COVERAGE PART
>    COMMERCIAL PROPERTY COVERAGE PART
>    CRIME AND FIDELITY COVERAGE PART
>    EQUIPMENT BREAKDOWN COVERAGE PART
>    FARM COVERAGE PART
>    STANDARD PROPERTY POLICY

### SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

INSURED
i10953D115.fap

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D.  Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

Copyright, Insurance Services Office, Inc., 2015
**IL 09 53 01 15**

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The officer named below is authorized and directed to accept service of process on behalf of the Company:

CHIEF FINANCIAL OFFICER; DEPARTMENT OF FINANCIAL SERVICES

200 EAST GAINES STREET

TALLAHASSEE, FL 32399

Having accepted service of process on behalf of the Company, the officer is authorized to mail the process or a true copy to:

NOT REQUIRED

/

AUTHORIZED REPRESENTATIVE                    DATE

INSURED

uts9gc.fap

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM EARNED CANCELLATION PREMIUM

The following provision is added to the Cancellation Condition:

If You request cancellation of this policy, We will retain not less than ____25%____ of the original premium.

_____    /_____
AUTHORIZED REPRESENTATIVE              DATE

## SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy No. _CPS3064779_      Effective Date _07/13/2018_
                                                    12:01 A.M., Standard Time

Named Insured _M&M SISTERS LLC; BERTHA MENENDEZ_    Agent No. _09020_

**Item 1.** Limits of Insurance

| Coverage | Limit of Liability | |
|---|---|---|
| Aggregate Limits of Liability | $ 1,000,000 | Products/ Completed Operations Aggregate |
| | $ 2,000,000 | General Aggregate (other than Products/ Completed Operations) |
| Coverage A - Bodily Injury and Property Damage Liability | $ 1,000,000 | any one occurrence subject to the Products/ Completed Operations and General Aggregate Limits of Liability |
| Damage to Premises Rented to You Limit | $ 100,000 | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B - Personal and Advertising Injury Liability | $ 1,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C - Medical Payments | $ 5,000 | any one person subject to the Coverage A occurrence and the General Aggregate Limits |

**Item 2.** Description of Business

Form of Business:

☐ Individual    ☐ Partnership    ☐ Joint Venture    ☐ Trust    ☒ Limited Liability Company

☐ Organization including a corporation (other than Partnership, Joint Venture or Limited Liability Company)

Location of All Premises You Own, Rent or Occupy:
    **See Schedule of Locations**

**Item 3.** Forms and Endorsements

Form(s) and Endorsement(s) made a part of this policy at time of issue:
    **See Schedule of Forms and Endorsements**

**Item 4.** Premiums

| | | |
|---|---|---|
| Coverage Part Premium: | $ | 1,732 |
| Other Premium: | $ | |
| Total Premium: | $ | 1,732 |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. ___CPS3064779___      Effective Date: ___07/13/2018___
                                                   12:01 A.M., Standard Time

Named Insured ___M&M SISTERS LLC; BERTHA MENENDEZ___      Agent No. ___09020___

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis | |
|---|---|---|---|---|---|
| 1 | 1 | 60010 | 15 | UNITS | |
| **Class Description:** | | | | **Premises/ Operations** | |
| APARTMENT BUILDINGS (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | | | Rate | Premium |
| | | | | 115.83 | 1,732 |
| | | | | **Products/ Comp Operations** | |
| | | | | Rate | Premium |
| | | | | INCL | INCL |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis | |
|---|---|---|---|---|---|
| 1 | 1 | 49950 | | | |
| **Class Description:** | | | | **Premises/ Operations** | |
| ADDITIONAL INSURED- CG2018 | | | | Rate | Premium |
| | | | | INCL | INCL |
| | | | | **Products/ Comp Operations** | |
| | | | | Rate | Premium |
| | | | | | |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis | |
|---|---|---|---|---|---|
| | | | | | |
| **Class Description:** | | | | **Premises/ Operations** | |
| | | | | Rate | Premium |
| | | | | | |
| | | | | **Products/ Comp Operations** | |
| | | | | Rate | Premium |
| | | | | | |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis | |
|---|---|---|---|---|---|
| | | | | | |
| **Class Description:** | | | | **Premises/ Operations** | |
| | | | | Rate | Premium |
| | | | | | |
| | | | | **Products/ Comp Operations** | |
| | | | | Rate | Premium |
| | | | | | |

       INSURED        clssplif.fsp

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

## COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

   e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Copyright, Insurance Services Office, Inc., 2012
INSURED

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

Copyright, Insurance Services Office, Inc., 2012

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 Copyright, Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g.  Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.  Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.  War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j.  Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

Copyright, Insurance Services Office, Inc., 2012
CG 00 01 04 13

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

q. **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

 Copyright, Insurance Services Office, Inc., 2012

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** - Limits Of Insurance.

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

   This insurance does not apply to:

   a. **Knowing Violation Of Rights Of Another**

      "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

   b. **Material Published With Knowledge Of Falsity**

      "Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

   c. **Material Published Prior To Policy Period**

      "Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

   d. **Criminal Acts**

      "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

   e. **Contractual Liability**

      "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

   f. **Breach Of Contract**

      "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

   g. **Quality Or Performance Of Goods - Failure To Conform To Statements**

      "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

   h. **Wrong Description Of Prices**

      "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

Copyright, Insurance Services Office, Inc., 2012
CG 00 01 04 13

**i.  Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j.  Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.  Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l.  Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.  Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n.  Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o.  War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p.  Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Copyright, Insurance Services Office, Inc., 2012

## COVERAGE C - MEDICAL PAYMENTS

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations;

      provided that:

      (a) The accident takes place in the "coverage territory" and during the policy period;

      (b) The expenses are incurred and reported to us within one year of the date of the accident; and

      (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      (1) First aid administered at the time of an accident;

      (2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

      To any insured, except "volunteer workers".

   b. **Hired Person**

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. **Injury On Normally Occupied Premises**

      To a person injured on that part of premises you own or rent that the person normally occupies.

   d. **Workers' Compensation And Similar Laws**

      To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. **Athletics Activities**

      To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

   f. **Products-Completed Operations Hazard**

      Included within the "products-completed operations hazard".

   g. **Coverage A Exclusions**

      Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   Copyright, Insurance Services Office, Inc., 2012   CG 00 01 04 13

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

         (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

   Copyright, Insurance Services Office, Inc., 2012

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by;

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

Copyright, Insurance Services Office, Inc., 2012
CG 00 01 04 13

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Copyright, Insurance Services Office, Inc., 2012

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I - Coverage **A** - Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

    **(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

    **(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

    **(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

Copyright, Insurance Services Office, Inc., 2012

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

Copyright, Insurance Services Office, Inc., 2012

CG 00 01 04 13

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)** When all of the work called for in your contract has been completed.

      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 2012

CG 00 01 04 13

POLICY NUMBER: CPS3064779

COMMERCIAL GENERAL LIABILITY
CG 20 18 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| MERCANTILE COMMERCEBANK N.A. ISAOA<br>12496 NW 25 STREET<br>MIAMI, FL 33182 | REFER TO LOCATION SCHEDULE |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion **2.p.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

2. **Exclusions**

This insurance does not apply to:

p. **Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

(1) Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

(2) The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

B. The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

2. **Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Copyright, Insurance Services Office, Inc., 2013

INSURED

POLICY NUMBER: CPS3064779

COMMERCIAL GENERAL LIABILITY
CG 21 44 04 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Premises: |
|---|
| REFER TO LOCATION SCHEDULE |

| Project Or Operation: |
|---|
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01,** the provisions under this Paragraph **A.** apply:

1. Paragraph **1.b.** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

   **b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

   **(1)** The "bodily injury" or "property damage":

   **(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

   **(b)** Arises out of the project or operation shown in the Schedule;

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

2. Paragraph **1.b.** under **Section I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

   **b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

   **(1)** The offense arises out of your business:

   **(a)** Performed on the premises shown in the Schedule; or

Copyright, Insurance Services Office, Inc., 2016

INSURED

**(b)** In connection with the project or operation shown in the Schedule; and

**(2)** The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I - Coverage C - Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**B.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 02**, the provisions under this Paragraph **B.** apply:

**1.** Paragraph **1.b.** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section V - Extended Reporting Periods.

**2.** Paragraph **1.b.** under **Section I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule;

**(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

Copyright, Insurance Services Office, Inc., 2016
CG 21 44 04 17

**(3)** A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V -** Extended Reporting Periods.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I - Coverage C - Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, **Exclusions** of Section **I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of Section **I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, ISO Properties, Inc., 2006
INSURED

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

    **2.   Exclusions**

        This insurance does not apply to:

        **Fungi Or Bacteria**

        **a.**  "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

        **b.**  Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

        This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

    **2.   Exclusions**

        This insurance does not apply to:

        **Fungi Or Bacteria**

        **a.**  "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

        **b.**  Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

    "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Copyright, ISO Properties, Inc., 2003

INSURED

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

Copyright, Insurance Services Office, Inc., 2014
INSURED

COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL  LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

Copyright, Insurance Services Office, Inc., 2012
INSURED

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTORS SPECIAL CONDITIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS:**

**Contractors Special Conditions**

You will obtain current certificates of insurance from all independent contractors providing evidence of:

1. "Bodily injury" and "property damage" liability Limits of Insurance equal to or greater than the limits provided by this policy;

2. Coverage equal to or greater than the coverage provided by this policy; and

3. Effective dates of coverage that "coincide" with the effective dates of coverage on this policy.

Failure to comply with this condition does not alter the coverage provided by this policy, but will result in an additional premium charge.

The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, paragraph **5. Premium Audit:**

Should you fail to provide current certificates of insurance from all independent contractors at such times as we request to complete a premium audit, a premium charge will be made. The premium charge will be computed by multiplying the "total cost" of all work sublet that fails to meet the above condition, by the rate per $1,000 payroll for the applicable classification of the work performed. The premium charge will be computed by multiplying our usual and customary rate per $1,000 payroll for that classification.

For purposes of this endorsement the following definitions apply:

"Total cost" means the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work and all fees, bonuses or commissions paid.

"Coincide" means that the effective dates of coverage for all policies of all independent contractors covers that period of time during which work was performed for you within the effective dates covered by this policy.

_____ /

AUTHORIZED REPRESENTATIVE                                    DATE



## SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM AND ADVANCE PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

MINIMUM PREMIUM _____100_____%

Item **5.b.** of the **Premium Audit** condition under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, SECTION IV - LIQUOR LIABILITY CONDITIONS** and **SECTION IV - PRODUCTS/ COMPLETED OPERATIONS LIABILITY CONDITIONS** is amended to read:

  **b.** The advance premium for this Coverage Part is a deposit premium only. The final premium shall be subject to audit. At the close of each audit period we will compute the earned premium for that period. Any audit premiums are due and payable to us on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured, subject to the minimum premium as defined below. In the event the first Named Insured fails or refuses to allow our representative to audit your books and records, we may unilaterally charge a final premium for the Policy Period at double the minimum or advance premium, whichever is greater, and such final premium shall be immediately due and payable on notice to the first Named Insured.

For purposes of this endorsement, the terms advance premium, earned premium, and minimum premium are defined as follows:

  Advance Premium - the premium that is stated in the applicable initial policy Declarations or Renewal Certificate and payable in full by the first Named Insured at the inception of each Policy Period.

  Earned Premium - the premium that is developed by applying the rate(s) scheduled in the policy to the actual premium basis for the audit period.

  Minimum Premium - the lowest premium for which this insurance will be written for the Policy Period stated in **Item 2.** of the Declarations of the applicable initial policy or subsequent Renewal Certificate. This minimum premium is equal to 100% (unless a different percentage [%] is shown in the Schedule above) of the advance premium including any premium adjustments made by endorsement to this policy during the Policy Period. Premium adjustments do not include the audit premium developed for the Policy Period stated in **Item 2.** of the Declarations.

/

AUTHORIZED REPRESENTATIVE        DATE

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT TO OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Condition **4. Other Insurance** of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted in its entirety and is replaced by the following:

4.  **Other Insurance**

    a.  **Primary Insurance**

        This insurance is primary except when **b.** below applies.

    b.  **Excess Insurance**

        (1) This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

            (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

            (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

            (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

            (d) If the loss arises out of the maintenance or use of aircraft, "auto" or watercraft to the extent not subject to Exclusion **g.** of Coverage **A (SECTION I)**; or

            (e) That is valid and collectible insurance available to any insured under any other policy.

        (2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

        (3) When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:

            (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

INSURED

**(b)** The total of all deductible and self-insured amounts under all other insurance.

If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

_____   / _____

AUTHORIZED REPRESENTATIVE                      DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MULTI-UNIT HABITATIONAL CONVERSION EXCLUSION

This insurance modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM
ERRORS AND OMISSIONS COVERAGE PART**

This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury" or any "error or omission" arising out of, related to, caused by, or associated with, in whole or part, the following:

"Your work," ownership or financial interest in any building which is converted to "residential property," whether prior to, during or after the Policy Period set forth in the Declarations. This exclusion applies regardless of whether:

    **a.** The conversion was performed by you or on your behalf; or

    **b.** The conversion takes place before or after "your work" is completed.

However, this exclusion does not apply to:

    **a.** "Your work" on "residential property" which meets all of the following criteria:

        **(1)** The work has been for repair and/ or renovation only;

        **(2)** The work has been performed on an existing structure that already has a Certificate of Occupancy at the time that such operations first commenced; and

        **(3)** The repair and/ or renovation work is contracted directly with an individual unit owner or individual home owner.

    **b.** "Your work" on or associated with that portion of "mixed-use building(s)" that is not residential property.

For the purposes of this endorsement, the following definitions apply:

"Apartments" are defined as a multi-family residence where there is common ownership of individual units and common areas, but where all individual units are held for lease or rent by tenants who have no ownership interest in the units they lease or rent.

"Mixed-use building(s)" is defined as a building or a group of buildings that contain both "residential property" and commercial space.

"Residential property" is defined as property designed for domicile, including, but not limited to: single family dwelling, multi-unit subdivision, master planned community, cooperative, tract housing, townhome/ townhouses, duplex, condominiums, lofts, timeshares, and "mixed-use building(s)"; as well as all common areas. However, this definition does not apply to "apartments," military barracks, multi-unit dormitory buildings, hotels, motels, nursing homes or assisted living facilities.

We shall have no duty or obligation to defend any loss, claim or "suit" excluded by this endorsement; nor to pay any investigation or other loss adjustment expense.

_____  /  _____
AUTHORIZED REPRESENTATIVE                              DATE


SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## KNOWN INJURY OR DAMAGE EXCLUSION - PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I - COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**Known Injury Or Damage**

This insurance does not apply to "personal and advertising injury" arising from an offense:

a. That occurs during the policy period and, prior to the policy period, an insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, knew that the "personal and advertising injury" had occurred prior to the policy period, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "personal and advertising injury" occurred, then any continuation, change or resumption of such offense during or after the policy period will be deemed to have been known prior to the policy period; or

b. That occurs during the policy period and was, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, includes any continuation, change or resumption of that "personal and advertising injury" after the end of the policy period.

A "personal and advertising injury" arising from an offense will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim:

(1) Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "personal and advertising injury"; or

(3) Becomes aware by any other means that "personal and advertising injury" has occurred or has begun to occur.

_____   /   _____
AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006

GLS-289s (11-07)                    Page 1 of 1

INSURED


SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HYDRAULIC FRACTURING EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ERRORS AND OMISSIONS COVERAGE PART

A. The following is added to Paragraph **2. Exclusions** of **Section I - Coverage A. Bodily Injury And Property Damage Liability** of the Commercial General Liability Coverage Part and Paragraph **2. Exclusions** of **SECTION I - COVERAGE** of the Errors And Omissions Coverage Part:

This insurance does not apply to:

**Hydraulic Fracturing**

1. "Bodily injury," "property damage" or "error or omission":

   a. Arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing," "gas fracking" and/ or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any insured or by any other person or entity; or

   b. Caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing" or "gas fracking."

2. Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, remediating or disposing of, or in any way responding to or assessing the effects of "hydraulic fracturing," "gas fracking" or "flowback," by any insured or by any other person or entity.

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to items **1.** or **2.** above.

B. The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B. Personal And Advertising Injury** Liability of the Commercial General Liability Coverage Part:

This insurance does not apply to:

**Hydraulic Fracturing**

1. "Personal and advertising injury":

   a. Arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include,

but are not limited to, "hydraulic fracturing," "gas fracking" and/or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any "insured" or by any other person or entity; or

**b.** Caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing" or "gas fracking."

**2.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, remediating or disposing of, or in any way responding to or assessing the effects of "hydraulic fracturing," "gas fracking" or "flowback," by any insured or by any other person or entity.

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to items **1.** or **2.** above.

For purposes of this endorsement, the following definitions apply:

1. "Hydraulic fracturing," or hydrofracking means the process by which water, "proppants," chemicals and/or other fluid additives are injected at high pressure into underground geologic formations to create fractures, to facilitate the extraction of any hydrocarbons including but not limited to natural gas and/or oil.

2. "Flowback" means any substance containing returned "hydraulic fracturing" fluid, including but not limited to water, "proppants," "hydraulic fracturing" fluid additives; and, any hydrocarbon compounds, salts, conventional pollutants, organics, metals, and naturally occurring radioactive material brought to the surface with the water.

3. "Gas fracking" or liquefied propane/butane gas fracturing means the waterless process by which propane gel and "proppants" are injected at high pressure into underground geologic formations to create fractures, to facilitate the release and extraction of natural gas.

4. "Proppant" means particles that are used to keep fractures open after a hydraulic fracturing treatment.

/

AUTHORIZED REPRESENTATIVE                    DATE

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO._____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AIRCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to paragraph **2. Exclusions** of **SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to:

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft. Use includes operation and "loading and unloading."

This exclusion applies even if claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured.

_____/_____
AUTHORIZED REPRESENTATIVE                    DATE

INSURED

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/ COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1.  The insurance does not apply:

    A.  Under any Liability Coverage, to "bodily injury" or "property damage":

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C.  Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

        (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

        (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2.  As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "special nuclear material" or "by-product material".

Copyright, ISO Properties, Inc., 2007
INSURED

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, ISO Properties, Inc., 2007
IL 00 21 09 08

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

AUTHORIZED REPRESENTATIVE          DATE

UTS-74g (8-95)                    INSURED

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ASBESTOS EXCLUSION

This policy does not apply to:

(1) Damages in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

(2) Any economic loss, diminution of property value, abatement costs, or any other loss, cost or expense including equitable relief, in any way or to any extent arising out of or involving asbestos, asbestos fibers or any product containing asbestos or asbestos fibers.

(3) Any fees, fines, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or suit arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

_____     /_____
AUTHORIZED REPRESENTATIVE               DATE

UTS-266g (5-98)                          INSURED

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEAD CONTAMINATION EXCLUSION

This policy does not apply to:

1. Any damages arising out of the ingestion, inhalation or absorption of lead in any form.

2. Any loss, cost or expense arising out of any:

    (a) Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

_____ /
AUTHORIZED REPRESENTATIVE        DATE

UTS-267g (5-98)                 INSURED



## SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF NONPAYMENT CANCELLATION CONDITION

Wherever a Cancellation Condition for nonpayment of premium is found in the policy, the following is added:

If the insured failed to pay premium charged on a prior policy we issued and payment was due during the current renewal policy term, we may cancel this policy by mailing or delivering to the first Named Insured and mortgagee, if any, written notice of cancellation at least ten (10) days before the effective date of cancellation.

/
_____            _____
AUTHORIZED REPRESENTATIVE                    DATE

UTS-365s (2-09)                              Page 1 of 1

INSURED

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2019 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PREMIUM AUDIT

The following is added to the Premium Audit provision:

If the first Named Insured fails or refuses to provide documentation adequate to determine the apportionment of exposures by class code, we may unilaterally apply all exposures to the class code with the highest rate stated in the policy including any class code adjustments made by endorsement.

/

AUTHORIZED REPRESENTATIVE                                    DATE

INSURED



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL PROPERTY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy No.: __CPS3064779_____     Effective Date: 07/13/2018_____

12:01 A.M. Standard Time

Named Insured: M&M SISTERS, LLC; BERTHA MENENDEZ___ Agent No.: 09020_____

| Item 1. | Business Description: APARTMENT BUILDING |
|---|---|

| Item 2. | Premises Described: |
|---|---|
| | **See Schedule of Locations** |

| Item 3. | $500 Deductible unless otherwise indicated. |
|---|---|

**Item 4.**   Coverages Provided:

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 1 | 1 | BUILDING | 1,163,195 | SPECIAL | 90% |

### Other Provisions

Construction: FIRE RESISTIVE_____   Year Built: _____1985_____   No. of Stories: _____3_____
☐ Agreed Value: _____   Expires: _____   ☒ Replacement Cost
☐ Business Income Indemnity: Monthly Limit: _____   Maximum Period: _____   Extended Period: _____
☐ Reporting   ☐ Inflation Guard: _____%
Deductible: ___2,500 AOP___   Earthquake Deductible: _____%   Exceptions: _____

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 1 | 1 | BUSINESS INCOME | 15,000 | SPECIAL | |

### Other Provisions

Construction: _____   Year Built: _____   No. of Stories: _____
☐ Agreed Value: _____   Expires: _____   ☐ Replacement Cost
☒ Business Income Indemnity: Monthly Limit: ___1/6__   Maximum Period: _____   Extended Period: _____
☐ Reporting   ☐ Inflation Guard: _____%
Deductible: _____   Earthquake Deductible: _____%   Exceptions: _____

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| | | | | | |

### Other Provisions

Construction: _____   Year Built: _____   No. of Stories: _____
☐ Agreed Value: _____   Expires: _____   ☐ Replacement Cost
☐ Business Income Indemnity: Monthly Limit: _____   Maximum Period: _____   Extended Period: _____
☐ Reporting   ☐ Inflation Guard: _____%
Deductible: _____   Earthquake Deductible: _____%   Exceptions: _____

| Item 5. | Forms and Endorsements: |
|---|---|
| Form(s) and Endorsement(s) made a part of this policy at time of issue: |
| **See Schedule of Forms and Endorsements** |

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER WITH
THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENT(S), IF ANY, COMPLETE
THE ABOVE-NUMBERED POLICY



# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF MORTGAGE HOLDER(S)

Policy No. _CPS3064779_

Effective Date _07/13/2018_

12:01 A.M. Standard Time

Named Insured _M&M SISTERS LLC; BERTHA MENENDEZ_

Agent No. _09020_

| Prem. No. | Bldg. No. | Mortgage Holder Name and Mailing Address |
|---|---|---|
| 1 | 1 | MERCANTIL COMMERCEBANK N.A. ISAOA<br>12496 NW 25 STREET, MIAMI, FL 33182 |

CPS-SP-5L (6-92)

INSURED

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

  **a. Building,** meaning the building or structure described in the Declarations, including:

   **(1)** Completed additions;

   **(2)** Fixtures, including outdoor fixtures;

   **(3)** Permanently installed:

     **(a)** Machinery and

     **(b)** Equipment;

   **(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

     **(a)** Fire-extinguishing equipment;

     **(b)** Outdoor furniture;

     **(c)** Floor coverings; and

     **(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

   **(5)** If not covered by other insurance:

     **(a)** Additions under construction, alterations and repairs to the building or structure;

     **(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

  **b. Your Business Personal Property** consists of the following property located in or on the building or structue described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

   **(1)** Furniture and fixtures;

   **(2)** Machinery and equipment;

   **(3)** "Stock";

   **(4)** All other personal property owned by you and used in your business;

   **(5)** Labor, materials or services furnished or arranged by you on personal property of others;

   **(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

     **(a)** Made a part of the building or structure you occupy but do not own; and

     **(b)** You acquired or made at your expense but cannot legally remove;

   **(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

  **c. Personal Property Of Others** that is:

   **(1)** In your care, custody or control; and

   **(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

Copyright, Insurance Services Office, Inc., 2011
INSURED

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

    **(1)** The lowest basement floor; or

    **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.**, does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

    **(1)** Are licensed for use on public roads; or

    **(2)** Are operated principally away from the described premises.

    This paragraph does not apply to:

        **(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

Copyright, Insurance Services Office, Inc., 2011
CP 00 10 10 12

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers;

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Copyright, Insurance Services Office, Inc., 2011

Therefore, if **(4)(a)** and/ or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $    500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,000 |
| | ($50,000 - $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |

($10,000 is 20% of $50,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $    500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 - $500) |
| Debris Removal Expense | $ 40,000 |
| Debris Removal Expense Payable: | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

b. **Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

c. **Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

Copyright, Insurance Services Office, Inc., 2011

d. **Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

e. **Increased Cost Of Construction**

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

(3) The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

Copyright, Insurance Services Office, Inc., 2011

**(b)** If the building is repaired or re-placed at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construc-tion, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construc-tion at the same premises.

**(c)** If the ordinance or law requires re-location to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Addi-tional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not sub-ject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the pro-visions of this Additional Coverage.

**(9)** The costs addressed in the Loss Pay-ment and Valuation Conditions and the Replacement Cost Optional Cover-age, in this Coverage Form, do not in-clude the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Cover-age, as stated in **e.(6)** of this Addi-tional Coverage, is not subject to such limitation.

**f.  Electronic Data**

**(1)** Under this Additional Coverage, elec-tronic data has the meaning described under Property Not Covered, Elec-tronic Data. This Additional Coverage does not apply to your "stock" of pre-packaged software, or to electronic data which is integrated in and oper-ates or controls the building's elevator, lighting, heating, ventilation, air condi-tioning or security system.

**(2)** Subject to the provisions of this Addi-tional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or cor-rupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss appli-cable to Your Business Personal Property apply to this Additional Cov-erage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss - Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss - Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is en-dorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss in-clude a virus, harmful code or sim-ilar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from ma-nipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an en-tity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

 Copyright, Insurance Services Office, Inc., 2011 CP 00 10 10 12

(4) The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

5. **Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

a. **Newly Acquired Or Constructed Property**

(1) **Buildings**

If this policy covers Building, you may extend that insurance to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at locations, other than the described premises, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

(2) **Your Business Personal Property**

(a) If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

(i) Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

(ii) Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(b) This Extension does not apply to:

(i) Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

(ii) Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

(3) **Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

Copyright, Insurance Services Office, Inc., 2011

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss - Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss - Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

Copyright, Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

f. **Non-owned Detached Trailers**

    **(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

        **(a)** The trailer is used in your business;

        **(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

        **(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

    **(2)** We will not pay for any loss or damage that occurs:

        **(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

        **(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

    **(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

    **(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

g. **Business Personal Property Temporarily In Portable Storage Units**

    **(1)** You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations within 100 feet of the premises described in the Declarations, whichever distance is greater.

    **(2)** If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

    **(3)** Coverage under this Extension:

        **(a)** Will end 90 days after the business personal property has been placed in the storage unit;

        **(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

    **(4)** Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

    **(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

 Copyright, Insurance Services Office, Inc., 2011

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

1.  Fire Department Service Charge;
2.  Pollutant Clean-up And Removal;
3.  Increased Cost Of Construction; and
4.  Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**EXAMPLE # 1**

(This example assumes there is no Coinsurance penalty.)

| | |
|---|---|
| Deductible: | $ 250 |
| Limit of Insurance - Building 1: | $ 60,000 |
| Limit of Insurance - Building 2: | $ 80,000 |
| Loss to Building 1: | $ 60,100 |
| Loss to Building 2: | $ 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100
−    250
$ 59,850 Loss Payable - Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**EXAMPLE 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---|
| Loss to Building 1: | $ 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $ 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable - Building 1: | $ 60,000 |
| (Limit of Insurance) | |
| Loss Payable - Building 2: | $ 80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1.  **Abandonment**

    There can be no abandonment of any property to us.

2.  **Appraisal**

    If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    a.  Pay its chosen appraiser; and
    b.  Bear the other expenses of the appraisal and umpire equally.

    If there is an appraisal, we will still retain our right to deny the claim.

3.  **Duties In The Event Of Loss Or Damage**

    a.  You must see that the following are done in the event of loss or damage to Covered Property:

        (1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. **Loss Payment**

a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

b. The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

c. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

d. We will not pay you more than your financial interest in the Covered Property.

e. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.

 Copyright, Insurance Services Office, Inc., 2011

h.  A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

5.  **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

6.  **Vacancy**

a.  **Description Of Terms**

(1)  As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

(a)  When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b)  When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i)  Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

(ii)  Used by the building owner to conduct customary operations.

(2)  Buildings under construction or renovation are not considered vacant.

b.  **Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1)  We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

(a)  Vandalism;

(b)  Sprinkler leakage, unless you have protected the system against freezing;

(c)  Building glass breakage;

(d)  Water damage;

(e)  Theft; or

(f)  Attempted theft.

(2)  With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

7.  **Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

a.  At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

b.  If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

(1) Awnings or floor coverings;

(2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

(3) Outdoor equipment or furniture.

c.  "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

d.  Glass at the cost of replacement with safety-glazing material if required by law.

e.  Tenants' Improvements and Betterments at:

(1) Actual cash value of the lost or damaged property if you make repairs promptly.

(2) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

(a) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

(b) Divide the amount determined in (a) above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

(3) Nothing if others pay for repairs or replacement.

## F.  Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1.  Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

a.  We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $      250 |
| | The Amount of Loss is: | $   40,000 |
| Step (1): | $250,000 x 80% - $200,000 | |
| | (the minimum amount of Insurance to meet your Coinsurance requirements) | |
| Step (2): | $100,000 ÷ $200,000 = .50 | |
| Step (3): | $40,000 x .50 = $20,000 | |
| Step (4): | $20,000 - $250 = $19,750 | |

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $      250 |
| | The amount of loss is: | $   40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

Copyright, Insurance Services Office, Inc., 2011

    **b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

| When: | The value of the property is: | |
|---|---|---|
| | Building at Location 1: | $ 75,000 |
| | Building at Location 2: | $ 100,000 |
| | Personal Property at Location 2: | $  75,000 |
| | | $ 250,000 |
| | The Coinsurance percentage for it is: | 90% |
| | The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $ 180,000 |
| | The Deductible is: | $   1,000 |
| | The amount of loss is: | |
| | Building at Location 2: | $ 30,000 |
| | Personal Property at Location 2: | $ 20,000 |
| | | $ 50,000 |

**Step (1):** $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

**Step (2):** $180,000 ÷ $225,000 = .80

**Step (3):** $50,000 x .80 = $40,000

**Step (4):** $40,000 - $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

  **2. Mortgageholders**

    **a.** The term mortgageholder includes trustee.

    **b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

    **c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

    **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

      **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

      **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

      **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

    **e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

      **(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

      **(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

    **f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

      **(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

      **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

    **g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

  **1. Agreed Value**

    **a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

Copyright, Insurance Services Office, Inc., 2011
CP 00 10 10 12

    **b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

    **c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

        **(1)** On or after the effective date of this Optional Coverage; and

        **(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

    **a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

    **b.** The amount of increase will be:

        **(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

        **(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

        **(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

If: The applicable Limit of Insurance is:    $ 100,000

The annual percentage increase is:    8%

The number of days since the beginning of the policy year (or last policy change) is:    146

The amount of increase is: $100,000 x .08 x 146 ÷ 365 =    $ 3,200

**3. Replacement Cost**

    **a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

    **b.** This Optional Coverage does not apply to:

        **(1)** Personal property of others;

        **(2)** Contents of a residence;

        **(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

        **(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

    **c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

    **d.** We will not pay on a replacement cost basis for any loss or damage:

        **(1)** Until the lost or damaged property is actually repaired or replaced; and

        **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

        **(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

        **(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

    **e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

        **(1)** The Limit of Insurance applicable to the lost or damaged property;

        **(2)** The cost to replace the lost or damaged property with other property:

            **(a)** Of comparable material and quality; and

            **(b)** Used for the same purpose; or

        **(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

f.  The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

4.  **Extension Of Replacement Cost To Personal Property Of Others**

a.  If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

b.  With respect to replacement cost on the personal property of others, the following limitation applies:

    If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

H.  **Definitions**

1.  "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2.  "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

3.  "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

    Copyright, Insurance Services Office, Inc., 2011    CP 00 10 10 12

COMMERCIAL PROPERTY
CP 00 30 10 12

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

Copyright, Insurance Services Office, Inc., 2011
INSURED

(2) Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation - Interruption Of Computer Operations**

a. Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

b. Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

c. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

d. This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

a. **Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

(1) Four consecutive weeks after the date of that action; or

(2) When your Civil Authority Coverage for Business Income ends;

whichever is later.

Copyright, Insurance Services Office, Inc., 2011

CP 00 30 10 12

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

(1) New buildings or structures, whether complete or under construction;

(2) Alterations or additions to existing buildings or structures; and

(3) Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

(a) Used in the construction, alterations or additions; or

(b) Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

(1) **Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

(b) Ends on the earlier of:

(i) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

(ii) 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(2) **"Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

(a) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

(b) Ends on the earlier of:

(i) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

(ii) 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

(1) Under this Additional Coverage, electronic data has the meaning described under Additional Limitation - Interruption Of Computer Operations.

 Copyright, Insurance Services Office, Inc., 2011

(2) Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation - Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

(3) With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

(a) If the Causes Of Loss - Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

(b) If the Causes Of Loss - Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

(c) If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

(d) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

(4) The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

(5) This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

6. **Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

a. You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

b. The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

c. Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(1) This policy expires;

Copyright, Insurance Services Office, Inc., 2011

(2) 30 days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

**B. Limits Of Insurance**

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

1. Alterations And New Buildings;

2. Civil Authority;

3. Extra Expense; or

4. Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

**C. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

a. You must see that the following are done in the event of loss:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

3. **Loss Determination**

   a. The amount of Business Income loss will be determined based on:

      (1) The Net Income of the business before the direct physical loss or damage occurred;

      (2) The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

      (3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

      (4) Other relevant sources of information, including:

         (a) Your financial records and accounting procedures;

         (b) Bills, invoices and other vouchers; and

         (c) Deeds, liens or contracts.

   b. The amount of Extra Expense will be determined based on:

      (1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

         (a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

         (b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

      (2) Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

   c. **Resumption Of Operations**

      We will reduce the amount of your:

      (1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

      (2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

   d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

4. **Loss Payment**

   We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

   a. We have reached agreement with you on the amount of loss; or

   b. An appraisal award has been made.

D. **Additional Condition**

   **COINSURANCE**

   If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

   We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

   1. The Coinsurance percentage shown for Business Income in the Declarations; times

   2. The sum of:

      a. The Net Income (Net Profit or Loss before income taxes), and

      b. Operating expenses, including payroll expenses,

      that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Copyright, Insurance Services Office, Inc., 2011
CP 00 30 10 12

Instead, we will determine the most we will pay using the following steps:

Step **(1)**:   Multiply the Net Income and operating expense for the 12 monts following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2)**:   Divide the Limit of Insurance for the described premises by the figure determined in Step **(1)**; and

Step **(3)**:   Multiply the total amount of loss by the figure determined in Step **(2)**.

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

    **(1)** Prepaid freight - outgoing;

    **(2)** Returns and allowances;

    **(3)** Discounts;

    **(4)** Bad debts;

    **(5)** Collection expenses;

    **(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

    **(7)** Cost of merchandise sold (including transportation charges);

    **(8)** Cost of other supplies consumed (including transportation charges);

    **(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

    **(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

    **(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

    **(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion - not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $ 400,000 |
|---|---|---|
| | The Coinsurance percentage is: | 50% |
| | The Limit of Insurance is: | $ 150,000 |
| | The amount of loss is: | $ 80,000 |

Step **(1)**: $400,000 x 50% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $150,000 ÷ $200,00 = .75

Step (3): $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $ 400,000 |
|---|---|---|
| | The Coinsurance percentage is: | 50% |
| | The Limit of Insurance is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

    If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

    **1. Maximum Period Of Indemnity**

        **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

 Copyright, Insurance Services Office, Inc., 2011

b. The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

(1) The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

(2) The Limit Of Insurance shown in the Declarations.

2. **Monthly Limit Of Indemnity**

a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b. The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

(1) The Limit of Insurance, multiplied by

(2) The fraction shown in the Declarations for this Optional Coverage.

**Example**

When:

| | |
|---|---|
| The Limit of Insurance is: | $ 120,000 |
| The fraction shown in the Declarations for this Optional Coverage is: | 1/4 |
| The most we will pay for loss in each period of 30 consecutve days is: | $  30,000 |

($120,000 x 1/4 = $30,000)

If, in this example, the actual amount of loss is:

| | |
|---|---|
| Days 1-30 | $  40,000 |
| Days 31-60: | $  20,000 |
| Days 61-90: | $  30,000 |
| | $  90,000 |

We will pay:

| | |
|---|---|
| Days 1-30: | $  30,000 |
| Days 31-60: | $  20,000 |
| Days 61-90: | $  30,000 |
| | $  80,000 |

3. **Business Income Agreed Value 2**

a. To activate this Optional Coverage:

(1) A Business Income Report/ Work Sheet must be submitted to us and must show financial data for your "operations":

(a) During the 12 months prior to the date of the Work Sheet; and

(b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

(2) The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

(a) The Coinsurance percentage shown in the Declarations; multiplied by

(b) The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

b. The Additional Condition, Coinsurance, is suspended until:

(1) 12 months after the effective date of this Optional Coverage; or

(2) The expiration date of this policy;

whichever occurs first.

c. We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

(1) Within 12 months of the effective date of this Optional Coverage; or

(2) When you request a change in your Business Income Limit of Insurance.

d. If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

(1) The Business Income Limit of Insurance; divided by

(2) The Agreed Value.

**Example**

When:

| | |
|---|---|
| The Limit of Insurane is: | $ 100,000 |
| The Agreed Value is: | $ 200,000 |
| The amount of loss is: | $  80,000 |

Step (1): $100,000 ÷ $200,000 = .50

Step (2): .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

4. **Extended Period Of Indemnity**

Under Paragraph **A.5.c.**, **Extended Business Income**, the number 60 Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

 Copyright, Insurance Services Office, Inc., 2011

F.  **Definitions**

1.  "Finished stock" means stock you have manufactured.

    "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

    "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2.  "Operations" means:

    a.  Your business activities occurring at the described premises; and

    b.  The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3.  "Period of restoration" means the period of time that:

    a.  Begins:

        (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

        (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

        caused by or resulting from any Covered Cause of Loss at the described premises; and

    b.  Ends on the earlier of:

        (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

        (2) The date when business is resumed at a new permanent location.

    "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

        (1) Regulates the construction, use or repair, or requires the tearing down, of any property; or

        (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

    The expiration date of this policy will not cut short the "period of restoration".

4.  "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5.  "Rental Value" means Business Income that consists of:

    a.  Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

    b.  Continuing normal operating expenses incurred in connection with that premises, including:

        (1) Payroll; and

        (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6.  "Suspension" means:

    a.  The slowdown or cessation of your business activities; or

    b.  That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

Copyright, Insurance Services Office, Inc., 2011

CP 00 90 07 88

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay your share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits Of Insurance of all insurance covering on the same basis.
2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.
2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.
2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:
   a. Someone insured by this insurance;
   b. A business firm:
      (1) Owned or controlled by you; or
      (2) That owns or controls you; or
   c. Your tenant.

This will not restrict your insurance.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

INSURED

COMMERCIAL PROPERTY
CP 01 40 07 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

  **1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

  **2.** Additional Coverage - Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

INSURED

# CAUSES OF LOSS - SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

**A. Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

**B. Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

   **a. Ordinance Or Law**

   The enforcement of or compliance with any ordinance or law:

   **(1)** Regulating the construction, use or repair of any property; or

   **(2)** Requiring the tearing down of any property, including the cost of removing its debris.

   This exclusion, Ordinance Or Law, applies whether the loss results from:

      **(a)** An ordinance or law that is enforced even if the property has not been damaged; or

      **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

   **b. Earth Movement**

   **(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

   **(2)** Landslide, including any earth sinking, rising or shifting related to such event;

   **(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

   **(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

   But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

   **(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

   Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

      **(a)** Airborne volcanic blast or airborne shock waves;

      **(b)** Ash, dust or particulate matter; or

      **(c)** Lava flow.

   With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

   Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

   This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

Copyright, Insurance Services Office, Inc., 2016
INSURED

c. **Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

d. **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

e. **Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

(1) Originates away from the described premises; or

(2) Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

f. **War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. **Water**

(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

(2) Mudslide or mudflow;

(3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings; or

(5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3) or (4), or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs (1) through (5), is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

    Copyright, Insurance Services Office, Inc., 2016    CP 10 30 09 17

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d. (1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

   **(1)** You do your best to maintain heat in the building or structure; or

   **(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

   **(1)** Applies whether or not an act occurs during your normal hours of operation;

   **(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

   **(1)** An abrupt falling down or caving in;

   **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

   **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.**, does not apply:

   **(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

   **(b)** To collapse caused by one or more of the following:

      **(i)** The "specified causes of loss";

      **(ii)** Breakage of building glass;

      **(iii)** Weight of rain that collects on a roof; or

      **(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, l., does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

   **(1)** Planning, zoning, development, surveying, siting;

   **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   **(3)** Materials used in repair, construction, renovation or remodeling; or

   **(4)** Maintenance;

Copyright, Insurance Services Office, Inc., 2016

of part or all of any property on or off the described premises.

4. **Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

a. **Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

(1) Any loss caused by or resulting from:

(a) Damage or destruction of "finished stock"; or

(b) The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

(2) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

(3) Any increase of loss caused by or resulting from:

(a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

(4) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

(5) Any other consequential loss.

b. **Leasehold Interest Coverage Form**

(1) Paragraph **B.1.a.**, Ordinance Or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

(a) Your cancelling the lease;

(b) The suspension, lapse or cancellation of any license; or

(c) Any other consequential loss.

c. **Legal Liability Coverage Form**

(1) The following exclusions do not apply to insurance under this Coverage Form:

(a) Paragraph **B.1.a.** Ordinance Or Law;

(b) Paragraph **B.1.c.** Governmental Action;

(c) Paragraph **B.1.d.** Nuclear Hazard;

(d) Paragraph **B.1.e.** Utility Services; and

(e) Paragraph **B.1.f.** War And Military Action.

(2) The following additional exclusions apply to insurance under this Coverage Form:

(a) **Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

(i) Your assumption of liability was executed prior to the accident; and

(ii) The building is Covered Property under this Coverage Form.

(b) **Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

    Copyright, Insurance Services Office, Inc., 2016

5. **Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

C. **Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

   (1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

   (2) Business Income Coverage or Extra Expense Coverage.

e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

g. Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

   (1) Dampness or dryness of atmosphere or of soil supporting the vegetation;

   (2) Changes in or extremes of temperature;

   (3) Disease;

   (4) Frost or hail; or

   (5) Rain, snow, ice or sleet.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Animals, and then only if they are killed or their destruction is made necessary.

   b. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      (1) Glass; or

      (2) Containers of property held for sale.

   c. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

   However, this limitation does not apply:

      (1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

Copyright, Insurance Services Office, Inc., 2016

**(2)** To Business Income Coverage or to Extra Expense Coverage.

3. The special limit shown for each category, **a.** through **d.**, is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

   **a.** $2,500 for furs, fur garments and garments trimmed with fur.

   **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   **c.** $2,500 for patterns, dies, molds and forms.

   **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

   These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

   This limitation, **C.3.**, does not apply to Business Income Coverage or to Extra Expense Coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

   **a.** Results in discharge of any substance from an automatic fire protection system; or

   **b.** Is directly caused by freezing.

   However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage - Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

1. For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

   **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

      **(1)** A cause of loss listed in **2.a.** or **2.b.**;

      **(2)** One or more of the "specified causes of loss";

      **(3)** Breakage of building glass;

      **(4)** Weight of people or personal property; or

      **(5)** Weight of rain that collects on a roof.

3. This **Additional Coverage - Collapse** does **not** apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

4. With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

b. Awnings, gutters and downspouts;

c. Yard fixtures;

d. Outdoor swimming pools;

e. Fences;

f. Piers, wharves and docks;

g. Beach or diving platforms or appurtenances;

h. Retaining walls, and

i. Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.**, we will pay for loss or damage to that property only if:

(1) Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

(2) The property is Covered Property under this Coverage Form.

5. If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

a. The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.**;

b. The personal property which collapses is inside a building; and

c. The property which collapses is not of a kind listed in **4.**, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

6. This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

7. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

8. The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

E. **Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

1. The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

a. A "specified cause of loss" other than fire or lightning; or

b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3. The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

Copyright, Insurance Services Office, Inc., 2016
CP 10 30 09 17

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

6. The following, **6.a.** or **6.b.**, applies only if Business Income and/ or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/ or Extra Expense Coverage Form:

   a. If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/ or Extra Expense is limited to the amount of loss and/ or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   b. If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/ or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

F. **Additional Coverage Extensions**

1. **Property In Transit**

   This Extension applies only to your personal property to which this form applies.

   a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   b. Loss or damage must be caused by or result from one of the following causes of loss:

      (1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

      (2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

      (3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

   c. The most we will pay for loss or damage under this Extension is $5,000.

   This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2. **Water Damage, Other Liquids, Powder Or Molten Material Damage**

   If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

Copyright, Insurance Services Office, Inc., 2016

3. **Glass**

   a. We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

   b. We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

   This Coverage Extension **F.3.** does not increase the Limit of Insurance.

G. **Definitions**

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

   a. Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

      (1) The cost of filling sinkholes; or

      (2) Sinking or collapse of land into man-made underground cavities.

   b. Falling objects does not include loss of damage to:

      (1) Personal property in the open; or

      (2) The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

   c. Water damage means:

      (1) Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

      (2) Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

   But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

   To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

Copyright, Insurance Services Office, Inc., 2016

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TOTAL OR CONSTRUCTIVE LOSS CLAUSE

It is understood and agreed that in the event of a total loss or constructive total loss under the policy, the entire policy premium shall be earned in full and no return premium shall be due the named insured.

_____ /

AUTHORIZED REPRESENTATIVE          DATE

FS-18 (11-86)

INSURED

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.**_____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WIND OR HAIL DEDUCTIBLE

This endorsement modifies insurance provided under the following:

**BUILDERS RISK COVERAGE FORM**
**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
**CONDOMINIUM ASSOCIATION COVERAGE FORM**

### Schedule

| Deductible |
|---|
| Flat Dollar $ _____ or<br>Percentage ___3___% , subject to $ _____2,500_____ minimum deductible |
| Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. |

With respect to loss or damage caused by or resulting from wind or hail, Item **D. Deductible** is deleted in its entirety and is replaced by the following:

**D. Deductible**

1. In any one occurrence of loss or damage to covered property by wind or hail (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

2. The Wind or Hail Deductible is calculated separately for, and applies separately to:

   a. Each building that sustains loss or damage.

   b. Personal property at each building, if there is loss or damage to that personal property, subject to **3.b.** below.

   c. Personal property in the open.

   d. Each separately scheduled item not described in items **a.-c.**

3. When a Flat Dollar deductible is shown, the following provisions apply in addition to paragraphs **1.** and **2.:**

   a. We will pay only that part of your loss over the deductible amount.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

INSURED

    **b.**  If there is damage to both a building and personal property in that building, one deductible will apply to the building and to the personal property in that building.

**4.**  When a Percentage deductible is shown, the following provisions apply in addition to paragraphs **1.** and **2.**:

    **a.**  We will calculate the deductible as follows:

        In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the percentage (as shown in the Schedule) of the Limit(s) of Insurance of covered property that has sustained loss or damage, subject to any minimum Deductible shown in the Schedule.

    **b.**  If there is damage to both a building and personal property in that building, separate deductibles apply to the building and to the personal property in that building.

---

AUTHORIZED REPRESENTATIVE            DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007



**SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO._____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES - FLORIDA

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

A. When this endorsement is attached to the Standard Property Policy **CP 00 99**, the term Coverage Part in this endorsement is replaced by the term Policy.

B. The following provision applies when a Coinsurance percentage is shown in the Declarations:

Florida law states as follows:

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the Insured.

C. The following is added:

If windstorm is a Covered Cause of Loss and loss or damage to Covered Property is caused by or results from windstorm, the following exclusion applies in:

1. Broward County;

2. Dade County;

3. Martin County;

4. Monroe County;

5. Palm Beach County; and

6. All the areas east of the west bank of the Intra-Coastal Waterway in the Counties of:

    a. Indian River; and

    b. St. Lucie.

**WINDSTORM EXTERIOR PAINT AND WATERPROOFING EXCLUSION**

We will not pay for loss or damage caused by windstorm to:

1. Paint; or

2. Waterproofing material;

applied to the exterior of Buildings unless the Building to which such loss or damage occurs also sustains other loss or damage by windstorm in the course of the same storm event. But such coverage applies only if windstorm is a Covered Cause of Loss.

When loss or damage to exterior paint or waterproofing material is excluded, we will not include the value of paint or waterproofing material to determine:

    a. The amount of the Windstorm or Hail Deductible; or

    b. The value of Covered Property when applying the Coinsurance Condition.

D. Sinkhole Collapse Coverage Removed

Sinkhole Collapse coverage is removed as indicated in Paragraphs **D.1.** through **D.4.** ; and coverage for Catastrophic Ground Cover Collapse is added instead as set forth in Paragraph **E.**

1. In the Causes of Loss - Basic Form and in the Standard Property Policy, Sinkhole Collapse is deleted from the Covered Causes of Loss and sinkhole collapse is no longer an exception to the Earth Movement exclusion.

2. In the Causes of Loss - Broad Form, Sinkhole Collapse is deleted from the Covered Causes of Loss and from the Additional Coverage - Collapse; and sinkhole collapse is no longer an exception to the Earth Movement exclusion.

3. In the Causes of Loss - Special Form, sinkhole collapse is deleted from the "specified causes of

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2009

INSURED

loss" and is no longer an exception to the Earth Movement exclusion.

4. In the Mortgageholders Errors And Omissions Coverage Form, sinkhole collapse is deleted from the Covered Causes of Loss under Coverage B and from the "specified causes of loss, and is no longer an exception to the Earth Movement exclusion.

Further, this Coverage Part does not insure against Sinkhole Loss as defined in Florida law unless an endorsement for Sinkhole Loss is made part of this policy. However, if Sinkhole Loss causes Catastrophic Ground Cover Collapse, coverage is provided for the resulting Catastrophic Ground Cover Collapse even if an endorsement for Sinkhole Loss is not made part of this policy.

E. The following is added to this Coverage Part as a Covered Cause Of Loss. In the Causes Of Loss - Special Form and Mortgageholders Errors And Omissions Coverage Form, the following is also added as a "specified cause of loss." However, as a "specified cause of loss, the following does not apply to the Additional Coverage - Collapse.

**CATASTROPHIC GROUND COVER COLLAPSE**

We will pay for direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

1. The abrupt collapse of the ground cover;

2. A depression in the ground cover clearly visible to the naked eye;

3. Structural damage to the building, including the foundation; and

4. The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, structural damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

The Earth Movement exclusion and the Collapse exclusion do not apply to coverage for Catastrophic Ground Cover Collapse.

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earthquake (if either or both of those causes of loss are covered under this Coverage Part), only one Limit of Insurance will apply to such loss or damage.

F. The following applies to the **Additional Coverage - Civil Authority** under the Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form and Extra Expense Coverage Form:

1. The Additional Coverage - Civil Authority includes a requirement that the described premises are not more than one mile from the damaged property. With respect to described premises located in Florida, such one-mile radius does not apply.

2. The Additional Coverage - Civil Authority is limited to a coverage period of up to four weeks. With respect to described premises located in Florida, such four week period is replaced by a three-week period.

3. Civil Authority coverage is subject to all other provisions of that Additional Coverage.

G. In the event where more than one peril causes damage to covered property and the damage cannot be separated by the cause(s) of loss, we will:

Deduct the amount paid by the other carriers from the amount payable under our policy subject to the policy terms and conditions if a cause of the loss is covered under our policy;

If the cause of loss under our policy is also covered under another policy payment will be prorated among all companies providing coverage for the covered cause(s) of loss; and,

In no event can payments made by all carriers total more than the full replacement cost of the insured building. Payment will be subject to the policy terms and conditions of the policy of the covered property regardless of the number of covered perils or policies covering the property, even if the insured property is totally destroyed by combined perils.

---

_____   /
AUTHORIZED REPRESENTATIVE              DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2009

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SEWER OR DRAIN DEFINITION ENDORSEMENT - FLORIDA

This insurance modifies insurance provided under the following:

**CAUSES OF LOSS - BASIC FORM**
**CAUSES OF LOSS - BROAD FORM**
**CAUSES OF LOSS - SPECIAL FORM**

Under Section **B. Exclusions,** paragraph **g. Water,** subsection **(3)** the following is added:

For the purpose of this exclusion, "sewer" and "drain" are defined as:

1.  "Sewer" means any underground pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations;

2.  "Drain" means any pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations to a "sewer."

_____ / _____
AUTHORIZED REPRESENTATIVE                                              DATE

INSURED

POLICY NUMBER:  CPS3064779

IL 04 01 02 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

### SCHEDULE

| Premises Number | Building Number |
|---|---|
| 1 | 1 |
| | |
| | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

With respect to the location(s) indicated in the Schedule, the following provisions apply:

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99**, the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** When this endorsement is attached to the Farm Livestock Coverage Form, reference to loss (other than in the term Sinkhole Loss itself) means "loss" as defined in that coverage form.

**C.** The following is added to this Coverage Part as a Covered Cause of Loss. In the forms which address "specified causes of loss", the following is also added as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss**, meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation, provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property

Copyright, Insurance Services Office, Inc., 2012
INSURED

i104010212.fmp

You must enter into a contract for the performance of building stabilization and/ or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your Sinkhole Loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

The stabilization and all other repairs to the Covered Property must be completed within 12 months after entering into the contract for the performance of these repairs, unless:

1.  There is a mutual agreement between you and us;

2.  The claim is involved with the neutral evaluation process;

3.  The claim is in litigation; or

4.  The claim is under appraisal or mediation.

D.  Sinkhole Loss does not include:

1.  Sinking or collapse of land into man-made underground cavities; or

2.  Earthquake.

E.  With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

F.  With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential or farm residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy, except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

G.  Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this Coverage Part) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

Copyright, Insurance Services Office, Inc., 2012

H. The following provision is added to the **Duties In The Event Of Loss Or Damage** Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

I. The following definitions are added with respect to the coverage provided under this endorsement:

1. "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

   a. Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

   b. Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" and that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

   c. Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

   d. Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

   e. Damage occurrring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

2. "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

3. "Primary structural system" means an assemblage of "primary structural members".

J. If we deny your claim for Sinkhole Loss without performing testing under section 627.702, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

K. You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

L. If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

M. As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

Copyright, Insurance Services Office, Inc., 2012

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO._____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CANCELLATION AND NONRENEWAL - FLORIDA

The Cancellation Condition is deleted in its entirety and replaced by the following:

A.  Cancellation

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2.  If this policy has been in effect for ninety (90) days or less and is not a renewal of a policy we issued, we may cancel by mailing or delivering written notice of cancellation, including the specific reasons for cancellation, to the first Named Insured at least:

    a.  Ten (10) days before the effective date of cancellation, if we cancel for nonpayment of any premium when due; or

    b.  Twenty (20) days before the effective date of cancellation, if we cancel for any other reason, except, we may cancel immediately if there has been:

        (1) A material misstatement or misrepresentation; or

        (2) A failure to comply with underwriting requirements established by us.

3.  If this policy has been in effect for more than ninety (90) days or is a renewal or continuation of a policy we issued, we may cancel by mailing or deliver-

ing written notice of cancellation, including the specific reasons for cancellation, to the first Named Insured at least:

    a.  Ten (10) days before the effective date of cancellation, if we cancel for nonpayment of any premium when due; or

    b.  Forty-five (45) days before the effective date of cancellation, if we cancel for any other reason.

4.  We will mail or deliver our notice to the first Named Insureds last mailing address known to us.

5.  Notice of cancellation by us will state the effective date of the cancellation. The policy period will end on that date.

6.  If we fail to mail or deliver our written notice of cancellation to the first Named Insured at least forty-five (45) days or twenty (20) days as required in A.2.b. and A.3.b. above, the coverage will remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the first Named Insured, whichever occurs first. The premium for the coverage shall remain the same during any such extension period.

7.  If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first

UTS-29-FL (6-97)                    INSURED

Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

8. If notice is mailed, proof of mailing will be sufficient proof of notice.

The following Condition is added to the policy and supersedes any other provision to the contrary:

B. Nonrenewal

1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, including the specific reasons for nonrenewal, to the first Named Insured at least forty-five (45) days prior to the expiration of the policy.

2. If notice is mailed, we will mail it to the last mailing address known to us of the first Named Insured. Proof of mailing will be sufficient proof of notice.

3. If we fail to mail or deliver written notice of nonrenewal to the first Named Insured at least forty-five (45) days prior to the effective date of nonrenewal, the coverage will remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the first Named Insured, whichever occurs first. The premium for the coverage shall remain the same during any such extension period.

_____ / _____

AUTHORIZED REPRESENTATIVE                    DATE



**Scottsdale Insurance Company**
**National Casualty Company**
**Scottsdale Indemnity Company**
**Scottsdale Surplus Lines Insurance Company**

## CLAIM REPORTING INFORMATION

Your insurance policy has been placed with a Nationwide® insurance company.

Our commitment to you is to provide fast, fair claim service. Promptly reporting an event that could lead to a claim, as required by your policy, helps us fulfill this commitment to you. Please refer to your policy for this and all other terms and conditions.

To report a claim, you may contact us 24 hours a day, 7 days a week, by calling 1-800-423-7675 or via our website at www.nationwideexcessandsurplus.com.

Thank you for your business and as always, we appreciate the opportunity to serve you.

| HOW TO REPORT A CLAIM |
|---|
| Call **1-800-423-7675** or visit our website at www.nationwideexcessandsurplus.com.<br>In order to expedite this process, please be prepared to furnish as much of the following information as possible:<br>■  Your policy number<br>■  Date, time and location of the loss/ accident<br>■  Details of the loss/ accident<br>■  Name, address and phone number of any involved parties<br>■  If applicable, name of law enforcement agency or fire department along with the incident number<br>**Please refer to your policy for specific claim reporting requirements.** |

**SCOTTSDALE INSURANCE COMPANY**®

Scottsdale Indemnity Company

**SCOTTSDALE**
SURPLUS LINES INSURANCE COMPANY

## POLICYHOLDER DISCLOSURE

### NOTICE OF TERRORISM INSURANCE COVERAGE

**TERRORISM RISK INSURANCE ACT**

Under the Terrorism Risk Insurance Act of 2002, as amended pursuant to the Terrorism Risk Insurance Program Reauthorization Act of 2015, effective January 1, 2015 (the "Act"), you have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act: The term "certified acts of terrorism" means any act that is certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security,  and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that where coverage is provided by this policy for losses resulting from "certified acts of terrorism," such losses may be partially reimbursed by the United States Government under a formula established by federal law. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government agrees to reimburse eighty-five percent (85%) of covered terrorism losses in calendar year 2015 that exceed the statutorily established deductible paid by the insurance company providing the coverage. This percentage of United States Government reimbursement decreases by one percent (1%) every calendar year beginning in 2016 until it equals eighty percent (80%) in 2020. The premium charged for this coverage is provided below and does not include any charges for the portion of loss that may be covered by the Federal Government under the Act.

You should also know that the Act, as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from "certified acts of terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

**CONDITIONAL TERRORISM COVERAGE**

The federal Terrorism Risk Insurance Program Reauthorization Act of 2015 is scheduled to terminate at the end of December 31, 2020, unless renewed, extended or otherwise continued by the federal government. Should you select Terrorism Coverage provided under the Act and the Act is terminated December 31, 2020, any terrorism coverage as defined by the Act provided in the policy will also terminate.

**IN ACCORDANCE WITH THE ACT, YOU MUST CHOOSE TO SELECT OR REJECT COVERAGE FOR "CERTIFIED ACTS OF TERRORISM" BELOW:**

**The Note below applies for risks in these states:** California, Connecticut, Georgia, Hawaii, Illinois, Iowa, Maine, Missouri, New Jersey, New York, North Carolina, Oregon, Rhode Island, Virginia, Washington, West Virginia, Wisconsin.

**NOTE**: In these states, a terrorism exclusion makes an exception for (and thereby provides coverage for) fire losses resulting from an act of terrorism. Therefore, if you reject the offer of terrorism coverage, that rejection does not apply to fire losses resulting from an act of terrorism coverage for such fire losses will be provided in your policy.

**If you do not respond to our offer and do not return this notice to the Company, you will have no Terrorism Coverage under this policy.**

|  | I hereby elect to purchase certified terrorism coverage for a premium of $_____. I understand that the federal Terrorism Risk Insurance Program Reauthorization Act of 2015 may terminate on December 31, 2020. Should that occur my coverage for terrorism as defined by the Act will also terminate. |
|---|---|
| X | I hereby reject the purchase of certified terrorism coverage. |

_____       M&M SISTERS LLC; BERTHA MENENDEZ
Policyholder/ Applicant's Signature          Named Insured/ Firm

_____       CPS3064779
Print Name                                  Policy Number, if available

_____
Date



# FLORIDA POLICYHOLDER NOTICE

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**



# EXHIBIT "B"

## Notice of Service of Process

<div style="text-align: right">

**null / ALL**
**Transmittal Number: 20676548**
**Date Processed: 11/12/2019**

</div>

| | |
|---|---|
| **Primary Contact:** | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215 |
| **Electronic copy provided to:** | Ashley Roberts |
| **Entity:** | Scottsdale Insurance Company<br>Entity ID Number  3286058 |
| **Entity Served:** | Scottsdale Insurance Company |
| **Title of Action:** | A1A Restoration, Inc. (a/a/o M & M Sisters, Inc.) vs. Scottsdale Insurance Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Miami-Dade County Circuit Court, FL |
| **Case/Reference No:** | 2019-030861-CA-01 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 11/12/2019 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | FL Chief of Financial Services on 11/07/2019 |
| **How Served:** | Electronic SOP |
| Sender Information: | Weisser Elazar & Kantor, PLLC<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  |  sop@cscglobal.com

*19-000296499*

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

---

A1A RESTORATION, INC. (A/A/O M & M
SISTERS, INC.)

PLAINTIFF(S)

VS.

SCOTTSDALE INSURANCE COMPANY

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT, DISCOVERY

**CASE #:**     2019-030861-CA-01
**COURT:**      **CIRCUIT COURT**
**COUNTY:**     **MIAMI-DADE**
**DFS-SOP #:** 19-000296499

# NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Thursday, November 7, 2019 and a copy was forwarded by ELECTRONIC DELIVERY on Tuesday, November 12, 2019 to the designated agent for the named entity as shown below.

      SCOTTSDALE INSURANCE COMPANY
      LYNETTE COLEMAN
      1201 HAYS STREET
      TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080**

Jimmy Patronis
Chief Financial Officer

KEVIN WEISSER
520 NW 165TH STREET, SUITE 111
MIAMI, FL 33169

JJ1

RECEIVED AS STATUTORY REGISTERED AGENT
on 07 November, 2019 and served on defendant or named party on 12 November, 2019
by the Florida Department of Financial Services

## IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

A1A RESTORATION, INC.
(A/A/O M & M SISTERS, INC.),

CASE NO: 2019-030861-CA-01

     Plaintiff,

v.

SCOTTSDALE INSURANCE COMPANY,

     Defendant.

_____/

## AMENDED SUMMONS

TO: CHIEF FINANCIAL OFFICER

     YOU ARE COMMANDED to serve this **Summons and a copy of the Complaint, Plaintiff's First Set of Interrogatories to Defendant, Plaintiff's First Request for Production to Defendant and Notice of Taking Deposition Duces Tecum**, in this action on Defendant:

**SCOTTSDALE INSURANCE COMPANY**
c/o Chief Financial Officer, as Registered Agent
Department of Financial Services
200 E. Gaines Street
Tallahassee, FL 32399

     Each Defendant is required to serve written defenses to the complaint or petition on **KEVIN WEISSER, ESQ.**, Plaintiff's attorney, whose address is: WEISSER ELAZAR & KANTOR, PLLC., 800 E. Broward Blvd., Suite 510, Fort Lauderdale, FL 33301 (Tel: 954-486-2623) within (20) days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of Court of MIAMI-DADE County Court, either before service on Plaintiffs' attorney or immediately thereafter. If Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the complaint or petition.

     DATED this     11/5/2019         

CLERK OF COURT

BY: _____
     As Deputy Clerk

**IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

A1A RESTORATION, INC.
(A/A/O M & M SISTERS, INC.),

                                                    CASE NO:

        Plaintiff,

v.

SCOTTSDALE INSURANCE COMPANY,

        Defendant.

_____/

## COMPLAINT

COMES NOW, the Plaintiff, A1A RESTORATION, INC. (A/A/O M & M SISTERS, INC.), ("A1A"), by and through the undersigned counsel and pursuant Florida Rules of Civil Procedure, hereby files this Complaint against the Defendant, SCOTTSDALE INSURANCE COMPANY ("SCOTTSDALE"), and as grounds therefore states as follows:

    1.     That this is an action for damages in excess of FIFTEEN THOUSAND DOLLARS ($15,000.00), exclusive of interest, attorney fees and costs, and is otherwise within the jurisdictional limits of this Court.

    2.     That at all times material hereto the Defendant was an insurance company authorized to do business in the State of Florida and doing business in Miami-Dade County, Florida.

    3.     That at all times material hereto the Plaintiff was and is authorized to do business in the State of Florida and doing business in Miami-Dade County, and is otherwise *sui juris.*

    4.     Jurisdiction and venue are proper in Miami-Dade County, Florida.

<u>COUNT I</u>
<u>BREACH OF CONTRACT AS ASSIGNEE OF M & M SISTERS, INC.</u>

Plaintiff readopts and realleges Paragraphs 1 through 4 above as if fully stated herein, and further alleges as follows:

5.      Plaintiff brings this action based upon an after-loss assignment of insurance proceeds by M & M SISTERS, INC. ("M & M").

6.      That at all times material hereto, M & M and Defendant had a policy of insurance, Policy No. CPS3064779, on the residence located at 1111 Nw 43rd Ave., Miami, FL 33126, which afforded various types of coverages including coverage for damage to dwelling, other structures, personal property, and for loss of use. Plaintiff is not in possession of a true and correct copy of the policy, but believes one to be in possession of Defendant.

7.      On or about May 18, 2019, the above described property was damaged, and the subject insurance policy was in full force and effect at all times material hereto. Defendant was given timely notice of the loss. Accordingly, Defendant assigned Claim Number 01892450.

8.      M & M is entitled to insurance benefits for the damage under the above-referenced policy.

9.      On or about May 18, 2019, M & M retained A1A to perform services and/or repairs at the aforementioned property.

10.     Plaintiff provided necessary services for M & M, and in exchange, M & M authorized direct payment and assigned his/her property insurance rights, benefits, and proceeds to the Plaintiff, A1A, as consideration for the repairs made by the Plaintiff. A copy of Assignment of Insurance Benefits is attached hereto as **Exhibit "A"**.

11.     Plaintiff has complied with all conditions precedent and statutory requirements.

2

12.    In accordance with the aforementioned Assignment of Insurance Benefits, Plaintiff timely billed Defendant for services rendered at the above-mentioned property in relation to the subject roof and interior water damage which would be covered under the aforesaid insurance policy with Defendant.

13.    Defendant has failed and/or refused to make full payment.

14.    That Defendant's refusal to pay the full amount of the services rendered by the Plaintiff was contrary to the terms of the policy and/or Florida law and was a breach of said contract of insurance.

15.    The Plaintiff has been damaged by the Defendant's breach of said contract of insurance by not having been compensated for the services rendered to the insured property.

16.    That as a direct and proximate result of the Defendant's refusal to pay the Plaintiff for services rendered, the Plaintiff has been required to retain the services of the undersigned attorneys to represent and protect the Plaintiff's interests and Plaintiff has become obliged to pay them a reasonable fee for their services in bringing this action.

17.    In the event that the Plaintiff prevails in this action, Plaintiff is entitled to an award of attorney fees and costs pursuant to Florida Statute Section 627.428, 626.9373, and/or any other Florida law.

**WHEREFORE**, the Plaintiff, A1A RESTORATION, INC. (A/A/O M & M SISTERS, INC.), a Florida Corporation, demands judgment against the Defendant, SCOTTSDALE INSURANCE COMPANY, for damages including, but not limited to, payment of Plaintiff's invoice/bill, interest allowed by law, reasonable attorney fees and costs pursuant to Florida Statute Section 627.428, 626.9373, and/or any other Florida law, and any other relief this Court deems just and proper.

3

## DEMAND FOR JURY TRIAL

The Plaintiffs further demands a trial by jury of all issues so triable as a matter of right.

Dated this 17th day of October, 2019.

By:    /s/ Kevin Weisser
KEVIN WEISSER
Florida Bar No: 98828
WEISSER ELAZAR & KANTOR, PLLC
Attorneys for Plaintiff
800 East Broward Boulevard, Suite 510
Fort Lauderdale, FL 33301
T: (954) 486-2623
F: (954) 572-8695
Email: KW@WEKLaw.com
      PB@WEKLaw.com

# EXHIBIT A



**A1A Restoration, Inc**
6171 NW 72nd Ave
MIAMI, FL 33166
Office: 305.794.1378
a1arestorations@gmail.com

Client(s) M & M Sisters INC          Date: 5-18-19

Address: 1111 NW 43 Ave          Phone#: 305-534-0224

City: Miami          State:          Zip: 33126          Tech: Anthony Gonzalez

Insurance Co.: Nation Wide          Policy#: 953064779          Claim#: 01892450

Description of Loss: Roof leak water through out areas

### WORK ORDER AGREEMENT TO PERFORM SERVICES, ASSIGNMENT OF INSURANCE BENEFITS, AND DIRECTION TO COMMUNICATE WITH AND PAY A1A RESTORATIONS, INC. DIRECTLY

I, the Owner/Agent for the job site listed above, authorize, A1A Restorations, Inc. ("A1A") to enter my property, furnish materials, supply all equipment and perform all labor necessary to preserve and protect my property from further damage. The purpose of these services includes but is not limited to mitigation of damage to the property, mold testing, mold remediation, A/C and duct cleaning, all services for real property, personal property, contents, protection of the health, safety and well-being of residents, as well as aesthetic and general cleanliness purposes. I do hereby authorize and agree to pay A1A to perform the following services at the above-referenced property address.

WATER MITIGATION ___✕___          MOLD REMEDIATION _____          TARP _____

### ASSIGNMENT OF INSURANCE BENEFITS

I hereby assign to A1A, any and all insurance rights, benefits, and proceeds due to me under any applicable insurance policy covering my property in exchange for the services and materials provided by A1A for the work and/or services rendered at the property. This assignment of rights, benefits and proceeds is limited to the amount of A1A's invoice for services rendered in relation to the above claim and the right and ability to collect same directly from my insurer, including the right to file suit and to seek attorney's fees and court costs. Any and all other insurance rights, benefits, and proceeds shall continue to belong to the Client.

### DIRECT PAYMENT AUTHORIZATION

I also hereby authorize and unequivocally instruct direct payment of any benefits or proceeds to Company. I also authorize Company be given irrevocable power-of-attorney and my express permission to endorse my name on any and all checks received from an insurance company on my behalf for services provided by Company. I agree that any portion of work, deductibles, betterment, depreciation, or additional work requested by the undersigned, not covered by insurance, must be paid by the undersigned on or before its completion. I also hereby authorize and unequivocally instruct direct payment or any benefits or proceeds to A1A.

6



**A1A Restoration, Inc.**
6171 NW 72nd Ave
MIAMI, FL 33166
Office: 305.794.1378
a1arestorations@gmail.com

### PAYMENT TERMS

I understand and agree that if payment is made directly to insured, it shall be endorsed over to A1A within 3 business days. If the insureds decide to terminate A1A for any reason and not allow them to perform work under Contract amount, then Insured will pay company a 20% fee of entire Water Mitigation, Mold Remediation, and Reconstruction Contract amount. Payment terms to Company are net-30 days. Late charges of 1.5% monthly are charged to any and all unpaid balances. Company shall be entitled to reimbursement for costs of collection (including reasonable attorney's fees and costs) of unpaid amounts by Owner/Agent and for reasonable attorney's fees and costs for the breach, or enforcement, of any terms of this entire service agreement.

### AUTHORIZED ANTIMICROBIAL AGENTS

I understand that in the best judgment of A1A, materials may be treated with a commercial antimicrobial agent to inhibit the growth of micro-organisms during the drying process. I have received advanced notice of the use of antimicrobial and/or antimicrobial product as part of the restoration process. I understand it is beyond the expertise of A1A to determine if someone is sensitive to its application and will hold A1A harmless for its use.

This assignment applies to all coverage sections of any applicable insurance policy of assignor. If assignor's insurance carrier pays only a portion of the amount invoiced by A1A, the insurance carrier shall continue to include A1A on all other benefits checks issued under any and all policy coverages unless and until the insurance carrier is notified in writing by A1A that its entire invoice has been satisfied.

Client Initials X _BM_      Client Initials _GAD_

I further convey power of attorney to A1A to negotiate settlement of A1A's invoice with my insurance carrier directly, and to endorse in my name and negotiate any check issued by my insurance carrier in relation to the subject claim. I authorize A1A to access and dismiss my account for the duration of my insurance claim.

I understand that my insurance policy may contain an arbitrary cap on services which require additional approval. Should such a cap be contained in my policy, this document hereby operates as a direct request to my insurance company for approval to exceed such cap upon submission of this document.

I direct my insurance carrier to release any and all information requested by A1A its representatives or its lawyers. In this regard, I voluntarily and knowingly waive my privacy rights.

I agree and understand that the A1A's invoice is only for the work and/or services provided to the property up to the invoice date. I agree and understand that if A1A is needed back at the property to perform any additional work and/or services, there will be a supplemental invoice which will be submitted to my insurance company for payment.

I agree and understand that the amount due to A1A for the services rendered to my property is the amount that A1A invoices for said services, even if my insurance carrier does not cover or approve the full amount invoiced. I understand that I am responsible to pay A1A's full invoice(s) even if I do not have insurance, my claim is denied in whole or in part for any reason, or my mortgage company refuses to release the insurance proceeds.

I agree the liability of A1A is expressly limited to the total value of the services authorized and provided herein and, in no event, shall A1A or its employees, officers, affiliates, and successors, be liable for replacement cost of any property, nor shall it be responsible for any damages related to loss of use of property, premises or equipment or any other consequential

7



**A1A Restoration, Inc.**
6171 NW 72nd Ave
MIAMI, FL 33166
Office: 305.794.1378
a1arestorations@gmail.com

damages. I further agree no action or claim can be brought against A1A which seeks damages of any type which exceed the total amount of A1A's invoice(s).

If A1A is not allowed to perform its recommended procedures and/or its equipment is turned off or removed prematurely, I hereby release and agree to defend, indemnify, and hold A1A, its employees, officers, agents, and successors harmless from any liability against all claims and actions for errors or omissions made in relation to this agreement.

Any dispute of any nature arising out of, relating to, or under this agreement shall only be brought in a court of competent jurisdiction in Broward County, Florida. A1A shall be entitled to reimbursement for any and all costs of collection and for reasonable attorney's fees and costs for enforcement of any term of this agreement at all trial and appellate court levels. A1A shall also be entitled to attorney fees and costs incurred proving the amount of attorney fees and/or costs owed to A1A under this agreement after the court has determined A1A is entitled to recover attorney fees and/or costs.

**ACCORDING TO FLORIDA'S CONSTRUCTION LIEN LAW (SECTIONS 713.001-713.37, FLORIDA STATUTES), THOSE WHO WORK ON YOUR PROPERTY OR PROVIDE MATERIALS AND SERVICES AND ARE NOT PAID IN FULL HAVE A RIGHT TO ENFORCE THEIR CLAIM FOR PAYMENT AGAINST YOUR PROPERTY. THIS CLAIM IS KNOWN AS A CONSTRUCTION LIEN. IF YOUR CONTRACTOR OR A SUBCONTRACTOR FAILS TO PAY SUBCONTRACTORS, SUB- SUBCONTRACTORS, OR MATERIAL SUPPLIERS, THOSE PEOPLE WHO ARE OWED MONEY MAY LOOK TO YOUR PROPERTY FOR PAYMENT, EVEN IF YOU HAVE ALREADY PAID YOUR CONTRACTOR IN FULL. IF YOU FAIL TO PAY YOUR CONTRACTOR, YOUR CONTRACTOR MAY ALSO HAVE A LIEN ON YOUR PROPERTY. THIS MEANS IF A LIEN IS FILED YOUR PROPERTY COULD BE SOLD AGAINST YOUR WILL TO PAY FOR LABOR, MATERIALS, OR OTHER SERVICES THAT YOUR CONTRACTOR OR A SUBCONTRACTOR MAY HAVE FAILED TO PAY. TO PROTECT YOURSELF, YOU SHOULD STIPULATE IN THIS CONTRACT THAT BEFORE ANY PAYMENT IS MADE, YOUR CONTRACTOR IS REQUIRED TO PROVIDE YOU WITH A WRITTEN RELEASE OF LIEN FROM ANY PERSON OR COMPANY THAT HAS PROVIDED TO YOU A "NOTICE TO OWNER." FLORIDA'S CONSTRUCTION LIEN LAW IS COMPLEX, AND IT IS RECOMMENDED THAT YOU CONSULT AN ATTORNEY.**

I have read and understand this contract. I AFFIRM THAT I AM THE OWNER OF THE ABOVE-REFERENCED PROPERTY AND AN INSURED ON THE INSURANCE POLICY COVERING SAID PROPERTY OR HAVE THE NAMED INSURED'S EXPRESS AUTHORIZATION AND PERMISSION TO ENTER INTO THIS CONTRACT. This contract is intended to be legally binding upon the owner of the property, insured(s) under the applicable insurance contract, and the signer below, collectively and individually. This Agreement contains all of the terms between the parties and is the full agreement between the parties and no oral agreements exist. In the event any term of this contract is determined to be unenforceable, that term shall be stricken and the remaining terms of this agreement shall remain in full force and effect.

Print Name(s) BERTHA MENENDEZ    Signature X _Bertha Menendez_ Date 5-18-19

Print Name(s) MARIA C. MENENDEZ    Signature _[signature]_ Date 5-18-19

Acknowledgment:
A1A Restorations, Inc. _[signature]_    Date 5-18-19

8

IN THE COUNTY COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

Case No. 2019-030409-CA-01

M&M SISTERS, LLC BERTHA
MENENDEZ GARCIA & MARIA
MENDEZ

  Plaintiff,

vs.

SCOTTSDALE INSURANCE
COMPANY,

  Defendant.

_____/

## NOTICE OF APPEARANCE

PLEASE TAKE NOTICE that Erin R. Kreiser, Esquire, from The Rock Law Group, P.A., is appearing as counsel for Defendant, SCOTTSDALE INSURANCE COMPANY, in the above-styled cause of action.  As such, please forward copies of all future pleadings, correspondence, etc. to Erin R. Kreiser, Esquire.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic mail on the 6th day of December 2019 to: Michael P. Patrick, Esquire, Strems Law Firm, pleadings@stremslaw.com; Team9@stremslaw.com.

/s/ Erin R. Kreiser
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Erin R. Kreiser, Esquire
Florida Bar No. 108062
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966

Email: pleadings@rocklawpa.com; and
ekreiser@rocklawpa.com
lherbert@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

ERK/rdd

IN THE COUNTY COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

Case No. 2019-030409-CA-01

M&M SISTERS, LLC BERTHA
MENENDEZ GARCIA & MARIA
MENDEZ

    Plaintiff,

vs.

SCOTTSDALE           INSURANCE
COMPANY,

    Defendant.

_____/

## DEFENDANT'S NOTICE OF
## DESIGNATION OF E-MAIL ADDRESSES

    Defendant, SCOTTSDALE INSURANCE COMPANY, by and through the
undersigned counsel, and pursuant to Rule 2.516, *Florida Rules of Judicial
Administration*, hereby files this Notice of Designation of Email Addresses for service by
electronic mail in this action.

    Primary E-Mail Address:        pleadings@rocklawpa.com

    Secondary E-Mail Address:      ekreiser@rocklawpa.com

    Tertiary E-Mail Address:       dnelson@rocklawpa.com

Service to any other e-mail address(es) will not be considered proper service pursuant to
the above-referenced rule.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been
furnished via electronic mail on the 6th day of December 2019 to: Michael P. Patrick,

Esquire, Strems Law Firm, pleadings@stremslaw.com; Team9@stremslaw.com.

/s/ Erin R. Kreiser
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Erin R. Kreiser, Esquire
Florida Bar No. 108062
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
ekreiser@rocklawpa.com
lherbert@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

ERK/rdd

IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

Case No. 2019-030409-CA-01

M & M SISTERS, LLC., BERTHA MENENDEZ GARCIA & MARIA MENDEZ.,

  Plaintiff,

vs.

SCOTTSDALE INSURANCE COMPANY,

  Defendant.

_____/

IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

Case No. 2019-030861-CA-01

A1A RESTORATION, INC. (A/A/O M & M SISTERS, INC.),

  Plaintiff,

vs.

SCOTTSDALE INSURANCE COMPANY,

  Defendant.

_____/

## NOTICE OF HEARING

PLEASE TAKE NOTICE that on March 30, 2020 at 11:00 a.m., or as soon thereafter as counsel can be heard, the undersigned will call up for hearing before the Honorable Barbara Areces, one of the judges in the above-styled Court, in chambers at the Miami-Dade County

1

Courthouse, located at 73 W Flagler Street, Room DCC243, Miami FL 33130, the following matter(s):

    1.    Defendant's Motion to Consolidate Related Cases, filed on December 5, 2019

Hearing time allotted is thirty (30) minutes.

PLEASE GOVERN YOURSELF ACCORDINGLY.

**f you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic mail on the 7th day of January, 2020 to: Cody S. Pflueger, Esquire, Weisser, Elazar & Kantor, PLLC, rp@weklaw.com and cp@weklaw.com and Michael P. Patrick, Esquire, Strems Law Firm, pleadings@stremslaw.com; Team9@stremslaw.com.

                                    */s/Erin R. Kreiser*
                                      Andrew P. Rock, Esquire
    Florida Bar No. 0656437
    Erin R. Kreiser, Esquire
    Florida Bar No. 108062
    The Rock Law Group, P.A.
    1760 Fennell Street
    Maitland, FL 32751
    Telephone: (407) 647-9881
    Telecopier: (407) 647-9966
    Email: pleadings@rocklawpa.com; and
    ekreiser@rocklawpa.com
    lherbert@rocklawpa.com
    Attorneys for Defendant, Scottsdale
ERK/lh                          Insurance Company

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CIRCUIT CIVIL DIVISION**

**CASE NO.:**

**SECTION:**

**Plaintiff(s),**

**vs.**

**Defendant(s)**
_____/

<u>**NOTICE OF SPECIAL SET HEARING**</u>

     **YOU ARE HEREBY NOTIFIED** that, a Special Set hearing on the above cause is scheduled for _____ on _____ in Room _____ at the Miami-Dade County Courthouse, 73 West Flagler Street, Miami Florida 33130.

<u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the above notice was delivered to the parties below on _____.

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

Copies Furnished to:

## IN THE COUNTY COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI COUNTY, FLORIDA

M & M SISTERS, LLC, BERTHA
MENENDEZ GARCIA & MARIA
MENDEZ,

        Plaintiffs,                                  **CASE NO.: 2019-030409-CA-01**

vs.

SCOTTSDALE INSURANCE COMPANY,

        Defendant.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION TO CONSOLIDATE RELATED CASES

Plaintiffs, M & M SISTERS, LLC, BERTHA MENENDEZ GARCIA & MARIA

MENDEZ, (Hereinafter "Plaintiffs"), by and through undersigned counsel, files their Response in

Opposition to Defendant, SCOTTSDALE INSURANCE COMPANY'S, (Hereinafter

"Defendant") Motion to Consolidate Related Cases, and as grounds in support thereof states as

follows:

### STATEMENT OF FACTS

1.     Plaintiff is a property owner and was insured under a policy of insurance by the

Defendant, bearing policy number CPS3064779. ("Subject Policy"). The Subject Policy provided

coverage for the insured property located at 1111 NW 43rd Avenue, Miami, Florida 33126.

("Subject Property").

2.     On or about, May 6, 2019, Plaintiffs suffered a loss within the Subject Property as

a result of water damage ("Subject Loss").

3.     Plaintiffs contacted A1A Restoration, Inc. to perform water mitigation services at

the Subject Property as a result of the Subject Loss. A1A Restoration, Inc. performed those water

mitigation services.

4.      Defendant was notified of the Subject Loss and assigned claim number #01892450.

5.      However, Defendant refused to inspect the Subject Property in its investigation of the claim, and Plaintiffs were forced to file the Instant Action against the Defendant on October 14, 2019.

6.      The Instant Action seeks declaratory judgment regarding the Parties' dispute over provisions of the contract in place between Plaintiff and Defendant.

7.      Defendant has filed a Motion to Consolidate Plaintiff's Instant Action with a case, bearing case number 2019-030861-CA-01, brought by A1A Restoration, Inc.

8.      The case Defendant seeks to consolidate involves different parties, and an invoice for services separate and apart to the instant action, involves different questions of law, and different factual determinations for the Judge or Jury.

9.      This instant response follows.

## ARGUMENT

*A.  Defendant's Motion to Consolidate Should be Denied Because There are No Factors that Warrant Consolidation in this Case*

10.     Florida has no rule of procedure for establishing compulsory consolidation for distinct claims arising from a single claim arising from the same accident.  *Pages v. Dominguez By and Through Dominguez*, 652 So.2d 864 (Fla. 4th DCA 1995).

11.     There is also no rule of procedure or principle of law which requires separate plaintiffs with distinct causes of action to file their lawsuits arising out of a single automobile accident simultaneously.  *Id*.

12.     Applying the holding of *Pages*, where there have been two separate and distinct Plaintiffs that have filed suit against the Defendant arising out of the same "accident" or in this

case subject loss, we see that consolidation should not occur.

13.     Going further, in *State Farm Florida Ins. Co. v. Bonham*, 886 So.2d 1072 (Fla. 5th DCA 2004), the Fifth Circuit held the following factor should be considered when a trial court is deciding to consolidate cases:

> In deciding whether to consolidate cases, a trial court must consider: (1) whether the trial process will be accelerated due to the consolidation; (2) whether unnecessary costs and delays can be avoided by consolidation; (3) whether there is the possibility for inconsistent verdicts; (4) whether consolidation would eliminate duplicative trials that involve substantially the same core of operative facts and questions of law; and (5) whether consolidation would deprive a party of a substantive right.

*State Farm v. Bonham*, 886 So.2d 1074-75.

14.     Looking at each of these factors in turn, we see that none of the factors support consolidation.

15.     As to the first factor, the trial process will certainly not be accelerated should the cases be consolidated.  In fact, it is likely that the process will take considerably more time to reach a resolution since there would be an addition of another party and counsel for same which will delay the litigation process through additional discovery, depositions, and motion practice.

16.     Where Plaintiffs' action requires a declaratory judgment regarding provisions of an insurance contract, A1A Restoration's claim requires a determination for payment of services rendered. Each case would be delayed and stalled by the discovery and facts of the other.

17.     Looking to the second factor there has been no showing in Defendant's motion that consolidation would avoid any unnecessary costs.  There have been no factors up to the filing of this response where unnecessary costs have actually been incurred, as these are two distinct cases, with two distinct questions of law and fact.

18.     The third factor in this case does not lend itself to support consolidation because

any potential inconsistent verdicts would not be unjust or repugnant. *Pages*, 652 So.2d at 867.

19.     More specifically, the mere possibility of different juries arriving at a different conclusion on a fact common to two lawsuits does not alone mandate consolidation. *Id*. at 864. *See also Commercial Carriers Corp. v. Kelley*, 920 So.2d 739 (Fla. 5th DCA 2006) (holding that the lower court's denial of a motion to consolidate should not be disturbed where the primary reason asserted by petitioners for the consolidation is to avoid prejudicially unfair and cost prohibitive results of separate trials).

20.     Here, the grounds for which the Plaintiffs brought suit against the Defendant for was premised on a declaratory action for failure to adjust the Subject Loss and inspect the Subject Property. The parties reached a disagreement and a legitimate question regarding the terms and conditions of the contract of insurance and the duties of each party therein. This is separate and distinct from the grounds for which A1A Restoration, Inc. brought its action against the Defendant, which was premised on the failure to pay for services rendered at the Subject Property. Additionally, neither party has any rights to the others' portion of the claim.

21.     As to the fourth factor we look to whether the same core of operative facts and questions of law support consolidation.

22.     Accordingly, the Fifth District Court of Appeal has held that consolidation is not required simply because separate actions arose out of the same incident. *Bonham*, 886 So.2d at 1075; *citing Pages v. Dominquez By and Through Dominguez*, 652 So.2d 864 (Fla. 4th DCA 1995).

23.     Based on the holding in *Bonham* we see in this instant case that just because both lawsuits arose out of a similar incident, i.e. similar operative facts, consolidation is not required.

24.     Again, here the Plaintiff asserts a declaratory action based on a dispute on the terms

and conditions of the contracted policy of insurance, whereas, upon information and belief, A1A Restoration, Inc.'s unrelated matter involves failure to pay for services rendered at the Subject Property.

25.     Looking at the final factor outlined in *Bonham*, neither party would be deprived of any substantial rights should this Court not consolidate the cases.

26.     In fact, Plaintiffs would be greatly prejudiced should their action be consolidated with A1A Restoration, Inc. as the two distinct causes of action, and different questions of law and fact, would lead to confusion in the Jury, extensive discovery on unrelated issues, and increase the costs and resources of both the Parties and the Court.

27.     None of the *Bonham* factors in this case lend themselves to support consolidation and as such this case should not be consolidated with case 2019-030861-CA-01.

## **CONCLUSION**

28.     Florida Rule of Civil Procedure 1.270(a) notes specifically that when actions involve common questions of law or fact, the court "may" order consolidation. *Commercial Carriers Corp. v. Kelly*, 920 So.2d at 740.

29.     The Court is free from the bounds of relevant Florida case law and Rules of Civil Procedure in this case and is under no duty to consolidate this case with any other cases, as none of the factors weigh in favor of consolidation.

30.     Based on the foregoing the Defendant's Motion to Consolidate should be denied.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court deny Defendant's Motion to Consolidate and grant any other relief as this Court deem just and proper.

## <u>CERTIFICATE OF SERVICE</u>

     **I HERBY CERTIFY** that a true and correct copy of the forgoing was served via Florida's E-filing Portal to all counsel of record, on this 25th day of March, 2020.

                                 Respectfully submitted,

                                 **STREMS LAW FIRM**
                                 Attorney for Plaintiff
                                 420 South Orange Ave, Suite 140
                                 Orlando, Florida 32801
                                 Telephone: (321) 234-3600
                                 Facsimile: (321) 256-5367
                                 Primary E-Service: pleadings@stremslaw.com
                                 Secondary E-Service: Team9@stremslaw.com
                                 Email: mpatrick@stremslaw.com
                                 Email: gzeckler@stremslaw.com

By: _____
**MICHAEL P. PATRICK, ESQUIRE**
**FLORIDA BAR NO: 1002537**
**GEORGE J. ZECKLER, ESQUIRE**
**FLORIDA BAR NO: 1018291**
**HUNTER D. PATTERSON, ESQUIRE**
**FLORIDA BAR NO: 102788**

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CIRCUIT CIVIL DIVISION**

**CASE NO.:** **2019-030409-CA-01**
**SECTION:** **CA23**

**M&M SISTERS LLC et al**
**Plaintiff(s),**

**vs.**

**SCOTTSDALE INSURANCE COMPANY**
**Defendant(s)**

_____/

## ORDER SETTING CASE MANAGEMENT CONFERENCE

**YOU ARE ORDERED TO APPEAR** before the undersigned Judge for a Case Management Conference, in accordance with Rule 1.200(a), Florida Rules of Civil Procedure, on

**Date/Time**: **08-20-2020 at 11:00 AM**
**Location**: Virtual Courtroom

**Due to COVID-19, this courthouse is closed for in-person appearance. Virtual Court is held remotely on the Zoom platform. You will receive an email from the Court with the information you need to connect to your event by video or phone if you are on the E-Filing Portal service list. You may also register for text notification via link below.**
https://cmap.jud11.flcourts.org/ebench/textNotificationsRegistration.jsp

**The court intends to specifically address the following motion/matter**:
 **Motion to Dismiss, filed December 5, 2020 (5 Minutes)**

In addition, the parties shall be prepared to argue and address all pending motions and issues in the case, including time-frame to complete discovery, for filing dispositive motions, and trial setting.

UPON COUNSEL'S FAILURE TO ATTEND THE CASE MANAGEMENT CONFERENCE, THE COURT MAY DISMISS THE ACTION, STRIKE PLEADINGS, ENTER DEFAULTS, LIMIT PROOF OF WITNESSES, AND/OR TAKE OTHER APPROPRIATE ACTION.

This Case Management Conference may not be cancelled without the Court's written permission.

     **DONE AND ORDERED** in Chambers, at Miami-Dade County, Florida, on this **16th day of July, 2020** .

2019-030409-CA-01 07-16-2020 9:22 AM

_____

**2019-030409-CA-01 07-16-2020 9:22 AM**

**Barbara Areces**
CIRCUIT COURT JUDGE

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

Copies Furnished to:

pleadings@rocklawpa.com
ekreiser@rocklawpa.com
dnelson@rocklawpa.com
hunter@stremslaw.com
team9@stremslaw.com
Pleadings@thepropertyadvocates.com
Team9@thepropertyadvocates.com
team9@stremslaw.com
scot@stremslaw.com

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

CASE NO.: 2019-030409-CA-01

SISTERS LLC BERTHA MENENDEZ M&M,

      Plaintiff,

-vs-

SCOTTSDALE INSURANCE COMPANY,

      Defendant.

_____/

## NOTICE OF CHANGE OF FIRM NAME AND EMAIL ADDRESSES

TO THE COURT AND ALL ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT the firm name changed from The Strems Law Firm, P.A. to The Property Advocates P.A. This name change affects the firm's email addresses as well, changing them from @stremslaw.com to @thepropertyadvocates.com as seen below. Counsel's mailing addresses and telephone numbers remain unchanged.

## PLAINTIFF'S NOTICE OF CHANGE OF ATTORNEY OF RECORD WITHIN FIRM, DESIGNATION OF EMAIL ADDRESS & DIRECTIONS TO CLERK TO UPDATE ATTORNEY INFORMATION

COMES NOW, Michael Patrick, Esq., and George J. Zeckler, Esq., The Property Advocates, P.A. as the new attorney of record and does hereby file this Notice of Change of Attorney of Record within Firm and Designation of E-mail Address for Plaintiff in the above-styled matter. Thus, it is respectfully requested that that undersigned be copied in all pleadings, motions and documents filed in this action. Any other Attorneys of Record should be removed as counsel of record on behalf of Plaintiff.

Plaintiff hereby designates the following primary and secondary electronic mail address for this matter pursuant to Florida Supreme Court's Amendment to the Florida Rule of Civil Procedure #SC10-2101 on behalf of Plaintiff:

Primary Electronic Mail Address: **pleadings@thepropertyadvocates.com**

Secondary Electronic Mail Address: **team9@thepropertyadvocates.com**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy was served via Email to: Andrew P. Rock, Esquire, Esq. via email at pleadings@rocklawpa.com , ekreiser@rocklawpa.com, on this August 11, 2020.

> Respectfully submitted,
> **THE PROPERTY ADVOCATES, P.A.**
> Attorney for Plaintiff
> 420 South Orange Ave., Suite 140
> Orlando, Florida 32801
> Telephone: (321) 234-3600
> Facsimile: (321) 256-5367
> PrimaryE-Service: pleadings@thepropertyadvocates.com
> Secondary E-Service: team9@thepropertyadvocates.com
>
> By: _____
> **MICHAEL P. PATRICK, ESQUIRE**
> **FLORIDA BAR NO.: 1002537**
> **GEORGE J. ZECKLER, ESQUIRE**
> **FLORIDA BAR NO.: 1018291**

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

M&M SISTERS LLC.,
BERTHA MENENDEZ GARCIA &
MARIA MENDEZ,

   Plaintiffs,

vs.            **CASE NO.: 2019-030409-CA-01**

SCOTTSDALE INSURANCE COMPANY,

   Defendant.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

COMES NOW Plaintiffs, M&M SISTERS LLC., BERTHA MENENDEZ GARCIA & MARIA

MENDEZ, (hereinafter "Plaintiffs"), by and through undersigned counsel, file their Response in

Opposition to Defendant, SCOTTSDALE INSURANCE COMPANY's, (hereinafter "Defendant")

Motion to Dismiss (hereinafter "Motion"), and as grounds in support thereof states as follows:

## STATEMENT OF RELEVANT FACTS

1.  On May 6, 2019, Plaintiffs sustained damage to their property, both the exterior

and interior, located at 1111 NW 43rd Avenue, Miami, Florida, 33126 (hereinafter, "Subject

Property"), as a result of water damage (hereinafter, "Subject Loss")

2.  Plaintiffs reported this loss to Defendant, and Defendant assigned claim number

01892450 to the Subject Loss.

3.  After Plaintiffs reported the claim to Defendant, Defendant requested an

opportunity to inspect the Subject Property.

4.  Plaintiffs agreed to provide access to Defendant and its representatives for the

purpose of an inspection, however, Plaintiffs advised Defendant that any inspection, proceeding,

investigation, or otherwise that was to be conducted on or at the Subject Property would be recorded with video and audio recording.

5.      Defendant has refused to complete its statutory and contractual obligations and investigate or adjust the loss with the Plaintiffs and have refused to completely inspect the Subject Property.

6.      To date, Defendant, and its representatives, have failed to completely inspect the claimed damages, failed to make a coverage decision, and have now accused Plaintiffs of violations of law with threats of criminal prosecution.

## ARGUMENT

### DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED, AS PLAINTIFFS' COMPLAINT PROPERLY SETS FORTH A CAUSE OF ACTION AND THE STATUTORY PROSCRIPTION OF CHAPTER 934 DOES NOT APPLY

7.      Florida Statute § 934.03 generally requires consent of all parties to an "oral communication" before such "oral communication" can be recorded.

8.      Florida Statute § 934.02 defines "oral communication" as follows:

(2)   "Oral communication" means any oral communication uttered by a person exhibiting an **expectation** that such communication is not subject to interception **under circumstances justifying such expectation** and **does not mean** any **public** oral communication uttered at a public meeting or any electronic communication.

(emphasis added)

9.      The Subject Loss caused damage to both the interior and exterior of the home and as such an inspection of the property would require all areas to be investigated.

10.     With respect to any interior inspection of Plaintiffs' private residence, Defendant is asserting that Florida Statute § 934.03 prohibits the recording of an inspection of the Subject

Property, for the purposes of adjusting and investigating the Subject Claim, within the home absent the consent of the business invitee; in this case, an insurance adjuster or engineer.

11.    Regarding the Defendant's inspection of water damages sustained to the exterior of the property, which includes all exterior elevations and the roof, there can be no ascertainable argument that those areas are not in public view, and any recording would not be deemed an "oral communication" under Chapter 934.

12.    Defendant's meritless position has no support in the insurance contract, Florida law or the jurisprudence of the Supreme Court of the United States of America, as Florida courts have recognized a longstanding exception to the statutory proscription of Chapter 934..

13.    More specifically, the requirements and prohibitions under Chapter 934 only apply where the person uttering the communication has a (1) reasonable expectation of privacy that (2) society is willing to recognize. *See State v. Inciarrano,* 473 So.2d 1272 (Fla. 1985); *McDade v. State*, 154 So.3d 292 (Fla. 2014); *State v. Caraballo,* 198 So.3d 819 (2nd DCA 2016); *Smith v. State*, 261 So.3d 714 (5th DCA 2018) *Cohen Brothers, LLC v. ME Corp.*, S.A., 872 So. 2d 321 (3rd DCA 2004); *Jatar v. Lamaletto*, 758 So.2d 1167 (3rd DCA 2000); *Smiley v. State*, 279 So. 3d 262 (1st DCA 2019).

14.    In determining whether the speaker's expectation of privacy is reasonable and therefore under the protections and strictures of Chapter 934 to prevent a recorded statement, courts must examine: (1) the location of the conversation; (2) the type of communication at issue; and, (3) the manner in which the communication was made. *Id.*

15.    In the instant case, neither Defendant, nor its representatives or agents, have a recognizable expectation of privacy within the private home of the Plaintiffs.

16.     Therefore, the consent of neither Defendant, nor its representatives or agents, is required for the Plaintiffs, as the owners of the Subject Property, to record any and all proceedings occurring within or at the Subject Property.

**A.     *Neither Defendant, nor its agents or representatives, have an expectation of privacy within the Plaintiffs' home.***

17.     The Florida Supreme Court has held for over thirty years that Florida Statute § 934.03 is only applicable where the person has an expectation of privacy. *See State v. Inciarrano,* 473 So.2d 1272 (Fla. 1985); *McDade v. State*, 154 So.3d 292 (Fla. 2014).

18.     To that end, Florida courts have recognized that a private homeowner has a reasonable expectation of privacy within his own home. *State v. Inciarrano,* 473 So.2d 1272 (Fla. 1985); *Jatar v. Lamaletto*, 758 So.2d 1167 (3rd DCA 2000).

19.     However, Florida Courts, the Supreme Court of the United States of America, and its interpretation of the United States Constitution, have failed to extend such an expectation of privacy to a short-term invitee of a residential home. *Minnesota v. Carter*, 525 U.S. 83 (1998); *Hicks v. State*, 852 So.2d 954 (5th DCA 2003).

20.     In *Carter*, the United States Supreme Court held that a person, who was present in another person's apartment for a short time solely for business purposes had no legitimate expectation of privacy in the apartment. *Carter* at 90.

21.     The U.S. Supreme Court, in rendering the *Carter* decision, analyzed the Constitution and held that although the individual homeowner would have privacy protections afforded to him, the Constitution did not extend same to one who is merely present with the consent of the householder. *Id.*

22.     The Court determined that the defendant was essentially present for a business transaction, and although the apartment was a dwelling place for the homeowner, it was for the defendant simply a place to do business. *Id.*

23.     Similarly, the *Hicks* opinion expressed that temporary visitors or short-term invitees are "unable to advance a position that they had a reasonable expectation of privacy in someone else's home with success." *Hicks* at 959.

24.     Furthermore, federal district courts in other jurisdictions have reached the same conclusion regarding Defendant's claims of privacy and violations of wiretapping statutes. *See Gaymon v. Borough of Collingdale*, 150 F. Supp. 3d 457 (E.D. Pa. 2015).

25.     In *Gaymon*, Mrs. Gaymon used her cell phone, while on her own property, to record video of a police officers' actions and, after the officers ordered her to stop and falsely told her that the videotaping was illegal, retreated inside her house, at which time an officer, after homeowner's daughter told him she believed her mother had a right to make the recording, arrested the daughter and then followed homeowner into her house, pushed her against a wall, and held his taser to her chest, before arresting her. *Id.* At 466

26.     There, the court held that no officer could credibly claim any expectation of privacy on Plaintiffs' property or inside their house. If anyone had an expectation of privacy under these circumstances, it was clearly the Gaymons. *Id.*

27.     The court went further to state that no reasonable police officer could have believed that homeowner's act of using her cell phone, while on her own property, to record video of two officers' actions while responding to a nuisance complaint during daylight hours, constituted a violation of the Pennsylvania Wiretap Act[1]. *Id.*

---

[1]The Pennsylvania Wiretapping Act sets forth the same "two-party consent" law as Florida Statute §934.03. *See* 18 Pa. Cons. Stat. § 5703.

28.     In the instant case, Defendant is an insurance company who provides insurance for Plaintiffs' property. Defendant is seeking permission from the Plaintiffs to enter the property for the sole purpose of conducting an inspection and investigation into a loss sustained at the property, so that a coverage decision can be made on a claim presented by Plaintiffs.

29.     Defendant's representatives intend to observe the claimed damages, take photographs and measurements, perform testing, and potentially interview the Plaintiffs or their representatives regarding the loss sustained and the damages being sought.

30.     The relationship between Plaintiffs and Defendant is formed only by an insurance policy (the contract forming the basis for the dispute). As such, Defendant, or any agents or representatives on its behalf, would be entering Plaintiffs' private property solely as short-term invitees for the purpose of conducting business, and no claim that they have an expectation of privacy can succeed.

31.     Should Defendant's position be taken to its ultimate desired conclusion, no homeowner or property owner could have a home security system or video doorbell, for fear of capturing a passerby on the driveway without their consent. Similarly, homeowners would be forced to unplug any and all smart devices such as TVs, computers, or Amazon Alexa Devices within their home every time a guest visited the property until the requisite consent was obtained. Companies such as Google, Amazon, or Apple would be facing constant litigation over their smart home devices.

**B.      *The Insurance Contract does not Expressly Prohibit Plaintiffs from recording the inspection within their private residence.***

32.     Contract interpretation begins with a review of the plain language of the agreement. *Talbott v. First Bank of Florida*, 59 So. 2d 243 (Fla. 4th DCA 2011)(providing that "When the

language of a contract is clear and unambiguous, courts must give effect to the contract as written and cannot engage in interpretation or construction as the plain language is the best evidence of the parties' intent.")

33.     Furthermore, courts must examine the whole document to properly assess the intent of the parties. *Discover Property & Cas. Ins. Co. v. Beach Cars of West Palm, Inc.*, 929 So.2d 729 (Fla 4th DCA 2006)("Contracts, if written clearly and without ambiguity, are to be considered and interpreted **as written**…Such contractual language should be given its **plain and ordinary meaning**, and read in the context of the document as a whole…If possible, conflicting provisions of a contract are to be read in such a way as to give a reasonable interpretation and effect to all provisions."(emphasis added).

34.     In order "[To] ascertain the intention of the parties to a contract, the trial court must examine the whole instrument, not just particular portions, and reach an interpretation consistent with reason, probability and the practical aspects of the transaction between the parties." *Macaw v. Gross*, 452 So.2d 1126, 1127 (Fla. 3d DCA 1984) (affirming the release of mortgaged property when the trial court examined the whole document) citing *Blackshear Mfg. Co. Fralick*, 102 So.2d 753, 754 (Fla. 1925). See also *L&H Const. Co., Inc. v. Circle Redmont*, Inc. 55 SO. 3d 630, 634 (Fla. 5th DCA 2011)("To ascertain the intent of the parties to a contract, the trial court must examine the whole instrument, not isolated parts."); *Am. Home Assurance Co. v. Larkin Gen. Hosp.*, Ltd., 593 So.2d 195, 197 (Fla. 1925)(stating determination of intent requires consideration of contract's language, subject matter, and object and purpose); T*albott v. First Bank Florida*, FSB, 59 So. 3d 243, 245 (Fla. 4th DCA 2011("A contract should be read as a whole.")

35.     It is clearly established law in Florida that the Court must accept an interpretation of the contact that harmonizes its provision rather than one which causes the provisions to conflict.

Indeed, every provision in a contract should be given meaning and effect and apparent inconsistencies reconciled if possible. *Excelsior Ins. Co. Pomona Park Bar & Package Store*, 369 So.2d 2d 938 (Fla. 1979). *City of Homestead v. Johnson*, 760 So.2d 80, 84, (Fla. 2000) relying upon "the rule of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions."

36.     In the instant case, the relevant provisions of the policy requires Plaintiffs to permit the Defendant to inspect the property proving the loss or damage. Plaintiffs have never once denied access to the property, and have certainly complied with their obligation to permit Defendant to inspect the property.

37.     The record is clear that Plaintiffs have never denied access to the property for the purposes of Defendant's inspection. In fact, Plaintiffs have attempted, and stand ready, to coordinate same.

38.     No where in the subject policy of insurance does it prohibit the Plaintiffs from recording any of the proceedings within their own property.

39.     Instead, Defendant claims that Florida is a "two-party consent" state and Plaintiffs intentions are unlawful.

40.     By Defendant's logic, it somehow intends to assert a non-existent expectation of privacy on behalf of a third-party adjuster or engineer, working for an independent firm, all while asserting Plaintiffs are the ones who have not complied or failed to cooperate.

41.     Arguments regarding Defendant's standing to assert privacy on behalf of a third-party aside, Florida case law expressly undercuts any supposed reasonableness in Defendant's assertions.

C.    *Defendant's Subjective Claim for an Expectation of Privacy is Not a Reasonable One Society is Willing to Accept.*

42.    In determining whether a speaker has an expectation of privacy in a recorded statement that is reasonable, courts examine: (1) the location of the conversation; (2) the type of communication at issue; and, (3) the manner in which the communication was made. *See State v. Inciarrano,* 473 So.2d 1272 (Fla. 1985); *McDade v. State*, 154 So.3d 292 (Fla. 2014); *State v. Caraballo,* 198 So.3d 819 (2nd DCA 2016); *Smith v. State*, 261 So.3d 714 (5th DCA 2018) *Cohen Brothers, LLC v. ME Corp.*, S.A., 872 So. 2d 321 (3rd DCA 2004); *Jatar v. Lamaletto*, 758 So.2d 1167 (3rd DCA 2000); *Smiley v. State*, 279 So. 3d 262 (1st DCA 2019).

43.    Applying the facts of this case to the first factor, the location of the conversation is within the private property of Plaintiffs, and as addressed throughout the instant response, there exists no expectation of privacy for Defendant, or its third-party representatives, within same.

44.    As to the second and third factors, the type of communications at issue are communication with the Plaintiffs regarding the damages observed and communications made by Defendant's representatives in the presence of same. With respect to the manner in which the communication will be made, Defendant's third-party adjuster or engineer will be present at the subject property solely for inspecting the claimed damages. Any information observed, obtained, or otherwise learned at this inspection, will be communicated by the agent back to the Defendant.

45.    The very nature of the adjuster or engineer disclosing the information obtained back to the Defendant or to the adjusting office, as parties not present for the conversation, relinquishes any claim that the type of communication was intended to be a private or confidential one.

46.    In fact, any information learned or obtained will form the basis for the agent's opinion, and ultimately the Defendant's coverage determination in this case. It will become part

of Defendant's claim file and communicated to the Plaintiffs once a decision is made with respect to the claim.

47.     To the extent that Defendant's third-party adjuster wishes to confer with his office, or with Defendant, he is more than welcome to do so either off premises or off camera, as Plaintiffs are not seeking the mental impressions, conclusions, opinions, or theories of this engineer. Plaintiffs are merely seeking to document the proceedings in an effort to prove its claim and provide a clear and transparent record to all Parties. Should the agent choose to have conversations in front of the Plaintiffs, whether on camera or otherwise, their presence alone destroys any claim of confidentiality or privilege.

48.     As such, the type of communications that will take place at any inspection of the subject property will not be objectively private, as defined by Florida law and interpreted by Florida courts, and the manner in which it is made and disclosed to other, non-present parties is such that no subjective expectation of privacy in any communication can objectively be deemed reasonable.

49.     As the communication is of the nature that is never meant to be private, was always intended to be disclosed to other parties, and will be made within the Plaintiffs' own home, society is not willing to recognize a reasonable expectation of privacy, and Defendant's Motion to Dismiss fails.

## CONCLUSION

50.     The case law is clear throughout the jurisdictions, at the state and federal level, that the only person with an expectation of privacy objectively recognized as reasonable is the homeowners themselves. No such expectation exists under the facts of this case, and therefore,

Defendant's consent (nor its agents or representatives) is not required for Plaintiffs to video record with audio within their home during any inspection of the subject property.

51.     Dismissal of the instant action would operate as a complete bar for the Plaintiffs to seek resolution of their claim and would preclude Plaintiffs from preserving their rights as property owners.

52.     To that end, Plaintiffs have no objection to the alternative relief sought, to abate the action and allow for the investigation to conclude and the Defendant reach a coverage decision, so long as the Plaintiffs are able to record the proceedings as they always intended from the beginning for documentation and transparency.

**WHEREFORE**, based on the foregoing, Plaintiffs, M&M SISTERS LLC., BERTHA MENENDEZ GARCIA & MARIA MENDEZ, respectfully requests this Honorable Court enter an Order (1) Denying Defendant's Motion to Dismiss; (2) Ordering Defendant to file a responsive pleading within ten (10) days from the date of the hearing, and; (3) any and all further relief deemed just and proper. In the alternative, Plaintiffs request this honorable Court enter an Order granting the Motion to Abate to allow for the Defendant to inspect the property and reach a coverage decision subject to said inspection being recorded by the Plaintiffs and their representatives.

**[Certificate of Service on following page]**

## <u>CERTIFICATE OF SERVICE</u>

**I HERBY CERTIFY** that a true and correct copy of the forgoing was served via Florida's

E-filing Portal to all counsel of record, on this <u>August 19, 2020</u>.

Respectfully submitted,

**THE PROPERTY ADVOCATES, P.A.**
Attorney for Plaintiff
420 South Orange Ave, Suite 140
Orlando, Florida 32801
Telephone: (321) 234-3600
Facsimile: (321) 256-5367
Primary E-Service: pleadings@thepropertyadvocates.com
Secondary E-Service: Team9@thepropertyadvocates.com
Email: mpatrick@thepropertyadvocates.com
Email: gzeckler@thepropertyadvocates.com

By: _____
**MICHAEL P. PATRICK, ESQUIRE**
**FLORIDA BAR NO: 1002537**
**GEORGE J. ZECKLER, ESQUIRE**
**FLORIDA BAR NO: 1018291**

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2019-030409-CA-01
SECTION: CA23
JUDGE: Barbara Areces

**M&M SISTERS LLC et al**

Plaintiff(s)

vs.

**SCOTTSDALE INSURANCE COMPANY**

Defendant(s)

_____/

## ORDER DENYING MOTION TO DISMISS

THIS CAUSE came before the Court on Defendant's Motion to Dismiss, or in the Alternative, Motion to Abate Pending Completion of Investigation, filed on December 5, 2019, and the Court has been advised of the premises.  It is hereby

**ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss is **DENIED**. The Court finds Plaintiffs' requests to document the proceedings to be reasonable.

2. The case is abated for a period of ninety (90) days, to allow for an inspection of the Subject Property.

3. The Plaintiffs shall be able to document the proceedings using both video and audio recording.

4. The matter is abated for an additional thirty (30) days beyond the ninety (90) days, to allow for the Defendant to communicate its coverage decision to Plaintiffs.

5. However, the abatement shall automatically lift upon the communication of Defendant's coverage decision, should one come sooner than the one hundred and twenty (120) days

provided above.

6. The Court will retain jurisdiction to enforce this order and to render further rulings on the outstanding issues in the instant action.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>25th day of August, 2020</u>.



<u>2019-030409-CA-01 08-25-2020 11:36 PM</u>
Hon. Barbara Areces

**CIRCUIT COURT JUDGE**
Electronically Signed

---

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

---

**Electronically Served:**
Erin R. Dix, pleadings@rocklawpa.com
Erin R. Dix, ekreiser@rocklawpa.com
Erin R. Dix, dnelson@rocklawpa.com
George J. Zeckler, Esq., pleadings@thepropertyadvocates.com
George J. Zeckler, Esq., team9@thepropertyadvocates.com
George Zeckler, team9@stremslaw.com
Hunter Patterson, hunter@stremslaw.com
Michael Patrick, Esq., team9@stremslaw.com
Michael Paul Patrick Esq., Pleadings@thepropertyadvocates.com
Michael Paul Patrick Esq., Team9@thepropertyadvocates.com
Millie Penichet, mpenichet@jud11.flcourts.org
Nicholas F. Van Valen, pleadings@rocklawpa.com
Nicholas F. Van Valen, nvanvalen@rocklawpa.com
Nicholas F. Van Valen, dnelson@rocklawpa.com
Scot Strems, scot@stremslaw.com

**Physically Served:**

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR        MIAMI-DADE        COUNTY,
FLORIDA
CIVIL DIVISION

Case No. 2019-030409-CA-01

M&M SISTERS, LLC BERTHA
MENENDEZ GARCIA &
MARIA MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,

    Defendant.

_____/

## DEFENDANT'S NOTICE OF APPEARANCE AND AMENDED NOTICE OF DESIGNATION OF EMAIL ADDRESSES PURSUANT TO RULE 2.516, FLORIDA RULES OF JUDICIAL ADMINISTRATION

PLEASE TAKE NOTICE that Robert L. Rogers, III, from The Rock Law Group, P.A., is appearing as counsel for Defendant, SCOTTSDALE INSURANCE COMPANY, in the above-styled cause of action and pursuant to Rule 2.516, *Florida Rules of Judicial Administration*, hereby files this Amended Notice of Designation of E-Mail Addresses for service by electronic mail in this action.

    Primary E-Mail Address:        pleadings@rocklawpa.com

    Secondary E-Mail Address:    crodriguez@rocklawpa.com

Service to any other e-mail address(es) will not be considered proper service pursuant to the above-referenced rule.

**<u>CERTIFICATE OF SERVICE</u>**

      I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 27th day of October, 2020 to: Michael P. Patrick, Esquire,The Property Advocates, P.A. pleadings @theproperty advocates.com; and team9@the propertyadvocates.com.

<div align="right">

*/s/ Robert L. Rogers, III*
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

</div>

RLR/cdr

Case 1:21-cv-24081-FAM   Document 1-2   Entered on FLSD Docket 11/19/2021   Page 299 of 661

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT**
**IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

M&M SISTERS LLC,
BERTHA MENENDEZ &
MARIA MENENDEZ,
      Plaintiffs,

v.                                **CASE NO.: 2019-030409-CA-01**

SCOTTSDALE INSURANCE COMPANY,

      Defendant.

_____/

## MOTION TO WITHDRAW AS COUNSEL FOR PLAINTIFFS

Michael Patrick, Esq. George Zeckler, Esq. and Hunter Patterson, Esq. of The Property Advocates, P.A. f/k/a The Strems Law Firm as counsel of record for Plaintiffs, M&M SISTERS LLC, BERTHA MENENDEZ & MARIA MENENDEZ, in accordance with Fla. R. Jud. Admin. 2.505 (f)(1) and hereby files this motion to withdraw as counsel for M&M SISTERS LLC, BERTHA MENENDEZ & MARIA MENENDEZ, and in favor of the relief requested states as follows:

1.      Irreconcilable differences have arisen between The Property Advocates, P.A. and its client, M&M SISTERS LLC, BERTHA MENENDEZ & MARIA MENENDEZ, leaving The Property Advocates, P.A. unable to continue its representation of M&M SISTERS LLC, BERTHA MENENDEZ & MARIA MENENDEZ.

2.      The undersigned has made various good faith attempts to mend said irreconcilable differences but in the end was unable to reach a resolution.

3.      Undersigned requests this Court grant Plaintiffs thirty (30) days to seek new counsel, or to continue the instant action *pro se*.

4.      Undersigned further requests that until such time as new counsel appears in this matter on behalf of Plaintiffs, that all future filings in the interim be forwarded to the Plaintiff directly at:

<div align="center">

M&M Sisters LLC, Bertha Menendez
1710 Pizarro Street
Coral Gables, Florida 33134
Sitting_pretty@bellsouth.net
(305) 342-0224

</div>

5.      The Motion is made in good faith and is not being submitted for the purposes of delay. Counsel for Defendant has been made aware of the instant motion and has no opposition to same.

**WHEREFORE**, the movants, Michael Patrick, Esq. George Zeckler, Esq. and Hunter Patterson, Esq. of The Property Advocates, P.A. (f.k.a. The Strems Law Firm, P.A.), respectfully request that this Court enter an Order grating the Motion to Withdraw as Counsel for Plaintiffs and relieving them of all further responsibility in the representation of M&M SISTERS LLC, BERTHA MENENDEZ & MARIA MENENDEZ in this matter, allowing Plaintiffs thirty (30) days to retain new counsel or continue *pro se* and for any further relief that this Court deems proper and just.

<div align="center">

**[CERTIFICATE OF SERVICE ON THE FOLLOWING PAGE]**

</div>

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the forgoing was served via Florida

Courts e-portal to all counsel of record on December 16, 2020.

Respectfully submitted,

**THE PROPERTY ADVOCATES, P.A.**
Attorney for Plaintiff
420 South Orange Ave, Suite 140
Orlando, Florida 32801
Telephone: (321) 234-3600
Facsimile: (321) 256-5367
E-Service: pleadings@thepropertyadvocates.com
E-Service: Team9@thepropertyadvocates.com
Email: gzeckler@thepropertyadvocates.com
Email: dbrisbane@thepropertyadvocates.com
Email:garroyo@thepropertyadvocates.com


By: _____
**GEORGE J. ZECKLER, ESQUIRE**
**FLORIDA BAR NO.: 1018291**
**DANIEL A. BRISBANE, ESQUIRE**
**FLORIDA BAR NO.: 1018877**
**GILBERT R. ARROYO, ESQUIRE**
**FLORIDA BAR NO.: 1017888**

3

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

M&M SISTERS LLC,
BERTHA MENENDEZ &
MARIA MENENDEZ,
     Plaintiffs,

v.                                                                    **CASE NO.: 2019-030409-CA-01**

SCOTTSDALE INSURANCE COMPANY,

    Defendant.
_____/

### NOTICE OF HEARING ON

**PLEASE TAKE NOTICE** that the undersigned will bring on to be heard the following:

| | |
|---|---|
| **JUDGE:** | Barbara Areces |
| **DATE:** | February 11, 2021. |
| **TIME:** | 9:00 am. |
| **SUBJECT MATTER:** | Plaintiffs' Motion to Withdraw As Counsel for Plaintiffs. (Filing # 118331705 E-Filed 12/16/2020) |
| **LOCATION:** | VIA. Zoom. |

*Plaintiff certifies that this hearing was coordinated with Opposing Counsel and Judicial Assistant via mail on December 17, 2020. *

### [CERTIFICATE OF SERVICE ON THE NEXT PAGE]

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the forgoing was served via Florida

Courts e-portal to all counsel of record on this 17th day of December 2020.

Respectfully submitted,

**THE PROPERTY ADVOCATES, P.A.**
Attorney for Plaintiff
420 South Orange Ave, Suite 140
Orlando, Florida 32801
Telephone: (321) 234-3600
Facsimile: (321) 256-5367
Primary E-Service: pleadings@thepropertyadvocates.com
Secondary E-Service: Team9@thepropertyadvocates.com
Email: gzeckler@thepropertyadvocates.com
Email: dbrisbane@thepropertyadvocates.com
Email: garroyo@thepropertyadvocates.com

By: _____
**GEORGE J. ZECKLER, ESQUIRE**
**FLORIDA BAR NO.: 1018291**
**DANIEL A. BRISBANE, ESQUIRE**
**FLORIDA BAR NO.: 1018877**
**GILBERT R. ARROYO, ESQUIRE**
**FLORIDA BAR NO.: 1017888**

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA
CIVIL DIVISION

Case No. 2019-030409-CA-01

M&M SISTERS, LLC BERTHA
MENENDEZ GARCIA & MARIA
MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE INSURANCE
COMPANY,

    Defendant.

_____/

## DEFENDANT'S MOTION FOR EXTENSION OF TIME
## TO COMPLY WITH COURT'S AUGUST 25, 2020 ORDER

Comes now the Defendant, Scottsdale Insurance Company, by and through its undersigned counsel and pursuant to the Florida Rules of Civil Procedure by serving this its Motion for an Extension of Time for Scottsdale to Comply with the Court's August 25, 2020 Order. As grounds for this Motion, the Defendant asserts the following:

1.    On August 25, 2020, this Court denied the Defendant's Motion to Dismiss, and abated this action for a period of 90-days to allow for an inspection of the subject property. See attached Exhibit A, Order Denying Motion to Dismiss.

2.    Pursuant to the Court's Order, the Defendant was to inspect the Plaintiff's property within a 90-day period, which could be audio and videotaped, and the matter would be abated for an additional 30-days to allow for Defendant to communicate its coverage decision to Plaintiff. (See attached Exhibit A, paragraphs 2 through 4.)

3.      The inspection of the Defendant's property occurred on November 19, 2020, and a coverage decision has been made.

4.      The Defendant, however, requests an additional 30-days to prepare a coverage determination letter and submit it to the Plaintiffs, as one cannot be drafted and submitted to the Plaintiff in the remaining time allotted.

5.      While it is expected that a coverage decision letter will be transmitted to the Plaintiff long before 30-days has passed, the Defendant asks for an additional 30-days in an abundance of caution owing to the upcoming holidays.

6.      The Defendant, therefore, requests this Honorable Court enter an Order Extending the Abatement for an additional 30-days, to be automatically lifted upon the communication of Defendant's coverage decision, should one come sooner than 30-days.

7.      It will cause no prejudice to the Plaintiff for this Motion to be granted.  It is beyond cavil that the Court has inherent authority to modify its own orders.

WHEREFORE, the Defendant prays this Honorable Court grant this Motion and extend the abatement in this matter for an additional 30-days.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 21st day of December, 2020 to Michael P. Patrick, Esquire,The Property Advocates, P.A. pleadings @theproperty advocates.com; team9@the propertyadvocates.com.

/s/Nicholas Van Valen
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Nicholas Van Valen, Esquire
Florida Bar No. 6701
The Rock Law Group, P.A.

2

1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Attorneys for Defendant, Scottsdale
Insurance Company
pleadings@rocklawpa.com
nvanvalen@rocklawpa.com
dnelson@rocklawpa.com

APR/NVV/dn

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CIRCUIT CIVIL DIVISION**

**CASE NO.: 2019-030409-CA-01**
**SECTION: CA23**

**M&M SISTERS LLC et al**
**Plaintiff(s),**

**vs.**

**SCOTTSDALE INSURANCE COMPANY**
**Defendant(s)**
_____/

## ORDER SETTING CASE MANAGEMENT CONFERENCE

**YOU ARE ORDERED TO APPEAR** before the undersigned Judge for a Case Management Conference, in accordance with Rule 1.200(a), Florida Rules of Civil Procedure, on

**Date/Time: 01-21-2021 at 11:00 AM**
**Location**: Virtual Courtroom

**Due to COVID-19, this courthouse is closed for in-person appearance. Virtual Court is held remotely on the Zoom platform. You will receive an email from the Court with the information you need to connect to your event by video or phone if you are on the E-Filing Portal service list. You may also register for text notification via link below.**
https://cmap.jud11.flcourts.org/ebench/textNotificationsRegistration.jsp

**The court intends to specifically address the following motion/matter:**
**Motion for Extension of Time, filed December 21, 2020 (5 Minutes)**

In addition, the parties shall be prepared to argue and address all pending motions and issues in the case, including time-frame to complete discovery, for filing dispositive motions, and trial setting.

UPON COUNSEL'S FAILURE TO ATTEND THE CASE MANAGEMENT CONFERENCE, THE COURT MAY DISMISS THE ACTION, STRIKE PLEADINGS, ENTER DEFAULTS, LIMIT PROOF OF WITNESSES, AND/OR TAKE OTHER APPROPRIATE ACTION.

This Case Management Conference may not be cancelled without the Court's written permission.

**DONE AND ORDERED** in Chambers, at Miami-Dade County, Florida, on this **8th day of January, 2021** .

2019-030409-CA-01 01-08-2021 12:42 PM

**Barbara Areces**
CIRCUIT COURT JUDGE

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

Copies Furnished to:

pleadings@stremslaw.com
team9@thepropertyadvocates.com
pleadings@thepropertyadvocates.com
hunter@stremslaw.com
team9@stremslaw.com
Pleadings@thepropertyadvocates.com
Team9@thepropertyadvocates.com
pleadings@rocklawpa.com
nvanvalen@rocklawpa.com
dnelson@rocklawpa.com
pleadings@rocklawpa.com
crodriguez@rocklawpa.com
rmoreno@rocklawpa.com
team9@stremslaw.com
pleadings@thepropertyadvocates.com
team9@thepropertyadvocates.com
pleadings@rocklawpa.com
ekreiser@rocklawpa.com
dnelson@rocklawpa.com

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR     MIAMI-DADE     COUNTY,
FLORIDA
CIVIL DIVISION

Case No. 2019-030409-CA-01

M&M SISTERS, LLC BERTHA
MENENDEZ GARCIA &
MARIA MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,

    Defendant.

_____/

### DEFENDANT'S NOTICE OF WITHDRAWAL OF MOTION FOR EXTENSION OF TIME TO COMPLY WITH COURT'S AUGUST 25, 2020 ORDER

Defendant SCOTTSDALE INSURANCE COMPANY ("Scottsdale") files this Notice of Withdrawal of the Motion for an Extension of Time to Comply with the Court's August 25, 2020 Order that Scottsdale filed on December 20, 2020 (the "Motion for Extension"), because the relief sought therein is now moot. Specifically, in the Motion for Extension, Scottsdale requested that the Circuit Court enter an order extending its deadline under the Court's Order Denying Motion to Dismiss dated August 25, 2020 (the "Dismissal Order") to complete its coverage determination for the claim at issue in its lawsuit (following the completion of Scottsdale's consultant's inspection of the insured's property). (This coverage determination was to be a precursor to the Court lifting the abatement of this action referenced in the Dismissal Order.) Scottsdale has now completed its coverage determination for the subject claim and sent Plaintiffs its coverage

determination letter.  Accordingly, the relief sought in the Motion for Extension is now moot and unnecessary.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 20th day of January, 2021 to  Michael P. Patrick, Esquire,The Property Advocates, P.A. pleadings @theproperty advocates.com; and team9@the propertyadvocates.com.

<u>*/s/ Robert L. Rogers, III*</u>
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

RLR/cdr

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2019-030409-CA-01
SECTION: CA23
JUDGE: Barbara Areces

**M&M SISTERS LLC et al**

Plaintiff(s)

vs.

**SCOTTSDALE INSURANCE COMPANY**

Defendant(s)

_____/

## ORDER GRANTING MOTION TO WITHDRAW

**THIS CAUSE HAVING** come before this Court on the 21st day of January 2021, on the Motion to Withdraw as Counsel for Plaintiffs, filed by Attorney George J. Zeckler, counsel for Plaintiffs, M&M SISTERS LLC, Et al., (hereinafter "CLIENTS") and The Property Advocates, P.A. ("Movant") having confirmed herein that Plaintiffs have discharged Movant as their attorneys of record in this action, it is hereby,

**ORDERED AND ADJUDGED** as follows:

1. The Motion to Withdraw is **GRANTED**.
2. Movant shall mail a copy of this order to CLIENTS forthwith.
3. **Within 30 days** from the date of this order, CLIENTS shall either: Retain new counsel and have that counsel file a written appearance with the Clerk of the Court; ORFile a written notice with the Clerk of the Court advising that CLIENTS will represent himself/herself. *[Note: If CLIENT(S) is a corporation, trustee or a trust, personal representative of an estate, or otherwise named in a representative capacity, CLIENT(S) must retain counsel.]*
4. Failure to comply with the preceding paragraph will create a presumption that CLEINTS no longer wishes to participate in this lawsuit and the Court may *sua sponte* or on motion of opposing party **impose sanctions against CLIENTS**. Sanctions may include the imposition of fees and costs, striking of pleadings, entry of default, and dismissal with prejudice.
5. In the interim, CLIENTS are required to comply with orders/notices requiring CLIENTS' appearance in court.
6. CLIENTS' contact information is as follows:

M&M Sisters LLC, Bertha Menendez

1710 Pizarro Street

Coral Gables, Florida 33134

Sitting_pretty@bellsouth.net

305-342-0224

7. CLIENTS are responsible for updating their contact information by filing a Notice of New Contact Information with the Clerk of the Court and providing a copy to opposing counsel. Failure to update contact information shall constitute a waiver of any defenses due to lack of notice.

8. **This order does not change any current trial setting or scheduled hearing in this case.**

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>21st day of January, 2021</u>.



<u>2019-030409-CA-01 01-21-2021 2:50 PM</u>
Hon. Barbara Areces

**CIRCUIT COURT JUDGE**
Electronically Signed

<div style="border:1px solid red">

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

</div>

**Electronically Served:**
Bertha Menendez, Sitting_pretty@bellsouth.net
Erin R. Dix, pleadings@rocklawpa.com
Erin R. Dix, ekreiser@rocklawpa.com
Erin R. Dix, dnelson@rocklawpa.com
George J. Zeckler, Esq., pleadings@thepropertyadvocates.com
George J. Zeckler, Esq., team9@thepropertyadvocates.com
George Zeckler, team9@stremslaw.com

George Zeckler, team9@thepropertyadvocates.com

George Zeckler, pleadings@thepropertyadvocates.com

Hunter Patterson, hunter@stremslaw.com

Michael Patrick, Esq., team9@stremslaw.com

Michael Paul Patrick Esq., Pleadings@thepropertyadvocates.com

Michael Paul Patrick Esq., Team9@thepropertyadvocates.com

Millie Penichet, mpenichet@jud11.flcourts.org

Nicholas F. Van Valen, pleadings@rocklawpa.com

Nicholas F. Van Valen, nvanvalen@rocklawpa.com

Nicholas F. Van Valen, dnelson@rocklawpa.com

Robert L Rogers III, pleadings@rocklawpa.com

Robert L Rogers III, crodriguez@rocklawpa.com

Robert L Rogers III, rmoreno@rocklawpa.com

Scot Strems, pleadings@stremslaw.com


**Physically Served:**

M&MSisters LLC - Bertha Menendez, 1710 Pizarro Street, Coral Gables, FL 33134

Case 1:21-cv-24081-FAM Document 1-2 Entered on FLSD Docket 11/19/2021 Page 315 of 661

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2019-030409-CA-01
SECTION: CA23
JUDGE: Barbara Areces

**M&M SISTERS LLC et al**

Plaintiff(s)

vs.

**SCOTTSDALE INSURANCE COMPANY**

Defendant(s)

_____/

## AMENDED ORDER DENYING MOTION TO DISMISS (LIFTING ABATEMENT AND SETTING DEADLINE FOR DEFENDANT TO RESPOND TO COMPLAINT, IN LIGHT OF THE MOTION TO WITHDRAW AS COUNSEL FOR PLAINTIFFS FILED ON DEC. 16, 2020)

THIS CAUSE, having come before the Court on Defendant SCOTTSDALE INSURANCE COMPANY's ("Defendant") Motion to Dismiss of, in the Alternative, Motion to Abate Pending Completion of Appraisal at Case Management Conferences on August 20, 2020 and January 21, 2021, and the Court having reviewed said Motion and Plaintiff's Response in Opposition and the Court's initial Order Denying Motion to Dismiss dated August 25, 2020, having heard argument of counsel, having considered the recent developments reported at the Case Management Conference on January 21, 2020 (including Defendant's issuance of a coverage determination letter for the subject claim and the unopposed Motion to Withdraw as Counsel for Plaintiffs filed on December 16, 2020 (the "Motion to Withdraw") by the attorneys who at the time represented Plaintiffs M&M SISTERS LLC, BERTHA MENENDEZ GARCIA, and MARIA MENENDEZ ("Plaintiffs")), and being otherwise fully informed, it is hereby,

ORDERED AND ADJUDGED that the Court's Order Denying Motion to Dismiss dated August 25, 2020 is AMENDED ONLY AS FOLLOWS:

    a.   The abatement ordered in this Court's Order Denying Motion to Dismiss dated August 25, 2020 is lifted based upon Defendant's issuance of a coverage determination to Plaintiffs for the claim at issue in this action.

    b.   In light of the Motion to Withdraw, Defendant shall have until forty-five (45) days from the date of this order to respond to Plaintiffs' Complaint in this action.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>21st day of January, 2021</u>.



<u>2019-030409-CA-01 01-21-2021 2:53 PM</u>
Hon. Barbara Areces

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Cheri Rodriguez, crodriguez@rocklawpa.com
Erin R. Dix, pleadings@rocklawpa.com
Erin R. Dix, ekreiser@rocklawpa.com
Erin R. Dix, dnelson@rocklawpa.com
George J. Zeckler, Esq., pleadings@thepropertyadvocates.com
George J. Zeckler, Esq., team9@thepropertyadvocates.com
George Zeckler, team9@thepropertyadvocates.com
George Zeckler, pleadings@thepropertyadvocates.com
George Zeckler, team9@stremslaw.com
Hunter Patterson, hunter@stremslaw.com
Michael Patrick, Esq., team9@stremslaw.com
Michael Paul Patrick Esq., Pleadings@thepropertyadvocates.com
Michael Paul Patrick Esq., Team9@thepropertyadvocates.com
Nicholas F. Van Valen, pleadings@rocklawpa.com
Nicholas F. Van Valen, nvanvalen@rocklawpa.com
Nicholas F. Van Valen, dnelson@rocklawpa.com
Robert L Rogers III, pleadings@rocklawpa.com
Robert L Rogers III, crodriguez@rocklawpa.com
Robert L Rogers III, rmoreno@rocklawpa.com
Scot Strems, pleadings@stremslaw.com

**Physically Served:**

# IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
# IN AND FOR MIAMI-DADE COUNTY, FLORIDA

**CASE NO.: 2019-030409-CA-01**

M&M SISTERS LLC,
BERTHA MENENDEZ &
MARIA MENENDEZ,
     Plaintiff,

v.

SCOTTSDALE INSURANCE COMPANY.,
     Defendant,

                          /

## NOTICE OF CANCELLATION HEARING ON

**PLEASE TAKE NOTICE** that the undersigned attorney has **CANCELLED** the hearing coordinated for **February 9, 2021** at **9:00 am** in front the Honorable Judge Barbara Areces on the Plaintiffs' Motion to Withdraw as Counsel for Plaintiffs.

## CERTIFICATE OF SERVICE

     I HERBY CERTIFY that a true and correct copy of the forgoing was served via Florida Courts e-portal to all counsel of record on this 28th day of January 2021.

Respectfully submitted,
**THE PROPERTY ADVOCATES, P.A.**
Attorney for Plaintiff
420 South Orange Ave, Suite 140
Orlando, Florida 32801
Telephone: (321) 234-3600
Facsimile: (321) 256-5367
Primary E-Service: pleadings@thepropertyadvocates.com
Secondary E-Service: Team9@thepropertyadvocates.com
Email: gzeckler@thepropertyadvocates.com
Email: dbrisbane@thepropertyadvocates.com
Email: garroyo@thepropertyadvocates.com
By:
GEORGE J. ZECKLER, ESQUIRE
FLORIDA BAR NO.: 1018291
DANIEL A. BRISBANE, ESQUIRE
FLORIDA BAR NO.: 1018877
GILBERT R. ARROYO, ESQUIRE
FLORIDA BAR NO.: 1017888

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

M&M SISTERS, LLC, BERTHA              Case No. 2019-030409-CA-01
MENENDEZ GARCIA & MARIA
MENDEZ,

   Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,

   Defendant.

_____/

### DEFENDANT'S MOTION TO DISMISS
### (Based on Plaintiffs' Failure to Retain Counsel or Otherwise Notify Court of Intent to Proceed *Pro Se* as Required in Order Granting Motion to Withdraw dated Jan. 21, 2021)

Defendant SCOTTSDALE INSURANCE COMPANY ("Scottsdale"), pursuant to this Court's Order Granting Motion to Withdraw dated January 21, 2021 (the "Withdrawal Order"), moves to dismiss the action previously filed by Plaintiffs M&M SISTERS, LLC ("M&M"), BERTHA MENDENDEZ GARCIA, and MARIA MENDEZ (collectively, "Plaintiffs") based upon their failure to comply with the Withdrawal Order, and in support states:

1.    Plaintiffs' Complaint is a declaratory judgment action involving an insurance claim. On December 5, 2019, Scottsdale responded to the Complaint by filing a Motion to Dismiss or, in the Alternative, Motion to Abate Pending Completion of Investigation (the "Motion to Abate"), seeking to abate the action to allow Scottsdale more time to complete its investigation of Plaintiff's claim. On August 25, 2020, the Circuit Court granted the Motion to Abate (but denied dismissal) by ordering the action abated for at least 120 days "to allow for inspection of the Subject Property." *See Order*

*Denying Motion to Dismiss (Aug. 25, 2020)*, at ¶¶ 2-4.

2.  On December 16, 2020 (while the action was abated), Plaintiffs' attorneys filed their Motion to Withdraw as Counsel for Plaintiffs (the "Motion to Withdraw"), seeking leave to withdraw as attorneys for all three Plaintiffs based upon "irreconcilable differences," even though Plaintiffs had not yet retained new attorneys.  On January 21, 2021, the Court entered the Withdrawal Order, in which it granted Plaintiffs' attorneys' Motion to Withdraw, but also ordered the Plaintiffs to either "retain new counsel and have that counsel file a written appearance with the Clerk of Court" or "file a written notice with the Clerk of Court advising that [Plaintiffs] will represent himself/herself" by no later than "30 days of the date of this Order"—i.e.,  by February 20, 2021.  *See Order Granting Motion to Withdraw (Jan. 21, 2021)*, at ¶ 3.  The Court also warned that if any of the Plaintiffs are business entities, such entities "*must retain counsel*."  *See id.*

3.  In the Withdrawal Order, the Court also warned, "Failure to comply with the preceding paragraph will create a presumption that [Plaintiffs] no longer wish to participate in this lawsuit and the Court may *sua sponte* or on motion of the opposing party **impose sanctions against** [Plaintiffs].  Sanctions may include the imposition of fees and costs, striking of pleadings, entry of default, and dismissal with prejudice."  *See id,* at ¶ 4.

4.  To date, none of the Plaintiffs have complied with the Withdrawal Order.  Specifically, none of the Plaintiffs have notified the Court in writing of either the name(s) of any new attorneys who are now representing them or of an intent by any of the Plaintiffs to represent themselves in this litigation—even though they were required to do so under the Withdrawal Order by no later than February 20, 2021.  This essentially

amounts to confirmation that the Plaintiffs no longer intend to proceed with the litigation of this action.

5.　　Scottsdale therefore respectfully requests that the Court enter an order dismissing this action, pursuant to the terms set forth in Paragraphs 3 and 4 of the Withdrawal Order.  Service of this Motion is being provided to Plaintiffs at the email address listed in Paragraph 6 of the Withdrawal Order.

WHEREFORE, Defendant SCOTTSDALE INSURANCE COMPANY respectfully requests that this Honorable Court enter an order dismissing the Complaint filed by M&M SISTERS, LLC, BERTHA MENDENDEZ GARCIA, and MARIA MENDEZ, and ordering any other just and appropriate relief.

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 4th day of March, 2021 to:  Plaintiffs M&M Sisters, LLC, Bertha Menendez Garcia, and Maria Garcia at sitting_pretty@bellsouth.net.

*/s/ Robert L. Rogers, III*
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

RLR/cdr

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.:  2019-030409-CA-01

M&M SISTERS, LLC, BERTHA MENENDEZ
GARCIA & MARIA MENENDEZ,

      Plaintiff,

vs.

SCOTTSDALE INSURANCE
COMPANY,

      Defendant.

_____/

## **NOTICE OF APPEARANCE**

    PLEASE TAKE NOTICE that the undersigned hereby appears as counsel of record on

behalf of M&M SISTERS, LLC, BERTHA MENENDEZ GARCIA & MARIA MENENDEZ,

the Plaintiff in the above-styled cause, and requests that copies of all pleadings, notices and

correspondence, etc., be furnished to him in accordance therewith.

*(Certificate of Service on Following Page)*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically furnished on or about March 5, 2021 via the Florida Court's e-filing Portal ("Portal") in accordance with Fla. R. Jud. Admin. 2. 516, which should furnish copies to the e-mail address of each party identified in the Portal's Service List

> **FONT & NELSON, PLLC**
>
> *Attorney for Plaintiff*
> 200 S. Andrews Avenue, Suite 501
> Fort Lauderdale, FL 33301
> Tel: (954) 248-2920; Fax: (954) 248-2134
> Service E-mail: Pleadings@fontnelson.com
>
> By:    /s/ *Frantz C. Nelson*
> **JOSE P. FONT, ESQ.**
> Florida Bar No. 0738719
> **FRANTZ C. NELSON, ESQ.**
> Florida Bar No. 0031134

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2019-030409-CA-01

M&M SISTERS, LLC. BERTHA
MENDENDEZ GARCIA & MARIA
MENENDEZ,

      Plaintiffs,

vs.

SCOTTSDALE INSURANCE COMPANY,

      Defendant.

_____/

## PLAINTIFFS' MOTION TO COMPEL MEDIATION

COMES NOW the Plaintiffs, M&M SISTERS, LLC. BERTHA MENDENDEZ GARCIA & MARIA MENENDEZ, by and through the undersigned counsel and pursuant to the Court's inherent authority, and hereby file the Plaintiffs' Motion to Compel Mediation, and as grounds in support thereof states as follows:

1.) This is an action for insurance benefits which relates to a sudden and accidental loss that occurred at a residence which the Defendant insured during the time period in question.

2.) Based on information and belief, and per the totality of the circumstances currently at hand in relation to the volume of insurance claims and litigation associated with, undersigned counsel is of the genuine belief that the parties and the judiciary would be greatly advantaged if the Court Ordered the parties to promptly proceed to mediation per a duly formatted scheduling order in relation to same.

3.) More specifically, and per the proposed agreed order (for which the Plaintiffs will duly notice this Court if an agreement is reached in part and/or whole) which is attached hereto as Exhibit 1.

WHEREFORE, the Plaintiffs, M&M SISTERS, LLC. BERTHA MENDENDEZ GARCIA & MARIA MENENDEZ respectfully request that that the Count enters an Order that corresponds with the relief sought forth in Exhibit 1, and/or alternatively, any other the relief that is deemed just and proper.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically furnished on or about <u>March 25, 2021</u> via the Florida Court's e-filing Portal ("Portal") in accordance with Fla. R. Jud. Admin. 2. 516, which should furnish copies to the e-mail address of each party identified in the Portal's Service List.

> **FONT & NELSON, PLLC**
> *Attorney for Plaintiff*
> 200 S. Andrews Ave., Suite 501
> Fort Lauderdale, FL 33301
> Tel: (954) 248-2920; Fax: (954) 248-2134
> Designated E-mail: pleadings@fontnelson.com
>
> BY:     /s/ Frantz C. Nelson
>        **JOSE P. FONT, ESQ.**
>        Florida Bar #:  0738719
>        **FRANTZ C. NELSON, ESQ.**
>        Florida Bar #: 031134

Exhibit 1

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2019-030409-CA-01

M&M SISTERS, LLC, BERTHA MENENDEZ GARCIA & MARIA MENENDEZ,

      Plaintiffs,

vs.

SCOTTSDALE INSURANCE COMPANY,

      Defendants.

_____/

## ORDER ON PLAINTIFFS'/PETITIONERS' MOTION TO COMPEL MEDIATION

THIS CAUSE, having come before the Court per the Plaintiffs'/Petitioners' Motion to Compel Mediation, and the Court being duly advised of the Motion and having heard the arguments of the parties, it is hereby:

ORDERED and ADJUDGED as follows:

1.     Plaintiffs' Motion to Compel Mediation is hereby GRANTED.

2.     That parties shall coordinate and complete mediation within forty (40) days.

3.     With regards to the coordination of the mediation per the dictates of this Order, the parties are to proceed expeditiously, and absent a showing of good cause for which relief shall be filed pursuant to Fla. R. Civ. P. 1.090, the coordination of the mediation shall be memorialized by the parties in writing, and by way of their designated e-mails in this matter.

4.     Any objection and corresponding motion that is not scheduled to be heard on motion calendar within 15 days of this Order, will render the objection waived.

_____

HONORABLE CIRCUIT COURT JUDGE

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE, FLORIDA

CASE NO: 2019-030409-CA-01

M&M SISTERS, LLC, BERTHA
MENENDEZ GARCIA & MARIA MENENDEZ,

      Plaintiffs,

vs.

SCOTTSDALE INSURANCE
COMPANY,

      Defendant,

_____/

## **PLAINTIFFS' MOTION TO COMPEL DEPOSITION FOR DATE CERTAIN**

      COMES NOW, the Plaintiffs, M&M SISTERS, LLC, BERTHA MENENDEZ GARCIA & MARIA MENENDEZ, by and through its undersigned counsel, and pursuant to Fla. R. Civ. P. 1.380, and hereby files this Motion to Compel Deposition for Date Certain and states as follows in support thereof:

1. This is a suit for homeowners' insurance benefits arising out of a loss which took place on or about May 6, 2019 and for which the Defendant's insured, SCOTTSDALE INSURANCE COMPANY., retained the Plaintiffs to perform remediation services pursuant to an assignment of benefits.

2. On March 16, 2021, the undersigned made their first request for coordinating a mutually convenient time and date for deposition of Defendant's Corporate Representative Deposition pursuant to Fla. R. Civ. P. 1.310(b)(6). ***A true and correct copy of the correspondence is attached hereto as Exhibit "A".***

3.  To date, the Defendant has failed to provide a date for the deposition.

4. As such, the Plaintiffs now seek a Court order requiring the Defendant's designated corporate representative to sit for deposition within 30 days of the date of the Court granting this motion.

WHEREFORE, the Plaintiffs, M&M SISTERS, LLC, BERTHA MENENDEZ GARCIA & MARIA MENENDEZ, prays this Honorable Court enter an Order granting its Motion to Compel Deposition for Date Certain, requiring the Defendant's designated corporate representative to appear for deposition on date certain, awarding attorney's fees and costs and any other relief this Court deems just under the circumstances.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically furnished on or about <u>March 25, 2021</u> via the Florida Court's e-filing Portal ("Portal") in accordance with Fla. R. Jud. Admin. 2. 516, which should furnish copies to the e-mail address of each party identified in the Portal's Service List.

**FONT & NELSON, PLLC**
*Attorney for Plaintiff*
200 South Andrews Ave., Suite 501,
Ft. Lauderdale, Florida 33301
Tel: (954) 248-2920
Fax: (954) 248-2134
Email: pleadings@fontnelson.com
        Fnelson@fontnelson.com


BY: __*/s/ Frantz C. Nelson*__
      **JOSE P. FONT, ESQ.**
      Florida Bar #:  0738719
      **FRANTZ C. NELSON, ESQ.**
      Florida Bar #: 031134

# EXHIBIT A

**Tue 3/16/2021 2:27 PM**

Good afternoon,

I am reaching out to confirm availability for mediation and Defendant's corporate representative deposition. Please advise if you're agreeable to any of the below mediators. Additionally please provide us with dates of availability of Defendant's corporate representative.

Ilida Alvarez
Brian Reeves
Curtis Hutchens

Thank you.


**Respectfully,**
**Nimra Salehjee**
***Legal Assistant***
FONT & NELSON
200 S. Andrews Avenue , Suite 501
Ft. Lauderdale, FL 33301
**Ph**: (954) 248-2920
**Direct**: (954) 248-2902
**Fax**:  (954) 248-2134
**E-Service**: pleadings@fontnelson.com

THIS E-MAIL IS INTENDED ONLY FOR THE ABOVE-NAMED RECIPIENT(S) AND IS CONFIDENTIAL
This e-mail message and attachments, if any, are intended solely for the use of the addressee hereof. In addition, this message and attachments, if any, may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, or otherwise using this transmission. Delivery of this message to any person other than the intended recipient is not intended to waive any legal right or privilege. If you have received this message in error, please promptly notify the sender by e-mail and immediately delete this message and attachments, if any, from your system.

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

M&M SISTERS, LLC, BERTHA MENENDEZ
GARCIA & MARIA MENENDEZ,     CASE NO.: 2019-030409-CA-01

    Plaintiffs,

vs.

SCOTTSDALE INSURANCE COMPANY,

    Defendant.

_____/

## NOTICE OF SET HEARING
*(Coordinated with Cheri Rodriguez from Defense Counsel on 03/26)*

    **YOU ARE HEREBY NOTIFIED** that the above cause is scheduled for a five-minute

hearing before the Honorable Barbara Areces, Circuit Court Judge, utilizing the Zoom platform,

on **Thursday, May 6 2021 at 9:00 AM.**, or as soon thereafter as can be heard:

    **PLAINNTIFFS' MOTION TO COMPEL DEPOSITION FOR DATE CERTAIN and
PLAINTIFFS' MOTION TO COMPEL MEDIATION**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically furnished on or about <u>March 30, 2021</u> via the Florida Court's e-filing Portal ("Portal") in accordance with Fla. R. Jud. Admin. 2. 516, which should furnish copies to the e-mail address of each party identified in the Portal's Service List.

**FONT & NELSON, PLLC**
*Attorneys for Plaintiff*
200 South Andrews Ave., Suite 501,
Ft. Lauderdale, Florida 33301
Tel: (954) 248-2920; Fax: (954) 248-2134
Service Email: <u>pleadings@fontnelson.com</u>

BY: <u> /s/ Frantz C. Nelson</u>
   **JOSE P. FONT, ESQ.**
   Florida Bar No. 0738719
   **FRANTZ C. NELSON, ESQ.**
   Florida Bar No.: 031134

Case 1:21-cv-24081-FAM Document 1-2 Entered on FLSD Docket 11/19/2021 Page 332 of
661

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2019-030409-CA-01
SECTION: CA23
JUDGE: Barbara Areces

**M&M SISTERS LLC et al**

Plaintiff(s)

vs.

**SCOTTSDALE INSURANCE COMPANY**

Defendant(s)

_____/

**ORDER SETTING DEADLINE TO SUBMIT JURY TRIAL READINESS
CERTIFICATION FORM AND CASE MANAGEMENT ORDER**

**THIS CAUSE**, having come before the Court on its own review of the file, the Court having a
responsibility to assure cases progress in a timely manner, jury trial having been demanded in
this cause, there being new procedures for calling jury trial cases to trial, and the Court being
otherwise fully advised in the premises, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.     Administrative Memo 21-A AF 24 CA 01, *In re: Amendment to the Establishment of
Jury Trial Readiness in Circuit Civil Division*, entered January 21, 2021, now
provides the manner in which cases in the Circuit Civil Division will be called for jury
trial.   The undersigned has opted to use the jury trial readiness certification option.

2.     **The parties in this cause shall submit the completed *Jury Trial Readiness
Certification Form*, with jury instructions, via email to my judicial
assistant,** 11thCA23@jud11.flcourts.org **by October 1, 2021 (hereinafter "Certification
Form Deadline").**   The Court will set a Case Management Conference after the Certification
Form Deadline solely to assure compliance with this order.

3.     **At least ninety (90) days prior to the Certification Form Deadline**, counsel for
each party shall file a list of the proper names and addresses of all witnesses who are expected to
testify in this cause, including all "hybrid" witnesses who may be considered a fact witness and
also give expert testimony.

4.     **At least sixty (60) days prior to the Certification Form Deadline**, counsel for each
party shall file a list of the proper names and addresses of all expert witnesses retained by the
parties who are expected to testify at the trial of this cause. The parties shall also list the specialty
of each expert, what element of the case the expert will express opinions on (standard of care,

causation, damages, etc.), and provide all parties a copy of the experts' report(s), if applicable, and/or provide a short summary of the testimony expected from each expert pursuant to Fla. R. Civ. P.1.280(b)(5). Each party is limited to one expert per specialty.

5.    Upon receipt of opposing counsel's expert witness disclosure, each party shall have fifteen (15) days to list the proper names of additional rebuttal experts or impeachment witnesses. The parties shall follow the instructions in paragraph 4 with regards to the information accompanying the listing of additional experts retained by the parties.

6.    **At least forty-five (45) days prior to the Certification Form Deadline**, all compulsory medical evaluations pursuant to Fla. R. Civ. P. 1.360 shall be completed.

7.    **At least thirty (30) days prior to the Certification Form Deadline**, counsel for each party shall file a list of all exhibits intended to be introduced as evidence at trial and make these exhibits available to opposing counsel for examination and inspection, including the initialing of the exhibits no later than five (5) days prior to the Certification Form Deadline.

8.    **At least thirty (30) days prior to the Certification Form Deadline** all Daubert Motions shall be filed and hearing on these motions shall be set NOT LATER THAN fifteen (15) days prior to the Certification Form Deadline.

9.    All dispositive motions and motions *in limine* must be filed and heard prior to the Certification Form Deadline.

10.    **At least fifteen (15) days prior to the Certification Form Deadline** all discovery shall be concluded.

11.    **At least ten (10) days prior to the Certification Form Deadline**, the parties shall file their page-line designation for depositions that they intend to read or play at trial; the opposing party shall have five (5) days thereafter to file objections and/or counter-designations. witnesses who are expected to testify in this cause, including all "hybrid" witnesses who may be considered a fact witness and also give expert testimony.

12.    **At least thirty (30) days prior to the Certification Form Deadline**, mediation shall have been completed. If agreed, parties may opt for participation in a Judicial Panel Case Resolution Conference, as provided for in Administrative Memo CIV 20-D AF CA 01, *In re: Establishment of Judicial Panel Case Resolution Conferences Pilot Program in the Circuit Civil Division*, instead of, or in addition to, typical mediation.  The parties shall immediately notify the Court in the event of settlement and submit a Stipulation and Order of Dismissal. As well, the parties shall advise the Court of the cancellation of any pending hearings.

13.    **At least fifteen (15) days prior to the Certification Form Deadline**, the parties must have final set for jury instructions and verdict form completed.

14.    Should the parties believe that a different schedule is required for the efficient administration of this matter, they are encouraged to meet and develop a joint stipulated order and/or set a case management conference pursuant to Fla. R. Civ. P. 1.200.

15.    In the event that the Certification Form Deadline is extended, the time limitations set forth herein are also extended and shall apply as to the new Certification Form Deadline.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>14th day of April, 2021</u>.



<u>2019-030409-CA-01 04-14-2021 1:13 PM</u>

Hon. Barbara Areces

**CIRCUIT COURT JUDGE**

Electronically Signed

<div style="border: 1px solid red;">

No Further Judicial Action Required on <u>**THIS MOTION**</u>

CLERK TO <u>**RECLOSE**</u> CASE IF POST JUDGMENT

</div>

**Electronically Served:**
Erin R. Dix, pleadings@rocklawpa.com
Erin R. Dix, ekreiser@rocklawpa.com
Erin R. Dix, dnelson@rocklawpa.com
Frantz C Nelson, pleadings@FontNelson.com
Frantz C Nelson, FNelson@FontNelson.com
Frantz C Nelson, scostello@fontnelson.com
George J. Zeckler, Esq., pleadings@thepropertyadvocates.com
George J. Zeckler, Esq., team9@thepropertyadvocates.com
George Zeckler, team9@stremslaw.com
George Zeckler, team9@thepropertyadvocates.com
George Zeckler, pleadings@thepropertyadvocates.com
Hunter Patterson, hunter@stremslaw.com
Jose Pete Font, pleadings@fontnelson.com
Jose Pete Font, jwilds@fontnelson.com
Jose Pete Font, gvega@fontnelson.com
Michael Patrick, Esq., team9@stremslaw.com
Michael Paul Patrick Esq., Pleadings@thepropertyadvocates.com
Michael Paul Patrick Esq., Team9@thepropertyadvocates.com
Nicholas F. Van Valen, pleadings@rocklawpa.com

Nicholas F. Van Valen, nvanvalen@rocklawpa.com
Nicholas F. Van Valen, dnelson@rocklawpa.com
Nimra Salehjee, nsalehjee@fontnelson.com
Robert L Rogers III, pleadings@rocklawpa.com
Robert L Rogers III, crodriguez@rocklawpa.com
Robert L Rogers III, rmoreno@rocklawpa.com
Scot Strems, pleadings@stremslaw.com


**Physically Served:**

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CIRCUIT CIVIL DIVISION**

**CASE NO.:** 2019-030409-CA-01
**SECTION:** CA23

**M&M SISTERS LLC et al**
Plaintiff(s),

vs.

**SCOTTSDALE INSURANCE COMPANY**
Defendant(s)

_____/

## ORDER SETTING CASE MANAGEMENT CONFERENCE

**YOU ARE ORDERED TO APPEAR** before the undersigned Judge for a Case Management Conference, in accordance with Rule 1.200(a), Florida Rules of Civil Procedure, on

**Date/Time:** 10-07-2021 at 11:30 AM
**Location:** Virtual Courtroom

**Due to COVID-19, this courthouse is closed for in-person appearance. Virtual Court is held remotely on the Zoom platform. You will receive an email from the Court with the information you need to connect to your event by video or phone if you are on the E-Filing Portal service list. You may also register for text notification via link below.**
https://cmap.jud11.flcourts.org/ebench/textNotificationsRegistration.jsp

**The court intends to specifically address the following motion/matter:**
 **Compliance with Submission of Certification Form (5 Minutes)**

In addition, the parties shall be prepared to argue and address all pending motions and issues in the case, including time-frame to complete discovery, for filing dispositive motions, and trial setting.

UPON COUNSEL'S FAILURE TO ATTEND THE CASE MANAGEMENT CONFERENCE, THE COURT MAY DISMISS THE ACTION, STRIKE PLEADINGS, ENTER DEFAULTS, LIMIT PROOF OF WITNESSES, AND/OR TAKE OTHER APPROPRIATE ACTION.

This Case Management Conference may not be cancelled without the Court's written permission.

    **DONE AND ORDERED** in Chambers, at Miami-Dade County, Florida, on this __**14th day of April, 2021**__ .

2019-030409-CA-01 04-14-2021 3:10 PM

**2019-030409-CA-01 04-14-2021 3:10 PM**

**Barbara Areces**
CIRCUIT COURT JUDGE

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

Copies Furnished to:

nsalehjee@fontnelson.com
Pleadings@thepropertyadvocates.com
Team9@thepropertyadvocates.com
team9@stremslaw.com
pleadings@rocklawpa.com
ekreiser@rocklawpa.com
dnelson@rocklawpa.com
pleadings@stremslaw.com
team9@thepropertyadvocates.com
pleadings@thepropertyadvocates.com
pleadings@FontNelson.com
FNelson@FontNelson.com
scostello@fontnelson.com
hunter@stremslaw.com
team9@stremslaw.com
pleadings@rocklawpa.com
nvanvalen@rocklawpa.com
dnelson@rocklawpa.com
pleadings@rocklawpa.com
crodriguez@rocklawpa.com
rmoreno@rocklawpa.com
pleadings@thepropertyadvocates.com
team9@thepropertyadvocates.com
pleadings@fontnelson.com
jwilds@fontnelson.com
gvega@fontnelson.com

Filing # 126046292 E-Filed 05/03/2021 02:32:44 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

Case No. 2019-030409-CA-01

M&M SISTERS, LLC, BERTHA
MENENDEZ GARCIA & MARIA
MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,

    Defendant.

_____/

### DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL MEDIATION AND PLAINTIFF'S MOTION TO COMPEL DEPOSITION FOR DATE CERTAIN

    Defendant SCOTTSDALE INSURANCE COMPANY ("Scottsdale") serves this Response in Opposition to Plaintiffs M&M SISTERS, LLC ("M&M"), BERTHA MENDENDEZ GARCIA, and MARIA MENDEZ's ("Plaintiffs") Motion to Compel Mediation (the "Mediation Motion") and Motion to Compel Deposition for Date Certain (the "Depo Motion"), and states:

    1.    In their Mediation Motion, Plaintiffs seek to compel Scottsdale to schedule mediation for this matter.  In their Depo Motion, Plaintiffs seek to compel Scottsdale to provide a date for the deposition of its corporate representative within thirty (30) days. However, Scottsdale has already agreed to schedule mediation and is working with Plaintiffs' counsel now to schedule mediation, and Plaintiffs' counsel has already agreed "to schedule an early mediation before taking any depositions" in this case. *See Emails between The Rock Law Group, P.A. and Font & Nelson (Apr. 14-15, 2021)*, attached here

as **Exhibit "A."**  Plaintiffs Mediation Motion and Depo Motion are therefore moot and have already been amicably resolved, and an order granting either motion is unnecessary. *See id.*[1]

3.      Furthermore, to the extent Plaintiffs seek to compel mediation "within forty (40) days" (*see Mediation Motion*, at Exh. A, ¶ 2), such a short deadline is unnecessary and unreasonable, given the busy schedules of all parties who will have to participate in that mediation.  There is also no need for such rush, as the case has not yet been noticed for trial, and although the Court entered its Order Setting Deadline to Submit Jury Trial Readiness Certification Form and Case Management Order (the "Pre-Trial Order") on April 14, 2021, the deadline for completion of mediation under that Order is not until September 1, 2021.  *See Pre-Trial Order*, at ¶ 12.

4.      In fact, Plaintiffs themselves are in no apparent rush to schedule mediation. After Scottsdale agreed to use mediator Curtis Hutchens and invited Plaintiffs' counsel to obtain mediation dates from Mr. Hutchens and share those dates with Scottsdale (*see* **Exh. A**), Plaintiffs' counsel never did so—even though Plaintiffs are the ones demanding mediation.  Plaintiffs therefore cannot reasonably demand now that mediation occur "within forty (40) days."

---

[1] In fact, the subject action—a first-party breach of insurance policy claim involving a claim for property damage—was almost dismissed earlier this year based upon Plaintiffs' failure to litigate.  On January 21, 2021, this Court entered an order granting the Motion to Withdraw as Counsel for Plaintiffs filed by Plaintiffs' prior attorneys, in which the Court not only permitted Plaintiffs' prior attorneys to withdraw, but also ordered the Plaintiffs to either "retain new counsel and have that counsel file a written appearance with the Clerk of Court" or "file a written notice with the Clerk of Court advising that [Plaintiffs] will represent himself/herself" by no later than "30 days of the date of this Order" (by February 20, 2021).  *See Order Granting Motion to Withdraw (Jan. 21, 2021)*, at ¶ 3.  The Court also warned, "Failure to comply with the preceding paragraph will create a presumption that [Plaintiffs] no longer wish to participate in this lawsuit and the Court may *sua sponte* or on motion of the opposing party impose sanctions against [Plaintiffs, which] may include . . . striking of pleadings, entry of default, and dismissal with prejudice."  *See id,* at ¶ 4. Plaintiffs failed to comply with this order, and instead waited until weeks after the Court-ordered deadline to file a Notice of Appearance by their current attorneys on March 5, 2021.  Plaintiffs then filed the Depo Motion and Mediation Motion shortly thereafter, which, as referenced above, have both been amicably resolved by Scottsdale.

5.      Also, any demand by Plaintiffs for dates to depose Scottsdale's corporate representative "within 30 days" (*see Depo Motion*, at ¶ 4) is similarly unreasonable given the limited availability of Scottsdale's corporate representative, and is similarly unnecessary since the deadline for completion of discovery is not until September 16, 2021.  *See Pre-Trial Order*, at ¶ 10.  And more importantly, Plaintiff have already agreed to not schedule that deposition until after mediation.  *See* **Exh. A**.

6.      For all of these reasons, the Depo Motion and Mediation Motion must be denied.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 3rd day of May, 2021 to:  Frantz C. Nelson, Esquire, Font & Nelson, LLC, pleadings@fontnelson.com; FNelson@FontNelson.com; and SCostello@FontNelson.com

*/s/ Robert L. Rogers, III*
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

RLR/cdr

| | |
|---|---|
| **From:** | Cheri Rodriguez |
| **To:** | "Samantha Costello"; "Frantz Nelson" |
| **Cc:** | "Nimra Salehjee"; "filings"; "Jennifer Wilds" |
| **Subject:** | RE: Case No. 2019-030409-CA-01; M&M Sisters, LLC, Bertha Menendez Garcia & Maria Mendez v. Scottsdale Insurance Company |
| **Date:** | Thursday, April 15, 2021 1:17:04 PM |

[SENT ON BEHALF OF ATTORNEY ROBERT L. ROGERS, III]

Good Afternoon Samantha,

Please be advised that the only mediator from your below list of mediators for which we will agree to utilize in this matter is Curtis Hutchens. As such, please provide proposed dates and times to conduct a "remote" mediation with Mr. Hutchens at your earliest convenience. Thereafter, we will review the dates for our availability and our client's availability.

Thank you, and we look forward to hearing from you.

-Cheri

*Cherilyn D. Rodriguez*
Legal Assistant to Robert L. Rogers, III, Esquire
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, Florida 32751
(407) 647-9881 (telephone)
(407) 647-9966 (facsimile)
crodriguez@rocklawpa.com

NOTICE: This e-mail is from a law firm, The Rock Law Group, P.A., and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer, and do not copy or disclose it to anyone else. If you are not an existing client of The Rock Law Group, P.A., do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to The Rock Law Group, P.A. in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of The Rock Law Group, P.A., you should maintain its contents in confidence in order to preserve the attorney-client or work-product privilege that may be available to protect confidentiality.

**From:** Samantha Costello [mailto:scostello@fontnelson.com]
**Sent:** Wednesday, April 14, 2021 2:31 PM
**To:** Cheri Rodriguez; Frantz Nelson
**Cc:** Nimra Salehjee; filings; Jennifer Wilds
**Subject:** RE: Case No. 2019-030409-CA-01; M&M Sisters, LLC, Bertha Menendez Garcia & Maria Mendez v. Scottsdale Insurance Company

Hi Cheri,

Yes, we are agreeable to scheduling an early mediation. Our preferred mediators are:

**Defendant's Exhibit "A"**

- Ilida Alvarez
- Curtis Hutchens
- Brian Reeves

Please advise if you are agreeable to using any of those.

*Samantha Costello*

**Paralegal to Frantz C. Nelson, Esq.**

FONT & NELSON

200 S. Andrews Avenue , Suite 501
Ft. Lauderdale, FL 33301
Ph: (954) 248-2920
Fax:  (954) 248-2134
E-Service: pleadings@fontnelson.com

*\*NOTE: Pursuant to our company's COVID-19 policy, most of our staff is working remotely.  Please allow our office additional time in which to respond to e-mails and telephone calls during this time. Due to the current situation, staff members may not receive all telephone calls.  If you are trying to reach a staff member, please be sure to send an e-mail to the staff member, rather than relying solely upon voice messages.  Thank you in advance for your understanding and patience.*

THIS E-MAIL IS INTENDED ONLY FOR THE ABOVE-NAMED RECIPIENT(S) AND IS CONFIDENTIAL This e-mail message and attachments, if any, are intended solely for the use of the addressee hereof. In addition, this message and attachments, if any, may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, or otherwise using this transmission. Delivery of this message to any person other than the intended recipient is not intended to waive any legal right or privilege. If you have received this message in error, please promptly notify the sender by e-mail and immediately delete this message and attachments, if any, from your system.

**From:** Cheri Rodriguez <CRodriguez@rocklawpa.com>
**Sent:** Wednesday, April 14, 2021 2:06 PM
**To:** Frantz Nelson <fnelson@fontnelson.com>; Samantha Costello <scostello@fontnelson.com>
**Cc:** Nimra Salehjee <nsalehjee@fontnelson.com>
**Subject:** Case No. 2019-030409-CA-01; M&M Sisters, LLC, Bertha Menendez Garcia & Maria Mendez v. Scottsdale Insurance Company

[SENT ON BEHALF OF ATTORNEY ROBERT L. ROGERS, III]

Good Afternoon Attorney Nelson,

     Defendant, Scottsdale Insurance Company ("Scottsdale"), would like to schedule an early mediation before taking any depositions concerning the above-referenced matter.  Will you and your client agree to schedule mediation before any depositions in this case?  If so, Scottsdale is agreeable to the following mediators:  Robert Dulberg, John Salmon, Lester Langer, Eric Kleinman, or Markel Arrizabalaga.

     Thank you, and we look forward to hearing from you.

-Robert L. Rogers, III, Esquire


*Cherilyn D. Rodriguez*
Legal Assistant to Robert L. Rogers, III, Esquire
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, Florida 32751
(407) 647-9881 (telephone)
(407) 647-9966 (facsimile)
crodriguez@rocklawpa.com

NOTICE:  This e-mail is from a law firm, The Rock Law Group, P.A., and is intended solely for the use of the individual(s) to whom it is addressed.  If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer, and do not copy or disclose it to anyone else.  If you are not an existing client of The Rock Law Group, P.A., do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to The Rock Law Group, P.A. in reply that you expect it to hold in confidence.  If you properly received this e-mail as a client, co-counsel or retained expert of The Rock Law Group, P.A., you should maintain its contents in confidence in order to preserve the attorney-client or work-product privilege that may be available to protect confidentiality.

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

M&M SISTERS, LLC, BERTHA MENENDEZ
GARCIA & MARIA MENDEZ

CIVIL DIVISION

       Plaintiffs,

CASE NO.: 2019-030409-CA-01

v.

SCOTTSDALE INSURANCE
COMPANY,

       Defendant.

_____/

## AMENDED COMPLAINT

**COME NOW**, the Plaintiffs, M&M SISTERS, LLC, BERTHA MENENDEZ GARCIA and MARIA MENDEZ (hereinafter "Plaintiff"), and hereby sue Defendant, SCOTTSDALE INSURANCE COMPANY, ("Defendant"), and alleges as follows:

### PARTIES, JURISDICTION & VENUE

1) This is an action for breach of contract, and the amount at issue exceeds thirty thousand and 00/100 dollars ($30,000.00), exclusive of interest, costs and attorney's fees.

2) At all times material hereto, the Defendant, SCOTTSDALE INSURANCE COMPANY is/as been a Florida corporation authorized and doing business in Miami-Dade County, Florida. The Defendant is a duly and lawfully registered entity as required by Florida Law, and sells homeowners' insurance policies providing coverage throughout the State that are subject to governing Florida Law.

3) At all times material hereto, the Plaintiffs, M&M SISTERS, LLC, and BERTHA MENENDEZ GARCIA own/have owned and continue to own the property insured by the

Defendant located at 1111 NW 43rd Avenue, Miami, Florida, 33126 (hereinafter "Property".)

4) Venue and jurisdiction are proper in MIAMI-DADE County, Florida, because the subject contract was executed in said county, and it is the county where the property in litigation is located.

5) All conditions precedent to the filing of this lawsuit have occurred, have been waived, or have been performed.

## GENERAL ALLEGATIONS

6) At all times material hereto, which includes May 6, 2019 to present, in consideration of a premium paid by the Plaintiff/Insured, there was in full force and effect a certain homeowner's insurance policy ("Policy") issued by the Defendant bearing policy number CPS3064779. A copy of the Policy is attached as **Exhibit "A"** and is hereby incorporated by reference.

7) Under the terms of the Policy, the Defendant agreed to provide insurance coverage to the Plaintiff's property against certain losses. The damaged property is located at 1111 NW 43rd Avenue, Miami, Florida, 33126 ("Property").

## COUNT I - BREACH OF CONTRACT

8) The Plaintiffs reincorporate paragraphs 1 – 7 as if fully set forth herein.

9) On or about May 6, 2019 to present, while the Policy was in full force and effect, the Property sustained a sudden, accidental and/or otherwise covered loss ("Covered Loss") under the Policy, resulting in extensive damage to the interior and exterior of the insured risk.

10) The Plaintiffs duly notified the Defendant of the covered loss, and the Defendant assigned claim number 01892450.

11) The Defendant assigned an insurance adjuster to adjust the Loss.

12) Plaintiffs were ready and willing to meet with Defendant as reasonably necessary to inspect the Subject Property, and to comply with Plaintiffs' obligations under the Subject Policy.

13) Plaintiffs requested that any inspection of the Subject Property be conducted with Audio and Video recording. However, the Defendant refused to complete the inspection under such terms and conditions, and as such, caused serious delay in the investigation of the claim. More specifically, the Defendant asserted that it is/was illegal to record the inspection, as it was/is a violation of the law. The Defendant improperly asserted a right to privacy within the inspection. This was done despite the fact that there was no term in the Subject Policy, no relevant case law, or court opinion, nor applicable statutory code or section, prohibiting the recording of the inspection of the Subject Property.

14) On Or about October 16, 2019, the Plaintiffs were forced to file a Petition for Declaratory Relief, seeking an adjudication from this Honorable Court to determine whether in fact the Plaintiffs were permitted to record via audio and video, the Defendant's inspection of the Subject Property.

15) On December 5, 2019, the Defendant filed a Motion to Dismiss, or in the Alternative, Motion to Abate the Pending Action, Pending Completion of its Investigation.

16) On August 25, 2020, this Honorable Court issued an Order Denying Defendant's Motion to Dismiss. The Court further directed that the case was to be abated for a period of ninety (90) days to allow for inspection of the Subject Property to be completed. This Honorable Court further ruled that the Plaintiffs shall be able to document the proceedings using both video and audio recording. Additionally, this Honorable Court held that the matter was to

be abated for an additional thirty (30) days beyond the ninety (90) days, to allow for the Defendant to communicate its coverage decision to Plaintiffs. However, the abate was to automatically lift upon the communication of the Defendant's Coverage Decision, should one come sooner than the one hundred and twenty (120) days.

17) On November 19, 2020, the inspection of the Subject Property was completed, and a Coverage Decision was made.

18) On January 21, 2021, this Court entered an Amended Order Denying the Defendant's Motion to Dismiss. The Order directed that abatement was lifted based upon the Defendant's issuance of a coverage determination to Plaintiffs' claim at issue in this action.

19) As of the date of filing this lawsuit, the Defendant has failed to duly and fully issue payment to the Plaintiffs for the covered losses and/or damages under the Policy, including, but not limited to, the actual cash value of the loss and/or damages.

20) The Plaintiffs have suffered, and continue to suffer, direct and consequential damages due to the Defendant's expressed, and/or anticipatory failure to perform under the Policy.

21) The Defendant had a duty to promptly investigate, adjust and issue payment for the Covered Loss.

22) Notwithstanding the Plaintiffs' performance of material conditions to payment under the Policy that were either substantially complied with and/or waived by the Defendant, the Defendant refuses to perform its duty to issue payment for, at a minimum, actual cash value as mandated by governing Florida Statute and the Policy.

23) The Defendant's failure to duly perform constitutes a material breach of the Policy, and the Plaintiffs have suffered direct, actual and consequential damages as a result thereof.

24) The Plaintiffs have been obligated to retain the undersigned attorney for the prosecution of this action and are entitled to an award of reasonable attorney's fees and costs pursuant to Florida Statute Sections 627.428 and 57.041.

WHEREFORE, the Plaintiffs respectfully requests that this Honorable Court enters Final Judgment in their favor and for the following:

    a. Full payment of direct, actual and/or consequential damages that have been sustained as a result of the Defendant's breach of contract;

    b. Payment of pre-judgment interest pursuant to Fla. Stat. Secs. 55.03l;

    c. Pursuant to Fla. Stat. Secs. 627.428, 92.231 and 57.041, an award reasonable attorneys' fees and costs; and/or

    d. Any other relief the Court deems just and proper.

## JURY TRIAL DEMAND

25) The Plaintiffs hereby demand a trial by jury on all issues so triable.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically furnished on or about <u>May 4, 2021</u> via the Florida Court's e-filing Portal ("Portal") in accordance with Fla. R. Jud. Admin. 2. 516, which should furnish copies to the email address of each party identified in the Portal's Service List.

**FONT & NELSON, PLLC**
*Attorneys for Plaintiff*
200 S. Andrews Ave., Suite 501
Fort Lauderdale, FL 33301

Page **5** of **6**

Tel: (954) 248-2920; Fax: (954) 248-2134
Designated E-mail: pleadings@fontnelson.com


BY:    */s/ Frantz C. Nelson*
        **JOSE P. FONT, ESQ.**
        Florida Bar #: 0738719
        **FRANTZ C. NELSON, ESQ.**
        Florida Bar #: 031134

# EXHIBIT A



**Nationwide®**

## Certification

I, Ebone M Lewis, as a duly authorized Scottsdale Insurance Company associate entrusted with oversight of the system of record from which this copy was produced, based upon information and belief, certify under the penalty of perjury that this attached copy of CPS3064779 , 07/13/2018 to 07/13/2019 was made at or near the time of certification, as part of regularly conducted business activities, and is a true and accurate copy of the official record kept as part of regular business activities.

Signature

September 18, 2019

Date

EBONE M LEWIS

Print Name

CL Lead Processor

Title

# ADDENDUM

**Some internal notes, stamps or typing on the Declaration sheet may appear.  The intended use for these is internal only and may not have been a part of the policy received by the insured.**

**Policy fees, inspection fees or taxes, or additional instructional stamps may have appeared on the policy received by the insured but may not appear on this copy.**



Underwritten by: Scottsdale Insurance Company
Home Office: One Nationwide Plaza • Columbus, Ohio 43215
Administrative Office: 8877 North Gainey Center Drive • Scottsdale, Arizona 85258
1-800-423-7675 • A Stock Company

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                                    President

The information contained herein replaces any similar information contained elsewhere in the policy.

UTS-COVPG (1-16)

# COMMON POLICY DECLARATIONS

| Renewal of<br>CPS2687540 | Underwritten by: Scottsdale Insurance Company<br>Home Office:<br>One Nationwide Plaza ▪ Columbus, Ohio 43215<br>Administrative Office:<br>8877 North Gainey Center Drive▪ Scottsdale, Arizona 85258<br>1-800-423-7675▪ A STOCK COMPANY | Policy Number<br>CPS3064779 |
|---|---|---|

**ITEM 1.** Named Insured and Mailing Address

M&M SISTERS LLC; BERTHA MENENDEZ
GARCIA & MARIA MENENDEZ
1710 PIZARRO STREET
CORAL GABLES, FL  33134

Agent Name and Address

SCU, A DIVISION OF CRC INSURANCE
SERVICES INC
1000 NW 57TH COURT, STE 670
MIAMI, FL 33126

Agent No.: __09020__        Program No.: __79__

| **ITEM 2.** Policy Period | From: 07/13/2018 | To: 07/13/2019 | Term: 365 DAYS |
|---|---|---|---|

**12:01 A.M., Standard Time at the mailing address shown in ITEM 1.**

Business Description:  APARTMENT BUILDING

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Premium Summary |
|---|---|
| Commercial General Liability Coverage Part | $ 1,732 |
| Commercial Property Coverage Part | $ 6,722 |
| Commercial Crime And Fidelity Coverage Part | $ NOT COVERED |
| Commercial Inland Marine Coverage Part | $ NOT COVERED |
| Commercial Auto Coverage Part | $ NOT COVERED |
| Professional Liability Coverage Part | $ NOT COVERED |
|  | $ |
|  | $ |
| **Total Policy Premium:** | $ 8,454.00 |
| POLICY FEE | $ 35.00 |
| SURPLUS LINES TAX | $ 424.45 |
| SERVICE FEE | $ 8.49 |
| SURCHARGE FEE | $ 4.00 |
|  | $ |
|  | $ |
| **Policy Total:** | $ 8,925.94 |

Form(s) and Endorsement(s) made a part of this policy at time of issue:
**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

EXCELLENCE INSURANCE LLC
3801 SW 107TH AVENUE
MIAMI, FL 33165
EB 07/17/18

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH
THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORM(S)
AND ENDORSEMENT(S), IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. _____ CPS3064779 _____          Effective Date: _____ 07/13/2018 _____
                                                                    12:01 A.M., Standard Time

Named Insured  M&M SISTERS LLC; BERTHA MENENDEZ          Agent No. _____ 09020 _____

```
                    UTS-COVPG  1-16        Cover Page
                    OPS-D-1    1-17        Common Policy Declarations
                    UTS-SP-2   12-95       Schedule Of Forms and Endorsements
                    COMMON FORMS
                    UTS-SP-3   8-96        Locations Schedule
                    IL 00 17   11-98       Common Policy Conditions
                    IL 09 53   1-15        Excl-Certified Acts Terrorism
                    UTS-9g     5-96        Service Of Suit Clause
                    UTS-119g   6-14        Minimum Earned Cancellation Premium

                    GENERAL LIABILITY FORMS
                    CLS-SD-1L  8-01        GL Supplemental Dec
                    CLS-SP-1L  10-93       GL Ext Supplemental Dec
                    CG 00 01   4-13        General Liab Coverage
                    CG 20 18   4-13        AI-Mortgagee-Assignee-Receiver
                    CG 21 06   5-14        Excl-Access Of Confidential Or Personal Info
                    CG 21 44   4-17        Designated Premises/Project/Operation Limitation
                    CG 21 47   12-07       Employment-Related Practices Exclusion
                    CG 21 67   12-04       Fungi Or Bacteria Excl
                    CG 21 73   1-15        Exclusion-Certified Acts Of Terrorism
                    CG 24 26   4-13        Amend Of Insured Contract Definition
                    GLS-30s    1-15        Contractors Special Conditions
                    GLS-47s    10-07       Minimum & Advance Prem Endt
                    GLS-152s   8-16        Amendment To Other Insurance Condition
                    GLS-282s   7-16        Multi-Unit Habitational Conversion Excl
                    GLS-289s   11-07       Known Injury/Dmg Excl-Personal/Advertise Injury
                    GLS-341s   8-12        Hydraulic Fracturing Excl
                    GLS-457s   10-14       Aircraft Exclusion
                    IL 00 21   9-08        Nuclear Energy Exclusion
                    UTS-74g    8-95        Punitive/Exemplary Damage Exclusion
                    UTS-266g   5-98        Asbestos Exclusion
                    UTS-267g   5-98        Lead Contamination Exclusion
                    UTS-365s   2-09        Amend Of Nonpayment Cancel Condition
                    UTS-428g   11-12       Premium Audit

                    PROPERTY FORMS
                    CPS-SD-1   2-16        Property Supplemental Dec
                    CPS-SP-5L  6-92        Mortgage Holders Schedule
                    CP 00 10   10-12       Building & Personal Prop Cov
                    CP 00 30   10-12       Business Income With Extra Expense Cov
                    CP 00 90   7-88        Property Conditions
                    CP 01 40   7-06        Excl Of Loss Due To Virus Or Bacteria
                    CP 10 30   9-17        Causes Of Loss-Special Form
                    FS-18      11-86       Total-Constructive Loss Clause
                    UTS-183g   12-16       Windstorm Or Hail Deductible

                    STATE FORMS
                    CFS-68s-FL  1-12       FL-Changes
                    CFS-103-FL  1-16       FL-Sewer Or Drain Definition Endorsement
                    IL 04 01    2-12       FL-Sinkhole Loss Coverage
                    UTS-29-FL   6-97       FL-Cancel-Nonrenew

                    POLICYHOLDER NOTICES
                    NOTX0178CW  3-16       Claim Reporting Information
                    NOTX0423CW  2-15       Notice Of Terrorism Ins Cov
                    NOTS0381FL  7-09       FL-Policyholder Notice
```


SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF LOCATIONS

Policy No. CPS3064779

Effective Date 07/13/2018
12:01 A.M. Standard Time

Named Insured M&M SISTERS LLC; BERTHA MENENDEZ

Agent No. 09020

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 1 | 1 | 1111 NW 43 AVENUE<br>MIAMI, FL 33126 | APARTMENT BLDG |

UTS-SP-3 (8-96)

HOME OFFICE

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc.,  1998 ◻

**POLICY NUMBER:** CPS3064779                                              **IL 09 53 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

      BOILER AND MACHINERY COVERAGE PART
      COMMERCIAL INLAND MARINE COVERAGE PART
      COMMERCIAL PROPERTY COVERAGE PART
      CRIME AND FIDELITY COVERAGE PART
      EQUIPMENT BREAKDOWN COVERAGE PART
      FARM COVERAGE PART
      STANDARD PROPERTY POLICY

**SCHEDULE**

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

 Copyright, Insurance Services Office, Inc., 2015
HOME OFFICE                                         i109530115.fap

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D.   Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

Copyright, Insurance Services Office, Inc., 2015

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The officer named below is authorized and directed to accept service of process on behalf of the Company:

CHIEF FINANCIAL OFFICER; DEPARTMENT OF FINANCIAL SERVICES

200 EAST GAINES STREET

TALLAHASSEE, FL 32399

Having accepted service of process on behalf of the Company, the officer is authorized to mail the process or a true copy to:

NOT REQUIRED

_____

_____

/

_____      _____
AUTHORIZED REPRESENTATIVE      DATE

UTS-9g (5-96)

HOME OFFICE      uts9gc.fap

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM EARNED CANCELLATION PREMIUM

The following provision is added to the Cancellation Condition:

If You request cancellation of this policy, We will retain not less than __25%__ of the original premium.

/

AUTHORIZED REPRESENTATIVE                                    DATE



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy No. _____ CPS3064779 _____ ____ Effective Date _____ 07/13/2018 _____
12:01 A.M., Standard Time

Named Insured  M&M SISTERS LLC; BERTHA MENENDEZ  Agent No. _____ 09020 _____

**Item 1.** Limits of Insurance

| Coverage | Limit of Liability | |
|---|---|---|
| Aggregate Limits of Liability | $ _____ 1,000,000 _____ | Products/Completed Operations Aggregate |
| | $ _____ 2,000,000 _____ | General Aggregate (other than Products/Completed Operations) |
| Coverage A - Bodily Injury and Property Damage Liability | $ _____ 1,000,000 _____ | any one occurrence subject to the Products/Completed Operations and General Aggregate Limits of Liability |
| Damage to Premises Rented to You Limit | $ _____ 100,000 _____ | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B - Personal and Advertising Injury Liability | $ _____ 1,000,000 _____ | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C - Medical Payments | $ _____ 5,000 _____ | any one person subject to the Coverage A occurrence and the General Aggregate Limits |

**Item 2.** Description of Business

Form of Business:

☐ Individual  ☐ Partnership  ☐ Joint Venture  ☐ Trust  ☒ Limited Liability Company

☐ Organization including a corporation (other than Partnership, Joint Venture or Limited Liability Company)

Location of All Premises You Own, Rent or Occupy:

**See Schedule of Locations**

**Item 3.** Forms and Endorsements

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

**Item 4.** Premiums

| | | |
|---|---|---|
| Coverage Part Premium: | $ | 1,732 |
| Other Premium: | $ | |
| Total Premium: | $ | 1,732 |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

 **SCOTTSDALE INSURANCE COMPANY**®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. _CPS3064779_                          Effective Date: _07/13/2018_
                                                 12:01 A.M., Standard Time

Named Insured _M&M SISTERS LLC; BERTHA MENENDEZ_      Agent No. _09020_

| Prem. No. 1 | Bldg. No. 1 | Class Code 60010 | Exposure 15 | Basis UNITS | |
|---|---|---|---|---|---|
| **Class Description:** APARTMENT BUILDINGS (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | 115.83 | 1,732 |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | INCL | INCL |
| Prem. No. 1 | Bldg. No. 1 | Class Code 49950 | Exposure | Basis | |
| **Class Description:** ADDITIONAL INSURED- CG2018 | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | INCL | INCL |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | | |
| Prem. No. | Bldg. No. | Class Code | Exposure | Basis | |
| **Class Description:** | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | | |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | | |
| Prem. No. | Bldg. No. | Class Code | Exposure | Basis | |
| **Class Description:** | | | | Premises/Operations | |
| | | | | Rate | Premium |
| | | | | | |
| | | | | Products/Comp Operations | |
| | | | | Rate | Premium |
| | | | | | |

CLS-SP-1L (10-93)                    HOME OFFICE                    clsspllf.fap

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

  **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

  **(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

  **(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

  **(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

  **(a)** Employment by the insured; or

  **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

  **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)** Less than 26 feet long; and

  **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

  **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

  **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

© Insurance Services Office, Inc., 2012

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.  Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.  Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.  Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q.  Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 © Insurance Services Office, Inc., 2012

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.** Damages under Coverage **A;** and

    **b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

    No person or organization has a right under this Coverage Part:

    **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

    A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

  **(a)** Snow removal;

  **(b)** Road maintenance, but not construction or resurfacing; or

  **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

  **(1)** Products that are still in your physical possession; or

  **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

  **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

  **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

  **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

POLICY NUMBER: CPS3064779              **COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED -
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| MERCANTILE COMMERCEBANK N.A. ISAOA<br>12496 NW 25 STREET<br>MIAMI, FL 33182 | REFER TO LOCATION SCHEDULE |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

POLICY NUMBER: CPS3064779

COMMERCIAL GENERAL LIABILITY
CG 21 44 04 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| | |
|---|---|
| **Premises:**<br>REFER TO LOCATION SCHEDULE | |
| **Project Or Operation:** | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01,** the provisions under this Paragraph **A.** apply:

**1.** Paragraph **1.b.** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**2.** Paragraph **1.b.** under **Section I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

Copyright, Insurance Services Office, Inc., 2016
HOME OFFICE

**(b)** In connection with the project or operation shown in the Schedule; and

**(2)** The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I - Coverage C - Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**B.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 02,** the provisions under this Paragraph **B.** apply:

**1.** Paragraph **1.b.** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V** - Extended Reporting Periods.

**2.** Paragraph **1.b.** under **Section I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule;

**(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

Copyright, Insurance Services Office, Inc., 2016

**(3)** A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V -** Extended Reporting Periods.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I - Coverage C - Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

 Copyright, Insurance Services Office, Inc., 2016

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2014

COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTORS SPECIAL CONDITIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS:**

**Contractors Special Conditions**

You will obtain current certificates of insurance from all independent contractors providing evidence of:

**1.** "Bodily injury" and "property damage" liability Limits of Insurance equal to or greater than the limits provided by this policy;

**2.** Coverage equal to or greater than the coverage provided by this policy; and

**3.** Effective dates of coverage that "coincide" with the effective dates of coverage on this policy.

Failure to comply with this condition does not alter the coverage provided by this policy, but will result in an additional premium charge.

The following is added to **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS,** paragraph **5. Premium Audit:**

Should you fail to provide current certificates of insurance from all independent contractors at such times as we request to complete a premium audit, a premium charge will be made. The premium charge will be computed by multiplying the "total cost" of all work sublet that fails to meet the above condition, by the rate per $1,000 payroll for the applicable classification of the work performed. The premium charge will be computed by multiplying our usual and customary rate per $1,000 payroll for that classification.

For purposes of this endorsement the following definitions apply:

"Total cost" means the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work and all fees, bonuses or commissions paid.

"Coincide" means that the effective dates of coverage for all policies of all independent contractors covers that period of time during which work was performed for you within the effective dates covered by this policy.

AUTHORIZED REPRESENTATIVE          DATE

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM AND ADVANCE PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**MINIMUM PREMIUM** _____100_____ **%**

Item **5.b.** of the **Premium Audit** condition under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, SECTION IV - LIQUOR LIABILITY CONDITIONS** and **SECTION IV - PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS** is amended to read:

**b.** The advance premium for this Coverage Part is a deposit premium only. The final premium shall be subject to audit. At the close of each audit period we will compute the earned premium for that period. Any audit premiums are due and payable to us on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured, subject to the minimum premium as defined above. In the event the first Named Insured fails or refuses to allow our representative to audit your books and records, we may unilaterally charge a final premium for the Policy Period at double the minimum or advance premium, whichever is greater, and such final premium shall be immediately due and payable on notice to the first Named Insured.

For purposes of this endorsement, the terms advance premium, earned premium, and minimum premium are defined as follows:

Advance Premium - the premium that is stated in the applicable initial policy Declarations or Renewal Certificate and payable in full by the first Named Insured at the inception of each Policy Period.

Earned Premium - the premium that is developed by applying the rate(s) scheduled in the policy to the actual premium basis for the audit period.

Minimum Premium - the lowest premium for which this insurance will be written for the Policy Period stated in **Item 2.** of the Declarations of the applicable initial policy or subsequent Renewal Certificate. This minimum premium is equal to 100% (unless a different percentage [%] is shown in the Schedule above) of the advance premium including any premium adjustments made by endorsement to this policy during the Policy Period. Premium adjustments do not include the audit premium developed for the Policy Period stated in **Item 2.** of the Declarations.

_____    /_____
AUTHORIZED REPRESENTATIVE                DATE

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT TO OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Condition **4. Other Insurance** of **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted in its entirety and is replaced by the following:

**4. Other Insurance**

**a. Primary Insurance**

This insurance is primary except when **b.** below applies.

**b. Excess Insurance**

**(1)** This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

**(d)** If the loss arises out of the maintenance or use of aircraft, "auto" or watercraft to the extent not subject to Exclusion **g.** of Coverage **A (SECTION I);** or

**(e)** That is valid and collectible insurance available to any insured under any other policy.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

**(b)** The total of all deductible and self-insured amounts under all other insurance.

If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

_____/_____
AUTHORIZED REPRESENTATIVE                                          DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

**SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MULTI-UNIT HABITATIONAL CONVERSION EXCLUSION

This insurance modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM
ERRORS AND OMISSIONS COVERAGE PART**

This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury" or any "error or omission" arising out of, related to, caused by, or associated with, in whole or part, the following:

"Your work," ownership or financial interest in any building which is converted to "residential property," whether prior to, during or after the Policy Period set forth in the Declarations. This exclusion applies regardless of whether:

**a.** The conversion was performed by you or on your behalf; or

**b.** The conversion takes place before or after "your work" is completed.

However, this exclusion does not apply to:

**a.** "Your work" on "residential property" which meets all of the following criteria:

**(1)** The work has been for repair and/or renovation only;

**(2)** The work has been performed on an existing structure that already has a Certificate of Occupancy at the time that such operations first commenced; and

**(3)** The repair and/or renovation work is contracted directly with an individual unit owner or individual home owner.

**b.** "Your work" on or associated with that portion of "mixed-use building(s)" that is not residential property.

For the purposes of this endorsement, the following definitions apply:

"Apartments" are defined as a multi-family residence where there is common ownership of individual units and common areas, but where all individual units are held for lease or rent by tenants who have no ownership interest in the units they lease or rent.

"Mixed-use building(s)" is defined as a building or a group of buildings that contain both "residential property" and commercial space.

"Residential property" is defined as property designed for domicile, including, but not limited to: single family dwelling, multi-unit subdivision, master planned community, cooperative, tract housing, town-home/townhouses, duplex, condominiums, lofts, timeshares, and "mixed-use building(s)"; as well as all common areas. However, this definition does not apply to "apartments," military barracks, multi-unit dormitory buildings, hotels, motels, nursing homes or assisted living facilities.

We shall have no duty or obligation to defend any loss, claim or "suit" excluded by this endorsement; nor to pay any investigation or other loss adjustment expense.

_____ / _____
AUTHORIZED REPRESENTATIVE                         DATE

GLS-282s (7-16)                              Page 1 of 1

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## KNOWN INJURY OR DAMAGE EXCLUSION— PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I—COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**Known Injury Or Damage**

This insurance does not apply to "personal and advertising injury" arising from an offense:

**a.** That occurs during the policy period and, prior to the policy period, an insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, knew that the "personal and advertising injury" had occurred prior to the policy period, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "personal and advertising injury" occurred, then any continuation, change or resumption of such offense during or after the policy period will be deemed to have been known prior to the policy period; or

**b.** That occurs during the policy period and was, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, includes any continuation, change or resumption of that "personal and advertising injury" after the end of the policy period.

A "personal and advertising injury" arising from an offense will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim:

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury"; or

**(3)** Becomes aware by any other means that "personal and advertising injury" has occurred or has begun to occur.

AUTHORIZED REPRESENTATIVE                DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006

GLS-289s (11-07)                Page 1 of 1

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HYDRAULIC FRACTURING EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**ERRORS AND OMISSIONS COVERAGE PART**

**A.** The following is added to Paragraph **2. Exclusions** of **Section I—Coverage A. Bodily Injury And Property Damage Liability** of the Commercial General Liability Coverage Part and Paragraph **2. Exclusions** of **SECTION I—COVERAGE** of the Errors And Omissions Coverage Part:

This insurance does not apply to:

**Hydraulic Fracturing**

**1.** "Bodily injury," "property damage" or "error or omission":

  **a.** Arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing," "gas fracking" and/or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any insured or by any other person or entity; or

  **b.** Caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing" or "gas fracking."

**2.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, remediating or disposing of, or in any way responding to or assessing the effects of "hydraulic fracturing," "gas fracking" or "flowback," by any insured or by any other person or entity.

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to items **1.** or **2.** above.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I—Coverage B. Personal And Advertising Injury** Liability of the Commercial General Liability Coverage Part:

This insurance does not apply to:

**Hydraulic Fracturing**

**1.** "Personal and advertising injury":

  **a.** Arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include,

GLS-341s (8-12)        Page 1 of 2

but are not limited to, "hydraulic fracturing," "gas fracking" and/or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any "insured" or by any other person or entity; or

**b.** Caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing" or "gas fracking."

**2.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, remediating or disposing of, or in any way responding to or assessing the effects of "hydraulic fracturing," "gas fracking" or "flowback," by any insured or by any other person or entity.

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to items **1.** or **2.** above.

For purposes of this endorsement, the following definitions apply:

**1.** "Hydraulic fracturing," or hydrofracking means the process by which water, "proppants," chemicals and/or other fluid additives are injected at high pressure into underground geologic formations to create fractures, to facilitate the extraction of any hydrocarbons including but not limited to natural gas and/or oil.

**2.** "Flowback" means any substance containing returned "hydraulic fracturing" fluid, including but not limited to water, "proppants," "hydraulic fracturing" fluid additives; and, any hydrocarbon compounds, salts, conventional pollutants, organics, metals, and naturally occurring radioactive material brought to the surface with the water.

**3.** "Gas fracking" or liquefied propane/butane gas fracturing means the waterless process by which propane gel and "proppants" are injected at high pressure into underground geologic formations to create fractures, to facilitate the release and extraction of natural gas.

**4.** "Proppant" means particles that are used to keep fractures open after a hydraulic fracturing treatment.

---

AUTHORIZED REPRESENTATIVE                                    DATE

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AIRCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to paragraph **2. Exclusions** of **SECTION I—COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to:

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft. Use includes operation and "loading and unloading."

This exclusion applies even if claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured.

_____  /  _____
AUTHORIZED REPRESENTATIVE                      DATE

GLS-457s (10-14)                                    Page 1 of 1

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007
IL 00 21 09 08    □

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

/

_____               _____
AUTHORIZED REPRESENTATIVE                              DATE

HOME OFFICE

UTS-74g (8-95)

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
|  |  |  |  |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ASBESTOS EXCLUSION

This policy does not apply to:

(1) Damages in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

(2) Any economic loss, diminution of property value, abatement costs, or any other loss, cost or expense including equitable relief, in any way or to any extent arising out of or involving asbestos, asbestos fibers or any product containing asbestos or asbestos fibers.

(3) Any fees, fines, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or suit arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

_____ / _____
AUTHORIZED REPRESENTATIVE                 DATE

UTS-266g (5-98)

SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEAD CONTAMINATION EXCLUSION

This policy does not apply to:

1.  Any damages arising out of the ingestion, inhalation or absorption of lead in any form.

2.  Any loss, cost or expense arising out of any:

    (a) Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

_____    _____
AUTHORIZED REPRESENTATIVE                              DATE

UTS-267g (5-98)

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF NONPAYMENT CANCELLATION CONDITION

Wherever a Cancellation Condition for nonpayment of premium is found in the policy, the following is added:

If the insured failed to pay premium charged on a prior policy we issued and payment was due during the current renewal policy term, we may cancel this policy by mailing or delivering to the first Named Insured and mortgagee, if any, written notice of cancellation at least ten (10) days before the effective date of cancellation.

AUTHORIZED REPRESENTATIVE                    DATE

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PREMIUM AUDIT

The following is added to the Premium Audit provision:

If the first Named Insured fails or refuses to provide documentation adequate to determine the apportionment of exposures by class code, we may unilaterally apply all exposures to the class code with the highest rate stated in the policy including any class code adjustments made by endorsement.

AUTHORIZED REPRESENTATIVE                    DATE



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL PROPERTY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy No.: ___CPS3064779___   Effective Date: 07/13/2018

12:01 A.M. Standard Time

Named Insured: M&M SISTERS LLC; BERTHA MENENDEZ   Agent No.: 09020

| **Item 1.** | Business Description: APARTMENT BUILDING |
|---|---|

| **Item 2.** | Premises Described: |
|---|---|
| | **See Schedule of Locations** |

| **Item 3.** | $500 Deductible unless otherwise indicated. |
|---|---|

**Item 4.** Coverages Provided:

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 1 | 1 | BUILDING | 1,163,195 | SPECIAL | 90% |

### Other Provisions

Construction: FIRE RESISTIVE     Year Built: 1985     No. of Stories: 3
☐ Agreed Value: _____   Expires: _____   ☒ Replacement Cost
☐ Business Income Indemnity: Monthly Limit: _____   Maximum Period: _____   Extended Period: _____
☐ Reporting   ☐ Inflation Guard: _____ %
Deductible: ___2,500 AOP___   Earthquake Deductible: _____ %   Exceptions: _____

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 1 | 1 | BUSINESS INCOME | 15,000 | SPECIAL | |

### Other Provisions

Construction: _____   Year Built: _____   No. of Stories: _____
☐ Agreed Value: _____   Expires: _____   ☐ Replacement Cost
☒ Business Income Indemnity: Monthly Limit: ___1/6___   Maximum Period: _____   Extended Period: _____
☐ Reporting   ☐ Inflation Guard: _____ %
Deductible: _____   Earthquake Deductible: _____ %   Exceptions: _____

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| | | | | | |

### Other Provisions

Construction: _____   Year Built: _____   No. of Stories: _____
☐ Agreed Value: _____   Expires: _____   ☐ Replacement Cost
☐ Business Income Indemnity: Monthly Limit: _____   Maximum Period: _____   Extended Period: _____
☐ Reporting   ☐ Inflation Guard: _____ %
Deductible: _____   Earthquake Deductible: _____ %   Exceptions: _____

| **Item 5.** | Forms and Endorsements: |
|---|---|
| Form(s) and Endorsement(s) made a part of this policy at time of issue: |
| **See Schedule of Forms and Endorsements** |

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENT(S), IF ANY, COMPLETE THE ABOVE-NUMBERED POLICY

 SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF MORTGAGE HOLDER(S)

Policy No. ___CPS3064779___

Effective Date ___07/13/2018___
12:01 A.M. Standard Time

Named Insured ___M&M SISTERS LLC; BERTHA MENENDEZ___     Agent No. ___09020___

| Prem. No. | Bldg. No. | Mortgage Holder Name and Mailing Address |
|---|---|---|
| 1 | 1 | MERCANTIL COMMERCEBANK N.A. ISAOA<br>12496 NW 25 STREET, MIAMI, FL 33182 |

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

© Insurance Services Office, Inc., 2011

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

© Insurance Services Office, Inc., 2011
CP 00 10 10 12

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4),** we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| Limit of Insurance: | $ 90,000 |
|---|---|
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |

($10,000 is 20% of $50,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| Limit of Insurance: | $ 90,000 |
|---|---|
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

 © Insurance Services Office, Inc., 2011

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

© Insurance Services Office, Inc., 2011

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

 © Insurance Services Office, Inc., 2011

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

© Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

**(2)** If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the business personal property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | |
|---|---:|
| Deductible: | $   250 |
| Limit of Insurance – Building 1: | $ 60,000 |
| Limit of Insurance – Building 2: | $ 80,000 |
| Loss to Building 1: | $ 60,100 |
| Loss to Building 2: | $ 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100
−      250
$ 59,850 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---:|
| Loss to Building 1: | $ 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $ 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $ 60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $ 80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

© Insurance Services Office, Inc., 2011 **CP 00 10 10 12**

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F.** **Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1.** **Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | | |
|---|---|---|
| The value of the property is: | $ 250,000 |
| The Coinsurance percentage for it is: | 80% |
| The Limit of Insurance for it is: | $ 100,000 |
| The Deductible is: | $ 250 |
| The amount of loss is: | $ 40,000 |

Step **(1):** $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $100,000 ÷ $200,000 = .50

Step **(3):** $40,000 x .50 = $20,000

Step **(4):** $20,000 − $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | | |
|---|---|---|
| The value of the property is: | $ 250,000 |
| The Coinsurance percentage for it is: | 80% |
| The Limit of Insurance for it is: | $ 200,000 |
| The Deductible is: | $ 250 |
| The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When:   The value of the property is:

| | |
|---|---:|
| Building at Location 1: | $ 75,000 |
| Building at Location 2: | $100,000 |
| Personal Property at Location 2: | $ 75,000 |
| | $250,000 |

| | |
|---|---:|
| The Coinsurance percentage for it is: | 90% |
| The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $180,000 |
| The Deductible is: | $ 1,000 |
| The amount of loss is: | |
| Building at Location 2: | $ 30,000 |
| Personal Property at Location 2: | $ 20,000 |
| | $ 50,000 |

Step **(1):** $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):** $180,000 ÷ $225,000 = .80

Step **(3):** $50,000 x .80 = $40,000

Step **(4):** $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| | | |
|---|---|---:|
| If: | The applicable Limit of Insurance is: | $ 100,000 |
| | The annual percentage increase is: | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| | The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $   3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1), (2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2011
**CP 00 10 10 12**

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

© Insurance Services Office, Inc., 2011

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

© Insurance Services Office, Inc., 2011

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

    **(a)** Used in the construction, alterations or additions; or

    **(b)** Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

    **(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

    **(b)** Ends on the earlier of:

        **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

        **(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

    **(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

    **(b)** Ends on the earlier of:

        **(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

        **(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

## 2. Duties In The Event Of Loss

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

  **a.** The amount of Business Income loss will be determined based on:

    **(1)** The Net Income of the business before the direct physical loss or damage occurred;

    **(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

    **(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

    **(4)** Other relevant sources of information, including:

      **(a)** Your financial records and accounting procedures;

      **(b)** Bills, invoices and other vouchers; and

      **(c)** Deeds, liens or contracts.

  **b.** The amount of Extra Expense will be determined based on:

    **(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

      **(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

      **(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

    **(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c. Resumption Of Operations**

  We will reduce the amount of your:

    **(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

    **(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

  **d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

  We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

  **a.** We have reached agreement with you on the amount of loss; or

  **b.** An appraisal award has been made.

**D. Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**1.** The Coinsurance percentage shown for Business Income in the Declarations; times

**2.** The sum of:

  **a.** The Net Income (Net Profit or Loss before income taxes), and

  **b.** Operating expenses, including payroll expenses,

  that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1);** and

Step **(3):** Multiply the total amount of loss by the figure determined in Step **(2).**

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

**(1)** Prepaid freight – outgoing;

**(2)** Returns and allowances;

**(3)** Discounts;

**(4)** Bad debts;

**(5)** Collection expenses;

**(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

**(7)** Cost of merchandise sold (including transportation charges);

**(8)** Cost of other supplies consumed (including transportation charges);

**(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

**(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

**(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

**(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

When:    The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been:       $ 400,000

The Coinsurance percentage is:       50%

The Limit of Insurance is:       $ 150,000

The amount of loss is:       $  80,000

Step **(1):** $400,000 x 50% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $150,000 ÷ $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

When:    The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been:       $ 400,000

The Coinsurance percentage is:       50%

The Limit of Insurance is:       $ 200,000

The amount of loss is:       $  80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1. Maximum Period Of Indemnity**

**a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

**(1)** The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

**(2)** The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

**a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

**(1)** The Limit of Insurance, multiplied by

**(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example**

| When: | The Limit of Insurance is: | $ 120,000 |
|---|---|---|
| | The fraction shown in the Declarations for this Optional Coverage is: | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | $ 30,000 |
| | ($120,000 x 1/4 = $30,000) | |
| | If, in this example, the actual amount of loss is: | |
| | Days 1–30: | $ 40,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 90,000 |
| | We will pay: | |
| | Days 1–30: | $ 30,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

**a.** To activate this Optional Coverage:

**(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

**(a)** During the 12 months prior to the date of the Work Sheet; and

**(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

**(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

**(a)** The Coinsurance percentage shown in the Declarations; multiplied by

**(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

**b.** The Additional Condition, Coinsurance, is suspended until:

**(1)** 12 months after the effective date of this Optional Coverage; or

**(2)** The expiration date of this policy;

whichever occurs first.

**c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)** Within 12 months of the effective date of this Optional Coverage; or

**(2)** When you request a change in your Business Income Limit of Insurance.

**d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)** The Business Income Limit of Insurance; divided by

**(2)** The Agreed Value.

**Example**

| When: | The Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The Agreed Value is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

Step **(1):** $100,000 ÷ $200,000 = .50

Step **(2):** .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c., Extended Business Income,** the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

**F. Definitions**

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   a. Begins:

      (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

      (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down, of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incurred in connection with that premises, including:

      (1) Payroll; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

  **a.** During the policy period shown in the Declarations; and

  **b.** Within the coverage territory.

**2.** The coverage territory is:

  **a.** The United States of America (including its territories and possessions);

  **b.** Puerto Rico; and

  **c.** Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

      Copyright, ISO Commercial Risk Services, Inc.,  1983, 1987      **CP 00 90 07 88**   □

COMMERCIAL PROPERTY
CP 01 40 07 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

 © ISO Properties, Inc., 2006 ☐

COMMERCIAL PROPERTY
CP 10 30 09 17

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### a. Ordinance Or Law

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

### b. Earth Movement

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a), (5)(b)** and **(5)(c),** all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused.

© Insurance Services Office, Inc., 2016

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

© Insurance Services Office, Inc., 2016

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h.** **"Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

    **(1)** You do your best to maintain heat in the building or structure; or

    **(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

    **(1)** Applies whether or not an act occurs during your normal hours of operation;

    **(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

    **(1)** An abrupt falling down or caving in;

    **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

    **(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

    **(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

    **(b)** To collapse caused by one or more of the following:

        **(i)** The "specified causes of loss";

        **(ii)** Breakage of building glass;

        **(iii)** Weight of rain that collects on a roof; or

        **(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

    **(1)** Planning, zoning, development, surveying, siting;

    **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **(3)** Materials used in repair, construction, renovation or remodeling; or

    **(4)** Maintenance;

 © Insurance Services Office, Inc., 2016 CP 10 30 09 17

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.** Ordinance Or Law;

**(b)** Paragraph **B.1.c.** Governmental Action;

**(c)** Paragraph **B.1.d.** Nuclear Hazard;

**(d)** Paragraph **B.1.e.** Utility Services; and

**(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

## C. Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

  **a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

  **b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

  **c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

   **(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

   **(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

  **d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

    However, this limitation does not apply to:

   **(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

   **(2)** Business Income Coverage or Extra Expense Coverage.

  **e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

  **f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

  **g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

   **(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

   **(2)** Changes in or extremes of temperature;

   **(3)** Disease;

   **(4)** Frost or hail; or

   **(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

  **a.** Animals, and then only if they are killed or their destruction is made necessary.

  **b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

   **(1)** Glass; or

   **(2)** Containers of property held for sale.

  **c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

    However, this limitation does not apply:

   **(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

**(2)** To Business Income Coverage or to Extra Expense Coverage.

**3.** The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

**a.** $2,500 for furs, fur garments and garments trimmed with fur.

**b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

**c.** $2,500 for patterns, dies, molds and forms.

**d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

**a.** Results in discharge of any substance from an automatic fire protection system; or

**b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

## D. Additional Coverage – Collapse

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

**a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

**b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

**c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

**d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

**(1)** A cause of loss listed in **2.a.** or **2.b.;**

**(2)** One or more of the "specified causes of loss";

**(3)** Breakage of building glass;

**(4)** Weight of people or personal property; or

**(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage – Collapse** does **not** apply to:

**a.** A building or any part of a building that is in danger of falling down or caving in;

**b.** A part of a building that is standing, even if it has separated from another part of the building; or

**c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

**a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**b.** Awnings, gutters and downspouts;

**c.** Yard fixtures;

**d.** Outdoor swimming pools;

**e.** Fences;

**f.** Piers, wharves and docks;

**g.** Beach or diving platforms or appurtenances;

**h.** Retaining walls; and

**i.** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.**, we will pay for loss or damage to that property only if:

**(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

**(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

**a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

**b.** The personal property which collapses is inside a building; and

**c.** The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

**a.** A "specified cause of loss" other than fire or lightning; or

**b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

**a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

**b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

**c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

© Insurance Services Office, Inc., 2016

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

   If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

6. The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

   **a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   **b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

**1. Property In Transit**

   This Extension applies only to your personal property to which this form applies.

   **a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   **b.** Loss or damage must be caused by or result from one of the following causes of loss:

   **(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

   **(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

   **(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

   **c.** The most we will pay for loss or damage under this Extension is $5,000.

   This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

   If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

3. **Glass**

   **a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

   **b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

   This Coverage Extension **F.3.** does not increase the Limit of Insurance.

**G. Definitions**

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

   **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

      **(1)** The cost of filling sinkholes; or

      **(2)** Sinking or collapse of land into man-made underground cavities.

   **b.** Falling objects does not include loss or damage to:

      **(1)** Personal property in the open; or

      **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

   **c.** Water damage means:

      **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

      **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

   But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

   To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TOTAL OR CONSTRUCTIVE LOSS CLAUSE

It is understood and agreed that in the event of a total loss or constructive total loss under the policy, the entire policy premium shall be earned in full and no return premium shall be due the named insured.

/

_____
AUTHORIZED REPRESENTATIVE                         DATE

FS-18 (11-86)

HOME OFFICE

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WIND OR HAIL DEDUCTIBLE

This endorsement modifies insurance provided under the following:

**BUILDERS RISK COVERAGE FORM**
**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
**CONDOMINIUM ASSOCIATION COVERAGE FORM**

**Schedule**

| Deductible |
|---|
| Flat Dollar $_____ or Percentage __3__ %, subject to $ ____2,500____ minimum deductible |
| Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. |

With respect to loss or damage caused by or resulting from wind or hail, Item **D. Deductible** is deleted in its entirety and is replaced by the following:

**D. Deductible**

1. In any one occurrence of loss or damage to covered property by wind or hail (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

2. The Wind or Hail Deductible is calculated separately for, and applies separately to:

   a. Each building that sustains loss or damage.

   b. Personal property at each building, if there is loss or damage to that personal property, subject to **3.b.** below.

   c. Personal property in the open.

   d. Each separately scheduled item not described in items **a.-c.**

3. When a Flat Dollar deductible is shown, the following provisions apply in addition to paragraphs **1.** and **2.:**

   a. We will pay only that part of your loss over the deductible amount.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

**b.** If there is damage to both a building and personal property in that building, one deductible will apply to the building and to the personal property in that building.

**4.** When a Percentage deductible is shown, the following provisions apply in addition to paragraphs **1.** and **2.:**

    **a.** We will calculate the deductible as follows:

        In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the percentage (as shown in the Schedule) of the Limit(s) of Insurance of covered property that has sustained loss or damage, subject to any minimum Deductible shown in the Schedule.

    **b.** If there is damage to both a building and personal property in that building, separate deductibles apply to the building and to the personal property in that building.

_____/_____

           AUTHORIZED REPRESENTATIVE                 DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
|  |  |  |  |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CHANGES—FLORIDA

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following provision applies when a Coinsurance percentage is shown in the Declarations:

Florida law states as follows:

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the Insured.

**C.** The following is added:

If windstorm is a Covered Cause of Loss and loss or damage to Covered Property is caused by or results from windstorm, the following exclusion applies in:

**1.** Broward County;

**2.** Dade County;

**3.** Martin County;

**4.** Monroe County;

**5.** Palm Beach County; and

**6.** All the areas east of the west bank of the Intra-Coastal Waterway in the Counties of:

**a.** Indian River; and

**b.** St. Lucie.

**WINDSTORM EXTERIOR PAINT AND WATER-PROOFING EXCLUSION**

We will not pay for loss or damage caused by windstorm to:

**1.** Paint; or

**2.** Waterproofing material;

applied to the exterior of Buildings unless the Building to which such loss or damage occurs also sustains other loss or damage by windstorm in the course of the same storm event. But such coverage applies only if windstorm is a Covered Cause of Loss.

When loss or damage to exterior paint or waterproofing material is excluded, we will not include the value of paint or waterproofing material to determine:

**a.** The amount of the Windstorm or Hail Deductible; or

**b.** The value of Covered Property when applying the Coinsurance Condition.

**D.** Sinkhole Collapse Coverage Removed

Sinkhole Collapse coverage is removed as indicated in Paragraphs **D.1.** through **D.4. ;** and coverage for Catastrophic Ground Cover Collapse is added instead as set forth in Paragraph **E.**

**1.** In the Causes of Loss—Basic Form and in the Standard Property Policy, Sinkhole Collapse is deleted from the Covered Causes of Loss and sinkhole collapse is no longer an exception to the Earth Movement exclusion.

**2.** In the Causes of Loss—Broad Form, Sinkhole Collapse is deleted from the Covered Causes of Loss and from the Additional Coverage—Collapse; and sinkhole collapse is no longer an exception to the Earth Movement exclusion.

**3.** In the Causes of Loss—Special Form, sinkhole collapse is deleted from the "specified causes of

loss" and is no longer an exception to the Earth Movement exclusion.

**4.** In the Mortgageholders Errors And Omissions Coverage Form, sinkhole collapse is deleted from the Covered Causes of Loss under Coverage B and from the "specified causes of loss, and is no longer an exception to the Earth Movement exclusion.

Further, this Coverage Part does not insure against Sinkhole Loss as defined in Florida law unless an endorsement for Sinkhole Loss is made part of this policy. However, if Sinkhole Loss causes Catastrophic Ground Cover Collapse, coverage is provided for the resulting Catastrophic Ground Cover Collapse even if an endorsement for Sinkhole Loss is not made part of this policy.

**E.** The following is added to this Coverage Part as a Covered Cause Of Loss. In the Causes Of Loss— Special Form and Mortgageholders Errors And Omissions Coverage Form, the following is also added as a "specified cause of loss." However, as a "specified cause of loss, the following does not apply to the Additional Coverage—Collapse.

**CATASTROPHIC GROUND COVER COLLAPSE**

We will pay for direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

**1.** The abrupt collapse of the ground cover;

**2.** A depression in the ground cover clearly visible to the naked eye;

**3.** Structural damage to the building, including the foundation; and

**4.** The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, structural damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

The Earth Movement exclusion and the Collapse exclusion do not apply to coverage for Catastrophic Ground Cover Collapse.

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earthquake (if either or both of those causes of loss are covered under this Coverage Part), only one Limit of Insurance will apply to such loss or damage.

**F.** The following applies to the **Additional Coverage— Civil Authority** under the Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form and Extra Expense Coverage Form:

**1.** The Additional Coverage—Civil Authority includes a requirement that the described premises are not more than one mile from the damaged property. With respect to described premises located in Florida, such one-mile radius does not apply.

**2.** The Additional Coverage—Civil Authority is limited to a coverage period of up to four weeks. With respect to described premises located in Florida, such four week period is replaced by a three-week period.

**3.** Civil Authority coverage is subject to all other provisions of that Additional Coverage.

**G.** In the event where more than one peril causes damage to covered property and the damage cannot be separated by the cause(s) of loss, we will:

Deduct the amount paid by the other carriers from the amount payable under our policy subject to the policy terms and conditions if a cause of the loss is covered under our policy;

If the cause of loss under our policy is also covered under another policy payment will be prorated among all companies providing coverage for the covered cause(s) of loss; and,

In no event can payments made by all carriers total more than the full replacement cost of the insured building. Payment will be subject to the policy terms and conditions of the policy of the covered property regardless of the number of covered perils or policies covering the property, even if the insured property is totally destroyed by combined perils.

---

AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2008

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SEWER OR DRAIN DEFINITION ENDORSEMENT - FLORIDA

This insurance modifies insurance provided under the following:

**CAUSES OF LOSS - BASIC FORM**
**CAUSES OF LOSS - BROAD FORM**
**CAUSES OF LOSS - SPECIAL FORM**

Under Section **B. Exclusions,** paragraph **g. Water,** subsection **(3)** the following is added:

For the purpose of this exclusion, "sewer" and "drain" are defined as:

1.  "Sewer" means any underground pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations;

2.  "Drain" means any pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations to a "sewer."

_____     /
AUTHORIZED REPRESENTATIVE                           DATE

CFS-103-FL (1-16)                     Page 1 of 1
                                         HOME OFFICE

POLICY NUMBER: CPS3064779

IL 04 01 02 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

**SCHEDULE**

| Premises Number | Building Number |
|---|---|
| 1 | 1 |
| | |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

With respect to the location(s) indicated in the Schedule, the following provisions apply:

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** When this endorsement is attached to the Farm Livestock Coverage Form, reference to loss (other than in the term Sinkhole Loss itself) means "loss" as defined in that coverage form.

**C.** The following is added to this Coverage Part as a Covered Cause of Loss. In the forms which address "specified causes of loss", the following is also added as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation, provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

Copyright, Insurance Services Office, Inc., 2012
HOME OFFICE
i104010212.fap

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your Sinkhole Loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

The stabilization and all other repairs to the Covered Property must be completed within 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

**D.** Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

**E.** With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

**F.** With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential or farm residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy, except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

**G.** Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this Coverage Part) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

Copyright, Insurance Services Office, Inc., 2012

**H.** The following provision is added to the **Duties In The Event Of Loss Or Damage** Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**I.** The following definitions are added with respect to the coverage provided under this endorsement:

**1.** "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

**a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

**b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" and that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

**c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**e.** Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

**2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.** "Primary structural system" means an assemblage of "primary structural members".

**J.** If we deny your claim for Sinkhole Loss without performing testing under section 627.702, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**K.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**L.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**M.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

Copyright, Insurance Services Office, Inc., 2012

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CANCELLATION AND NONRENEWAL - FLORIDA

The Cancellation Condition is deleted in its entirety and replaced by the following:

A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. If this policy has been in effect for ninety (90) days or less and is not a renewal of a policy we issued, we may cancel by mailing or delivering written notice of cancellation, including the specific reasons for cancellation, to the first Named Insured at least:

   a. Ten (10) days before the effective date of cancellation, if we cancel for nonpayment of any premium when due; or

   b. Twenty (20) days before the effective date of cancellation, if we cancel for any other reason, except, we may cancel immediately if there has been:

      (1) A material misstatement or misrepresentation; or

      (2) A failure to comply with underwriting requirements established by us.

3. If this policy has been in effect for more than ninety (90) days or is a renewal or continuation of a policy we issued, we may cancel by mailing or deliver-

ing written notice of cancellation, including the specific reasons for cancellation, to the first Named Insured at least:

   a. Ten (10) days before the effective date of cancellation, if we cancel for nonpayment of any premium when due; or

   b. Forty-five (45) days before the effective date of cancellation, if we cancel for any other reason.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

5. Notice of cancellation by us will state the effective date of the cancellation. The policy period will end on that date.

6. If we fail to mail or deliver our written notice of cancellation to the first Named Insured at least forty-five (45) days or twenty (20) days as required in A.2.b. and A.3.b. above, the coverage will remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the first Named Insured, whichever occurs first. The premium for the coverage shall remain the same during any such extension period.

7. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first

UTS-29-FL (6-97)

Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

8. If notice is mailed, proof of mailing will be sufficient proof of notice.

The following Condition is added to the policy and supersedes any other provision to the contrary:

B. Nonrenewal

　　1. If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, including the specific reasons for nonrenewal, to the first Named Insured at least forty-five (45) days prior to the expiration of the policy.

2. If notice is mailed, we will mail it to the last mailing address known to us of the first Named Insured. Proof of mailing will be sufficient proof of notice.

3. If we fail to mail or deliver written notice of nonrenewal to the first Named Insured at least forty-five (45) days prior to the effective date of nonrenewal, the coverage will remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the first Named Insured, whichever occurs first. The premium for the coverage shall remain the same during any such extension period.

| | / |
|---|---|
| AUTHORIZED REPRESENTATIVE | DATE |



**Scottsdale Insurance Company**
**National Casualty Company**
**Scottsdale Indemnity Company**
**Scottsdale Surplus Lines Insurance Company**

## CLAIM REPORTING INFORMATION

Your insurance policy has been placed with a Nationwide® insurance company.

Our commitment to you is to provide fast, fair claim service. Promptly reporting an event that could lead to a claim, as required by your policy, helps us fulfill this commitment to you. Please refer to your policy for this and all other terms and conditions.

To report a claim, you may contact us 24 hours a day, 7 days a week, by calling 1-800-423-7675 or via our website at www.nationwideexcessandsurplus.com.

Thank you for your business and as always, we appreciate the opportunity to serve you.

| HOW TO REPORT A CLAIM |
|---|
| Call **1-800-423-7675** or visit our website at www.nationwideexcessandsurplus.com. |
| In order to expedite this process, please be prepared to furnish as much of the following information as possible: <br> • Your policy number <br> • Date, time and location of the loss/accident <br> • Details of the loss/accident <br> • Name, address and phone number of any involved parties <br> • If applicable, name of law enforcement agency or fire department along with the incident number <br> **Please refer to your policy for specific claim reporting requirements.** |

NOTX0178CW (3-16)

## SCOTTSDALE INSURANCE COMPANY®

Scottsdale Indemnity Company

### SCOTTSDALE
SURPLUS LINES INSURANCE COMPANY

## POLICYHOLDER DISCLOSURE

### NOTICE OF TERRORISM INSURANCE COVERAGE

**TERRORISM RISK INSURANCE ACT**

Under the Terrorism Risk Insurance Act of 2002, as amended pursuant to the Terrorism Risk Insurance Program Reauthorization Act of 2015, effective January 1, 2015 (the "Act"), you have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act: The term "certified acts of terrorism" means any act that is certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that where coverage is provided by this policy for losses resulting from "certified acts of terrorism," such losses may be partially reimbursed by the United States Government under a formula established by federal law. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government agrees to reimburse eighty-five percent (85%) of covered terrorism losses in calendar year 2015 that exceed the statutorily established deductible paid by the insurance company providing the coverage. This percentage of United States Government reimbursement decreases by one percent (1%) every calendar year beginning in 2016 until it equals eighty percent (80%) in 2020. The premium charged for this coverage is provided below and does not include any charges for the portion of loss that may be covered by the Federal Government under the Act.

You should also know that the Act, as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from "certified acts of terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

**CONDITIONAL TERRORISM COVERAGE**

The federal Terrorism Risk Insurance Program Reauthorization Act of 2015 is scheduled to terminate at the end of December 31, 2020, unless renewed, extended or otherwise continued by the federal government. Should you select Terrorism Coverage provided under the Act and the Act is terminated December 31, 2020, any terrorism coverage as defined by the Act provided in the policy will also terminate.

**IN ACCORDANCE WITH THE ACT, YOU MUST CHOOSE TO SELECT OR REJECT COVERAGE FOR "CERTIFIED ACTS OF TERRORISM" BELOW:**

**The Note below applies for risks in these states:** California, Connecticut, Georgia, Hawaii, Illinois, Iowa, Maine, Missouri, New Jersey, New York, North Carolina, Oregon, Rhode Island, Virginia, Washington, West Virginia, Wisconsin.

**NOTE:** In these states, a terrorism exclusion makes an exception for (and thereby provides coverage for) fire losses resulting from an act of terrorism. Therefore, if you reject the offer of terrorism coverage, that rejection does not apply to fire losses resulting from an act of terrorism coverage for such fire losses will be provided in your policy.

**If you do not respond to our offer and do not return this notice to the Company, you will have no Terrorism Coverage under this policy.**

|   | |
|---|---|
|   | I hereby elect to purchase certified terrorism coverage for a premium of $_____ . I understand that the federal Terrorism Risk Insurance Program Reauthorization Act of 2015 may terminate on December 31, 2020. Should that occur my coverage for terrorism as defined by the Act will also terminate. |
| X | I hereby reject the purchase of certified terrorism coverage. |

| | |
|---|---|
| _____ | M&M SISTERS LLC; BERTHA MENENDEZ |
| Policyholder/Applicant's Signature | Named Insured/Firm |
| _____ | CPS3064779 |
| Print Name | Policy Number, if available |
| _____ | |
| Date | |



# FLORIDA POLICYHOLDER NOTICE

## SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

NOTS0381FL (7-09)

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

Case No. 2019-030409-CA-01

M&M SISTERS, LLC, BERTHA MENENDEZ GARCIA & MARIA MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE INSURANCE COMPANY,

    Defendant.

_____/

## DEFENDANT'S NOTICE OF SUPPLEMENTAL PROOF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL MEDIATION AND PLAINTIFF'S MOTION TO COMPEL DEPOSITION FOR DATE CERTAIN

Defendant SCOTTSDALE INSURANCE COMPANY ("Scottsdale") serves this Notice of Supplemental Proof in Opposition to Plaintiffs M&M SISTERS, LLC ("M&M"), BERTHA MENENDEZ GARCIA, and MARIA MENDEZ's ("Plaintiffs") Motion to Compel Mediation (the "Mediation Motion") and Motion to Compel Deposition for Date Certain (the "Depo Motion"), confirming that the mediation sought in the Mediation Motion has now been set by Plaintiffs for July 22, 2021, and that Scottsdale has provided Plaintiff the next available date for the deposition of its corporate representative (*see Emails between The Rock Law Group, P.A. and Font & Nelson (Apr. 14-May 5,, 2021)*, attached here as **Exhibit "1"**, and states:

1.    In their Mediation Motion, Plaintiffs seek to compel Scottsdale to schedule mediation for this matter.  In their Depo Motion, Plaintiffs seek to compel Scottsdale to provide a date for the deposition of its corporate representative.

2.      On May 3, 2021, Scottsdale filed its Opposition to the Mediation Motion and Depo Motion, attaching emails confirming Scottsdale's cooperation in working with Plaintiffs' counsel to schedule mediation, and also confirming Plaintiffs' agreement "to schedule an early mediation before taking any depositions." *See Defe's Opp. to Mediation Mot'n and Depo Mot'n*, at Exh. A.  Despite these efforts, Plaintiffs had failed to cooperate in Scottsdale's efforts to schedule the mediation by ignoring Scottsdale's request to contact the mediator and obtain dates when both Plaintiffs and the selected mediator (Curtin Hutchens) were available for mediation.

3.      In response to this neglect, on May 4, 2021, Scottsdale offered Plaintiffs dates when both Scottsdale and its attorneys were available for mediation.  *See* **Exh. 1**. Plaintiffs then not only selected one of those dates (July 22, 2021), but also booked the mediation for this case with mediator Curtis Hutchens.  *See id.*  Scottsdale then confirmed with Plaintiff's counsel on May 5, 2021 that a latter date that Scottsdale had previously offered for mediation (August 17, 2021) could be used by Plaintiffs for the deposition of Scottsdale's corporate representative.  *See id.*  Despite this, Plaintiffs still refuse to cancel the hearing on the Mediation Motion and Depo Motion.

4.      The Mediation Motion and Depo Motion are now moot, as the only relief sought in those motions has now occurred.  Any hearing on the Mediation Motion and Depo Motion would therefore be a waste of the Court's and the attorneys' time.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 5th day of May, 2021 to:  Frantz C.

Nelson, Esquire, Font & Nelson, LLC, pleadings@fontnelson.com; FNelson@FontNelson.com; and SCostello@FontNelson.com

/s/ Robert L. Rogers, III
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

RLR/cdr

| | |
|---|---|
| **From:** | Cheri Rodriguez |
| **To:** | "Samantha Costello"; Frantz Nelson |
| **Cc:** | Nimra Salehjee; filings; Jennifer Wilds; Meghan Betz |
| **Subject:** | RE: Case No. 2019-030409-CA-01; M&M Sisters, LLC, Bertha Menendez Garcia & Maria Mendez v. Scottsdale Insurance Company |
| **Date:** | Wednesday, May 5, 2021 1:26:21 PM |

[SENT ON BEHALF OF ATTORNEY ROBERT L. ROGERS, III]

Good Afternoon Samantha,

We have confirmed with Mediator Curtis Hutchens that your office has booked the mediation for this action with Mr. Hutchens for July 22, 2021 (one of several dates we provided you yesterday).  Accordingly, the mediation is now set and scheduled, and the Motion to Compel Mediation is moot, and there cannot possibly be any more reason to proceed with the hearing tomorrow on Plaintiff's Motion to Compel Mediation or to request an order on that motion.

As for the deposition of Scottsdale's corporate representative, we can confirm that both our office and Scottsdale's corporate representative are available on August 17, 2021 (one of the dates that we provided you yesterday).  So please feel free to notice the deposition of Scottsdale's corporate representative for that date.  If you are not available on August 17, 2021 and need another subsequent date, please let us know, and we will get you another later date.  (Recall that in your email to our office on April 14, 2021, Plaintiffs agreed to our request to conduct mediation before any depositions in this case.)

Accordingly, both Plaintiff's Motion to Compel Mediation and the Motion to Compel Deposition for Date Certain are now moot.  Not only is the relief sought in both motions unnecessary, but Defendant Scottsdale Insurance Company has now provided Plaintiffs dates for both the mediation—which Plaintiffs have now scheduled with the mediator—and has also provided Plaintiffs the next available date for the deposition of Scottsdale's corporate representative.  So please cancel the hearing set for tomorrow morning on both of those Motions and withdraw both Motions.

-Robert L. Rogers, III, Esquire

*Cherilyn D. Rodriguez*
Legal Assistant to Robert L. Rogers, III, Esquire
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, Florida 32751
(407) 647-9881 (telephone)
(407) 647-9966 (facsimile)
crodriguez@rocklawpa.com

NOTICE:  This e-mail is from a law firm, The Rock Law Group, P.A., and is intended solely for the use of the individual(s) to whom it is addressed.  If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer, and do not copy or disclose it to anyone else.  If you are not an existing client of The Rock Law Group, P.A., do not construe anything in this e-mail to make you a client unless it contains a

Defendant's Exhibit "1"

specific statement to that effect and do not disclose anything to The Rock Law Group, P.A. in reply that you expect it to hold in confidence.  If you properly received this e-mail as a client, co-counsel or retained expert of The Rock Law Group, P.A., you should maintain its contents in confidence in order to preserve the attorney-client or work-product privilege that may be available to protect confidentiality.

---

**From:** Samantha Costello [mailto:scostello@fontnelson.com]
**Sent:** Wednesday, May 5, 2021 12:17 PM
**To:** Cheri Rodriguez; Frantz Nelson
**Cc:** Nimra Salehjee; filings; Jennifer Wilds; Meghan Betz
**Subject:** RE: Case No. 2019-030409-CA-01; M&M Sisters, LLC, Bertha Menendez Garcia & Maria Mendez v. Scottsdale Insurance Company

Cheri/Robert,

Just a reminder that Plaintiff's Motion to Compel Mediation was filed as we have been requesting a mediation since March and no response was had from your office. Do not misrepresent Plaintiff's efforts to secure mediation.  It is our position that securing dates/deadlines by way of Court Orders proves fruitful as we can move this case along timely. It is our Firm's standing protocol that at all times hereto we will coordinate all events for a mutually convenient time/date in any time constraint as we will adjust our schedules accordingly.

If Defendant is not in agreement with the proposed agreed orders, we will move forward with tomorrow's hearing. The hearing was coordinated with your office so we are confirmed.

Sincerely,

*Samantha Costello*
**Paralegal to Frantz C. Nelson, Esq.**
FONT & NELSON
200 S. Andrews Avenue , Suite 501
Ft. Lauderdale, FL 33301
Ph: (954) 248-2920
Fax:  (954) 248-2134
E-Service: pleadings@fontnelson.com

*NOTE: Pursuant to our company's COVID-19 policy, most of our staff is working remotely.  Please allow our office additional time in which to respond to e-mails and telephone calls during this time. Due to the current situation, staff members may not receive all telephone calls.  If you are trying to reach a staff member, please be sure to send an e-mail to the staff member, rather than relying solely upon voice messages.  Thank you in advance for your understanding and patience.*

THIS E-MAIL IS INTENDED ONLY FOR THE ABOVE-NAMED RECIPIENT(S) AND IS CONFIDENTIAL This e-mail message and attachments, if any, are intended solely for the use of the addressee hereof. In addition, this message and attachments, if any, may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, or otherwise using this transmission. Delivery of this message to any person other than the intended recipient is not intended to waive any legal right or privilege. If you have received this message in error, please promptly notify the sender by e-mail and immediately delete this message and attachments, if any, from your system.

**From:** Cheri Rodriguez <CRodriguez@rocklawpa.com>
**Sent:** Tuesday, May 04, 2021 5:24 PM
**To:** Samantha Costello <scostello@fontnelson.com>; Frantz Nelson <fnelson@fontnelson.com>
**Cc:** Nimra Salehjee <nsalehjee@fontnelson.com>; filings <filings@fontnelson.com>; Jennifer Wilds <jwilds@fontnelson.com>
**Subject:** RE: Case No. 2019-030409-CA-01; M&M Sisters, LLC, Bertha Menendez Garcia & Maria Mendez v. Scottsdale Insurance Company

[SENT ON BEHALF OF ATTORNEY ROBERT L. ROGERS, III]

Good Afternoon Samantha,

Thank you for your email today at 2:48 p.m. and 4:42 p.m., to which you attached two proposed orders—one proposing to agree to resolve Plaintiff's Motion to Compel Mediation by entering into an order requiring the parties to "coordinate mediation to occur within eighty-five (85) days of the date of this Order," and the other proposing to resolve Plaintiff's Motion to Compel Deposition for Date Certain (the "Motion to Compel Deposition") by requiring my client to "schedule the deposition of Defendant's corporate representative for a mutually convenient date to occur within forty-five (45) days after the completion of mediation."   We cannot agree to either of these orders at this time.

Specifically, on April 15, 2021, after you agreed to schedule mediation before any depositions in this case and after we agreed to mediate with mediator Curtis Hutchens (who your office proposed), we asked you to "provide proposed dates and times to conduct a 'remote' mediation with Mr. Hutchens," but you ignored that request and never provided us dates for mediation.  Then earlier today, we provided you the only three dates in the next 120 days when Scottsdale and our office are available for mediation and directed you to schedule mediation for one of those dates.  It also appears that you have now agreed to July 22, 2021 for mediation and simply need to confirm the availability of our mediator.  So our cooperation in working with you to schedule mediation has rendered the Motion to Compel Mediation moot, and there is no need to compel my client to schedule the mediation in this matter (nor has there ever been).

Scheduling any mediation in this matter requires participation by both sides, not just the Defendant.  Since Plaintiff initially refused to provide dates to schedule this mediation (despite filing the Motion to Compel Mediation) and are only now cooperating in our efforts to schedule the mediation for this case, Scottsdale cannot agree to any order providing a deadline

for when that mediation must be completed.  Instead, Plaintiff should simply schedule the mediation with Curtis Hutchens on one of the dates we have provided and withdraw its Motion to Compel Mediation—or at the very least, cancel the hearing set on the Motion to Compel Mediation.  There is no reason for an order compelling mediation and Scottsdale will not agree to one.

With regard to the Motion to Compel Deposition, you have already agreed to postpone any depositions until after the mediation.  Also, and again, because Plaintiffs are refusing to schedule this mediation, Scottsdale cannot agree to any order providing a deadline for when that deposition of its corporate representative must be completed.  The witness has very limited availability, and because of that limited availability, Scottsdale cannot agree that a deposition will be "scheduled" for any set date.  Within 10 days of you setting the mediation in this matter, I can provide you the next dates after the mediation for this matter when Scottsdale's corporate representative is next available to be deposed.  However, because of my client's busy schedule (and mine) (and because you may not be available on the dates we provide), Scottsdale cannot agree to an order requiring the deposition to be "scheduled . . . within 45 days after the completion of mediation"—nor is an order on the Motion to Compel Depositions even necessary, as this case is not yet set for trial or even at issue.

-Robert L. Rogers, III, Esquire

*Cherilyn D. Rodriguez*
Legal Assistant to Robert L. Rogers, III, Esquire
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, Florida 32751
(407) 647-9881 (telephone)
(407) 647-9966 (facsimile)
crodriguez@rocklawpa.com

NOTICE:  This e-mail is from a law firm, The Rock Law Group, P.A., and is intended solely for the use of the individual(s) to whom it is addressed.  If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer, and do not copy or disclose it to anyone else.  If you are not an existing client of The Rock Law Group, P.A., do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to The Rock Law Group, P.A. in reply that you expect it to hold in confidence.  If you properly received this e-mail as a client, co-counsel or retained expert of The Rock Law Group, P.A., you should maintain its contents in confidence in order to preserve the attorney-client or work-product privilege that may be available to protect confidentiality.

---

**From:** Samantha Costello [mailto:scostello@fontnelson.com]
**Sent:** Tuesday, May 4, 2021 4:40 PM
**To:** Cheri Rodriguez; Frantz Nelson
**Cc:** Nimra Salehjee; filings; Jennifer Wilds
**Subject:** RE: Case No. 2019-030409-CA-01; M&M Sisters, LLC, Bertha Menendez Garcia & Maria Mendez v. Scottsdale Insurance Company

Good Afternoon Cheri,

I had responded to your email earlier today (see attached). We drafted proposed agreed orders on the motions for May 6th. I Have amended the order regarding mediation.

Please hold July 22 while I secure with Mr. Hutchens.

*Samantha Costello*

**Paralegal to Frantz C. Nelson, Esq.**

FONT & NELSON

200 S. Andrews Avenue , Suite 501

Ft. Lauderdale, FL 33301

Ph: (954) 248-2920

Fax:  (954) 248-2134

E-Service: pleadings@fontnelson.com

*\*NOTE: Pursuant to our company's COVID-19 policy, most of our staff is working remotely.  Please allow our office additional time in which to respond to e-mails and telephone calls during this time. Due to the current situation, staff members may not receive all telephone calls.  If you are trying to reach a staff member, please be sure to send an e-mail to the staff member, rather than relying solely upon voice messages.  Thank you in advance for your understanding and patience.*

THIS E-MAIL IS INTENDED ONLY FOR THE ABOVE-NAMED RECIPIENT(S) AND IS CONFIDENTIAL This e-mail message and attachments, if any, are intended solely for the use of the addressee hereof. In addition, this message and attachments, if any, may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, or otherwise using this transmission. Delivery of this message to any person other than the intended recipient is not intended to waive any legal right or privilege. If you have received this message in error, please promptly notify the sender by e-mail and immediately delete this message and attachments, if any, from your system.

**From:** Cheri Rodriguez <CRodriguez@rocklawpa.com>

**Sent:** Tuesday, May 04, 2021 4:34 PM

**To:** Samantha Costello <scostello@fontnelson.com>; Frantz Nelson <fnelson@fontnelson.com>

**Cc:** Nimra Salehjee <nsalehjee@fontnelson.com>; filings <filings@fontnelson.com>; Jennifer Wilds <jwilds@fontnelson.com>

**Subject:** RE: Case No. 2019-030409-CA-01; M&M Sisters, LLC, Bertha Menendez Garcia & Maria Mendez v. Scottsdale Insurance Company

[SENT ON BEHALF OF ATTORNEY ROBERT L. ROGERS, III]

Good Afternoon,

I am writing to follow up on our efforts to schedule mediation, in connection with the hearing on Plaintiff's Motion to Compel Mediation set for this Thursday, May 6, 2021.  On April 15, 2021, we told you that we agree to mediate with Curtis Hutchens and instructed you to "please provide proposed dates and times to conduct a 'remote' mediation with Mr. Hutchens," but you ignored that email and never provided us those dates.  It therefore seems clear that you are not cooperating with your own request to schedule mediation for this matter.

That notwithstanding, we have checked with our client and can confirm that both our office and our client are available for mediation on the following dates for a remote mediation (please also note that our client is located in Nashville, Tennessee and is one (1) hour behind our time.  Therefore, we request that the mediation not start any earlier than 10:00 a.m. EST; 9:00 a.m. CST)::

> + Wednesday, July 21, 2021
> + Thursday, July 22, 2021
> + Tuesday, August 17, 2021

There are no other dates in May, June, or July 2021, or any other dates before August 17, 2021 when we are available.

Please select one of these dates immediately for the mediation in this action and notify Mr. Hutchens that we will be mediating on that date, and then cancel the hearing set for Thursday, May 6, 2021 on the Motion to Compel Mediation.

We cannot keep these dates open indefinitely, as both our office and our client have very busy schedules.  So if you do not schedule the mediation for this matter by the close of business on this coming Monday, May 10, 2021, we will not keep such dates open and may need to schedule the mediation for a later date.

-Robert L. Rogers, III, Esquire


*Cherilyn D. Rodriguez*
Legal Assistant to Robert L. Rogers, III, Esquire
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, Florida 32751
(407) 647-9881 (telephone)
(407) 647-9966 (facsimile)
crodriguez@rocklawpa.com

NOTICE:  This e-mail is from a law firm, The Rock Law Group, P.A., and is intended solely for the use of the individual(s) to whom it is addressed.  If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer, and do not copy or disclose it to anyone else.  If you are not an existing client of The Rock Law

Group, P.A., do not construe anything in this e-mail to make you a client unless it contains a
specific statement to that effect and do not disclose anything to The Rock Law Group, P.A. in
reply that you expect it to hold in confidence.  If you properly received this e-mail as a client,
co-counsel or retained expert of The Rock Law Group, P.A., you should maintain its contents
in confidence in order to preserve the attorney-client or work-product privilege that may be
available to protect confidentiality.

**From:** Cheri Rodriguez
**Sent:** Thursday, April 15, 2021 1:17 PM
**To:** 'Samantha Costello'; Frantz Nelson
**Cc:** Nimra Salehjee; filings; Jennifer Wilds
**Subject:** RE: Case No. 2019-030409-CA-01; M&M Sisters, LLC, Bertha Menendez Garcia & Maria Mendez
v. Scottsdale Insurance Company

[SENT ON BEHALF OF ATTORNEY ROBERT L. ROGERS, III]

Good Afternoon Samantha,

Please be advised that the only mediator from your below list of mediators for which we will
agree to utilize in this matter is Curtis Hutchens.  As such, please provide proposed dates and
times to conduct a "remote" mediation with Mr. Hutchens at your earliest convenience.
Thereafter, we will review the dates for our availability and our client's availability.

Thank you, and we look forward to hearing from you.

-Cheri

*Cherilyn D. Rodriguez*
Legal Assistant to Robert L. Rogers, III, Esquire
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, Florida 32751
(407) 647-9881 (telephone)
(407) 647-9966 (facsimile)
crodriguez@rocklawpa.com

NOTICE:  This e-mail is from a law firm, The Rock Law Group, P.A., and is intended solely
for the use of the individual(s) to whom it is addressed.  If you believe you received this e-
mail in error, please notify the sender immediately, delete the e-mail from your computer, and
do not copy or disclose it to anyone else.  If you are not an existing client of The Rock Law
Group, P.A., do not construe anything in this e-mail to make you a client unless it contains a
specific statement to that effect and do not disclose anything to The Rock Law Group, P.A. in
reply that you expect it to hold in confidence.  If you properly received this e-mail as a client,
co-counsel or retained expert of The Rock Law Group, P.A., you should maintain its contents
in confidence in order to preserve the attorney-client or work-product privilege that may be
available to protect confidentiality.

**From:** Samantha Costello [mailto:scostello@fontnelson.com]
**Sent:** Wednesday, April 14, 2021 2:31 PM
**To:** Cheri Rodriguez; Frantz Nelson
**Cc:** Nimra Salehjee; filings; Jennifer Wilds
**Subject:** RE: Case No. 2019-030409-CA-01; M&M Sisters, LLC, Bertha Menendez Garcia & Maria Mendez v. Scottsdale Insurance Company

Hi Cheri,

Yes, we are agreeable to scheduling an early mediation. Our preferred mediators are:

- Ilida Alvarez
- Curtis Hutchens
- Brian Reeves

Please advise if you are agreeable to using any of those.


*Samantha Costello*

**Paralegal to Frantz C. Nelson, Esq.**

FONT & NELSON

200 S. Andrews Avenue , Suite 501
Ft. Lauderdale, FL 33301
Ph: (954) 248-2920
Fax:  (954) 248-2134
E-Service: pleadings@fontnelson.com

*NOTE: Pursuant to our company's COVID-19 policy, most of our staff is working remotely.  Please allow our office additional time in which to respond to e-mails and telephone calls during this time.  Due to the current situation, staff members may not receive all telephone calls.  If you are trying to reach a staff member, please be sure to send an e-mail to the staff member, rather than relying solely upon voice messages.  Thank you in advance for your understanding and patience.*

THIS E-MAIL IS INTENDED ONLY FOR THE ABOVE-NAMED RECIPIENT(S) AND IS CONFIDENTIAL This e-mail message and attachments, if any, are intended solely for the use of the addressee hereof. In addition, this message and attachments, if any, may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, or otherwise using this transmission. Delivery of this message to any person other than the intended recipient is not intended to waive any legal right or privilege. If you have received this message in error, please promptly notify the sender by e-mail and immediately delete this message and attachments, if any, from your system.

**From:** Cheri Rodriguez <CRodriguez@rocklawpa.com>
**Sent:** Wednesday, April 14, 2021 2:06 PM
**To:** Frantz Nelson <fnelson@fontnelson.com>; Samantha Costello <scostello@fontnelson.com>
**Cc:** Nimra Salehjee <nsalehjee@fontnelson.com>
**Subject:** Case No. 2019-030409-CA-01; M&M Sisters, LLC, Bertha Menendez Garcia & Maria Mendez v. Scottsdale Insurance Company

[SENT ON BEHALF OF ATTORNEY ROBERT L. ROGERS, III]

Good Afternoon Attorney Nelson,

    Defendant, Scottsdale Insurance Company ("Scottsdale"), would like to schedule an early mediation before taking any depositions concerning the above-referenced matter.  Will you and your client agree to schedule mediation before any depositions in this case?  If so, Scottsdale is agreeable to the following mediators:  Robert Dulberg, John Salmon, Lester Langer, Eric Kleinman, or Markel Arrizabalaga.

    Thank you, and we look forward to hearing from you.

-Robert L. Rogers, III, Esquire


*Cherilyn D. Rodriguez*
Legal Assistant to Robert L. Rogers, III, Esquire
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, Florida 32751
(407) 647-9881 (telephone)
(407) 647-9966 (facsimile)
crodriguez@rocklawpa.com

NOTICE:  This e-mail is from a law firm, The Rock Law Group, P.A., and is intended solely for the use of the individual(s) to whom it is addressed.  If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer, and do not copy or disclose it to anyone else.  If you are not an existing client of The Rock Law Group, P.A., do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to The Rock Law Group, P.A. in reply that you expect it to hold in confidence.  If you properly received this e-mail as a client, co-counsel or retained expert of The Rock Law Group, P.A., you should maintain its contents in confidence in order to preserve the attorney-client or work-product privilege that may be available to protect confidentiality.

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

M&M SISTERS, LLC. BERTHA
MENENDEZ GARCIA & MARIA
MENDEZ,

CASE NO.: 2019-030409-CA-01

     Plaintiffs,

vs.

SCOTTSDALE INSURANCE
COMPANY,

     Defendant.

_____/

## NOTICE OF HEARING

*(Coordinated W/ Cheri from Defense Counsel on 05/05)*

**YOU ARE HEREBY NOTIFIED** that the above cause is scheduled for a five-minute hearing before the Honorable Barbara Areces, Circuit Court Judge, via Zoom video conferenceon **Thursday, June 10, 2021 at 9:00 A.M.**, or as soon thereafter as can be heard:

### PLAINTIFFS' MOTION FOR LEAVE TO PROPOUND ADDITIONAL INTERROGATORIES AND REQUESTS FOR ADMISSIONS

*(Certificate of Service on following page)*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically furnished on or about <u>May 5, 2021</u> via the Florida Court's e-filing Portal ("Portal") in accordance with Fla. R. Jud. Admin. 2. 516, which should furnish copies to the e-mail address of each party identified in the Portal's Service List.

**FONT & NELSON, PLLC**
*Attorney for Plaintiffs*
200 South Andrews Ave., Suite 501,
Ft. Lauderdale, Florida 33301
Tel: (954) 248-2920; Fax: (954) 248-2134
Service Email: pleadings@fontnelson.com

BY: */s/ Frantz C. Nelson*
  **FRANTZ C. NELSON, ESQ.**
  Florida Bar No. 0031134

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

Case No. 2019-030409-CA-01

M&M SISTERS, LLC, BERTHA MENENDEZ GARCIA & MARIA MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE INSURANCE COMPANY,

    Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT AND MOTION TO STRIKE DEMANDS FOR ATTORNEYS' FEES PURSUANT TO FLA. STAT. § 627.428

Defendant SCOTTSDALE INSURANCE COMPANY ("Scottsdale") hereby serves this Motion to Dismiss or, in the Alternative, Motion for More Definite Statement and Motion to Strike Demands for Attorneys' Fees Pursuant to Fla. Stat. § 627.428, in response to the Amended Complaint filed by Plaintiffs M&M SISTERS, LLC, BERTHA MENDENDEZ GARCIA, and MARIA MENDEZ ("Plaintiffs"), stating as follows:

### Motion to Dismiss for Failure to Allege Ultimate Facts

1.    Plaintiffs' Complaint, in which Plaintiffs seek relief for an alleged breach by Scottsdale of their insurance policy, must also be dismissed because Plaintiffs have failed to allege ultimate facts necessary to state a cause of action against Scottsdale, or to state their claim with the minimum particularity required to inform Scottsdale of the nature of the cause of action they pursue.

2.      In their Amended Complaint, Plaintiffs generally allege that "[o]n or about May 6, 2019 to present, while the Policy was in full force and effect, the Property sustained a sudden, accidental, and/or otherwise covered loss . . . under the Policy, resulting in extensive damage to the interior and exterior of the insured risk." *See Am'd Compl.*, at ¶ 9. However, Plaintiffs do not identify the "damage" or the loss or what caused that "damage" or "loss," forcing Scottsdale to speculate as to such facts. *See Am'd Compl.*[1]

3.      Not all "losses" or "damage" (including "sudden" or "accidental" losses or damage) are covered under the subject insurance policy, as reflected in the policy attached as Exhibit "A" to the Amended Complaint.  Scottsdale's obligations and defenses under any applicable insurance policy would depend upon the date, cause, type, and nature of the alleged loss.  Any number of policy provisions, exceptions, exclusions, or defenses may apply to Plaintiffs' claim, depending upon the nature of the unspecified damage and its unspecified cause.

4.      Since Plaintiffs have not alleged what the alleged "loss" or "damage" was or what caused it, Scottsdale cannot answer whether the "loss" or "damage" was covered under the policy.

5.      Florida is a fact-pleading jurisdiction.  *See Horowitz v. Laske*, 855 So. 2d 169, 172-73 (Fla. 5th DCA 2003).  Florida's pleading rule "forces counsel to recognize the elements of their cause of action and determine whether they have or can develop facts to support it, which avoids a great deal of wasted expense to litigants and unnecessary judicial effort." *Id.* at 172-73.  At the outset of the suit, litigants must state their allegations with sufficient particularity for a Scottsdale to be able to respond.  *Id.*   Also, Florida Rule of

---

[1] Plaintiffs' allegation that the loss occurred "from May 6, 2019 to present" also contradicts Plaintiffs' allegation that the alleged loss was "sudden," rendering this allegation even more vague.

Civil Procedure 1.110(b) requires Plaintiffs to set forth "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief."

6.      As Plaintiffs have failed to plead ultimate facts necessary to state a cause of action, their Complaint should be dismissed as a matter of law.  *See Barrett v. City of Margate,* 743 So. 2d 1160, 1162-63 (Fla. 4th DCA 1999); *Clark v. Boeing Co.*, 395 So. 2d 1226, 1229 (Fla. 3d DCA 1981).

<u>**Motion for More Definite Statement**</u>

7.      In the alternative to dismissing the Amended Complaint, the Court should require Plaintiffs to more definitely identify the cause and nature of the "loss" and "damage" pursuant to Florida Rule of Civil Procedure 1.140(e), as the Amended Complaint is too vague to permit Scottsdale to frame an adequate response based on the four corners of the Complaint.

8.      Rule 1.140(e) states in pertinent part:

> **Motion for More Definite Statement.**  If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, that party may move for a more definite statement before interposing a responsive pleading.  The motion shall point out the defects complained of and the details desired…

9.      Since Scottsdale's defenses under any applicable insurance provisions will depend upon the cause and nature of the loss and damage alleged, Scottsdale cannot reasonably be required to frame a response to the Amended Complaint as it is currently pled.

<u>**Motion to Strike Allegations Demanding Attorneys' Fees Pursuant to Fla. Stat. § 627.428**</u>

10.     In their Amended Complaint, Plaintiffs also demand "attorneys' fees and

costs pursuant to Florida Statutes Section 627.428." *See Am'd Compl.*, at ¶¶ 24; *see also id.* at WHEREFORE clause on p. 5. However, Scottsdale is recognized by the Florida Department of Financial Services as a surplus lines insurer regulated under the Surplus Lines Law codified at Florida Statutes § 626.913 through 626.937. *See Information for Scottsdale on Florida Dep't of Ins. Regulation Website,* available at https://www.floir.com/CompanySearch/each_comp.aspx?IREID=101419&AUTHID=101419&FICTNAME=&CCRCNAME=&passCompanyType=SURPLUS%20LINES&passCompanyName=SCOTTSDALE%20INSURANCE%20COMPANY.

11.    "Except as may be specifically stated to apply to surplus lines insurers, the provisions of Chapter 627 do not apply to surplus lines insurance" regulated under the Surplus Lines Law. *See* Fla. Stat. § 626.913(4). This includes Fla. Stat. § 627.428.

12.    Pursuant to Florida Rule of Civil Procedure 1.140(f), a party may move to strike or the Court may strike any "redundant, immaterial, impertinent or scandalous" matter from any pleading at any time.

13.    Since Scottsdale is a surplus lines insurer, all allegations and references in the Amended Complaint to demands for attorneys' fees pursuant to Fla. Stat. § 627.428, including those contained in Paragraph 24 and the WHEREFORE clause on page 5, are impertinent and immaterial and should therefore be stricken pursuant to Rule 1.140(f).

WHEREFORE, Defendant SCOTTSDALE INSURANCE COMPANY respectfully requests that this Honorable Court enter an order dismissing the Amended Complaint filed by Plaintiffs M&M SISTERS, LLC, BERTHA MENDENDEZ GARCIA, and MARIA MENDEZ or, in the alternative and at the very least, striking all allegations demanding attorneys' fees pursuant to Fla. Stat. § 627.428 from Plaintiffs M&M SISTERS, LLC,

BERTHA MENDENDEZ GARCIA, and MARIA MENDEZ's Complaint and requiring Plaintiffs M&M SISTERS, LLC, BERTHA MENDENDEZ GARCIA, and MARIA MENDEZ to more definitely state the cause and nature of the "loss" and "damage" referenced in the Amended Complaint, and ordering any other just and appropriate relief.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 14th day of May, 2020 to:  Frantz C. Nelson, Esquire, Font & Nelson, LLC, pleadings@fontnelson.com; FNelson@FontNelson.com; and SCostello@FontNelson.com.

*/s/ Robert L. Rogers, III*
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

RLR/cdr

M&M SISTERS, LLC,
BERTHA MENENDEZ GARCIA & MARIA
MENDEZ,

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

        Plaintiff,

CASE NO.: 2019-030409-CA-01

v.

SCOTTSDALE INSURANCE COMPANY,

        Defendant.

_____/

## NOTICE OF MEDIATION

**NOTICE IS HEREBY GIVEN** that a mediation conference in the above styled cause will take place at the time, date and place below:

| | | | |
|---|---|---|---|
| **DATE:** | Thursday, July 22, 2021 | **TIME:** | **10:30 a.m.** EST |
| **PLACE:** | CH Mediation | **MEDIATOR:** | Curtis Hutchens |

https://zoom.us/j/94815962603?pwd=U2pLQy9Ddlp1Y2RwNk1yOFFWWlFHUT09
Meeting ID: 948 1596 2603, Passcode: 159458

The client or a representative of the client with full authority to settle, other than counsel should be present. If insurance is involved, a representative of the insurance company shall be present with full authority to settle for up to the policy limits or the amount of plaintiff's last demand, whichever is less.

A total of six (6) hours has been set aside for this mediation. If more time is anticipated, please notify the mediator's office immediately. A cancellation fee will be charged, as set forth in the attached Mediation Engagement Agreement, if the mediation is canceled less than one (1) business days prior to the scheduled conference date.

All parties acknowledge that the mediation conference constitutes a privileged and confidential communication between those present at the mediation settlement conferences as set forth in Chapter 44, Florida Statues. All parties further acknowledge that the mediator is a neutral and may not act as an advocate for any party.

In accordance with the Americans with Disabilities Act of 1990, all persons who are disabled and who need special accommodations to participate in this proceeding because of that disability should contact the Mediator's office no later than five (5) business days prior to the mediation conference.

Respectfully submitted,

_____
Curtis Hutchens, Esquire
Florida Bar No.: 814105
Curtishutchens@CHMediation.com
268 Dow Court
Green Cove Springs, Florida 32043
Tel 904-563-2475

Copies furnished to:
All parties via e-service

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR     MIAMI-DADE     COUNTY,
FLORIDA
CIVIL DIVISION

M&M SISTERS, LLC BERTHA                    Case No. 2019-030409-CA-01
MENENDEZ GARCIA & MARIA
MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,

    Defendant.

_____/

## DEFENDANT'S NOTICE OF SERVICE OF
## PROPOSAL FOR SETTLEMENT TO PLAINTIFF, M&M SISTERS, LLC

    Defendant, SCOTTSDALE INSURANCE COMPANY, pursuant to Rule 1.442, *Florida Rules of Civil Procedure* and §768.79, *Florida Statutes,* hereby gives notice of the service of a Proposal for Settlement upon the Plaintiff, M&M SISTERS, LLC, on the undersigned date.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 21st day of June, 2021 to:  Frantz C. Nelson, Esquire, Font & Nelson, LLC, pleadings@fontnelson.com; FNelson@FontNelson.com; and SCostello@FontNelson.com.

                      */s/ Robert L. Rogers, III*
                      Andrew P. Rock, Esquire
                      Florida Bar No. 0656437
                      Robert L. Rogers, III, Esquire
                      Florida Bar No. 0694207
                      The Rock Law Group, P.A.
                      1760 Fennell Street
                      Maitland, FL 32751
                      Telephone: (407) 647-9881
                      Telecopier: (407) 647-9966
                      Email: pleadings@rocklawpa.com; and
                      crodriguez@rocklawpa.com
                      Attorneys for Defendant, Scottsdale
                      Insurance Company

RLR/cdr

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR      MIAMI-DADE      COUNTY,
FLORIDA
CIVIL DIVISION

M&M SISTERS, LLC BERTHA                     Case No. 2019-030409-CA-01
MENENDEZ GARCIA & MARIA
MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,

    Defendant.

_____/

## DEFENDANT'S NOTICE OF SERVICE OF PROPOSAL FOR SETTLEMENT TO PLAINTIFF, BERTHA MENENDEZ GARCIA

Defendant, SCOTTSDALE INSURANCE COMPANY, pursuant to Rule 1.442, *Florida Rules of Civil Procedure* and §768.79, *Florida Statutes,* hereby gives notice of the service of a Proposal for Settlement upon the Plaintiff, BERTHA MENENDEZ GARCIA, on the undersigned date.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 21st day of June, 2021 to:  Frantz C. Nelson, Esquire, Font & Nelson, LLC, pleadings@fontnelson.com; FNelson@FontNelson.com; and SCostello@FontNelson.com.

*/s/ Robert L. Rogers, III*
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

RLR/cdr

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR        MIAMI-DADE        COUNTY,
FLORIDA
CIVIL DIVISION

M&M SISTERS, LLC BERTHA                    Case No. 2019-030409-CA-01
MENENDEZ GARCIA & MARIA
MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,

    Defendant.

_____/

## DEFENDANT'S NOTICE OF SERVICE OF PROPOSAL FOR SETTLEMENT TO PLAINTIFF, MARIA MENDEZ

    Defendant, SCOTTSDALE INSURANCE COMPANY, pursuant to Rule 1.442, *Florida Rules of Civil Procedure* and §768.79, *Florida Statutes,* hereby gives notice of the service of a Proposal for Settlement upon the Plaintiff, MARIA MENDEZ, on the undersigned date.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 21st day of June, 2021 to:  Frantz C. Nelson, Esquire, Font & Nelson, LLC, pleadings@fontnelson.com; FNelson@FontNelson.com; and SCostello@FontNelson.com.

                                */s/ Robert L. Rogers, III*
                                Andrew P. Rock, Esquire
                                Florida Bar No. 0656437
                                Robert L. Rogers, III, Esquire
                                Florida Bar No. 0694207
                                The Rock Law Group, P.A.
                                1760 Fennell Street
                                Maitland, FL 32751
                                Telephone: (407) 647-9881
                                Telecopier: (407) 647-9966
                                Email: pleadings@rocklawpa.com; and
                                crodriguez@rocklawpa.com
                                Attorneys for Defendant, Scottsdale
                                Insurance Company

RLR/cdr

Case 1:21-cv-24081-FAM Document 1-2 Entered on FLSD Docket 11/19/2021 Page 483 of 661

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

Case No. 2019-030409-CA-01

M&M SISTERS, LLC, BERTHA
MENENDEZ GARCIA & MARIA
MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,

    Defendant.

_____/

### DEFENDANT'S EMERGENCY MOTION TO ORDER EITHER POSTPONEMENT OF MEDIATION SET FOR JULY 22, 2021 OR DISCLOSURE BY PLAINTIFFS OF TOTAL AMOUNT OF DAMAGES SOUGHT AND SUPPORTING DOCUMENTATION NO LATER THAN JULY 15, 2021 (ONE WEEK BEFORE MEDIATION)

Defendant SCOTTSDALE INSURANCE COMPANY ("Scottsdale"), based upon the continued failure by Plaintiffs M&M SISTERS, LLC ("M&M"), BERTHA MENDENDEZ GARCIA, and MARIA MENDEZ ("Plaintiffs") to disclose the amount of damages they seek in this mediation or any supporting documentation, files this Emergency Motion to Order Either Postponement of Mediation Set for July 22, 2021 or Disclosure by Plaintiffs of Total Amount of Damages Sought and Supporting Documentation No Later Than July 15, 2021 (One Week Before Mediation), and states:

1.    The mediation for this action was set for July 22, 2021, following Plaintiffs' filing of a Motion to Compel Mediation on March 25, 2021. However, to date, Plaintiffs have still refused to disclose the amount(s) of damages they seek or any supporting

documentation—even though Scottsdale served written discovery attempting to discover this information almost two months ago. *See Def's First Req. for Production to Pl's (May 14, 2021)*, attached hereto as **Exhibit "A,"** at ¶ 11 (instructing Plaintiffs to disclose all "records pertaining to and/or in support of the dollar amount of loss claimed by you, including all categories of damages"); *see also Def's First Sets of Interrogatories to Pl's (May 14, 2021)*, attached hereto as **Exhibit "B,"** at ¶ 10 (instructing Plaintiffs to "state the dollar amount of each element of damages claimed by you" and "the method used to compute each such amount"): *Email from Scottsdale's Attorneys to Plaintiffs' Attorneys (June 18, 2021)*, attached hereto as **Exhibit "C"** (pointing out that Plaintiffs have still not disclosed the amount of damages they seek or any supporting estimates and "[w]ithout knowing what amount of damages Plaintiffs seek and without having the documentation supporting such amounts, Scottsdale cannot possibly prepare for mediation or prepare any amount of settlement authority for the mediation").   Without this information or documentation, Scottsdale cannot possibly prepare for the mediation set for July 22, 2021.

2.      Scottsdale therefore respectfully requests that the Court order the mediation set for July 22, 2021 to be postponed indefinitely based upon Plaintiffs' continued refusal to disclose the total amount(s) of damages they seek and the estimates that quantify these damages.   Alternatively, Scottsdale respectfully requests that the Court enter an order compelling Plaintiffs to disclose all amounts they seek in this lawsuit and a supporting estimate by no later than July 15, 2021—one week before the mediation set for July 22, 2021—and also order the July 22, 2021 cancelled upon Scottsdale's notice and without further order if Plaintiffs fail to disclose such information and documentation by July 15, 2021.

## Pertinent Procedural History of Claim

3.       Plaintiffs served their initial Complaint on Scottsdale through prior counsel on October 28, 2019.  *See Not of Serv. of Process*.  However, in that initial Complaint, Plaintiffs did not seek any monetary damages.  *See Compl.*  Instead, Plaintiffs asserted only a single count for declaratory judgment, in which they sought only a declaration that they should be permitted to video record the inspection of their insured property by Scottsdale's field adjuster over Scottsdale's objection.  *See id.*  (At that time, Scottsdale had not completed its investigation of Plaintiffs' claim for damage to the property located at 1111 N.W. 43rd Avenue in Miami, Florida (the "Property") allegedly caused by water on May 6, 2019 (the "Subject Claim"), as Scottsdale had been prevented from doing so by Plaintiffs' refusal to permit the inspection of the Property unless that inspection was recorded.  So Plaintiffs' initial Complaint sought only a declaration requiring them to be permitted to record that inspection.)

4.       The Court eventually entered an order allowing the inspection to be recorded and abating the action pending the completion of that inspection.  *See Order Denying Mot'n to Dismiss (Aug. 25, 2020)*.  Scottsdale subsequently completed its investigation of the Subject Claim and sent its coverage determination letter to Plaintiffs denying the Subject Claim on January20, 2021.

5.       On May 4, 2021 (two months after Plaintiffs' current attorneys entered their initial appearance after Plaintiffs' prior attorneys withdrew),[1] Plaintiffs filed their Amended

---

[1] On December 16, 2021, Plaintiffs' original attorneys (The Strems Law Group) filed a Motion to Withdraw as Counsel for Plaintiffs.  On January 21, 2021, the Court entered its Order Granting Motion to Withdraw, in which it required Plaintiffs to either retain new counsel or file a written notice of their intent to proceed *pro se* within 30 days, or by February 20, 2021—and warned Plaintiffs that a failure to do so "will create a presumption that [Plaintiffs] no longer wish to participate in this lawsuit and the court may *sua sponte*" dismiss the action.  *See Order Granting Mot'n to Withdraw (Jan. 21, 2021)*, at ¶¶ 3-4.  Plaintiffs did not retain new counsel or file a written notice of their intent to proceed within the time required by the Court; instead,

Complaint, in which they dropped their former declaratory judgment action and replaced it with a single count for breach of contract, in which they now seek damages for the Scottsdale's denial of the Subject Claim.  *See Am'd Compl. (May 4, 2021)*.  But Plaintiffs allege nothing about the damages they seek, other than that they seek damages that exceed $30,000.00 exclusive of interest, costs and attorneys' fees.  *See id.* at ¶ 1.  Scottsdale timely responded to the Amended Complaint by filing its Motion to Dismiss or, in the Alternative, Motion for More Definite Statement and Motion to Strike Demands for Attorneys' Fees Pursuant to Fla. Stat. § 627.428 (the "Motion to Dismiss"), which remains pending and unresolved at this time.

6.      Approximately five weeks before they filed their Amended Complaint, Plaintiffs (through their current counsel) filed a Motion to Compel Mediation, seeking an order requiring the parties to set mediation.  As the Court recognized at the hearing on the Motion to Compel Mediation (at which the Motion to Compel Mediation was denied as moot), Scottsdale cooperated in efforts to schedule the mediation, resulting in that mediation being set before mediator Curtis Hutchens for July 22, 2021.  *See Notice of Mediation*.  But Scottsdale's cooperation in efforts to schedule mediation was based upon its understanding that Plaintiffs would disclose the amount of damages they seek and supporting documentation before the mediation—so that Scottsdale could prepare for that mediation. *See* **Exh. C**.  But Plaintiffs never disclosed the amount of damages they seek or a supporting estimate or even provided a global settlement demand.

7.      Based on these failures, on May 14, 2021, Scottsdale served its First Request for Production of Documents and First Sets of Interrogatories on Plaintiffs, the responses to

---

Plaintiffs' current attorneys (Font & Nelson) filed a Notice of Appearance more than two weeks after the Court-ordered deadline.  *See Notice of Appearance (Mar. 5, 2021)*.

which were due on June 13, 2021. *See* **Exhs. A** and **B**. In those discovery requests, Scottsdale specifically asked each Plaintiff to "state the dollar amount of each element of damages claimed by you, the method used to compute each such amount, and identify any . . . documents . . . which evidence, in whole or in part, your claim for damages" (*see* **Exh. B**, at ¶ 10) and to produce "all documents, written items, and records pertaining to and/or in support of the dollar amount of loss claimed by you, including all categories of damages" (*see* **Exh. A**, at ¶ 11). But instead of timely responding to this written discovery, Plaintiffs filed a Motion for Extension of Time to File Discovery Responses (the "Motion for Extension"), seeking a 45-day extension of their deadline to respond to Scottsdale's Request for Production of Documents and First Sets of Interrogatories.

8.     On June 18, 2021, Scottsdale's attorneys sent an email to Plaintiffs' counsel stating:

> We received Plaintiffs' Motion [for Extension], in which Plaintiffs requested a 45-day extension of Plaintiffs' deadline to serve responses to [Scottdale's] First Set of Interrogatories and First Request for Production of Documents, through July 29, 2021—one week after mediation. Although Scottsdale can agree to a 20-day extension of that deadline (through Monday, July 5, 2021), we cannot agree to the extension you requested, as Scottsdale needs those discovery responses to prepare for the mediation that you demanded be compelled to be set for July 22, 2021.
>
> Specifically, Plaintiffs have still not disclosed the amount of damages they seek in this lawsuit or any supporting estimates or documents. Without knowing what amount of damages Plaintiffs seek and without having the documentation supporting such amounts, Scottsdale cannot possibly prepare for mediation or prepare any amount of settlement authority for the mediation. Please therefore provide that information as soon as possible, as well as a global settlement demand.
>
> Please be advised also that if we do not receive those discovery responses— or at least the documents identifying the amount(s) of all damages sought by Plaintiffs in this action—at least two weeks before the mediation set for July 22, 2021, we will have no choice but to move for an order cancelling and

resetting the mediation currently scheduled for July 22, 2021.  So please provide us this information immediately.

*See* **Exh. C**.

9.     To date, Plaintiffs have neither responded to this email nor provided Scottsdale any discovery responses or even an estimate or email identifying the amount of damages they seek.  Plaintiffs have also made no effort set their Motion for Extension for hearing or to otherwise obtain an order on the Motion for Extension.

## **Argument**

10     Under Florida law governing mediation, the representative of Scottsdale who attends mediation is obliged to prepare for that mediation by obtaining with "full authority to settle without further consultation."  *See, e.g.,* Fla. R. Civ. P. 1.270(b).    But Scottsdale cannot possibly prepare for mediation or otherwise identify an amount of settlement authority to bring to mediation if Plaintiffs to continue to conceal the amount(s) of damages they seek and the estimate or other documentation substantiating such amounts. Indeed, Scottsdale has no idea whether Plaintiffs are demanding $30,000.00 or $300,000.00 in this lawsuit, and has no idea what rooms or portions of the Property are alleged by Plaintiffs to have been damaged.   After Plaintiffs failed to voluntarily disclose such information through a global settlement demand, Scottsdale attempted to obtain such information through written discovery.   *See* **Exhs. A** and **B**.  But Plaintiffs have ignored that discovery and "responded" only by serving the Motion for Extension—even after Scottsdale warned them that it needed such information and documents to prepare for mediation.

11.     Since Plaintiffs continue to conceal the amount(s) of damages they seek and other essential information and documents needed by Scottsdale to prepare for the

6

mediation, the mediation will be condemned to failure if it is not postponed until after Plaintiffs provide Scottsdale an itemized estimate identifying all of their damages. The mediation therefore should not be permitted to proceed under such circumstances.

12.    Mediation is also an expensive process, in which Scottsdale will be forced to bear not only half the expense of the mediator's fee, but also additional fees for its attorneys to prepare for the mediation. Given Scottsdale's more than reasonable efforts to obtain the information it must have to prepare for mediation and Plaintiffs' interference in those efforts, it would be patently unfair to force Scottsdale to bear any expenses of mediation if Plaintiffs continue to conceal their damages and supporting estimate.

13.    Accordingly, Scottsdale respectfully requests that the Court enter an order indefinitely postponing the mediation set for July 22, 2021 and prohibiting Scottsdale from being charged any fees associated with the mediation (including cancellation fees) by the mediator based upon Plaintiffs' continued failure to disclose the amount(s) of damages they seek in this action and a supporting itemized estimate. Alternatively, and at the very least, Scottsdale respectfully requests that the Court order Plaintiffs to disclose and produce to Scottsdale the following information and documents no later than 4:00 p.m. on Thursday, July 15, 2021 (one week before the scheduled mediation):

(a) The specific, exact amount(s) of all damages Plaintiffs seek in this action (exclusive of interest, attorneys' fees, and costs); and also

(b) An itemized estimate identifying all components of all amounts of damages Plaintiffs seek in this action.

In connection with this alternative relief, Scottsdale also asks that the Court also order that the mediation set for July 22, 2021 be cancelled without further order (with no expenses of mediation being charged to Scottsdale (including cancellation fees)) solely upon Scottsdale's filing of a Notice of Non-Compliance with the requirements referenced above

after 4:00 p.m. on July 15, 2021.  Scottsdale also respectfully requests that the Court consider imposing sanctions upon Plaintiffs for their misconduct that has led Scottsdale to file this motion.

WHEREFORE, Defendant SCOTTSDALE INSURANCE COMPANY respectfully requests that this Honorable Court enter an order indefinitely postponing the mediation set for July 22, 2021 based upon the failure by Plaintiffs M&M SISTERS, LLC, BERTHA MENDENDEZ GARCIA, and MARIA MENDEZ to disclose the amount of damages they seek and any supporting documentation and prohibiting Defendant SCOTTSDALE INSURANCE COMPANY from being required to pay any fees to the mediator for postponement or cancellation of the mediation; alternatively, SCOTTSDALE INSURANCE COMPANY respectfully requests that this Honorable Court enter an order requiring Plaintiffs M&M SISTERS, LLC, BERTHA MENDENDEZ GARCIA, and MARIA MENDEZ to disclose the exact amount of damages they seek in this action (exclusive of attorneys' fees, costs and interest) and an estimate itemizing all damages they seek in this action no later than 4:00 p.m. on July 15, 2021, and also ordering the mediation scheduled for July 22, 2021 to be cancelled automatically without further order of court if Defendant SCOTTSDALE INSURANCE COMPANY's files a Notice of Non-Compliance with the Court after 4:00 p.m. on Thursday, July 15, 2021 advising the Court that Plaintiffs failed to timely disclose the exact amount of damages they seek in this action and an estimate itemizing all damages they seek in this action, based solely upon with the Court, and also ordering any other just and appropriate relief.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 7th day of July, 2021 to:  Frantz C.

Nelson, Esquire, Font & Nelson, LLC, pleadings@fontnelson.com; FNelson@FontNelson.com; and SCostello@FontNelson.com

/s/ Robert L. Rogers, III
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

RLR/cdr

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

Case No. 2019-030409-CA-01

M&M SISTERS, LLC, BERTHA MENENDEZ GARCIA & MARIA MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE INSURANCE COMPANY,

    Defendant.

_____/

## DEFENDANT'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFFS

DEFENDANT, SCOTTSDALE INSURANCE COMPANY ("DEFENDANT"), hereby requests that Plaintiffs, M&M SISTERS, LLC, BERTHA MENDENDEZ GARCIA, and MARIA MENDEZ ("PLAINTIFFs"), produce and permit the undersigned, or someone acting on the undersigned's behalf, to inspect and copy the following designated documents, items, or matters:

## DEFINITIONS

A.      Reference in this Request for Production of Documents to "you" or "your" are intended to include PLAINTIFFS and all aliases of PLAINTIFFS any time in the past.

B.      As used herein, "document" shall mean:  Every writing or record of every type and description that is or has been in your possession, custody or control or of which you have knowledge, including, without limitation, correspondence, memoranda, tapes, stenographic or handwritten notes, studies, publications, books, pamphlets, pictures, film, voice records, maps, reports, surveys, minutes or statistical compilations; every copy of such writing or record where the original is not in your possession, custody or control; and every copy of such writing or record where such copy is not an identical copy of any original or where such copy contains any commentary or notation whatsoever that does not appear in the original.

---

**Defendant's Exhibit "A"**

## DEFENDANT'S FIRST REQUEST FOR PRODUCTION TO PLAINTIFF

1.     All photographs taken by you or anyone else depicting the alleged damage that occurred at the insured property, including all damages to the structure(s).

2.     All documents evidencing any communication between you or anyone in your behalf with any representative of Defendant, including but not limited to, any correspondence, telephone messages, written memoranda, and notes concerning the loss.

3.     All documents referencing any alleged damage at the insured property, including but not limited to, all reports, studies, charts, correspondence, memoranda, repair estimates, invoices, and other documents prepared or obtained by anyone on your behalf, or otherwise, including your experts, other contractors, testing companies, engineer(s) and anyone else.

4.     All documents referencing any alleged damage to the insured property, including but not limited to, all reports, studies, charts, lab reports, correspondence, memoranda, repair estimates, invoices, and other written documents prepared or obtained by anyone on your behalf, including your experts, other contractors, testing companies, engineer(s) and anyone else.

5.     Any notes, journals, diaries, calendar entries, memoranda, correspondence, and other such writings prepared by you or someone on your behalf, documenting your presentation of the claim to Defendant, and the actions taken by either yourself or Defendant concerning the alleged water damage and/or the physical damage, conversations with Defendant, or messages received from or left with Defendant.

6.     Any and all documentation pertaining to the sale of the subject property, including, but not limited to, purchase contacts, inspection reports, or appraisal reports.

7.     Copies of all mortgages and deeds on the insured premises, and all other documents reflecting any interest in the claimed property or the insurance benefits being sought from Defendant in this lawsuit.

8.     All documents regarding your allegations for damages, including any and all estimates, bids, plans, specifications, and other documents in anyway relating to the claimed damages.

9.     All documents regarding your allegations that the cause of damages to the insured structure was the cause alleged in your Complaint or any subsequent Amended Complaint in this action.

10.     All documents and records relating to any insurance claim submitted to any insurance company as a result of the subject loss.

11.     Any and all documents, written items, and records pertaining to and/or in support of the dollar amount of loss claimed by you, including all categories of damages.

12.     All transcripts of recorded statements, all written statements and all recordings of statements and/or transcripts, notes, memoranda, etc., regarding unrecorded statements, which are not privileged, which have been given to you or anyone acting on your behalf regarding the issues in this litigation.

13.     Any and all documents relating to any previous damage to any area involved in the current insurance claim, including documentation referencing that damage.

14.     All documents relating or making reference to names or addresses of all persons who have present possession of any information relating to the facts in this case.

15.     Any materials, documents, or tangible things provided to Defendant by the Plaintiff or its agents following the loss.

3

16.     Any correspondence, documents, or tangible things that you have directly received from any law offices, including that which currently represents you, relating to their practice of handling water damage claims, <u>prior</u> to the date that you signed an agreement with your current attorneys relating to the above-styled matter.

17.     Any and all expert reports pertaining to the issues in this litigation.

18.     A copy of each resume, curriculum vitae, and other document listing the qualifications of any experts hired by you or on behalf of you who may testify at trial.

19.     A copy of each fee agreement with each attorney and/or law firm for which you seek to recover fees.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 14th day of May, 2021 to:  Frantz Nelson, Esquire, Font & Nelson, LLC, pleadings@fontnelson.com; FNelson@FontNelson.com; and SCostello@FontNelson.com.

<u>*/s/ Robert L. Rogers, III*</u>
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

RLR/cdr

4

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

M&M SISTERS, LLC, BERTHA MENENDEZ GARCIA & MARIA MENDEZ,

Case No. 2019-030409-CA-01

    Plaintiffs,

vs.

SCOTTSDALE INSURANCE COMPANY,

    Defendant.

_____/

## NOTICE OF SERVICE OF DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF M&M SISTERS, LLC

    Defendant, SCOTTSDALE INSURANCE COMPANY ("Defendant") pursuant to Fla. R. Civ. P. 1.340, gives notice that a set of Interrogatories, numbered one (1) through seventeen (17) was served on the 14th day of May, 2021, and were directed to Plaintiff, M&M SISTERS, LLC, to be answered in writing and under oath within thirty (30) days from the date of service herein.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 14th day of May, 2021 to:  Frantz Nelson, Esquire, Font & Nelson, LLC, pleadings@fontnelson.com; FNelson@FontNelson.com; and SCostello@FontNelson.com.

*/s/ Robert L. Rogers, III*

Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

RLR/cdr

---

**Defendant's Exhibit "B"**

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

Case No. 2019-030409-CA-01

M&M SISTERS, LLC, BERTHA
MENENDEZ GARCIA & MARIA
MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,

    Defendant.

_____/

## DEFENDANT'S FIRST SET OF
## INTERROGATORIES TO PLAINTIFF M&M SISTERS, LLC

INSTRUCTIONS:    Please insert your answers in the space provided following each question.  If additional space is needed, prepare your answer on a separate page and attach.


      1.    State the name, address, and telephone number of all persons who in any way assisted in answering these interrogatories.

2.      Identify all insurance companies with whom you have had any property insurance policies issued in your name, individually and/or jointly with any other person/entity, for the preceding ten (10) years, including but not limited to, homeowners or tenant/renters insurance, and any commercial insurance.  For each insurance company, state the name, address, telephone number of the insurance company, the policy number, the type of insurance coverage, effective dates of the policy, whether the policy was cancelled or the insurance company refused to renew said policy and, if so, state the reason as you understood it for either the non-renewal or the cancellation.

3.      Describe in detail all insurance claims made by you or in your behalf in the preceding ten years, including the amount of each claim, type of claim, and whether the claim was denied in full or part.  For each claim that was partially or fully denied, state the reason as you understood it, that the claim was denied by the insurance company.

4.      State the date the alleged damages incurred at the subject property.

5.      Describe in detail each aspect of claimed damage at the insured property, describing the specific damage, when the damage first became evident, the cause of said damage, whether you contend any portion of said damage was due to water, any repairs which were initiated, why those repairs were not adequate, and what steps or method you believe are necessary to repair the existing damage.

6.      List the name and address of each individual or business entity that has been to the insured premises on your behalf for the purpose of assessing either the cause of the damage to the structure and/or to provide an estimate to repair or replace the structure.

7.      Describe the circumstances surrounding the discovery of what you believe to be damage affecting the insured property, including the date of your initial discovery, what actions were taken by you at that time when you first notified Defendant, and whether you sought the advice of any other individual or professional concerning the cause of damage or repairs needed to your home.

4

8.      List the full names, current addresses, and phone numbers for any individuals or business entities that presently have, or previously had, any ownership interest in the insured property, including all individuals or financial institutions that have had or presently have a mortgage or lien on the property, stating the amount of said mortgage or lien, whether payments on said mortgage or other debt related to the property are current, and whether any mortgagee or lienholder has ever instituted any foreclosure proceeding on the property.

9.      State all facts to support your claim that any physical damage to the insured property and/or structure was the result of the cause alleged in your Complaint or any subsequent Amended Complaint in this action.

10.     Please state the dollar amount of each element of damages claimed by you, the method used to compute each such amount, and identify any books, documents, records, invoices, and/or memoranda which evidence, in whole or in part, your claim for damages, and the name, address, and telephone number of the current custodian of such books, documents, records, invoices, and/or memoranda.

11.     For each element of physical damage to the subject property claimed by you, describe in detail how the physical damage occurred, including all actions taken by you to prevent and/or mitigate the physical damage.

12.     Have any benefits been paid or are any payable for the physical damages listed in your answers to Interrogatories 4, 9 and 10 above?  If so, which physical damages are covered by insurance, what type of insurance and who paid the premium for the insurance, what is the name of the insurance company such premiums were paid to and what is the policy number of such insurance?

13.     Please identify each expert witness you expect to call at trial and state that person's name, business address, and telephone number, the subject matter about which the expert witness is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion.

14.     Please identify each person you expect to call as a witness in this case and state his or her name, address, telephone number, and the subject matter about the witness is expected to testify.

15.     For each statement made by any individual regarding any aspect of the breach of contract alleged in the Complaint, provide the substance of the statement, identify each document referencing each such statement, and identify the date the statement was made, the name, address, and telephone number of any person present at the time of the statement, and the name, address, and telephone number of the custodian of any document referencing each statement.

16.     Please identify each document and tangible item which you contend supports your allegations as set forth in the Complaint, and please list the custodian of each such document by name, current address, and telephone number.

17.     For each area of the subject property which you contend sustained physical damage, please state whether you have ever experienced any physical damage to those areas in the past, regardless of whether or not the physical damage was repaired.  If your answer is yes, please state which area or areas were damaged, when the damage occurred, the exact nature and cause of the damage, whether the damage was repaired, which individuals and/or entities conducted any such repairs (including the addresses and telephone numbers of any such persons or entities), and the extent and cost of such repairs.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**VERIFICATION PAGE**

By:  _____

Authorized Representative of M&M Sisters, LLC

_____

Print Name

STATE OF FLORIDA
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of

_____, 2021, by _____, as authorized

representative for M&M SISTERS, LLC., who is personally known to me, or who has

produced _____ as identification.

Notary Public, State of Florida
Print Name_____
My Commission Expires:

| | |
|---|---|
| **From:** | Cheri Rodriguez |
| **To:** | Frantz Nelson |
| **Cc:** | filings; Jennifer Wilds; Nimra Salehjee; Samantha Costello |
| **Subject:** | Case No. 2019-030409-CA-01; M&M Sisters, LLC, Bertha Menendez Garcia & Maria Mendez v. Scottsdale Insurance Company |
| **Date:** | Friday, June 18, 2021 3:33:00 PM |

[SENT ON BEHALF OF ATTORNEY ROBERT L. ROGERS, III]

Good Afternoon Attorney Nelson,

We received Plaintiffs' Motion for Extension of Time to File Discovery Responses, in which Plaintiffs requested a 45-day extension of Plaintiffs' deadline to serve responses to Defendant Scottdale Insurance Company's ("Scottsdale") First Set of Interrogatories and First Request for Production of Documents, through July 29, 2021—one week after mediation.  Although Scottsdale can agree to a 20-day extension of that deadline (through Monday, July 5, 2021), we cannot agree to the extension you requested, as Scottsdale needs those discovery responses to prepare for the mediation that you demanded be compelled to be set for July 22, 2021.

Specifically, Plaintiffs have still not disclosed the amount of damages they seek in this lawsuit or any supporting estimates or documents.  Without knowing what amount of damages Plaintiffs seek and without having the documentation supporting such amounts, Scottsdale cannot possibly prepare for mediation or prepare any amount of settlement authority for the mediation.  Please therefore provide that information as soon as possible, as well as a global settlement demand.

Please be advised also that if we do not receive those discovery responses—or at least the documents identifying the amount(s) of all damages sought by Plaintiffs in this action—at least two weeks before the mediation set for July 22, 2021, we will have no choice but to move for an order cancelling and resetting the mediation currently scheduled for July 22, 2021.  So please provide us this information immediately.

-Robert L. Rogers, III, Esquire


*Cherilyn D. Rodriguez*
Legal Assistant to Robert L. Rogers, III, Esquire
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, Florida 32751
(407) 647-9881 (telephone)
(407) 647-9966 (facsimile)
crodriguez@rocklawpa.com

NOTICE:  This e-mail is from a law firm, The Rock Law Group, P.A., and is intended solely for the use of the individual(s) to whom it is addressed.  If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer, and do not copy or disclose it to anyone else.  If you are not an existing client of The Rock Law Group, P.A., do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to The Rock Law Group, P.A. in reply that you expect it to hold in confidence.  If you properly received this e-mail as a client, co-counsel or retained expert of The Rock Law Group, P.A., you should maintain its contents in confidence in order to preserve the attorney-client or work-product privilege that may be

---

**Defendant's Exhibit "C"**

available to protect confidentiality.

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY,
FLORIDA
CIVIL DIVISION

Case No. 2019-030409-CA-01

M&M SISTERS, LLC BERTHA
MENENDEZ GARCIA & MARIA
MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,

    Defendant.

_____/

## DEFENDANT'S NOTICE OF HEARING
***(hearing has been set per the Honorable Barbara Areces' July 8, 2021 email to the undersigned counsel)\*\*\****

PLEASE TAKE NOTICE that on **Wednesday, July 14, 2021 at 9:00 a.m. via**

**Zoom (information provided below)** or as soon thereafter as counsel can be heard, the

undersigned will call up for hearing before the Honorable Barbara Areces, one of the judges

in the above-styled Court, in chambers at the Miami-Dade County Courthouse, located at

73 West Flagler Street, Room DCC 243, Miami, Florida 33130, the following matter:

**DEFENDANT'S EMERGENCY MOTION TO ORDER EITHER
POSTPONEMENT OF MEDIATION SET FOR JULY 22, 2021 OR DISCLOSURE
BY PLAINTIFFS OF TOTAL AMOUNT OF DAMAGES SOUGHT AND
SUPPORTING DOCUMENTATION NO LATER THAN JULY 15, 2021 (ONE
WEEK BEFORE MEDIATION)**
**(Certificate Date: July 7, 2021)**

Hearing time allotted is 5 minutes.

Zoom Meeting ID: 91990919522
Zoom Dial In Number: +1 786-635-1003
Zoom Link: https://zoom.us/j/91990919522

PLEASE GOVERN YOURSELF ACCORDINGLY.

**If you are an individual with a disability who needs an accommodation in order to participate in a court proceeding or other court service, program, or activity, you are entitled, at no cost to you, to the provision of certain assistance. Requests for accommodations may be presented on the ADA Title II Accommodation Request Form available on the website at www.jud11.flcourts.org/ADA-Request-for-Accommodations, in another written format, or orally. Please complete this form and return it to the Eleventh Judicial Circuit Court's ADA Coordinator via e-mail by using the submit button at the bottom of the form. Alternatively, you can return the completed form via regular mail to:**

**Eleventh Judicial Circuit Court's ADA Coordinator
Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128
Voice Mail: (305) 349-7175
TDD: (305) 349-7174
Fax: (305) 349-7355
Email: ADA@jud11.flcourts.org**
**Please submit your request as far in advance as possible, but preferably at least seven (7) days before your scheduled court appearance or other court activity.**
**Upon request by a qualified individual with a disability, the ADA Title II Accommodation Request Form will be made available in an alternate format. If you need assistance in completing the form due to your disability, or to request the document in an alternate format, please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, (305) 349-7175 Voice, (305) 349-7174 TDD, (305) 349-7355 Fax, E-mail: ADA@jud11.flcourts.org.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 8th day of July, 2021 to:  Frantz C.

Nelson, Esquire, Font & Nelson, LLC, pleadings@fontnelson.com; FNelson@FontNelson.com; and SCostello@FontNelson.com.

/s/ *Robert L. Rogers, III*
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

RLR/cdr
cc:      U.S. Legal (sent via email transmission only)

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2019-030409-CA-01
SECTION: CA23
JUDGE: Barbara Areces

**M&M SISTERS LLC et al**

Plaintiff(s)

vs.

**SCOTTSDALE INSURANCE COMPANY**

Defendant(s)

_____/

**ORDER GRANTING DEFENDANT'S EMERGENCY MOTION TO ORDER EITHER
POSTPONEMENT OF MEDIATION SET FOR JULY 22, 2021 OR DISCLOSURE BY
PLAINTIFFS OF TOTAL AMOUNT OF DAMAGES SOUGHT AND SUPPORTING
DOCUMENTATION NO LATER THAN JULY 15, 2021 (ONE WEEK BEFORE
MEDIATION)**

THIS CAUSE, having come before the Court on Defendant SCOTTSDALE INSURANCE
COMPANY's ("Defendant") Emergency Motion to Order Either Postponement of Mediation Set for July 22,
2021 or Disclosure by Plaintiffs of Total Amount of Damages Sought and Supporting Documentation No Later
Than July 15, 2021 (One Week Before Mediation) (the "Emergency Motion"), and the Court having reviewed
the Emergency Motion, having heard argument of counsel, and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED that Defendant's Emergency Motion is GRANTED only as follows:

a.   The mediation previously scheduled in this action for July 22, 2021 is ordered cancelled and shall
be rescheduled for a later date, and Defendant shall not be charged any fees associated with the cancellation or
postponement of that mediation.

b.   Plaintiffs M&M SISTERS LLC, BERTHA MENENDEZ GARCIA, and MARIA MENDEZ
("Plaintiffs") shall provide complete responses to Defendant's First Request for Production and Fist Set of
Interrogatories within thirty (30) days of the date of this Order, including complete verified Answers to
Defendant's First Set of Interrogatories, complete written responses to Defendant's First Request for

Production, all non-privileged documents requested in Defendant's First Request for Production (including an estimate identifying all amounts sought as damage by Plaintiffs in this action); and a Privilege Log.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>14th day of July, 2021</u>.



<u>2019-030409-CA-01 07-14-2021 3:18 PM</u>
Hon. Barbara Areces

**CIRCUIT COURT JUDGE**
Electronically Signed

> No Further Judicial Action Required on **THIS MOTION**
>
> CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Cheri Rodriguez, crodriguez@rocklawpa.com
Erin R. Dix, pleadings@rocklawpa.com
Erin R. Dix, ekreiser@rocklawpa.com
Erin R. Dix, dnelson@rocklawpa.com
Frantz C Nelson, pleadings@FontNelson.com
Frantz C Nelson, FNelson@FontNelson.com
Frantz C Nelson, scostello@fontnelson.com
George J. Zeckler, Esq., pleadings@thepropertyadvocates.com
George J. Zeckler, Esq., team9@thepropertyadvocates.com
George Zeckler, team9@stremslaw.com
George Zeckler, team9@thepropertyadvocates.com
George Zeckler, pleadings@thepropertyadvocates.com
Hunter Patterson, hunter@stremslaw.com
Jose Pete Font, pleadings@fontnelson.com
Jose Pete Font, jwilds@fontnelson.com
Jose Pete Font, gvega@fontnelson.com
Michael Patrick, Esq., team9@stremslaw.com
Michael Paul Patrick Esq., Pleadings@thepropertyadvocates.com

Michael Paul Patrick Esq., Team9@thepropertyadvocates.com

Nicholas F. Van Valen, pleadings@rocklawpa.com

Nicholas F. Van Valen, nvanvalen@rocklawpa.com

Nicholas F. Van Valen, dnelson@rocklawpa.com

Nimra Salehjee, nsalehjee@fontnelson.com

Robert L Rogers III, pleadings@rocklawpa.com

Robert L Rogers III, crodriguez@rocklawpa.com

Robert L Rogers III, rmoreno@rocklawpa.com

Scot Strems, pleadings@stremslaw.com


**Physically Served:**

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

M&M SISTERS, LLC, BERTHA

MENENDEZ GARCIA & MARIA

MENDEZ,                                     CASE NO: 2019-030409-CA-01

        Plaintiffs          ,

vs.

SCOTTSDALE INSURANCE COMPANY,

        Defendant.

_____/

## PLAINTIFFS' EXPERT WITNESS LIST

    **COMES NOW** the Plaintiffs, M&M SISTERS, LLC, BERTHA MENENDEZ GARCIA & MARIA MENDEZ ("Plaintiffs"), by and through undersigned counsel, and pursuant to this Court's Trial Order, hereby files her Expert Witness List and states as follows:

1. **Scott Thomas**
   Claims Consulting Inc.

   12150 SW 128 Court, Miami, Florida 33186

   Mr. Thomas will testify regarding the scope and value of the loss, and reasonable cost value of the losses of the subject properties.


2. **Clifton Rawnsley, Jr.**

   Mold Buster Detection Services, LLC

   1720 Harrison Street #10-E

   Hollywood, FL 33020

   The Plaintiff expects to call Clifton Rawnsley, Jr. as an expert witness at trial. Based upon his training, skill, expertise, and experience, Mr. Rawnsley is expected to testify regarding, among other things, the issue of mold and mold remediation at the subject property. The Plaintiff will provide Mr. Rawnsley's report under separate cover.

3. **Freddy M. Andrade, P.E.**
   Engineered Way, LLC.
   454 Windmill Palm Cir.
   Altamonte Springs, FL 32701

   The Plaintiff expects to call Freddy M. Andrade as an expert witness at trial.  Based upon his training, skill, expertise, and experience, Mr. Andrade is expected to testify regarding, among other things, the cause and origin of the damages in question.

4. Any and all experts listed by the Defendant, without waiving any objections thereto.

5. Any and all person(s) that inspected or examined the subject property.

6. Plaintiff reserves the right to amend this Expert Witness Disclosure pending further discovery.

<u>**CERTIFICATE OF SERVICE**</u>

   **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically furnished on or about <u>August 2, 2021</u> via the Florida Court's e-filing Portal ("Portal") in accordance with Fla. R. Jud. Admin. 2. 516, which should furnish copies to the e-mail address of each party identified in the Portal's Service List.

                                   **FONT & NELSON, PLLC**
                                   *Attorney for Plaintiff*
                                   200 South Andrews Ave., Suite 501,
                                   Ft. Lauderdale, Florida 33301
                                   Tel: (954) 248-2920
                                   Fax: (954) 248-2134
                                   Email: pleadings@fontnelson.com
                                          fnelson@fontnelson.com

                            BY:    */s/ Frantz C. Nelson*
                                   **JOSE P. FONT, ESQ.**
                                   Florida Bar #:  0738719
                                   **FRANTZ C. NELSON, ESQ.**
                                   Florida Bar #: 031134

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

M&M SISTERS, LLC, BERTHA
MENENDEZ GARCIA & MARIA
MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,
  Defendant.
_____/

Case No. 2019-030409-CA-01

**DEFENDANT'S MOTION TO COMPEL OVERDUE COURT-ORDERED
RESPONSES TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS AND FIRST SET OF INTERROGATORIES, TO HOLD
PLAINTIFFS IN CONTEMPT OF COURT, AND TO IMPOSE SANCTIONS
PURSUANT TO FLA. R. CIV. P. 1.380**

Defendant SCOTTSDALE INSURANCE COMPANY ("Scottsdale") hereby serves

this Motion to Compel Overdue Court-Ordered Responses to Defendant's First Request for

Production of Documents and First Set of Interrogatories, to Hold Plaintiffs in Contempt of

Court, and to Impose Sanctions Pursuant to Fla. R. Civ. P. 1.380, in response to the

continued failure by Plaintiffs M&M SISTERS, LLC, BERTHA MENDENDEZ GARCIA,

and MARIA MENDEZ ("Plaintiffs") to comply with this Court's Order Granting

Defendant's Emergency Motion to Order Either Postponement of Mediation Set for July

22, 2021 or Disclosure by Plaintiffs of Total Amount of Damages Sought and Supporting

Documentation No Later Than July 15, 2021 (One Week Before Mediation) dated July 14,

2021 (the "Discovery Order"), and in support states:

1.      Plaintiffs seek relief for breach of their insurance policy against their insurer,

Scottsdale, in relation to a claim for alleged damage to insured real property.  On May 14,

2021, Scottsdale served its First Set of Interrogatories and First Request for Production on Plaintiffs.  Plaintiffs ignored those discovery requests (and Scottsdale's other informal requests that they disclose the amount of damages they seek), even though Plaintffs had previously compelled an early mediation that, at the time, was scheduled for July 22, 2021.

2.     On July 7, 2021, Scottsdale filed its Emergency Motion to Order Either Postponement of Mediation Set for July 22, 2021 or Disclosure by Plaintiffs of Total Amount of Damages Sought and Supporting Documentation No Later Than July 15, 2021 (One Week Before Mediation) (the "Emergency Motion"), in which it asked this Court to postpone the mediation set for July 22, 2021 and compel Plaintiffs to respond to Scottsdale's First Set of Interrogatories and First Request to Produce.  Following a hearing, the Court entered the Discovery Order, in which the Court granted Scottsdale's Emergency Motion and also specifically ordered:

> Plaintiffs M&M SISTERS LLC, BERTHA MENENDEZ GARCIA, and MARIA MENDEZ ("Plaintiffs") shall provide complete responses to Defendant's First Request for Production and Fist Set of Interrogatories within thirty (30) days of the date of this Order, including complete verified Answers to Defendant's First Set of Interrogatories, complete written responses to Defendant's First Request for Production, all non-privileged documents requested in Defendant's First Request for Production (including an estimate identifying all amounts sought as damage by Plaintiffs in this action); and a Privilege Log.

*See Discovery Order*, at ¶ b.

3.     Accordingly, Plaintiffs' "complete responses to Defendant's First Request for Production and Fist Set of Interrogatories, . . .  including complete verified Answers to Defendant's First Set of Interrogatories, complete written responses to Defendant's First Request for Production, all non-privileged documents requested in Defendant's First Request for Production (including an estimate identifying all amounts sought as damage by Plaintiffs in this action), and a Privilege Log" were due per order of this Court on August

13, 2021.  *See id.*

4.      Plaintiffs ignored the Discovery Order and have, to date, not served any response(s) to Scottsdale's Interrogatories or Requests to Produce (including any documents, privilege log, or even an estimate of their damages).

5.      On August 18, 2021, the undersigned counsel sent Plaintiffs' counsel an email reminding them of their continued violation of the Discovery Order and demanded that they serve their court-ordered discovery responses immediately, otherwise "we will have no choice but to move for an order compelling such documents and seeking sanctions for Plaintiffs' non-compliance with" the Discovery Order.  *See Email from The Rock Law Group, P.A. to Font & Nelson, P.A. (Aug. 18, 2021)*, attached as **Exhibit "1."**  Despite this good faith communication, Plaintiffs have still not served any responses to Scottsdale's Interrogatories or Requests to Produce (or otherwise responded to Scottsdale's email on August 18, 2021).

6.      Scottsdale therefore demands an order imposing sanctions for Plaintiffs failure to comply with the Discovery Order, including an compelling Plaintiffs to immediately serve complete responses to Defendant's First Request for Production and First Set of Interrogatories, including complete verified Answers to Defendant's First Set of Interrogatories, complete written responses to Defendant's First Request for Production, all non-privileged documents requested in Defendant's First Request for Production (including an estimate identifying all amounts sought as damage by Plaintiffs in this action), and a Privilege Log.

7.      Scottsdale also demands additional sanctions pursuant to Florida Rule of Civil Procedure 1.380, which states that when a party fails to obey an order to provide

discovery, the court may impose the following orders:

      (C)  An order striking out pleadings or parts of them or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part of it, or rendering a judgment by default against the disobedient party.

      (D)  Instead of any of the foregoing orders or in addition to them, an order treating as a contempt of court the failure to obey any orders except an order to submit to an examination made pursuant to rule 1.360(a)(1)(B) or subdivision (a)(2) of this rule.

<div align="center">* * *</div>

Instead of any of the foregoing orders or in addition to them, the court shall require the party failing to obey the order to pay the reasonable expenses caused by the failure, which may include attorneys' fees, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

*See* Fla. R. Civ. P. 1.380(b)(2)

      8.    The Court should sanction Plaintiffs' failure to provide the aforementioned court-ordered discovery by dismissing Plaintiffs' action or, at the very least, staying further proceedings until the Discovery Order is obeyed in its entirety and Plaintiffs provide complete discovery responses.  Such sanctions are particularly appropriate because of the recent history of this action.  Plaintiffs' initial attorneys withdrew in January 2021, and the Court almost dismissed the action at that time based upon Plaintiffs' initial failure to hire new counsel to represent them.  *See Def's Emergency Motion (July 7, 2021)*, at n. 1; *see also Order Granting Mot'n to Withdraw (Jan. 21, 2021)*, at ¶¶ 3-4 (warning that if Plaintiffs do not hire new attorneys within 30 days (by February 20, 2021), such failure would "create a presumption that [Plaintiffs] no longer wish to participate in this lawsuit and the court may *sua sponte*" dismiss the action).  But then in March 2021, Plaintiffs hired their current new counsel (Font & Nelson), who then filed multiple unnecessary motions to impose added costs on Scottsdale, including motions to compel mediation and depositions—and even

<div align="center">4</div>

proceeded with hearings on such motions after they were amicably resolved.  *See Def's Emergency Motion (July 7, 2021)*, at ¶¶ 4-9.   But despite such actions, Plaintiffs also continued to refuse to disclose the information sought by Scottsdale in the written discovery requests at issue in this Motion, including the amount of damages they seek.  *See id.*  Indeed, it was these problems that forced Scottsdale to file its Emergency Motion, which the Court granted through the Discovery Order.  *See id.*  Without Plaintiffs' court-ordered discovery responses, Scottsdale cannot possibly prepare for mediation.  The only reasonable response by the Court is to dismiss Plaintiffs' action—or at least abate the action until Plaintiffs provide complete written responses to discovery.  Plaintiffs should also be held in contempt of the Discovery Order pursuant to Fla. R. Civ. P. 1.380(b)(2)(D).

9.     And whether the Court grants such sanctions or not, it should order Plaintiffs to pay the reasonable attorneys' fees incurred by Scottsdale compelling compliance with the Discovery Order, including the attorneys' fees incurred preparing this Motion and arguing it at any forthcoming hearing.

WHEREFORE, Defendant SCOTTSDALE INSURANCE COMPANY respectfully requests that this Honorable Court enter an order

(a)     Once again requiring Plaintiffs M&M SISTERS, LLC, BERTHA MENDENDEZ GARCIA, and MARIA MENDEZ to immediately provide Defendant complete responses to Defendant's First Set of Interrogatories and First Request for Production of Documents, including all responsive documents and a privilege log;

(b)     Holding Plaintiffs M&M SISTERS, LLC, BERTHA MENDENDEZ GARCIA, and MARIA MENDEZ in contempt of court pursuant to Fla. R.

Civ. P. 1.380(b)(2)(D);

(c)     Dismissing this action or, in the alternative, abating this action until Plaintiffs provide Defendant complete responses to Defendant's First Set of Interrogatories and First Request for Production of Documents, including all responsive documents and a privilege log, pursuant to Fla. R. Civ. P. 1.380(b)(2)(C);

(d)     Requiring Plaintiffs M&M SISTERS, LLC, BERTHA MENDENDEZ GARCIA, and MARIA MENDEZ to pay Defendant SCOTTSDALE INSURANCE COMPANY's reasonable attorneys' fees incurred for this Motion pursuant to Fla. R. Civ. P. 1.380(b)(2); and

(e)     Any other just and appropriate relief.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 24th day of August, 2021 to:  Frantz C. Nelson, Esquire, Font & Nelson, LLC, pleadings@fontnelson.com; FNelson@FontNelson.com; and SCostello@FontNelson.com.

*/s/ Robert L. Rogers, III*

Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

RLR/cdr

| From: | Cheri Rodriguez |
|---|---|
| To: | "FNelson@FontNelson.com"; "jfont@fontnelson.com" |
| Cc: | "Jennifer Wilds"; "filings"; "Nimra Salehjee" |
| Subject: | Case No. 2019-030409-CA-01; M&M Sisters, LLC., Menendez, Bertha & Mendez, Maria v. Scottsdale Insurance Company |
| Date: | Wednesday, August 18, 2021 5:03:00 PM |
| Attachments: | Agreed Order.pdf |

[SENT ON BEHALF OF ATTORNEY ROBERT L. ROGERS, III]

Good Morning Attorney Nelson,

As you know, Plaintiffs were required per the attached order to produce "complete responses to Defendant's First Request for Production and First Set of Interrogatories within thirty (30) days of the date of this Order, including complete verified Answers to Defendant's First Set of Interrogatories, complete written responses to Defendant's First Request for Production, all non-privileged documents requested in Defendant's First Request for Production (including an estimate identifying all amounts sought as damage by Plaintiffs in this action); and a Privilege Log," i.e., by last Friday, August 13, 2021.  We have still received none of the Court-ordered responses.  If we do not receive them by Monday, August 24, 2021, we will have no choice but to move for an order compelling such documents and seeking sanctions for Plaintiffs' non-compliance with the attached order.

-Robert L. Rogers, III, Esquire

*Cherilyn D. Rodriguez*
Legal Assistant to Robert L. Rogers, III, Esquire
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, Florida 32751
(407) 647-9881 (telephone)
(407) 647-9966 (facsimile)
crodriguez@rocklawpa.com

NOTICE:  This e-mail is from a law firm, The Rock Law Group, P.A., and is intended solely for the use of the individual(s) to whom it is addressed.  If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer, and do not copy or disclose it to anyone else.  If you are not an existing client of The Rock Law Group, P.A., do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to The Rock Law Group, P.A. in reply that you expect it to hold in confidence.  If you properly received this e-mail as a client, co-counsel or retained expert of The Rock Law Group, P.A., you should maintain its contents in confidence in order to preserve the attorney-client or work-product privilege that may be available to protect confidentiality.

## Defendant's Exhibit "1"

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2019-030409-CA-01
SECTION: CA23
JUDGE: Barbara Areces

**M&M SISTERS LLC et al**

Plaintiff(s)

vs.

**SCOTTSDALE INSURANCE COMPANY**

Defendant(s)

_____/

**<u>ORDER GRANTING DEFENDANT'S EMERGENCY MOTION TO ORDER EITHER
POSTPONEMENT OF MEDIATION SET FOR JULY 22, 2021 OR DISCLOSURE BY
PLAINTIFFS OF TOTAL AMOUNT OF DAMAGES SOUGHT AND SUPPORTING
DOCUMENTATION NO LATER THAN JULY 15, 2021 (ONE WEEK BEFORE
MEDIATION)</u>**

THIS CAUSE, having come before the Court on Defendant SCOTTSDALE INSURANCE
COMPANY's ("Defendant") Emergency Motion to Order Either Postponement of Mediation Set for July 22,
2021 or Disclosure by Plaintiffs of Total Amount of Damages Sought and Supporting Documentation No Later
Than July 15, 2021 (One Week Before Mediation) (the "Emergency Motion"), and the Court having reviewed
the Emergency Motion, having heard argument of counsel, and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED that Defendant's Emergency Motion is GRANTED only as follows:

a.    The mediation previously scheduled in this action for July 22, 2021 is ordered cancelled and shall
be rescheduled for a later date, and Defendant shall not be charged any fees associated with the cancellation or
postponement of that mediation.

b.    Plaintiffs M&M SISTERS LLC, BERTHA MENENDEZ GARCIA, and MARIA MENDEZ
("Plaintiffs") shall provide complete responses to Defendant's First Request for Production and Fist Set of
Interrogatories within thirty (30) days of the date of this Order, including complete verified Answers to
Defendant's First Set of Interrogatories, complete written responses to Defendant's First Request for

Production, all non-privileged documents requested in Defendant's First Request for Production (including an estimate identifying all amounts sought as damage by Plaintiffs in this action); and a Privilege Log.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>14th day of July, 2021</u>.



<u>2019-030409-CA-01 07-14-2021 3:18 PM</u>
Hon. Barbara Areces

**CIRCUIT COURT JUDGE**
Electronically Signed

---

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

---

**Electronically Served:**
Cheri Rodriguez, crodriguez@rocklawpa.com
Erin R. Dix, pleadings@rocklawpa.com
Erin R. Dix, ekreiser@rocklawpa.com
Erin R. Dix, dnelson@rocklawpa.com
Frantz C Nelson, pleadings@FontNelson.com
Frantz C Nelson, FNelson@FontNelson.com
Frantz C Nelson, scostello@fontnelson.com
George J. Zeckler, Esq., pleadings@thepropertyadvocates.com
George J. Zeckler, Esq., team9@thepropertyadvocates.com
George Zeckler, team9@stremslaw.com
George Zeckler, team9@thepropertyadvocates.com
George Zeckler, pleadings@thepropertyadvocates.com
Hunter Patterson, hunter@stremslaw.com
Jose Pete Font, pleadings@fontnelson.com
Jose Pete Font, jwilds@fontnelson.com
Jose Pete Font, gvega@fontnelson.com
Michael Patrick, Esq., team9@stremslaw.com
Michael Paul Patrick Esq., Pleadings@thepropertyadvocates.com

Michael Paul Patrick Esq., Team9@thepropertyadvocates.com

Nicholas F. Van Valen, pleadings@rocklawpa.com

Nicholas F. Van Valen, nvanvalen@rocklawpa.com

Nicholas F. Van Valen, dnelson@rocklawpa.com

Nimra Salehjee, nsalehjee@fontnelson.com

Robert L Rogers III, pleadings@rocklawpa.com

Robert L Rogers III, crodriguez@rocklawpa.com

Robert L Rogers III, rmoreno@rocklawpa.com

Scot Strems, pleadings@stremslaw.com


**Physically Served:**

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR      MIAMI-DADE      COUNTY,
FLORIDA
CIVIL DIVISION

Case No. 2019-030409-CA-01

M&M SISTERS, LLC BERTHA
MENENDEZ GARCIA & MARIA
MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,

    Defendant.

_____/

## DEFENDANT'S NOTICE OF HEARING[1]
### ***(hearing has been unilaterally set due to lack of response and/or cooperation by Plaintiffs' counsel)***

PLEASE TAKE NOTICE that on **Thursday, October 7, 2021 at 9:00 a.m. (via Zoom - information provided below)** or as soon thereafter as counsel can be heard, the undersigned will call up for hearing before the Honorable Barbara Areces, one of the judges in the above-styled Court, in chambers at the Miami-Dade County Courthouse, located at 73 West Flagler Street, Room DCC 243, Miami, Florida 33130, the following matter:

## DEFENDANT'S MOTION TO COMPEL OVERDUE COURT-ORDERED RESPONSES TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF

---

[1] On July 14, 2021, this Honorable Court entered an Order requiring Plaintiffs to respond to Defendant's First Request for Production and First Set of Interrogatories within thirty (30) days (or by August 13, 2021). Plaintiffs failed to comply with the July 14, 2021 Order, despite undersigned counsel's August 18, 2021 good faith email correspondence to Plaintiffs' counsel providing them until August 24, 2021 to provide their discovery responses before seeking additional Court intervention.  The undersigned counsel's then contacted Plaintiffs' counsel on September 1, 2021, September 7, 2021, and September 10, 2021 requesting to coordinate a mutually convenient date and time for the hearing on the above Motion, but received no response.  For these reasons, the undersigned counsel was forced to unilaterally notice this hearing for the date referenced herein.

### DOCUMENTS AND FIRST SET OF INTERROGATORIES, TO HOLD PLAINTIFFS IN CONTEMPT OF COURT, AND TO IMPOSE SANCTIONS PURSUANT TO FLA. R. CIV. P. 1.380
(Certificate Date:  August 24, 2021)

Hearing time allotted is 5 minutes.

Zoom Meeting ID: 91990919522
Zoom Dial In Number: +1 786-635-1003
Zoom Link: https://zoom.us/j/91990919522

PLEASE GOVERN YOURSELF ACCORDINGLY.

If you are an individual with a disability who needs an accommodation in order to participate in a court proceeding or other court service, program, or activity, you are entitled, at no cost to you, to the provision of certain assistance. Requests for accommodations may be presented on the **ADA Title II Accommodation Request Form** available on the website at **www.jud11.flcourts.org/ADA-Request-for-Accommodations**, in another written format, or orally. Please complete **this form** and return it to the Eleventh Judicial Circuit Court's ADA Coordinator via e-mail by using the submit button at the bottom of the form. Alternatively, you can return the completed form via regular mail to:

**Eleventh Judicial Circuit Court's ADA Coordinator**
**Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128**
**Voice Mail: (305) 349-7175**
**TDD: (305) 349-7174**
**Fax: (305) 349-7355**
**Email: ADA@jud11.flcourts.org**
**Please submit your request as far in advance as possible, but preferably at least seven (7) days before your scheduled court appearance or other court activity.**
**Upon request by a qualified individual with a disability, the ADA Title II Accommodation Request Form will be made available in an alternate format. If you need assistance in completing the form due to your disability, or to request the document in an alternate format, please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, (305) 349-7175 Voice, (305) 349-7174 TDD, (305) 349-7355 Fax, E-mail: ADA@jud11.flcourts.org.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 17th day of September, 2021 to:  Frantz C. Nelson, Esquire, Font & Nelson, LLC, pleadings@fontnelson.com; FNelson@FontNelson.com; and SCostello@FontNelson.com.

<div style="text-align:right">

*/s/ Robert L. Rogers, III*

Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

</div>

RLR/cdr
cc:      U.S. Legal (sent via email transmission only)

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR      MIAMI-DADE      COUNTY,
FLORIDA
CIVIL DIVISION

Case No. 2019-030409-CA-01

M&M SISTERS, LLC BERTHA
MENENDEZ GARCIA & MARIA
MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,

    Defendant.

_____/

### DEFENDANT'S AMENDED NOTICE OF HEARING[1]
***\*\*\*(hearing has been unilaterally set due to lack of response and/or cooperation by Plaintiffs' counsel)\*\*\****
***\*\*\*\*(AMENDED AS TO ZOOM LINK INFORMATION ONLY)\*\*\*\****

PLEASE TAKE NOTICE that on **Thursday, October 7, 2021 at 9:00 a.m.** (**via Zoom - information provided below)** or as soon thereafter as counsel can be heard, the undersigned will call up for hearing before the Honorable Barbara Areces, one of the judges in the above-styled Court, in chambers at the Miami-Dade County Courthouse, located at 73 West Flagler Street, Room DCC 243, Miami, Florida 33130, the following matter:

---

[1] On July 14, 2021, this Honorable Court entered an Order requiring Plaintiffs to respond to Defendant's First Request for Production and First Set of Interrogatories within thirty (30) days (or by August 13, 2021). Plaintiffs failed to comply with the July 14, 2021 Order, despite undersigned counsel's August 18, 2021 good faith email correspondence to Plaintiffs' counsel providing them until August 24, 2021 to provide their discovery responses before seeking additional Court intervention. The undersigned counsel's then contacted Plaintiffs' counsel on September 1, 2021, September 7, 2021, and September 10, 2021 requesting to coordinate a mutually convenient date and time for the hearing on the above Motion, but received no response. For these reasons, the undersigned counsel was forced to unilaterally notice this hearing for the date referenced herein.

## DEFENDANT'S MOTION TO COMPEL OVERDUE COURT-ORDERED RESPONSES TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES, TO HOLD PLAINTIFFS IN CONTEMPT OF COURT, AND TO IMPOSE SANCTIONS PURSUANT TO FLA. R. CIV. P. 1.380

**(Certificate Date:  August 24, 2021)**

Hearing time allotted is 5 minutes.

Zoom Meeting ID: 91368714046
Zoom Dial In Number: +1 786-635-1003
Zoom Link: https://zoom.us/j/91368714046

PLEASE GOVERN YOURSELF ACCORDINGLY.

If you are an individual with a disability who needs an accommodation in order to participate in a court proceeding or other court service, program, or activity, you are entitled, at no cost to you, to the provision of certain assistance. Requests for accommodations may be presented on the **ADA Title II Accommodation Request Form** available on the website at **www.jud11.flcourts.org/ADA-Request-for-Accommodations**, in another written format, or orally. Please complete **this form** and return it to the Eleventh Judicial Circuit Court's ADA Coordinator via e-mail by using the submit button at the bottom of the form. Alternatively, you can return the completed form via regular mail to:

**Eleventh Judicial Circuit Court's ADA Coordinator**
Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128
Voice Mail: (305) 349-7175
TDD: (305) 349-7174
Fax: (305) 349-7355
Email: **ADA@jud11.flcourts.org**
**Please submit your request as far in advance as possible, but preferably at least seven (7) days before your scheduled court appearance or other court activity.**
**Upon request by a qualified individual with a disability, the ADA Title II Accommodation Request Form will be made available in an alternate format. If you need assistance in completing the form due to your disability, or to request the document in an alternate format, please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL**

**33128, (305) 349-7175 Voice, (305) 349-7174 TDD, (305) 349-7355 Fax, E-mail: ADA@jud11.flcourts.org.**

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 30th day of September, 2021 to: Frantz C. Nelson, Esquire, Font & Nelson, LLC, pleadings@fontnelson.com; FNelson@FontNelson.com; and SCostello@FontNelson.com.

*/s/ Robert L. Rogers, III*
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

RLR/cdr
cc:     U.S. Legal (sent via email transmission only)

3

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

Case No. 2019-030409-CA-01

M&M SISTERS, LLC BERTHA MENENDEZ GARCIA & MARIA MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE INSURANCE COMPANY,

    Defendant.

_____/

### DEFENDANT'S SECOND AMENDED NOTICE OF HEARING
***(hearing has been coordinated with  Melissa Schaunaman with Plaintiffs' counsel)***
****(AMENDED AS TO DATE ONLY)****

PLEASE TAKE NOTICE that on **Thursday, October 21, 2021 at 9:00 a.m. (via Zoom - information provided below)** or as soon thereafter as counsel can be heard, the undersigned will call up for hearing before the Honorable Barbara Areces, one of the judges in the above-styled Court, in chambers at the Miami-Dade County Courthouse, located at 73 West Flagler Street, Room DCC 243, Miami, Florida 33130, the following matter:

### DEFENDANT'S MOTION TO COMPEL OVERDUE COURT-ORDERED RESPONSES TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES, TO HOLD PLAINTIFFS IN CONTEMPT OF COURT, AND TO IMPOSE SANCTIONS PURSUANT TO FLA. R. CIV. P. 1.380
**(Certificate Date:  August 24, 2021)**

Hearing time allotted is 5 minutes.

Zoom Meeting ID: 91368714046
Zoom Dial In Number: +1 786-635-1003
Zoom Link: https://zoom.us/j/91368714046

PLEASE GOVERN YOURSELF ACCORDINGLY.

**If you are an individual with a disability who needs an accommodation in order to participate in a court proceeding or other court service, program, or activity, you are entitled, at no cost to you, to the provision of certain assistance. Requests for accommodations may be presented on the ADA Title II Accommodation Request Form available on the website at www.jud11.flcourts.org/ADA-Request-for-Accommodations, in another written format, or orally. Please complete this form and return it to the Eleventh Judicial Circuit Court's ADA Coordinator via e-mail by using the submit button at the bottom of the form. Alternatively, you can return the completed form via regular mail to:**

**Eleventh Judicial Circuit Court's ADA Coordinator
Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128
Voice Mail: (305) 349-7175
TDD: (305) 349-7174
Fax: (305) 349-7355
Email: ADA@jud11.flcourts.org**

**Please submit your request as far in advance as possible, but preferably at least seven (7) days before your scheduled court appearance or other court activity.**

**Upon request by a qualified individual with a disability, the ADA Title II Accommodation Request Form will be made available in an alternate format. If you need assistance in completing the form due to your disability, or to request the document in an alternate format, please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, (305) 349-7175 Voice, (305) 349-7174 TDD, (305) 349-7355 Fax, E-mail: ADA@jud11.flcourts.org.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 6th day of October, 2021 to: Frantz C.

2

Nelson,     Esquire,     Font     &     Nelson,     LLC,     pleadings@fontnelson.com;

FNelson@FontNelson.com; and SCostello@FontNelson.com.

> _/s/ Robert L. Rogers, III_
> Andrew P. Rock, Esquire
> Florida Bar No. 0656437
> Robert L. Rogers, III, Esquire
> Florida Bar No. 0694207
> The Rock Law Group, P.A.
> 1760 Fennell Street
> Maitland, FL 32751
> Telephone: (407) 647-9881
> Telecopier: (407) 647-9966
> Email: pleadings@rocklawpa.com; and
> crodriguez@rocklawpa.com
> Attorneys for Defendant, Scottsdale
> Insurance Company

RLR/cdr
cc:     U.S. Legal _(sent via email transmission only)_

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR      MIAMI-DADE      COUNTY,
FLORIDA
CIVIL DIVISION

Case No. 2019-030409-CA-01

M&M SISTERS, LLC BERTHA
MENENDEZ GARCIA & MARIA
MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,

    Defendant.

_____/

## DEFENDANT'S THIRD AMENDED NOTICE OF HEARING
***(hearing has been coordinated with Melissa Schaunaman with Plaintiffs' counsel)***
****(MOTION ADDED)****

PLEASE TAKE NOTICE that on **Thursday, October 21, 2021 at 9:00 a.m. (via Zoom - information provided below)** or as soon thereafter as counsel can be heard, the undersigned will call up for hearing before the Honorable Barbara Areces, one of the judges in the above-styled Court, in chambers at the Miami-Dade County Courthouse, located at 73 West Flagler Street, Room DCC 243, Miami, Florida 33130, the following matters:

1. **Defendant's Motion to Compel Overdue Court-Ordered Responses to Defendant's First Request for Production of Documents and First Set of Interrogatories, to Hold Plaintiffs In Contempt of Court, and to Impose Sanctions Pursuant to Fla. R. Civ. P. 1.380 (Certificate Date: August 24, 2021); and**

2. **Defendant's Motion to Dismiss Amended Complaint or, in the Alternative, Motion for More Definite Statement and Motion to Strike Demands for Attorneys' Fees Pursuant to Fla. Stat. § 627.428 (Certificate Date: May 14, 2021).**

Hearing time allotted is 5 minutes.

Zoom Meeting ID: 91368714046
Zoom Dial In Number: +1 786-635-1003
Zoom Link: https://zoom.us/j/91368714046

PLEASE GOVERN YOURSELF ACCORDINGLY.

**If you are an individual with a disability who needs an accommodation in order to participate in a court proceeding or other court service, program, or activity, you are entitled, at no cost to you, to the provision of certain assistance. Requests for accommodations may be presented on the ADA Title II Accommodation Request Form available on the website at www.jud11.flcourts.org/ADA-Request-for-Accommodations, in another written format, or orally. Please complete this form and return it to the Eleventh Judicial Circuit Court's ADA Coordinator via e-mail by using the submit button at the bottom of the form. Alternatively, you can return the completed form via regular mail to:**

**Eleventh Judicial Circuit Court's ADA Coordinator**
**Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128**
**Voice Mail: (305) 349-7175**
**TDD: (305) 349-7174**
**Fax: (305) 349-7355**
**Email: ADA@jud11.flcourts.org**
**Please submit your request as far in advance as possible, but preferably at least seven (7) days before your scheduled court appearance or other court activity.**
**Upon request by a qualified individual with a disability, the ADA Title II Accommodation Request Form will be made available in an alternate format. If you need assistance in completing the form due to your disability, or to request the document in an alternate format, please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, (305) 349-7175 Voice, (305) 349-7174 TDD, (305) 349-7355 Fax, E-mail: ADA@jud11.flcourts.org.**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 7th day of October, 2021 to: Frantz C.

2

Nelson, Esquire, Font & Nelson, LLC, pleadings@fontnelson.com; FNelson@FontNelson.com; and SCostello@FontNelson.com.

*/s/ Robert L. Rogers, III*
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

RLR/cdr
cc:     U.S. Legal *(sent via email transmission only)*

3

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

**CIRCUIT CIVIL DIVISION**

**CASE NO.:** 2019-030409-CA-01
**SECTION:** CA23

**M&M SISTERS LLC et al**
**Plaintiff(s),**

**vs.**

**SCOTTSDALE INSURANCE COMPANY**
**Defendant(s)**
_____/

## ZOOM/VIRTUAL
## ORDER SETTING CASE MANAGEMENT CONFERENCE

**YOU ARE ORDERED TO APPEAR** before the undersigned Judge for a Case Management Conference, in accordance with Rule 1.200(a), Florida Rules of Civil Procedure, on

**Date/Time**: 01-06-2022 at 11:00 AM
**Location**: Virtual Courtroom

Virtual Court is held remotely on the Zoom platform. You will receive an email from the Court with the information you need to connect to your event by video or phone if you are on the E-Filing Portal service list. If you do not receive an email, check the judge's webpage for the Zoom link to their virtual courtroom or further instructions. You may also register for text notification via link https://cmap.jud11.flcourts.org/ebench/textNotificationsRegistration.jsp.

IT IS THE RESPONSIBILITY OF THE SCHEDULER TO PROVIDE TIMELY NOTICE OF THE ZOOM MEETING DETAILS TO ANY PARTY NOT REGISTERED ON THE E-FILING SERVICE PORTAL.

**The court intends to specifically address the following motion/matter**:
 **Status of Pleadings (5 Minutes)**

In addition, the parties shall be prepared to argue and address all pending motions and issues in the case, including time-frame to complete discovery, for filing dispositive motions, and trial setting.

UPON COUNSEL'S FAILURE TO ATTEND THE CASE MANAGEMENT CONFERENCE, THE COURT MAY DISMISS THE ACTION, STRIKE PLEADINGS, ENTER DEFAULTS, LIMIT PROOF OF WITNESSES, AND/OR TAKE OTHER APPROPRIATE ACTION.

This Case Management Conference may not be cancelled without the Court's written permission.

**DONE AND ORDERED** in Chambers, at Miami-Dade County, Florida, on this __11th day of October, 2021__ .

2019-030409-CA-01 10-11-2021 1:23 PM
_____
**2019-030409-CA-01 10-11-2021 1:23 PM**

**Barbara Areces**
CIRCUIT COURT JUDGE

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355, Email: ADA@jud11.flcourts.org at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711.**

Copies Furnished to:

nsalehjee@fontnelson.com
Pleadings@thepropertyadvocates.com
Team9@thepropertyadvocates.com
team9@stremslaw.com
pleadings@rocklawpa.com
ekreiser@rocklawpa.com
dnelson@rocklawpa.com
pleadings@stremslaw.com
team9@thepropertyadvocates.com
pleadings@thepropertyadvocates.com
pleadings@FontNelson.com
FNelson@FontNelson.com
scostello@fontnelson.com
hunter@stremslaw.com
team9@stremslaw.com
pleadings@rocklawpa.com
nvanvalen@rocklawpa.com
dnelson@rocklawpa.com
pleadings@rocklawpa.com
crodriguez@rocklawpa.com
rmoreno@rocklawpa.com
pleadings@thepropertyadvocates.com
team9@thepropertyadvocates.com
pleadings@fontnelson.com
jwilds@fontnelson.com
gvega@fontnelson.com

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR     MIAMI-DADE     COUNTY,
FLORIDA
CIVIL DIVISION

Case No. 2019-030409-CA-01

M&M SISTERS, LLC BERTHA
MENENDEZ GARCIA & MARIA
MENDEZ,

    Plaintiffs,

vs.

SCOTTSDALE
INSURANCE COMPANY,

    Defendant.

_____/

## DEFENDANT'S FOURTH AMENDED NOTICE OF HEARING
***(hearing has been coordinated with Melissa Schaunaman with Plaintiffs' counsel)***
****(amended to include Updated Zoom Information)****

PLEASE TAKE NOTICE that on **Thursday, October 21, 2021 at 9:00 a.m. (via Zoom - information provided below)** or as soon thereafter as counsel can be heard, the undersigned will call up for hearing before the Honorable Barbara Areces, one of the judges in the above-styled Court, in chambers at the Miami-Dade County Courthouse, located at 73 West Flagler Street, Room DCC 243, Miami, Florida 33130, the following matters:

1. **Defendant's Motion to Compel Overdue Court-Ordered Responses to Defendant's First Request for Production of Documents and First Set of Interrogatories, to Hold Plaintiffs In Contempt of Court, and to Impose Sanctions Pursuant to Fla. R. Civ. P. 1.380 (Certificate Date:  August 24, 2021); and**

2. **Defendant's Motion to Dismiss Amended Complaint or, in the Alternative, Motion for More Definite Statement and Motion to Strike Demands for Attorneys' Fees Pursuant to Fla. Stat. § 627.428 (Certificate Date: May 14, 2021).**

Hearing time allotted is <u>5</u> minutes.

Zoom Meeting ID: 96988591436
Zoom Dial In Number: +1 786-635-1003
Zoom Link: https://zoom.us/j/96988591436

PLEASE GOVERN YOURSELF ACCORDINGLY.

**If you are an individual with a disability who needs an accommodation in order to participate in a court proceeding or other court service, program, or activity, you are entitled, at no cost to you, to the provision of certain assistance. Requests for accommodations may be presented on the ADA Title II Accommodation Request Form available on the website at www.jud11.flcourts.org/ADA-Request-for-Accommodations, in another written format, or orally. Please complete this form and return it to the Eleventh Judicial Circuit Court's ADA Coordinator via e-mail by using the submit button at the bottom of the form. Alternatively, you can return the completed form via regular mail to:**

**Eleventh Judicial Circuit Court's ADA Coordinator**
**Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128**
**Voice Mail: (305) 349-7175**
**TDD: (305) 349-7174**
**Fax: (305) 349-7355**
**Email: ADA@jud11.flcourts.org**
**Please submit your request as far in advance as possible, but preferably at least seven (7) days before your scheduled court appearance or other court activity.**
**Upon request by a qualified individual with a disability, the ADA Title II Accommodation Request Form will be made available in an alternate format. If you need assistance in completing the form due to your disability, or to request the document in an alternate format, please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2400, Miami, FL 33128, (305) 349-7175 Voice, (305) 349-7174 TDD, (305) 349-7355 Fax, E-mail: ADA@jud11.flcourts.org.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via E-Portal and/or electronic mail on the 14th day of October, 2021 to: Frantz C. Nelson, Esquire, Font & Nelson, LLC, pleadings@fontnelson.com; FNelson@FontNelson.com; and SCostello@FontNelson.com.

/s/ Robert L. Rogers, III
Andrew P. Rock, Esquire
Florida Bar No. 0656437
Robert L. Rogers, III, Esquire
Florida Bar No. 0694207
The Rock Law Group, P.A.
1760 Fennell Street
Maitland, FL 32751
Telephone: (407) 647-9881
Telecopier: (407) 647-9966
Email: pleadings@rocklawpa.com; and
crodriguez@rocklawpa.com
Attorneys for Defendant, Scottsdale
Insurance Company

RLR/cdr
cc:      U.S. Legal *(sent via email transmission only)*

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2019-030409-CA-01
SECTION: CA23
JUDGE: Barbara Areces

**M&M SISTERS LLC et al**

Plaintiff(s)

vs.

**SCOTTSDALE INSURANCE COMPANY**

Defendant(s)

_____/

## AGREED ORDER ON DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT AND MOTION TO STRIKE DEMANDS FOR ATTORNEYS' FEES PURSUANT TO FLA. STAT. § 627.428

THIS CAUSE, having come before the Court on Defendant SCOTTSDALE INSURANCE COMPANY's ("Defendant") Motion to Dismiss Amended Complaint or, in the Alternative, Motion for More Definite Statement and Motion to Strike Demands for Attorneys' Fees Pursuant to Fla. Stat. § 627.428 (the "Motion to Dismiss Amended Complaint"), and the Court having reviewed said Motion and being advised that Plaintiffs M&M SISTERS, LLC, BERTHA MENENDEZ GARCIA, and MARIA MENDEZ ("Plaintiffs") ("Plaintiffs") approve the form of this Order, and being otherwise fully informed, it is hereby,

ORDERED and ADJUDGED that Defendant's Motion to Dismiss Amended Complaint is GRANTED as follows:

   a. Plaintiffs' Amended Complaint is dismissed *without prejudice*, and Plaintiffs shall have twenty (20) days from the date of this Order to amend their Amended Complaint to allege their damage and the cause of their alleged loss with greater particularity, and also to replace all references to Fla. Stat. § 627.428 in their demands for attorneys' fees and costs with references to Fla. Stat. § 626.9373 (the fee provision in Florida's Surplus Lines Law).

   b. Defendant shall have twenty (20) days from the date Plaintiffs serve their Second Amended

Complaint to respond to the Second Amended Complaint.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>21st day of October, 2021</u>.



<u>2019-030409-CA-01 10-21-2021 12:47 PM</u>

Hon. Barbara Areces

**CIRCUIT COURT JUDGE**

Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**

Cheri Rodriguez, crodriguez@rocklawpa.com

Erin R. Dix, pleadings@rocklawpa.com

Erin R. Dix, ekreiser@rocklawpa.com

Erin R. Dix, dnelson@rocklawpa.com

Frantz C Nelson, pleadings@FontNelson.com

Frantz C Nelson, FNelson@FontNelson.com

Frantz C Nelson, scostello@fontnelson.com

George J. Zeckler, Esq., pleadings@thepropertyadvocates.com

George J. Zeckler, Esq., team9@thepropertyadvocates.com

George Zeckler, team9@stremslaw.com

George Zeckler, team9@thepropertyadvocates.com

George Zeckler, pleadings@thepropertyadvocates.com

Hunter Patterson, hunter@stremslaw.com

Jose Pete Font, pleadings@fontnelson.com

Jose Pete Font, jwilds@fontnelson.com

Jose Pete Font, gvega@fontnelson.com

Michael Patrick, Esq., team9@stremslaw.com

Michael Paul Patrick Esq., Pleadings@thepropertyadvocates.com

Michael Paul Patrick Esq., Team9@thepropertyadvocates.com

Nicholas F. Van Valen, pleadings@rocklawpa.com

Nicholas F. Van Valen, nvanvalen@rocklawpa.com
Nicholas F. Van Valen, dnelson@rocklawpa.com
Nimra Salehjee, nsalehjee@fontnelson.com
Robert L Rogers III, pleadings@rocklawpa.com
Robert L Rogers III, crodriguez@rocklawpa.com
Robert L Rogers III, rmoreno@rocklawpa.com
Scot Strems, pleadings@stremslaw.com


**Physically Served:**

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2019-030409-CA-01
SECTION: CA23
JUDGE: Barbara Areces

**M&M SISTERS LLC et al**

Plaintiff(s)

vs.

**SCOTTSDALE INSURANCE COMPANY**

Defendant(s)

_____/

### AGREED ORDER GRANTING DEFENDANT'S MOTION TO COMPEL OVERDUE COURT-ORDERED RESPONSES TO DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF INTERROGATORIES, TO HOLD PLAINTIFFS IN CONTEMPT OF COURT, AND TO IMPOSE SANCTIONS PURSUANT TO FLA. R. CIV. P. 1.380

THIS CAUSE, having come before the Court on Defendant SCOTTSDALE INSURANCE COMPANY's ("Defendant") Motion to Compel Overdue Court-Ordered Responses to Defendant's First Request for Production of Documents and First Set of Interrogatories, to Hold Plaintiffs in Contempt of Court, and to Impose Sanctions Pursuant to Fla. R. Civ. P. 1.380 (the "Motion to Compel and for Sanctions"), and the Court having reviewed the Motion to Compel and for Sanctions and having been advised that Plaintiffs M&M SISTERS, LLC, BERTHA MENENDEZ GARCIA, and MARIA MENDEZ's ("Plaintiffs") agree to the form of this Order, and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED that

1. Defendant's Motion to Compel and for Sanction is GRANTED based upon Plaintiffs' failure to comply with the Court's Order Granting Defendant's Emergency Motion to Order Either Postponement of Mediation Set for July 22, 2021 or Disclosure by Plaintiffs of Total Amount of Damages Sought and Supporting Documentation No Later Than July 15, 2021 (One Week Before Mediation) dated July 14, 2021 (the "Discovery Order") by failing to provide complete

responses to Defendant's First Request for Production and First Set of Interrogatories within thirty (30) days of the date of the Discovery Order, including complete verified Answers to Defendant's First Set of Interrogatories, complete written responses to Defendant's First Request for Production, all non-privileged documents requested in Defendant's First Request for Production (including an estimate identifying all amounts sought as damage by Plaintiffs in this action), and a Privilege Log.

2. Plaintiffs are ordered to provide complete responses to Defendant's First Request for Production and First Set of Interrogatories no later than Friday, October 22, 2021, including complete verified Answers to Defendant's First Set of Interrogatories, complete written responses to Defendant's First Request for Production, all non-privileged documents requested in Defendant's First Request for Production (including an estimate identifying all amounts sought as damage by Plaintiffs in this action), and a Privilege Log.

3. Pursuant to Fla. R. Civ. P. 1.380, Plaintiffs are required to pay Defendant all attorneys' fees that Defendant incurred compelling compliance with the Discovery Order, including all attorneys' fees incurred preparing the Motion to Compel and for Sanctions; scheduling and rescheduling any hearing on the Motion to Compel and for Sanctions; and preparing and procuring the order granting Motion to Compel and for Sanctions.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 21st day of October, 2021.

2019-030409-CA-01 10-21-2021 12:47 PM

Hon. Barbara Areces

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**

Cheri Rodriguez, crodriguez@rocklawpa.com

Erin R. Dix, pleadings@rocklawpa.com

Erin R. Dix, ekreiser@rocklawpa.com

Erin R. Dix, dnelson@rocklawpa.com

Frantz C Nelson, pleadings@FontNelson.com

Frantz C Nelson, FNelson@FontNelson.com

Frantz C Nelson, scostello@fontnelson.com

George J. Zeckler, Esq., pleadings@thepropertyadvocates.com

George J. Zeckler, Esq., team9@thepropertyadvocates.com

George Zeckler, team9@stremslaw.com

George Zeckler, team9@thepropertyadvocates.com

George Zeckler, pleadings@thepropertyadvocates.com

Hunter Patterson, hunter@stremslaw.com

Jose Pete Font, pleadings@fontnelson.com

Jose Pete Font, jwilds@fontnelson.com

Jose Pete Font, gvega@fontnelson.com

Michael Patrick, Esq., team9@stremslaw.com

Michael Paul Patrick Esq., Pleadings@thepropertyadvocates.com

Michael Paul Patrick Esq., Team9@thepropertyadvocates.com

Nicholas F. Van Valen, pleadings@rocklawpa.com

Nicholas F. Van Valen, nvanvalen@rocklawpa.com

Nicholas F. Van Valen, dnelson@rocklawpa.com

Nimra Salehjee, nsalehjee@fontnelson.com

Robert L Rogers III, pleadings@rocklawpa.com

Robert L Rogers III, crodriguez@rocklawpa.com

Robert L Rogers III, rmoreno@rocklawpa.com

Scot Strems, pleadings@stremslaw.com


**Physically Served:**

Case 1:21-cv-24081-FAM   Document 1-2   Entered on FLSD Docket 11/19/2021   Page 549 of 661

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

M&M SISTERS, LLC, BERTHA MENENDEZ GARCIA & MARIA MENDEZ,

        Plaintiffs,

v.

SCOTTSDALE INSURANCE COMPANY,

        Defendant.

_____/

CIVIL DIVISION

CASE NO.: 2019-030409-CA-01

## **SECOND AMENDED COMPLAINT**

**COME NOW**, the Plaintiffs, M&M SISTERS, LLC, BERTHA MENENDEZ GARCIA and MARIA MENDEZ (hereinafter "Plaintiff"), and hereby sue Defendant, SCOTTSDALE INSURANCE COMPANY, ("Defendant"), and alleges as follows:

## **PARTIES, JURISDICTION & VENUE**

1) This is an action for breach of contract, and the amount at issue exceeds thirty thousand and 00/100 dollars ($30,000.00), exclusive of interest, costs and attorney's fees.

2) At all times material hereto, the Defendant, SCOTTSDALE INSURANCE COMPANY is/as been a Florida corporation authorized and doing business in Miami-Dade County, Florida. The Defendant is a duly and lawfully registered entity as required by Florida Law, and sells homeowners' insurance policies providing coverage throughout the State that are subject to governing Florida Law.

3) At all times material hereto, the Plaintiffs, M&M SISTERS, LLC, and BERTHA MENENDEZ GARCIA own/have owned and continue to own the property insured by the

Defendant located at 1111 NW 43rd Avenue, Miami, Florida, 33126 (hereinafter "Property".)

4) Venue and jurisdiction are proper in MIAMI-DADE County, Florida, because the subject contract was executed in said county, and it is the county where the property in litigation is located.

5) All conditions precedent to the filing of this lawsuit have occurred, have been waived, or have been performed.

## GENERAL ALLEGATIONS

6) At all times material hereto, which includes May 6, 2019 to present, in consideration of a premium paid by the Plaintiff/Insured, there was in full force and effect a certain homeowner's insurance policy ("Policy") issued by the Defendant bearing policy number CPS3064779. A copy of the Policy is attached as **Exhibit "A"** and is hereby incorporated by reference.

7) Under the terms of the Policy, the Defendant agreed to provide insurance coverage to the Plaintiff's property against certain losses. The damaged property is located at 1111 NW 43rd Avenue, Miami, Florida, 33126 ("Property").

## COUNT I - BREACH OF CONTRACT

8) The Plaintiffs reincorporate paragraphs 1 – 7 as if fully set forth herein.

9) On or about May 6, 2019, the insured risk suffered a sudden, accidental and/or otherwise covered loss ("Covered Loss") under the policy; more specifically, insured risk suffered extensive roof damage which resulted in ensuing water damage to the interior of multiple units. Specifically, units 101, 102, 104, 105, 201, 202, 206 and 210.

10) The Plaintiffs duly notified the Defendant of the covered loss, and the Defendant assigned claim number 01892450.

11) The Defendant assigned an insurance adjuster to adjust the Loss.

12) Plaintiffs were ready and willing to meet with Defendant as reasonably necessary to inspect the Subject Property, and to comply with Plaintiffs' obligations under the Subject Policy.

13) Plaintiffs requested that any inspection of the Subject Property be conducted with Audio and Video recording. However, the Defendant refused to complete the inspection under such terms and conditions, and as such, caused serious delay in the investigation of the claim. More specifically, the Defendant asserted that it is/was illegal to record the inspection, as it was/is a violation of the law. The Defendant improperly asserted a right to privacy within the inspection. This was done despite the fact that there was no term in the Subject Policy, no relevant case law, or court opinion, nor applicable statutory code or section, prohibiting the recording of the inspection of the Subject Property.

14) On Or about October 16, 2019, the Plaintiffs were forced to file a Petition for Declaratory Relief, seeking an adjudication from this Honorable Court to determine whether in fact the Plaintiffs were permitted to record via audio and video, the Defendant's inspection of the Subject Property.

15) On December 5, 2019, the Defendant filed a Motion to Dismiss, or in the Alternative, Motion to Abate the Pending Action, Pending Completion of its Investigation.

16) On August 25, 2020, this Honorable Court issued an Order Denying Defendant's Motion to Dismiss. The Court further directed that the case was to be abated for a period of ninety (90) days to allow for inspection of the Subject Property to be completed. This Honorable Court further ruled that the Plaintiffs shall be able to document the proceedings using both video and audio recording. Additionally, this Honorable Court held that the matter was to

be abated for an additional thirty (30) days beyond the ninety (90) days, to allow for the Defendant to communicate its coverage decision to Plaintiffs. However, the abate was to automatically lift upon the communication of the Defendant's Coverage Decision, should one come sooner than the one hundred and twenty (120) days.

17) On November 19, 2020, the inspection of the Subject Property was completed, and a Coverage Decision was made.

18) On January 21, 2021, this Court entered an Amended Order Denying the Defendant's Motion to Dismiss. The Order directed that abatement was lifted based upon the Defendant's issuance of a coverage determination to Plaintiffs' claim at issue in this action.

19) As of the date of filing this lawsuit, the Defendant has failed to duly and fully issue payment to the Plaintiffs for the covered losses and/or damages under the Policy, including, but not limited to, the actual cash value of the loss and/or damages.

20) The Plaintiffs have suffered, and continue to suffer, direct and consequential damages due to the Defendant's expressed, and/or anticipatory failure to perform under the Policy.

21) The Defendant had a duty to promptly investigate, adjust and issue payment for the Covered Loss.

22) Notwithstanding the Plaintiffs' performance of material conditions to payment under the Policy that were either substantially complied with and/or waived by the Defendant, the Defendant refuses to perform its duty to issue payment for, at a minimum, actual cash value as mandated by governing Florida Statute and the Policy.

23) The Defendant's failure to duly perform constitutes a material breach of the Policy, and the Plaintiffs have suffered direct, actual and consequential damages as a result thereof.

24) The Plaintiffs have been obligated to retain the undersigned attorney for the prosecution of this action and are entitled to an award of reasonable attorney's fees and costs pursuant to Florida Statute Sections 626.9373 and 57.041.

WHEREFORE, the Plaintiffs respectfully requests that this Honorable Court enters Final Judgment in their favor and for the following:

      a.  Full payment of direct, actual and/or consequential damages that have been sustained as a result of the Defendant's breach of contract;

      b.  Payment of pre-judgment interest pursuant to Fla. Stat. Secs. 55.03l;

      c.  Pursuant to Fla. Stat. Secs. 626.9373, 92.231 and 57.041, an award reasonable attorneys' fees and costs; and/or

      d.  Any other relief the Court deems just and proper.

## JURY TRIAL DEMAND

25) The Plaintiffs hereby demand a trial by jury on all issues so triable.

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically furnished on or about <u>November 10, 2021</u> via the Florida Court's e-filing Portal ("Portal") in accordance with Fla. R. Jud. Admin. 2. 516, which should furnish copies to the email address of each party identified in the Portal's Service List.

<div style="margin-left: 40%;">

**FONT & NELSON, PLLC**
*Attorneys for Plaintiffs*
200 S. Andrews Ave., Suite 501
Fort Lauderdale, FL 33301
Tel: (954) 248-2920; Fax: (954) 248-2134
Designated E-mail: pleadings@fontnelson.com


BY:     */s/ Frantz C. Nelson*
        **JOSE P. FONT, ESQ.**
        Florida Bar #: 0738719
        **FRANTZ C. NELSON, ESQ.**
        Florida Bar #: 031134

</div>

EXHIBIT "A"

═══════════ COMMON POLICY DECLARATIONS ═══════════

| Renewal of<br>CPS2687540 | Underwritten by: Scottsdale Insurance Company<br>Home Office:<br>One Nationwide Plaza ▪ Columbus, Ohio 43215<br>Administrative Office:<br>8877 North Gainey Center Drive▪ Scottsdale, Arizona 85258<br>1-800-423-7675▪ A STOCK COMPANY | Policy Number<br>**CPS3064779** |
|---|---|---|

**ITEM 1.** Named Insured and Mailing Address

M&M SISTERS LLC; BERTHA MENENDEZ
GARCIA & MARIA MENENDEZ
1710 PIZARRO STREET
CORAL GABLES, FL  33134

Agent Name and Address

SCU, A DIVISION OF CRC INSURANCE
SERVICES INC
1000 NW 57TH COURT, STE 670
MIAMI, FL 33126

Agent No.: ___09020___    Program No.: ___79___

| **ITEM 2.** Policy Period | From: 07/13/2018 | To: 07/13/2019 | Term: 365 DAYS |
|---|---|---|---|

**12:01 A.M., Standard Time at the mailing address shown in ITEM 1.**

Business Description:  APARTMENT BUILDING

---

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Premium Summary |
|---|---|
| Commercial General Liability Coverage Part | $              1,732 |
| Commercial Property Coverage Part | $              6,722 |
| Commercial Crime And Fidelity Coverage Part | $   NOT COVERED |
| Commercial Inland Marine Coverage Part | $   NOT COVERED |
| Commercial Auto Coverage Part | $   NOT COVERED |
| Professional Liability Coverage Part | $   NOT COVERED |
|  | $ |
|  | $ |
| **Total Policy Premium:** | $         8,454.00 |
| POLICY FEE | $            35.00 |
| SURPLUS LINES TAX | $           424.45 |
| SERVICE FEE | $             8.49 |
| SURCHARGE FEE | $             4.00 |
|  | $ |
|  | $ |
| **Policy Total:** | $         8,925.94 |

Form(s) and Endorsement(s) made a part of this policy at time of issue:
**SEE SCHEDULE OF FORMS AND ENDORSEMENTS**

EXCELLENCE INSURANCE LLC
3801 SW 107TH AVENUE
MIAMI, FL 33165
EB 07/17/18

THIS COMMON POLICY DECLARATION AND THE SUPPLEMENTAL DECLARATION(S), TOGETHER WITH
THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND FORM(S)
AND ENDORSEMENT(S), IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

OPS-D-1 (1-17)                    HOME OFFICE                    Nationwide®

# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. _____CPS3064779_____

Effective Date: _____07/13/2018_____
12:01 A.M., Standard Time

Named Insured __M&M SISTERS LLC; BERTHA MENENDEZ__      Agent No. _____09020_____

```
            UTS-COVPG   1-16        Cover Page
            OPS-D-1   1-17          Common Policy Declarations
            UTS-SP-2    12-95       Schedule Of Forms and Endorsements
            COMMON FORMS
            UTS-SP-3  8-96          Locations Schedule
            IL 00 17  11-98         Common Policy Conditions
            IL 09 53  1-15          Excl-Certified Acts Terrorism
            UTS-9g  5-96            Service Of Suit Clause
            UTS-119g  6-14          Minimum Earned Cancellation Premium

            GENERAL LIABILITY FORMS
            CLS-SD-1L  8-01         GL Supplemental Dec
            CLS-SP-1L  10-93        GL Ext Supplemental Dec
            CG 00 01  4-13          General Liab Coverage
            CG 20 18  4-13          AI-Mortgagee-Assignee-Receiver
            CG 21 06  5-14          Excl-Access Of Confidential Or Personal Info
            CG 21 44  4-17          Designated Premises/Project/Operation Limitation
            CG 21 47  12-07         Employment-Related Practices Exclusion
            CG 21 67  12-04         Fungi Or Bacteria Excl
            CG 21 73  1-15          Exclusion-Certified Acts Of Terrorism
            CG 24 26  4-13          Amend Of Insured Contract Definition
            GLS-30s  1-15           Contractors Special Conditions
            GLS-47s  10-07          Minimum & Advance Prem Endt
            GLS-152s  8-16          Amendment To Other Insurance Condition
            GLS-282s  7-16          Multi-Unit Habitational Conversion Excl
            GLS-289s  11-07         Known Injury/Dmg Excl-Personal/Advertise Injury
            GLS-341s  8-12          Hydraulic Fracturing Excl
            GLS-457s  10-14         Aircraft Exclusion
            IL 00 21  9-08          Nuclear Energy Exclusion
            UTS-74g  8-95           Punitive/Exemplary Damage Exclusion
            UTS-266g  5-98          Asbestos Exclusion
            UTS-267g  5-98          Lead Contamination Exclusion
            UTS-365s  2-09          Amend Of Nonpayment Cancel Condition
            UTS-428g  11-12         Premium Audit

            PROPERTY FORMS
            CPS-SD-1  2-16          Property Supplemental Dec
            CPS-SP-5L  6-92         Mortgage Holders Schedule
            CP 00 10  10-12         Building & Personal Prop Cov
            CP 00 30  10-12         Business Income With Extra Expense Cov
            CP 00 90  7-88          Property Conditions
            CP 01 40  7-06          Excl Of Loss Due To Virus Or Bacteria
            CP 10 30  9-17          Causes Of Loss-Special Form
            FS-18  11-86            Total-Constructive Loss Clause
            UTS-183g  12-16         Windstorm Or Hail Deductible

            STATE FORMS
            CFS-68s-FL  1-12        FL-Changes
            CFS-103-FL  1-16        FL-Sewer Or Drain Definition Endorsement
            IL 04 01  2-12          FL-Sinkhole Loss Coverage
            UTS-29-FL  6-97         FL-Cancel-Nonrenew

            POLICYHOLDER NOTICES
            NOTX0178CW   3-16       Claim Reporting Information
            NOTX0423CW   2-15       Notice Of Terrorism Ins Cov
            NOTS0381FL   7-09       FL-Policyholder Notice
```

 SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF LOCATIONS

Policy No. ___CPS3064779___                    Effective Date ___07/13/2018___
                                               12:01 A.M. Standard Time

Named Insured __M&M SISTERS LLC; BERTHA MENENDEZ__    Agent No. ___09020___

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|-----------|-----------|------------------------------------------------------|-----------|
| 1 | 1 | 1111 NW 43 AVENUE<br>MIAMI, FL 33126 | APARTMENT BLDG |

UTS-SP-3 (8-96)                    HOME OFFICE

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

**POLICY NUMBER:** CPS3064779                                                 IL 09 53 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    STANDARD PROPERTY POLICY

**SCHEDULE**

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

HOME OFFICE
i l109530115.fap

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D.   Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The officer named below is authorized and directed to accept service of process on behalf of the Company:

CHIEF FINANCIAL OFFICER; DEPARTMENT OF FINANCIAL SERVICES

200 EAST GAINES STREET

TALLAHASSEE, FL 32399

Having accepted service of process on behalf of the Company, the officer is authorized to mail the process or a true copy to:

NOT REQUIRED

_____

_____

/

| AUTHORIZED REPRESENTATIVE | DATE |
|---|---|
| HOME OFFICE | uts9gc.fap |

UTS-9g (5-96)

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM EARNED CANCELLATION PREMIUM

The following provision is added to the Cancellation Condition:

If You request cancellation of this policy, We will retain not less than  25%  of the original premium.

/

AUTHORIZED REPRESENTATIVE                                        DATE

UTS-119g (6-14)                       HOME OFFICE                       uts119g0614a.fap



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy No. _____ CPS3064779 _____ ____ Effective Date _____ 07/13/2018 _____

12:01 A.M., Standard Time

Named Insured  M&M SISTERS LLC; BERTHA MENENDEZ ____ Agent No. _____ 09020 _____

**Item 1.** Limits of Insurance

| Coverage | Limit of Liability | |
|---|---|---|
| Aggregate Limits of Liability | $ 1,000,000 | Products/Completed Operations Aggregate |
| | $ 2,000,000 | General Aggregate (other than Products/Completed Operations) |
| Coverage A - Bodily Injury and Property Damage Liability | $ 1,000,000 | any one occurrence subject to the Products/Completed Operations and General Aggregate Limits of Liability |
| Damage to Premises Rented to You Limit | $ 100,000 | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B - Personal and Advertising Injury Liability | $ 1,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C - Medical Payments | $ 5,000 | any one person subject to the Coverage A occurrence and the General Aggregate Limits |

**Item 2.** Description of Business

Form of Business:

☐ Individual    ☐ Partnership    ☐ Joint Venture    ☐ Trust    ☒ Limited Liability Company

☐ Organization including a corporation (other than Partnership, Joint Venture or Limited Liability Company)

Location of All Premises You Own, Rent or Occupy:

**See Schedule of Locations**

**Item 3.** Forms and Endorsements

Form(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

**Item 4.** Premiums

| | | |
|---|---|---|
| Coverage Part Premium: | $ | 1,732 |
| Other Premium: | $ | |
| Total Premium: | $ | 1,732 |

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## EXTENSION OF SUPPLEMENTAL DECLARATIONS

Policy No. _CPS3064779_     Effective Date: _07/13/2018_
12:01 A.M., Standard Time

Named Insured _M&M SISTERS LLC; BERTHA MENENDEZ_     Agent No. _09020_

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| 1 | 1 | 60010 | 15 | UNITS |

| Class Description: | Premises/Operations | |
|---|---|---|
| APARTMENT BUILDINGS (PRODUCTS-COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT) | Rate | Premium |
| | 115.83 | 1,732 |
| | Products/Comp Operations | |
| | Rate | Premium |
| | INCL | INCL |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| 1 | 1 | 49950 | | |

| Class Description: | Premises/Operations | |
|---|---|---|
| ADDITIONAL INSURED- CG2018 | Rate | Premium |
| | INCL | INCL |
| | Products/Comp Operations | |
| | Rate | Premium |
| | | |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| | | | | |

| Class Description: | Premises/Operations | |
|---|---|---|
| | Rate | Premium |
| | | |
| | Products/Comp Operations | |
| | Rate | Premium |
| | | |

| Prem. No. | Bldg. No. | Class Code | Exposure | Basis |
|---|---|---|---|---|
| | | | | |

| Class Description: | Premises/Operations | |
|---|---|---|
| | Rate | Premium |
| | | |
| | Products/Comp Operations | |
| | Rate | Premium |
| | | |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 © Insurance Services Office, Inc., 2012

**2.** Each of the following is also an insured:

  **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

    **(1)** "Bodily injury" or "personal and advertising injury":

      **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

      **(d)** Arising out of his or her providing or failing to provide professional health care services.

    **(2)** "Property damage" to property:

      **(a)** Owned, occupied or used by; or

      **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

    you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

  **b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

  **c.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

  **d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

  **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

  **a.** Medical expenses under Coverage **C;**

  **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

  **c.** Damages under Coverage **B.**

© Insurance Services Office, Inc., 2012

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

     **(1)** How, when and where the "occurrence" or offense took place;

     **(2)** The names and addresses of any injured persons and witnesses; and

     **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

     **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

     **(2)** Notify us as soon as practicable.

     You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   **c.** You and any other involved insured must:

     **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

     **(2)** Authorize us to obtain records and other information;

     **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

     **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

    **(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

        **(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

        **(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        **(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        **(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

    **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

© Insurance Services Office, Inc., 2012

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012
CG 00 01 04 13

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

        **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

        **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012 **CG 00 01 04 13**

POLICY NUMBER: CPS3064779

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED -
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| MERCANTILE COMMERCEBANK N.A. ISAOA<br>12496 NW 25 STREET<br>MIAMI, FL 33182 | REFER TO LOCATION SCHEDULE |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** **Section II - Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

Copyright, Insurance Services Office, Inc., 2012
HOME OFFICE

cg20180413.fap

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

POLICY NUMBER: CPS3064779

**COMMERCIAL GENERAL LIABILITY**
**CG 21 44 04 17**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Premises: |
|---|
| REFER TO LOCATION SCHEDULE |

| Project Or Operation: |
|---|
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01,** the provisions under this Paragraph **A.** apply:

**1.** Paragraph **1.b.** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**2.** Paragraph **1.b.** under **Section I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

Copyright, Insurance Services Office, Inc., 2016
HOME OFFICE

**(b)** In connection with the project or operation shown in the Schedule; and

**(2)** The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I - Coverage C - Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**B.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 02,** the provisions under this Paragraph **B.** apply:

**1.** Paragraph **1.b.** under **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V** - Extended Reporting Periods.

**2.** Paragraph **1.b.** under **Section I - Coverage B - Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule;

**(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

Copyright, Insurance Services Office, Inc., 2016

**CG 21 44 04 17**

**(3)** A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V - Extended Reporting Periods.**

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I - Coverage C - Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**COMMERCIAL GENERAL LIABILITY**
**CG 21 47 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc.,  2003

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

COMMERCIAL GENERAL LIABILITY
CG 24 26 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CONTRACTORS SPECIAL CONDITIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS:**

**Contractors Special Conditions**

You will obtain current certificates of insurance from all independent contractors providing evidence of:

**1.** "Bodily injury" and "property damage" liability Limits of Insurance equal to or greater than the limits provided by this policy;

**2.** Coverage equal to or greater than the coverage provided by this policy; and

**3.** Effective dates of coverage that "coincide" with the effective dates of coverage on this policy.

Failure to comply with this condition does not alter the coverage provided by this policy, but will result in an additional premium charge.

The following is added to **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS,** paragraph **5. Premium Audit:**

Should you fail to provide current certificates of insurance from all independent contractors at such times as we request to complete a premium audit, a premium charge will be made. The premium charge will be computed by multiplying the "total cost" of all work sublet that fails to meet the above condition, by the rate per $1,000 payroll for the applicable classification of the work performed. The premium charge will be computed by multiplying our usual and customary rate per $1,000 payroll for that classification.

For purposes of this endorsement the following definitions apply:

"Total cost" means the cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work and all fees, bonuses or commissions paid.

"Coincide" means that the effective dates of coverage for all policies of all independent contractors covers that period of time during which work was performed for you within the effective dates covered by this policy.

AUTHORIZED REPRESENTATIVE                    DATE

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM AND ADVANCE PREMIUM ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**MINIMUM PREMIUM** _____100_____ **%**

Item **5.b.** of the **Premium Audit** condition under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS, SECTION IV - LIQUOR LIABILITY CONDITIONS** and **SECTION IV - PRODUCTS/COMPLETED OPERATIONS LIABILITY CONDITIONS** is amended to read:

**b.** The advance premium for this Coverage Part is a deposit premium only. The final premium shall be subject to audit. At the close of each audit period we will compute the earned premium for that period. Any audit premiums are due and payable to us on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured, subject to the minimum premium as defined above. In the event the first Named Insured fails or refuses to allow our representative to audit your books and records, we may unilaterally charge a final premium for the Policy Period at double the minimum or advance premium, whichever is greater, and such final premium shall be immediately due and payable on notice to the first Named Insured.

For purposes of this endorsement, the terms advance premium, earned premium, and minimum premium are defined as follows:

Advance Premium - the premium that is stated in the applicable initial policy Declarations or Renewal Certificate and payable in full by the first Named Insured at the inception of each Policy Period.

Earned Premium - the premium that is developed by applying the rate(s) scheduled in the policy to the actual premium basis for the audit period.

Minimum Premium - the lowest premium for which this insurance will be written for the Policy Period stated in **Item 2.** of the Declarations of the applicable initial policy or subsequent Renewal Certificate. This minimum premium is equal to 100% (unless a different percentage [%] is shown in the Schedule above) of the advance premium including any premium adjustments made by endorsement to this policy during the Policy Period. Premium adjustments do not include the audit premium developed for the Policy Period stated in **Item 2.** of the Declarations.

_____ / _____
AUTHORIZED REPRESENTATIVE                    DATE

SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT TO OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Condition **4. Other Insurance** of **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS** is deleted in its entirety and is replaced by the following:

**4.   Other Insurance**

**a.   Primary Insurance**

This insurance is primary except when **b.** below applies.

**b.   Excess Insurance**

**(1)**   This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

**(a)**   That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)**   That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)**   That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner;

**(d)**   If the loss arises out of the maintenance or use of aircraft, "auto" or watercraft to the extent not subject to Exclusion **g.** of Coverage **A (SECTION I);** or

**(e)**   That is valid and collectible insurance available to any insured under any other policy.

**(2)**   When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)**   When this insurance is excess over other insurance, we will pay only the amount of the loss, if any, that exceeds the sum of:

**(a)**   The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

GLS-152s (8-16)                                   Page 1 of 2

**(b)** The total of all deductible and self-insured amounts under all other insurance.

If a loss occurs involving two or more policies, each of which states that its insurance will be excess, then our policy will contribute on a pro rata basis.

_____ / _____
AUTHORIZED REPRESENTATIVE                          DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

**SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MULTI-UNIT HABITATIONAL CONVERSION EXCLUSION

This insurance modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**ERRORS AND OMISSIONS COVERAGE PART**

This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury" or any "error or omission" arising out of, related to, caused by, or associated with, in whole or part, the following:

"Your work," ownership or financial interest in any building which is converted to "residential property," whether prior to, during or after the Policy Period set forth in the Declarations. This exclusion applies regardless of whether:

**a.** The conversion was performed by you or on your behalf; or

**b.** The conversion takes place before or after "your work" is completed.

However, this exclusion does not apply to:

**a.** "Your work" on "residential property" which meets all of the following criteria:

**(1)** The work has been for repair and/or renovation only;

**(2)** The work has been performed on an existing structure that already has a Certificate of Occupancy at the time that such operations first commenced; and

**(3)** The repair and/or renovation work is contracted directly with an individual unit owner or individual home owner.

**b.** "Your work" on or associated with that portion of "mixed-use building(s)" that is not residential property.

For the purposes of this endorsement, the following definitions apply:

"Apartments" are defined as a multi-family residence where there is common ownership of individual units and common areas, but where all individual units are held for lease or rent by tenants who have no ownership interest in the units they lease or rent.

"Mixed-use building(s)" is defined as a building or a group of buildings that contain both "residential property" and commercial space.

"Residential property" is defined as property designed for domicile, including, but not limited to: single family dwelling, multi-unit subdivision, master planned community, cooperative, tract housing, town-home/townhouses, duplex, condominiums, lofts, timeshares, and "mixed-use building(s)"; as well as all common areas. However, this definition does not apply to "apartments," military barracks, multi-unit dormitory buildings, hotels, motels, nursing homes or assisted living facilities.

We shall have no duty or obligation to defend any loss, claim or "suit" excluded by this endorsement; nor to pay any investigation or other loss adjustment expense.

_____        _____/_____
AUTHORIZED REPRESENTATIVE                             DATE

GLS-282s (7-16)                                    Page 1 of 1

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## KNOWN INJURY OR DAMAGE EXCLUSION— PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I—COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

### Known Injury Or Damage

This insurance does not apply to "personal and advertising injury" arising from an offense:

**a.** That occurs during the policy period and, prior to the policy period, an insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, knew that the "personal and advertising injury" had occurred prior to the policy period, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "personal and advertising injury" occurred, then any continuation, change or resumption of such offense during or after the policy period will be deemed to have been known prior to the policy period; or

**b.** That occurs during the policy period and was, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, includes any continuation, change or resumption of that "personal and advertising injury" after the end of the policy period.

A "personal and advertising injury" arising from an offense will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **SECTION II—WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim:

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury"; or

**(3)** Becomes aware by any other means that "personal and advertising injury" has occurred or has begun to occur.

_____ / _____
AUTHORIZED REPRESENTATIVE                DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2006

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HYDRAULIC FRACTURING EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**ERRORS AND OMISSIONS COVERAGE PART**

**A.** The following is added to Paragraph **2. Exclusions** of **Section I—Coverage A. Bodily Injury And Property Damage Liability** of the Commercial General Liability Coverage Part and Paragraph **2. Exclusions** of **SECTION I—COVERAGE** of the Errors And Omissions Coverage Part:

This insurance does not apply to:

**Hydraulic Fracturing**

**1.** "Bodily injury," "property damage" or "error or omission":

   **a.** Arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing," "gas fracking" and/or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any insured or by any other person or entity; or

   **b.** Caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing" or "gas fracking."

**2.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, remediating or disposing of, or in any way responding to or assessing the effects of "hydraulic fracturing," "gas fracking" or "flowback," by any insured or by any other person or entity.

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to items **1.** or **2.** above.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I—Coverage B. Personal And Advertising Injury** Liability of the Commercial General Liability Coverage Part:

This insurance does not apply to:

**Hydraulic Fracturing**

**1.** "Personal and advertising injury":

   **a.** Arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include,

but are not limited to, "hydraulic fracturing," "gas fracking" and/or the actual, alleged, threatened or suspected contact with, exposure to, existence of or presence of any "flowback" or the handling, transporting, storage, release or disposal of any "flowback" by any "insured" or by any other person or entity; or

**b.** Caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land arising, in whole or in part, out of any operation involving substances under pressure being pumped underground with the objective of creating fractures in underground geologic formations to facilitate the release and extraction of hydrocarbons, including, but not limited to, oil or natural gas. Such operations include, but are not limited to, "hydraulic fracturing" or "gas fracking."

**2.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, remediating or disposing of, or in any way responding to or assessing the effects of "hydraulic fracturing," "gas fracking" or "flowback," by any insured or by any other person or entity.

We will have no duty to settle any claim or defend any "suit" against the insured arising out of or in any way related to items **1.** or **2.** above.

For purposes of this endorsement, the following definitions apply:

**1.** "Hydraulic fracturing," or hydrofracking means the process by which water, "proppants," chemicals and/or other fluid additives are injected at high pressure into underground geologic formations to create fractures, to facilitate the extraction of any hydrocarbons including but not limited to natural gas and/or oil.

**2.** "Flowback" means any substance containing returned "hydraulic fracturing" fluid, including but not limited to water, "proppants," "hydraulic fracturing" fluid additives; and, any hydrocarbon compounds, salts, conventional pollutants, organics, metals, and naturally occurring radioactive material brought to the surface with the water.

**3.** "Gas fracking" or liquefied propane/butane gas fracturing means the waterless process by which propane gel and "proppants" are injected at high pressure into underground geologic formations to create fractures, to facilitate the release and extraction of natural gas.

**4.** "Proppant" means particles that are used to keep fractures open after a hydraulic fracturing treatment.

---

AUTHORIZED REPRESENTATIVE                                DATE

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AIRCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

The following is added to paragraph **2. Exclusions** of **SECTION I—COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY:**

This insurance does not apply to:

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft. Use includes operation and "loading and unloading."

This exclusion applies even if claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured.

AUTHORIZED REPRESENTATIVE                    DATE

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007 IL 00 21 09 08   □

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.

Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

_____   /   _____
AUTHORIZED REPRESENTATIVE                           DATE

HOME OFFICE

UTS-74g (8-95)

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ASBESTOS EXCLUSION

This policy does not apply to:

(1) Damages in any way or to any extent arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

(2) Any economic loss, diminution of property value, abatement costs, or any other loss, cost or expense including equitable relief, in any way or to any extent arising out of or involving asbestos, asbestos fibers or any product containing asbestos or asbestos fibers.

(3) Any fees, fines, costs, or expenses of any nature whatsoever in the investigation or defense of any claim or suit arising out of or involving asbestos, asbestos fibers, or any product containing asbestos or asbestos fibers.

_____  _____
AUTHORIZED REPRESENTATIVE                      DATE

UTS-266g (5-98)

SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
|  |  |  |  |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEAD CONTAMINATION EXCLUSION

This policy does not apply to:

1.  Any damages arising out of the ingestion, inhalation or absorption of lead in any form.

2.  Any loss, cost or expense arising out of any:

    (a) Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

_____     _____
AUTHORIZED REPRESENTATIVE                    DATE

UTS-267g (5-98)

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF NONPAYMENT CANCELLATION CONDITION

Wherever a Cancellation Condition for nonpayment of premium is found in the policy, the following is added:

If the insured failed to pay premium charged on a prior policy we issued and payment was due during the current renewal policy term, we may cancel this policy by mailing or delivering to the first Named Insured and mortgagee, if any, written notice of cancellation at least ten (10) days before the effective date of cancellation.

_____  /  _____

AUTHORIZED REPRESENTATIVE          DATE

UTS-365s (2-09)                    Page 1 of 1

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PREMIUM AUDIT

The following is added to the Premium Audit provision:

If the first Named Insured fails or refuses to provide documentation adequate to determine the apportionment of exposures by class code, we may unilaterally apply all exposures to the class code with the highest rate stated in the policy including any class code adjustments made by endorsement.

_____   /
AUTHORIZED REPRESENTATIVE              DATE



# SCOTTSDALE INSURANCE COMPANY®

## COMMERCIAL PROPERTY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

Policy No.: ___CPS3064779_____    Effective Date: 07/13/2018_____

12:01 A.M. Standard Time

Named Insured: M&M SISTERS LLC; BERTHA MENENDEZ___   Agent No.: 09020_____

| Item 1. | Business Description: APARTMENT BUILDING |
|---|---|

| Item 2. | Premises Described: |
|---|---|
| | **See Schedule of Locations** |

| Item 3. | $500 Deductible unless otherwise indicated. |
|---|---|

**Item 4.**    Coverages Provided:

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 1 | 1 | BUILDING | 1,163,195 | SPECIAL | 90% |

### Other Provisions

Construction: FIRE RESISTIVE_____    Year Built: _____1985_____    No. of Stories: _____3_____
☐ Agreed Value: _____    Expires: _____    ☒ Replacement Cost
☐ Business Income Indemnity: Monthly Limit: _____    Maximum Period: _____    Extended Period: _____
☐ Reporting   ☐ Inflation Guard: _____ %
Deductible: ___2,500 AOP____    Earthquake Deductible: _____ %    Exceptions: _____

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| 1 | 1 | BUSINESS INCOME | 15,000 | SPECIAL | |

### Other Provisions

Construction: _____    Year Built: _____    No. of Stories: _____
☐ Agreed Value: _____    Expires: _____    ☐ Replacement Cost
☒ Business Income Indemnity: Monthly Limit: ___1/6___    Maximum Period: _____    Extended Period: _____
☐ Reporting   ☐ Inflation Guard: _____ %
Deductible: _____    Earthquake Deductible: _____ %    Exceptions: _____

| Prem. No. | Bldg. No. | Coverage | Limit of Insurance | Covered Causes of Loss | Coins. |
|---|---|---|---|---|---|
| | | | | | |

### Other Provisions

Construction: _____    Year Built: _____    No. of Stories: _____
☐ Agreed Value: _____    Expires: _____    ☐ Replacement Cost
☐ Business Income Indemnity: Monthly Limit: _____    Maximum Period: _____    Extended Period: _____
☐ Reporting   ☐ Inflation Guard: _____ %
Deductible: _____    Earthquake Deductible: _____ %    Exceptions: _____

| Item 5. | Forms and Endorsements: |
|---|---|
| Form(s) and Endorsement(s) made a part of this policy at time of issue: | |
| | **See Schedule of Forms and Endorsements** |

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER WITH
THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENT(S), IF ANY, COMPLETE
THE ABOVE-NUMBERED POLICY



## SCHEDULE OF MORTGAGE HOLDER(S)

Policy No. ___CPS3064779_____

Effective Date _____07/13/2018_____
12:01 A.M. Standard Time

Named Insured M&M SISTERS LLC; BERTHA MENENDEZ____

Agent No. _____09020_____

| Prem. No. | Bldg. No. | Mortgage Holder Name and Mailing Address |
|---|---|---|
| 1 | 1 | MERCANTIL COMMERCEBANK N.A. ISAOA<br>12496 NW 25 STREET, MIAMI, FL 33182 |

CPS-SP-5L (6-92)                                        HOME OFFICE

**COMMERCIAL PROPERTY**
**CP 00 10 10 12**

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

**(a)** Machinery; and

**(b)** Equipment;

**(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

**(a)** Fire-extinguishing equipment;

**(b)** Outdoor furniture;

**(c)** Floor coverings; and

**(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

**(a)** Additions under construction, alterations and repairs to the building or structure;

**(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

© Insurance Services Office, Inc., 2011

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

© Insurance Services Office, Inc., 2011

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

© Insurance Services Office, Inc., 2011

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |
| ($10,000 is 20% of $50,000.) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4).** Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

© Insurance Services Office, Inc., 2011

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

© Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

**(2)** If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the business personal property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | |
|---|---:|
| Deductible: | $ 250 |
| Limit of Insurance – Building 1: | $ 60,000 |
| Limit of Insurance – Building 2: | $ 80,000 |
| Loss to Building 1: | $ 60,100 |
| Loss to Building 2: | $ 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

| | |
|---:|---|
| $ 60,100 | |
| – 250 | |
| $ 59,850 | Loss Payable – Building 1 |

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---:|
| Loss to Building 1: | $ 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $ 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $ 60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $ 80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

© Insurance Services Office, Inc., 2011

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

## F. Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $      250 |
| | The amount of loss is: | $   40,000 |

Step **(1)**: $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2)**: $100,000 ÷ $200,000 = .50

Step **(3)**: $40,000 x .50 = $20,000

Step **(4)**: $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $      250 |
| | The amount of loss is: | $   40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When:   The value of the property is:

| | |
|---|---:|
| Building at Location 1: | $ 75,000 |
| Building at Location 2: | $ 100,000 |
| Personal Property at Location 2: | $ 75,000 |
| | $ 250,000 |

The Coinsurance percentage for it is:   **90%**

| | |
|---|---:|
| The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $ 180,000 |
| The Deductible is: | $ 1,000 |

The amount of loss is:

| | |
|---|---:|
| Building at Location 2: | $ 30,000 |
| Personal Property at Location 2: | $ 20,000 |
| | $ 50,000 |

**Step (1):** $250,000 x 90% = $225,000
(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

**Step (2):** $180,000 ÷ $225,000 = .80

**Step (3):** $50,000 x .80 = $40,000

**Step (4):** $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

   **a.** The term mortgageholder includes trustee.

   **b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

   **c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

   **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

     **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

     **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

     **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

   All of the terms of this Coverage Part will then apply directly to the mortgageholder.

   **e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

     **(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

     **(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

   At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

   **f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

     **(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

     **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

   **g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

   **a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| | | |
|---|---|---|
| If: | The applicable Limit of Insurance is: | $ 100,000 |
| | The annual percentage increase is: | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| | The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $    3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1), (2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

COMMERCIAL PROPERTY
CP 00 30 10 12

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

 © Insurance Services Office, Inc., 2011

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

 © Insurance Services Office, Inc., 2011

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

    **(a)** Used in the construction, alterations or additions; or

    **(b)** Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

    **(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

    **(b)** Ends on the earlier of:

        **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

        **(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

    **(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

    **(b)** Ends on the earlier of:

        **(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

        **(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

**B. Limits Of Insurance**

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

**C. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

**a.** The amount of Business Income loss will be determined based on:

   **(1)** The Net Income of the business before the direct physical loss or damage occurred;

   **(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

   **(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

   **(4)** Other relevant sources of information, including:

      **(a)** Your financial records and accounting procedures;

      **(b)** Bills, invoices and other vouchers; and

      **(c)** Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

   **(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

      **(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

      **(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

   **(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c. Resumption Of Operations**

We will reduce the amount of your:

   **(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

   **(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**a.** We have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

**D. Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**1.** The Coinsurance percentage shown for Business Income in the Declarations; times

**2.** The sum of:

**a.** The Net Income (Net Profit or Loss before income taxes), and

**b.** Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

© Insurance Services Office, Inc., 2011

Instead, we will determine the most we will pay using the following steps:

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1);** and

Step **(3):** Multiply the total amount of loss by the figure determined in Step **(2).**

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

   **(1)** Prepaid freight – outgoing;

   **(2)** Returns and allowances;

   **(3)** Discounts;

   **(4)** Bad debts;

   **(5)** Collection expenses;

   **(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

   **(7)** Cost of merchandise sold (including transportation charges);

   **(8)** Cost of other supplies consumed (including transportation charges);

   **(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

   **(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

   **(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

   **(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

When:   The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been:          $ 400,000

The Coinsurance percentage is:          50%

The Limit of Insurance is:          $ 150,000

The amount of loss is:          $  80,000

Step **(1):** $400,000 x 50% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $150,000 ÷ $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

When:   The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been:          $ 400,000

The Coinsurance percentage is:          50%

The Limit of Insurance is:          $ 200,000

The amount of loss is:          $  80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

   If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

   **1. Maximum Period Of Indemnity**

      **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

   **(1)** The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

   **(2)** The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

  **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

  **b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

   **(1)** The Limit of Insurance, multiplied by

   **(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example**

| When: | The Limit of Insurance is: | $ 120,000 |
|---|---|---|
| | The fraction shown in the Declarations for this Optional Coverage is: | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | $ 30,000 |
| | ($120,000 x 1/4 = $30,000) | |
| | If, in this example, the actual amount of loss is: | |
| | Days 1–30: | $ 40,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 90,000 |
| | We will pay: | |
| | Days 1–30: | $ 30,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

  **a.** To activate this Optional Coverage:

   **(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

    **(a)** During the 12 months prior to the date of the Work Sheet; and

    **(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

   **(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

    **(a)** The Coinsurance percentage shown in the Declarations; multiplied by

    **(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

  **b.** The Additional Condition, Coinsurance, is suspended until:

   **(1)** 12 months after the effective date of this Optional Coverage; or

   **(2)** The expiration date of this policy;

  whichever occurs first.

  **c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

   **(1)** Within 12 months of the effective date of this Optional Coverage; or

   **(2)** When you request a change in your Business Income Limit of Insurance.

  **d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

   **(1)** The Business Income Limit of Insurance; divided by

   **(2)** The Agreed Value.

**Example**

| When: | The Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The Agreed Value is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

Step **(1):** $100,000 ÷ $200,000 = .50

Step **(2):** .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c., Extended Business Income,** the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

## F. Definitions

**1.** "Finished stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

**2.** "Operations" means:

**a.** Your business activities occurring at the described premises; and

**b.** The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

**3.** "Period of restoration" means the period of time that:

**a.** Begins:

**(1)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

**(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down, of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**4.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** "Rental Value" means Business Income that consists of:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that premises, including:

**(1)** Payroll; and

**(2)** The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

**6.** "Suspension" means:

**a.** The slowdown or cessation of your business activities; or

**b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

© Insurance Services Office, Inc., 2011

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

**1.** We cover loss or damage commencing:

   **a.** During the policy period shown in the Declarations; and

   **b.** Within the coverage territory.

**2.** The coverage territory is:

   **a.** The United States of America (including its territories and possessions);

   **b.** Puerto Rico; and

   **c.** Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

**1.** Prior to a loss to your Covered Property or Covered Income.

**2.** After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   **a.** Someone insured by this insurance;

   **b.** A business firm:

      **(1)** Owned or controlled by you; or

      **(2)** That owns or controls you; or

   **c.** Your tenant.

This will not restrict your insurance.

COMMERCIAL PROPERTY
CP 01 40 07 06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

   **1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

   **2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

COMMERCIAL PROPERTY
CP 10 30 09 17

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### a. Ordinance Or Law

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

### b. Earth Movement

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a), (5)(b)** and **(5)(c),** all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused.

© Insurance Services Office, Inc., 2016

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1), (3)** or **(4),** or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

© Insurance Services Office, Inc., 2016

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

© Insurance Services Office, Inc., 2016

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

   **(a)** Damage or destruction of "finished stock"; or

   **(b)** The time required to reproduce "finished stock".

   This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

   **(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

   **(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

   **(a)** Your cancelling the lease;

   **(b)** The suspension, lapse or cancellation of any license; or

   **(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

   **(a)** Paragraph **B.1.a.** Ordinance Or Law;

   **(b)** Paragraph **B.1.c.** Governmental Action;

   **(c)** Paragraph **B.1.d.** Nuclear Hazard;

   **(d)** Paragraph **B.1.e.** Utility Services; and

   **(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

   **(a) Contractual Liability**

   We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

   **(i)** Your assumption of liability was executed prior to the accident; and

   **(ii)** The building is Covered Property under this Coverage Form.

   **(b) Nuclear Hazard**

   We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

## C. Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   **a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   **b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   **c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

   **(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

   **(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

   However, this limitation does not apply to:

   **(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

   **(2)** Business Income Coverage or Extra Expense Coverage.

**e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

   **(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

   **(2)** Changes in or extremes of temperature;

   **(3)** Disease;

   **(4)** Frost or hail; or

   **(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**a.** Animals, and then only if they are killed or their destruction is made necessary.

**b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

   **(1)** Glass; or

   **(2)** Containers of property held for sale.

**c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

   However, this limitation does not apply:

   **(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

**(2)** To Business Income Coverage or to Extra Expense Coverage.

**3.** The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

   **a.** $2,500 for furs, fur garments and garments trimmed with fur.

   **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   **c.** $2,500 for patterns, dies, molds and forms.

   **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

   **a.** Results in discharge of any substance from an automatic fire protection system; or

   **b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

   **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

   **(1)** A cause of loss listed in **2.a.** or **2.b.;**

   **(2)** One or more of the "specified causes of loss";

   **(3)** Breakage of building glass;

   **(4)** Weight of people or personal property; or

   **(5)** Weight of rain that collects on a roof.

**3.** This **Additional Coverage – Collapse** does **not** apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**4.** With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

   **b.** Awnings, gutters and downspouts;

   **c.** Yard fixtures;

   **d.** Outdoor swimming pools;

   **e.** Fences;

   **f.** Piers, wharves and docks;

   **g.** Beach or diving platforms or appurtenances;

   **h.** Retaining walls; and

   **i.** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

   **(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

   **(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

   **a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

   **b.** The personal property which collapses is inside a building; and

   **c.** The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

   **1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

      **a.** A "specified cause of loss" other than fire or lightning; or

      **b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

   This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

   **2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

      **a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

      **b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

      **c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

   **3.** The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

© Insurance Services Office, Inc., 2016

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

**a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

## F. Additional Coverage Extensions

**1. Property In Transit**

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

© Insurance Services Office, Inc., 2016

**3. Glass**

  **a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

  **b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

  This Coverage Extension **F.3.** does not increase the Limit of Insurance.

**G. Definitions**

  **1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

  **2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

  **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

  **(1)** The cost of filling sinkholes; or

  **(2)** Sinking or collapse of land into man-made underground cavities.

  **b.** Falling objects does not include loss or damage to:

  **(1)** Personal property in the open; or

  **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

  **c.** Water damage means:

  **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

  **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe caused by wear and tear, when the pipe is located off the described premises and is connected to or is part of a potable water supply system or sanitary sewer system operated by a public or private utility service provider pursuant to authority granted by the state or governmental subdivision where the described premises are located.

  But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

  To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TOTAL OR CONSTRUCTIVE LOSS CLAUSE

It is understood and agreed that in the event of a total loss or constructive total loss under the policy, the entire policy premium shall be earned in full and no return premium shall be due the named insured.

_____     /     _____
AUTHORIZED REPRESENTATIVE                         DATE

FS-18 (11-86)                      HOME OFFICE

 **SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WIND OR HAIL DEDUCTIBLE

This endorsement modifies insurance provided under the following:

**BUILDERS RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM**

**Schedule**

| Deductible |
|---|
| Flat Dollar $_____ or<br>Percentage ___3___ %, subject to $ _____2,500_____ minimum deductible |
| Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. |

With respect to loss or damage caused by or resulting from wind or hail, Item **D. Deductible** is deleted in its entirety and is replaced by the following:

**D.  Deductible**

1.  In any one occurrence of loss or damage to covered property by wind or hail (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

2.  The Wind or Hail Deductible is calculated separately for, and applies separately to:

    **a.**  Each building that sustains loss or damage.

    **b.**  Personal property at each building, if there is loss or damage to that personal property, subject to **3.b.** below.

    **c.**  Personal property in the open.

    **d.**  Each separately scheduled item not described in items **a.-c.**

3.  When a Flat Dollar deductible is shown, the following provisions apply in addition to paragraphs **1.** and **2.:**

    **a.**  We will pay only that part of your loss over the deductible amount.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007

    **b.**  If there is damage to both a building and personal property in that building, one deductible will apply to the building and to the personal property in that building.

**4.**  When a Percentage deductible is shown, the following provisions apply in addition to paragraphs **1.** and **2.:**

    **a.**  We will calculate the deductible as follows:

      In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the percentage (as shown in the Schedule) of the Limit(s) of Insurance of covered property that has sustained loss or damage, subject to any minimum Deductible shown in the Schedule.

    **b.**  If there is damage to both a building and personal property in that building, separate deductibles apply to the building and to the personal property in that building.

_____ / _____

               AUTHORIZED REPRESENTATIVE                       DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2007



SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES—FLORIDA

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following provision applies when a Coinsurance percentage is shown in the Declarations:

Florida law states as follows:

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the Insured.

**C.** The following is added:

If windstorm is a Covered Cause of Loss and loss or damage to Covered Property is caused by or results from windstorm, the following exclusion applies in:

**1.** Broward County;

**2.** Dade County;

**3.** Martin County;

**4.** Monroe County;

**5.** Palm Beach County; and

**6.** All the areas east of the west bank of the Intra-Coastal Waterway in the Counties of:

**a.** Indian River; and

**b.** St. Lucie.

**WINDSTORM EXTERIOR PAINT AND WATER-PROOFING EXCLUSION**

We will not pay for loss or damage caused by windstorm to:

**1.** Paint; or

**2.** Waterproofing material;

applied to the exterior of Buildings unless the Building to which such loss or damage occurs also sustains other loss or damage by windstorm in the course of the same storm event. But such coverage applies only if windstorm is a Covered Cause of Loss.

When loss or damage to exterior paint or waterproofing material is excluded, we will not include the value of paint or waterproofing material to determine:

**a.** The amount of the Windstorm or Hail Deductible; or

**b.** The value of Covered Property when applying the Coinsurance Condition.

**D.** Sinkhole Collapse Coverage Removed

Sinkhole Collapse coverage is removed as indicated in Paragraphs **D.1.** through **D.4. ;** and coverage for Catastrophic Ground Cover Collapse is added instead as set forth in Paragraph **E.**

**1.** In the Causes of Loss—Basic Form and in the Standard Property Policy, Sinkhole Collapse is deleted from the Covered Causes of Loss and sinkhole collapse is no longer an exception to the Earth Movement exclusion.

**2.** In the Causes of Loss—Broad Form, Sinkhole Collapse is deleted from the Covered Causes of Loss and from the Additional Coverage—Collapse; and sinkhole collapse is no longer an exception to the Earth Movement exclusion.

**3.** In the Causes of Loss—Special Form, sinkhole collapse is deleted from the "specified causes of

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2008

loss" and is no longer an exception to the Earth Movement exclusion.

4. In the Mortgageholders Errors And Omissions Coverage Form, sinkhole collapse is deleted from the Covered Causes of Loss under Coverage B and from the "specified causes of loss, and is no longer an exception to the Earth Movement exclusion.

Further, this Coverage Part does not insure against Sinkhole Loss as defined in Florida law unless an endorsement for Sinkhole Loss is made part of this policy. However, if Sinkhole Loss causes Catastrophic Ground Cover Collapse, coverage is provided for the resulting Catastrophic Ground Cover Collapse even if an endorsement for Sinkhole Loss is not made part of this policy.

E. The following is added to this Coverage Part as a Covered Cause Of Loss. In the Causes Of Loss—Special Form and Mortgageholders Errors And Omissions Coverage Form, the following is also added as a "specified cause of loss." However, as a "specified cause of loss, the following does not apply to the Additional Coverage—Collapse.

**CATASTROPHIC GROUND COVER COLLAPSE**

We will pay for direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

1. The abrupt collapse of the ground cover;

2. A depression in the ground cover clearly visible to the naked eye;

3. Structural damage to the building, including the foundation; and

4. The insured structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, structural damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

The Earth Movement exclusion and the Collapse exclusion do not apply to coverage for Catastrophic Ground Cover Collapse.

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earthquake (if either or both of those causes of loss are covered under this Coverage Part), only one Limit of Insurance will apply to such loss or damage.

F. The following applies to the **Additional Coverage— Civil Authority** under the Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form and Extra Expense Coverage Form:

1. The Additional Coverage—Civil Authority includes a requirement that the described premises are not more than one mile from the damaged property. With respect to described premises located in Florida, such one-mile radius does not apply.

2. The Additional Coverage—Civil Authority is limited to a coverage period of up to four weeks. With respect to described premises located in Florida, such four week period is replaced by a three-week period.

3. Civil Authority coverage is subject to all other provisions of that Additional Coverage.

G. In the event where more than one peril causes damage to covered property and the damage cannot be separated by the cause(s) of loss, we will:

Deduct the amount paid by the other carriers from the amount payable under our policy subject to the policy terms and conditions if a cause of the loss is covered under our policy;

If the cause of loss under our policy is also covered under another policy payment will be prorated among all companies providing coverage for the covered cause(s) of loss; and,

In no event can payments made by all carriers total more than the full replacement cost of the insured building. Payment will be subject to the policy terms and conditions of the policy of the covered property regardless of the number of covered perils or policies covering the property, even if the insured property is totally destroyed by combined perils.

---

AUTHORIZED REPRESENTATIVE                           DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2008

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SEWER OR DRAIN DEFINITION ENDORSEMENT - FLORIDA

This insurance modifies insurance provided under the following:

**CAUSES OF LOSS - BASIC FORM**
**CAUSES OF LOSS - BROAD FORM**
**CAUSES OF LOSS - SPECIAL FORM**

Under Section **B. Exclusions,** paragraph **g. Water,** subsection **(3)** the following is added:

For the purpose of this exclusion, "sewer" and "drain" are defined as:

1.  "Sewer" means any underground pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations;

2.  "Drain" means any pipe, channel or conduit for carrying water, wastewater or sewage on or away from the premises described in the Declarations to a "sewer."

_____    /    _____
AUTHORIZED REPRESENTATIVE                        DATE

CFS-103-FL (1-16)

Page 1 of 1
HOME OFFICE

POLICY NUMBER: CPS3064779

IL 04 01 02 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA - SINKHOLE LOSS COVERAGE

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

**SCHEDULE**

| Premises Number | Building Number |
|:---:|:---:|
| 1 | 1 |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

With respect to the location(s) indicated in the Schedule, the following provisions apply:

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** When this endorsement is attached to the Farm Livestock Coverage Form, reference to loss (other than in the term Sinkhole Loss itself) means "loss" as defined in that coverage form.

**C.** The following is added to this Coverage Part as a Covered Cause of Loss. In the forms which address "specified causes of loss", the following is also added as a "specified cause of loss". However, as a "specified cause of loss", the following does not apply to the Additional Coverage - Collapse.

**Sinkhole Loss,** meaning loss or damage to Covered Property when "structural damage" to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the building (including land stabilization) and repair to the foundation, provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to you. The professional engineer must be selected or approved by us. However, until you enter into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from us:

**1.** We will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the building; and

**2.** Our payment for Sinkhole Loss to Covered Property may be limited to the actual cash value of the loss to such property.

Copyright, Insurance Services Office, Inc., 2012
HOME OFFICE

You must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after we notify you that there is coverage for your Sinkhole Loss. After you have entered into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to your entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, we must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and we have begun making payments for the work performed, we must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most we will pay for the total of all Sinkhole Loss, including building and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected building.

The stabilization and all other repairs to the Covered Property must be completed within 12 months after entering into the contract for the performance of these repairs, unless:

1. There is a mutual agreement between you and us;

2. The claim is involved with the neutral evaluation process;

3. The claim is in litigation; or

4. The claim is under appraisal or mediation.

D. Sinkhole Loss does not include:

1. Sinking or collapse of land into man-made underground cavities; or

2. Earthquake.

E. With respect to coverage provided by this endorsement, the **Earth Movement** Exclusion and the **Collapse** Exclusion do not apply.

F. With respect to a claim for alleged Sinkhole Loss, the following provision is added:

Following receipt by us of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if we deny your claim, we will notify you of your right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential or farm residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.

You or we may file a request with the Department for neutral evaluation; the other party must comply with such request. We will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on you or us.

Participation in the neutral evaluation program does not change your right to file suit against us in accordance with the Legal Action Against Us Condition in this policy, except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

G. Coverage for Sinkhole Loss under this endorsement does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere in this Coverage Part) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

Copyright, Insurance Services Office, Inc., 2012

**H.** The following provision is added to the **Duties In The Event Of Loss Or Damage** Loss Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to us in accordance with the terms of this policy within two years after you knew or reasonably should have known about the Sinkhole Loss.

**I.** The following definitions are added with respect to the coverage provided under this endorsement:

**1.** "Structural damage" means a covered building, regardless of the date of its construction, has experienced the following:

**a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

**b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" and that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

**c.** Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

**d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

**e.** Damage occurrring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

**2.** "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**3.** "Primary structural system" means an assemblage of "primary structural members".

**J.** If we deny your claim for Sinkhole Loss without performing testing under section 627.702, Florida Statutes, you may demand testing by communicating such demand to us in writing within 60 days after you receive our denial of the claim. You are responsible for 50% of the testing costs, or $2,500, whichever is less. If our professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, we will reimburse you for the testing costs.

**K.** You may not accept a rebate from any person performing repairs for Sinkhole Loss covered under this endorsement. If you receive a rebate, coverage under this endorsement is void and you must refund the amount of the rebate to us.

**L.** If we deny your claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627.7073, that there is no sinkhole loss or that the cause of the damage was not sinkhole activity, and if the sinkhole claim was submitted without good faith grounds for submitting such claim, you shall reimburse us for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. You are not required to pay such reimbursement unless you requested the analysis and services and we, before ordering the analysis, informed you in writing of the potential for reimbursement and gave you the opportunity to withdraw the claim.

**M.** As a precondition to accepting payment for sinkhole loss, you must file with the county clerk of court, a copy of any sinkhole report regarding your property which was prepared on behalf or at your request. You will bear the cost of filing and recording the sinkhole report.

Copyright, Insurance Services Office, Inc., 2012

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS3064779 | 07/13/2018 | M&M SISTERS LLC; BERTHA MENENDEZ | 09020 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CANCELLATION AND NONRENEWAL - FLORIDA

The Cancellation Condition is deleted in its entirety and replaced by the following:

A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. If this policy has been in effect for ninety (90) days or less and is not a renewal of a policy we issued, we may cancel by mailing or delivering written notice of cancellation, including the specific reasons for cancellation, to the first Named Insured at least:

   a. Ten (10) days before the effective date of cancellation, if we cancel for nonpayment of any premium when due; or

   b. Twenty (20) days before the effective date of cancellation, if we cancel for any other reason, except, we may cancel immediately if there has been:

      (1) A material misstatement or misrepresentation; or

      (2) A failure to comply with underwriting requirements established by us.

3. If this policy has been in effect for more than ninety (90) days or is a renewal or continuation of a policy we issued, we may cancel by mailing or deliver-ing written notice of cancellation, including the specific reasons for cancellation, to the first Named Insured at least:

   a. Ten (10) days before the effective date of cancellation, if we cancel for nonpayment of any premium when due; or

   b. Forty-five (45) days before the effective date of cancellation, if we cancel for any other reason.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

5. Notice of cancellation by us will state the effective date of the cancellation. The policy period will end on that date.

6. If we fail to mail or deliver our written notice of cancellation to the first Named Insured at least forty-five (45) days or twenty (20) days as required in A.2.b. and A.3.b. above, the coverage will remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the first Named Insured, whichever occurs first. The premium for the coverage shall remain the same during any such extension period.

7. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first

UTS-29-FL (6-97)

Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

8.  If notice is mailed, proof of mailing will be sufficient proof of notice.

The following Condition is added to the policy and supersedes any other provision to the contrary:

B.  Nonrenewal

  1.  If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, including the specific reasons for nonrenewal, to the first Named Insured at least forty-five (45) days prior to the expiration of the policy.

  2.  If notice is mailed, we will mail it to the last mailing address known to us of the first Named Insured. Proof of mailing will be sufficient proof of notice.

  3.  If we fail to mail or deliver written notice of nonrenewal to the first Named Insured at least forty-five (45) days prior to the effective date of nonrenewal, the coverage will remain in effect until forty-five (45) days after the notice is given or until the effective date of replacement coverage obtained by the first Named Insured, whichever occurs first. The premium for the coverage shall remain the same during any such extension period.

_____  /  _____

AUTHORIZED REPRESENTATIVE                                      DATE



**Scottsdale Insurance Company**
**National Casualty Company**
**Scottsdale Indemnity Company**
**Scottsdale Surplus Lines Insurance Company**

## CLAIM REPORTING INFORMATION

Your insurance policy has been placed with a Nationwide® insurance company.

Our commitment to you is to provide fast, fair claim service. Promptly reporting an event that could lead to a claim, as required by your policy, helps us fulfill this commitment to you. Please refer to your policy for this and all other terms and conditions.

To report a claim, you may contact us 24 hours a day, 7 days a week, by calling 1-800-423-7675 or via our website at www.nationwideexcessandsurplus.com.

Thank you for your business and as always, we appreciate the opportunity to serve you.

| **HOW TO REPORT A CLAIM** |
|---|
| Call **1-800-423-7675** or visit our website at www.nationwideexcessandsurplus.com. |
| In order to expedite this process, please be prepared to furnish as much of the following information as possible: |
| <ul><li>Your policy number</li><li>Date, time and location of the loss/accident</li><li>Details of the loss/accident</li><li>Name, address and phone number of any involved parties</li><li>If applicable, name of law enforcement agency or fire department along with the incident number</li></ul> |
| **Please refer to your policy for specific claim reporting requirements.** |

NOTX0178CW (3-16)

SCOTTSDALE INSURANCE COMPANY®

Scottsdale Indemnity Company

SCOTTSDALE
SURPLUS LINES INSURANCE COMPANY

## POLICYHOLDER DISCLOSURE

### NOTICE OF TERRORISM INSURANCE COVERAGE

**TERRORISM RISK INSURANCE ACT**

Under the Terrorism Risk Insurance Act of 2002, as amended pursuant to the Terrorism Risk Insurance Program Reauthorization Act of 2015, effective January 1, 2015 (the "Act"), you have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act: The term "certified acts of terrorism" means any act that is certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security,  and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that where coverage is provided by this policy for losses resulting from "certified acts of terrorism," such losses may be partially reimbursed by the United States Government under a formula established by federal law. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government agrees to reimburse eighty-five percent (85%) of covered terrorism losses in calendar year 2015 that exceed the statutorily established deductible paid by the insurance company providing the coverage. This percentage of United States Government reimbursement decreases by one percent (1%) every calendar year beginning in 2016 until it equals eighty percent (80%) in 2020. The premium charged for this coverage is provided below and does not include any charges for the portion of loss that may be covered by the Federal Government under the Act.

You should also know that the Act, as amended, contains a $100 billion cap that limits United States Government reimbursement as well as insurers' liability for losses resulting from "certified acts of terrorism" when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

**CONDITIONAL TERRORISM COVERAGE**

The federal Terrorism Risk Insurance Program Reauthorization Act of 2015 is scheduled to terminate at the end of December 31, 2020, unless renewed, extended or otherwise continued by the federal government. Should you select Terrorism Coverage provided under the Act and the Act is terminated December 31, 2020, any terrorism coverage as defined by the Act provided in the policy will also terminate.

**IN ACCORDANCE WITH THE ACT, YOU MUST CHOOSE TO SELECT OR REJECT COVERAGE FOR "CERTIFIED ACTS OF TERRORISM" BELOW:**

**The Note below applies for risks in these states:** California, Connecticut, Georgia, Hawaii, Illinois, Iowa, Maine, Missouri, New Jersey, New York, North Carolina, Oregon, Rhode Island, Virginia, Washington, West Virginia, Wisconsin.

**NOTE:** In these states, a terrorism exclusion makes an exception for (and thereby provides coverage for) fire losses resulting from an act of terrorism. Therefore, if you reject the offer of terrorism coverage, that rejection does not apply to fire losses resulting from an act of terrorism coverage for such fire losses will be provided in your policy.

**If you do not respond to our offer and do not return this notice to the Company, you will have no Terrorism Coverage under this policy.**

|  | I hereby elect to purchase certified terrorism coverage for a premium of $_____ . I understand that the federal Terrorism Risk Insurance Program Reauthorization Act of 2015 may terminate on December 31, 2020. Should that occur my coverage for terrorism as defined by the Act will also terminate. |
|---|---|
| X | I hereby reject the purchase of certified terrorism coverage. |

_____
Policyholder/Applicant's Signature

_____
Print Name

_____
Date

M&M SISTERS LLC; BERTHA MENENDEZ
Named Insured/Firm

CPS3064779
Policy Number, if available



# FLORIDA POLICYHOLDER NOTICE

**SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

NOTS0381FL (7-09)