UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-24081-CIV-MORENO/GOODMAN

M&M SISTERS, LLC, BERTHA MENENDEZ
GARCIA, & MARIA MENDEZ,

       Plaintiffs,

v.

SCOTTSDALE INSURANCE CO.,

       Defendants.

_____/

OMNIBUS REPORT AND RECOMMENDATIONS ON
SCOTTSDALE'S MOTIONS FOR ATTORNEY'S FEES, EXPENSES, AND COSTS

Plaintiffs M&M Sisters, LLC, Bertha Menendez Garcia, and Maria Mendez (collectively, "Plaintiffs" or "M&M") brought this action against their insurer, Scottsdale Insurance Company ("Scottsdale" or "Defendant"), in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida on October 14, 2019. [ECF Nos. 1; 1-2]. Plaintiffs initially sought a declaratory judgment but subsequent amendments to their pleadings sought to allege a breach of contract claim.

On November 19, 2021, Scottsdale removed this action to the United States District Court for the Southern District of Florida based on diversity jurisdiction, 28 U.S.C. § 1332. [ECF No. 1].[1]

On March 28, 2022, Senior United States District Judge Federico A. Moreno dismissed with prejudice Plaintiffs' Third Amended Complaint for failure to state a claim. [ECF No. 18]. Plaintiffs filed a notice of appeal. [ECF No. 19]. The Eleventh Circuit affirmed the with-prejudice dismissal of Plaintiffs' Third Amended Complaint. *See M&M Sisters, LLC v. Scottsdale Ins. Co.*, No. 22-11290, 2022 WL 4231322 (11th Cir. Sept. 14, 2022).

Scottsdale seeks to recover $17,136.50 in attorney's fees incurred at the district court level, $17,478.00 in appellate attorney's fees,[2] $1,072.00 for non-taxable expenses pursuant to Florida's offer of judgment statute (Fla. Stat. § 768.79), and $402.00 in taxable costs pursuant to 28 U.S.C. § 1920. [ECF Nos. 22-24; 32]. Plaintiffs dispute Scottsdale's entitlement to fees and non-taxable costs. [ECF Nos. 25; 37-1 in Case No. 22-11290].

Judge Moreno has referred to the Undersigned for a Report and Recommendations Scottsdale's motions for attorney's fees and costs. [ECF Nos. 29; 35]. For the reasons stated

---

[1]    Although Plaintiffs filed their action in state court on October 14, 2019 (and Defendant was served with process on October 28, 2019), the case did not become removable on the basis of diversity jurisdiction until Plaintiffs provided Defendant with their damages estimate of $2,591,333.16 on October 21, 2021. [ECF No. 1, ¶¶ 1, 5].

[2]    Scottsdale filed its motion for appellate attorney's fees with the Eleventh Circuit. The Eleventh Circuit, on its own motion, transferred to the District Court Scottsdale's pending appellate fees motion. [ECF No. 32].

below, the Undersigned **respectfully recommends** that the District Court **grant in part and deny in part** Scottsdale's motions and award Scottsdale **$25,943.80** in attorney's fees ($13,709.20 for district court fees and $12,234.60 for appellate fees) and **$402.00** in taxable costs.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The Eleventh Circuit succinctly summarized the factual and procedural background of this case as follows:

> M&M purchased a commercial general liability policy from Scottsdale for an apartment building located at "1111 NW 43 Avenue, Miami, FL 33126." The policy covered "'property damage' . . . caused by an 'occurrence,'" which the policy defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Under the policy, M&M would incur "property damage" when it had "[p]hysical injury to tangible property" or suffered a "[l]oss of use of tangible property that is not physically injured."
>
> In May 2019, M&M filed a claim for damage to its building, and Scottsdale assigned an adjuster to investigate. In September 2019, M&M demanded an audio and video recording of the inspection. Scottsdale refused.
>
> In October 2019, M&M filed a complaint in a Florida court for a declaratory judgment. M&M sought an order compelling Scottsdale to record its inspection and declaring that the claim was covered under the insurance policy and that delays in inspecting the property and in determining coverage constituted a constructive denial of coverage. On Scottsdale's motion, the state court stayed the action pending a determination of coverage.
>
> In January 2021, Scottsdale denied M&M's claim. Scottsdale determined that the loss was excluded from coverage after its structural engineer attributed the damage to the building to wear and tear in the roof and windows and to faulty construction, repairs, maintenance, and materials in the drainage system of the roof and on the roof. The adjuster "determined

there was no damage to the roof of the building resulting from wind or any other covered cause of loss, and no damage to the interior of the [building] caused by an opening in the roof . . . caused by wind or any other covered cause of loss."

In May 2021, M&M filed an amended complaint against Scottsdale for breach of contract. M&M alleged that its "Property sustained a sudden, accidental and/or otherwise covered loss under the Policy, resulting in extensive damage to the interior and exterior of the insured risk." M&M also alleged that Scottsdale had "refuse[d] to perform" its duties "to promptly investigate, adjust and issue payment for the Covered Loss," which "includ[ed], but [was] not limited to, the actual cash value of the loss and/or damages."

*** 

In October 2021, M&M estimated its damages at $2,591,333.16. Scottsdale removed the action to the federal court based on diversity of citizenship, *see* 28 U.S.C. §§ 1332, 1446, and it moved to dismiss the [then-operative Second Amended] [C]omplaint.

*M&M Sisters, LLC*, 2022 WL 4231322, at *1.

Ultimately, Judge Moreno dismissed with prejudice Plaintiffs' *Third* Amended Complaint. As discussed above, Plaintiffs appealed Judge Moreno's ruling and lost.

While the case was pending in state court, Scottsdale served on June 21, 2021, three, separate Proposals for Settlement (one proposal per Plaintiff). *See* [ECF No. 24-1]. The Proposals for Settlement to each Plaintiff were identical other than the name of the specifically designated Plaintiff and the specific amount proposed. The Proposals for Settlement stated that they were being made pursuant to Fla. R. Civ. P. 1.442 and Fla. Stat. § 768.79 and were in the following amounts: $334.00 to M&M Sisters, LLC, $333.00 to Bertha Menendez Garcia, and $333.00 to Maria Mendez. *Id.*

4

Each Proposal for Settlement stated, in pertinent part, as follows:

2.      This Proposal is intended to resolve any and all claims against SCOTTSDALE as claimed and set forth in [PLAINTIFF]'s Complaint in this action (Case No. 2019-030409-CA-01), arising out of or relating to alleged property damage.

***

5.      Upon acceptance of this Proposal, [PLAINTIFF] agrees that:

(a) No judgment reflecting the settlement will be entered against SCOTTSDALE;

(b) [PLAINTIFF] will fully execute and return to counsel for SCOTTSDALE the General Release and Settlement Agreement attached to this Proposal; and

(c) [PLAINTIFF] agrees to stipulate to a Final Order of Dismissal with Prejudice of this lawsuit against SCOTTSDALE.

6.      The underlying claims relative to this Proposal do not include a claim for punitive damages and, accordingly, no portion of the proposed settlement amount relates to punitive damages.

7.      The total amount of this Proposal is inclusive of attorneys' fees to the extent such fees are part of a legal claim of this case.

*Id.* at 2-3, 10-11, 18-19.

Each Proposal for Settlement included a General Release Agreement and Settlement Agreement ("General Release"), which included the following, relevant language:

WHEREAS, on or about May 9, 2019, the INSUREDS' public adjuster, American Premier Claim Consultants, Inc., reported to SCOTTSDALE that

a loss occurred at the above-mentioned location on or about May 6, 2019, resulting in claimed real property damage at the above-mentioned location;

WHEREAS, the INSUREDS claimed damages as a result of the above-mentioned loss;

WHEREAS, the INSUREDS made a claim against SCOTTSDALE as a result of the loss;

WHEREAS, SCOTTSDALE assigned Claim No. 01892450 to the INSUREDS' Claim[.]

*** 

NOW, THEREFORE, in consideration of the total sum of [PROFFERRED AMOUNT], (which includes attorneys' fees and costs) receipt and sufficiency of which payment is hereby acknowledged by the undersigned, [PLAINTIFF], hereby fully and forever releases and discharges SCOTTSDALE, its officers, directors, employees, agents, adjusters, attorneys, successors, and assigns, from any and all claims, contractual, extra-contractual, and/or bad faith, arising from the abovementioned loss, whether known or unknown, through the date of this Release, any claim for attorney's fees, costs, interest, and any claim regarding any activity or action(s) of SCOTTSDALE, its officers, directors, employees, agents, adjusters, and attorneys, including claim settlement and handling procedures, libel, slander, any claim pursuant to any assignment of benefits, and any other action, claim, and demand of whatever nature that [PLAINTIFF] has, may have, or might have in the future as a result or consequence of the abovementioned loss.

IN FURTHER CONSIDERATION of the above-mentioned settlement payment, [PLAINTIFF] will voluntarily dismiss with prejudice the case captioned *M&M Sisters, LLC, Bertha Menendez Garcia, and Maria Mendez v. Scottsdale Insurance Company*, Case No. 2019-030409-CA-01, pending in the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, with each party to bear its own costs and attorney's fees.

IN FURTHER CONSIDERATION of the above-mentioned settlement payment, [PLAINTIFF] represents and warrants that it [or she] will preserve, protect, hold harmless, and indemnify SCOTTSDALE, its officers,

6

directors, employees, agents, adjusters, and attorneys from any and all claims asserted against the above-mentioned settlement proceeds and/or the abovementioned insurance policy by any mortgagee, lienholder, or other third party with respect to the above-mentioned loss. This agreement includes payment of any attorney's fees, costs, and defense-related expenses related to any such claim.

*Id.* at 5-7, 13-15, 21-23.

The Proposals for Settlement remained open for 30 days and expired without acceptance. *Id.*

Judge Moreno dismissed with prejudice Plaintiffs' Third Amended Complaint [ECF No. 18] and the Eleventh Circuit affirmed this ruling in *M&M Sisters, LLC*, 2022 WL 4231322.

## II.    ANALYSIS

Scottsdale filed a bill of costs and supporting memorandum of law [ECF Nos. 22-23], a verified motion for attorney's fees and non-taxable costs [ECF No. 24], and a motion for appellate attorney's fees [ECF No. 32]. M&M filed responses in opposition. [ECF Nos. 25; 37-1 in Case No. 22-11290][3] and Scottsdale filed replies [ECF Nos. 26; 34]. The Undersigned will address Scottsdale's request for fees and costs below.

---

[3]    M&M's response to Scottsdale's appellate attorney's fees motion was filed in the Eleventh Circuit as part of a motion for leave to file a late response. [ECF No. 37-1 in Case No. 22-11290]. The Eleventh Circuit Clerk denied as moot M&M's motion for leave on the same day the appellate fees motion was *sua sponte* transferred to the District Court. [ECF No. 39 in Case No. 22-11290]. Out of an abundance of caution, Scottsdale filed a reply (even though M&M had not obtained leave of court to file its late response). [ECF No. 34].

a.      Attorney's Fees

i.      Entitlement to Attorney's Fees[4]

The party seeking attorney's fees bears the burden of establishing entitlement. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also A.C.L.U. of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) ("[F]ee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." (quoting *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)). Where, as here, the Court's jurisdiction is based on diversity of citizenship, state law governs a party's entitlement to attorney's fees. *See Prime Ins. Syndicate, Inc. v. Soil Tech Distributors, Inc.*, 270 F. App'x 962, 963 (11th Cir. 2008) (noting that the Eleventh Circuit has "consistently recognized that in diversity cases a party's right to attorney's fees is determined by reference to state law").

"Florida courts follow the 'American Rule' that attorney's fees may only be awarded pursuant to an entitling statute or agreement among the parties." *Am. Family Mut. Ins. Co. v. Alvis*, 72 So. 3d 314, 317 (Fla. 2d DCA 2011) (citing *Dade Cnty v. Pena*, 664 So. 2d 959, 960 (Fla. 1995)). The Eleventh Circuit "has deemed § 768.79 to be substantive for *Erie* purposes and, therefore, it is applicable to this case." *Tiara Condo. Ass'n, Inc. v.*

---

For the sake of completeness and because Scottsdale substantively addressed the arguments raised in M&M's to-be-filed response, the Undersigned will consider the response in this Report and Recommendations.

[4]      Defendant's entitlement to taxable and non-taxable costs will separately be addressed.

*Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1357 (S.D. Fla. 2010) (citing *McMahan v. Toto*, 311

F.3d 1077 (11th Cir. 2002)); *Steffen v. Akerman Senterfitt*, No. 804CV1693T24MSS, 2007 WL

9723389, at *4 (M.D. Fla. Mar. 20, 2007) ("Florida Statute § 768.79 is substantive in nature

for *Erie* purposes and applies in diversity cases in federal court in Florida.").

> Section 768.79 states, in pertinent part, that:

> In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred . . . from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer. . . .

Fla. Stat. § 768.79(1).

> Section 768.79(2) further requires that the offer:

> (a) Be in writing and state that it is being made pursuant to this section.

> (b) Name the party making it and the party to whom it is being made.

> (c) State with particularity the amount offered to settle a claim for punitive damages, if any.

> (d) State its total amount.

> The offer shall be construed as including all damages which may be awarded in a final judgment.

Fla. Stat. § 768.79(2).

> "Rule 1.442 dictates the service, form, and content of a settlement proposal made

pursuant to section 768.79." *Endurance Am. Specialty Ins. Co. v. Liberty Mut. Ins. Co.*, No.

8:17-CV-2832-T-33CPT, 2020 WL 9597125, at *3 (M.D. Fla. June 4, 2020), report and

recommendation adopted sub nom. *Endurance Am. Specialty Ins. Co. v. Safeco Ins. Co. of Illinois*, No. 8:17-CV-2832-T-33CPT, 2020 WL 9597127 (M.D. Fla. Aug. 6, 2020). It requires that an offer of judgment be in writing, identify the Florida law under which it is being made and:

> (A) name the party or parties making the proposal and the party or parties to whom the proposal is being made;
>
> (B) state that the proposal resolves all damages that would otherwise be awarded in a final judgment in the action in which the proposal is served, subject to subdivision (F);
>
> (C) state with particularity any relevant conditions;
>
> (D) state the total amount of the proposal and state with particularity all nonmonetary terms of the proposal;
>
> (E) state with particularity the amount proposed to settle a claim for punitive damages, if any;
>
> (F) state whether the proposal includes attorneys' fees and whether attorneys' fee are part of the legal claim; and
>
> (G) include a certificate of service in the form required by Florida Rule of General Practice and Judicial Administration 2.516.[5]

Fla. R. Civ. P. 1.442(c)(2) (effective January 1, 2019)[6] (footnote added).

---

[5]    The Eleventh Circuit in *Horowitch v. Diamond Aircraft Indus., Inc.* held that subsection (c)(2)(G)'s certificate of service requirement is procedural under *Erie* and is inapplicable in federal court because it conflicts with Federal Rule of Civil Procedure 5(d)(1). 645 F.3d 1254, 1258-59 (11th Cir. 2011).

[6]    Rule 1.442 was amended in 2022. *In re Amends. to Fla. Rules of Civ. Proc.*, 344 So. 3d 940 (Fla. 2021). The amendment to Rule 1.442 will be discussed below.

Here, Scottsdale served Proposals for Settlement on each Plaintiff [ECF No.24-1], which Plaintiffs did not accept. Thereafter, Judge Moreno dismissed with prejudice Plaintiffs' Third Amended Complaint [ECF No. 18] and the Eleventh Circuit affirmed this ruling in *M&M Sisters, LLC*, 2022 WL 4231322. Thus, Plaintiffs recovered nothing from Defendant in this matter.

Plaintiffs challenged Scottsdale's entitlement to fees on different grounds at the district court level and at the appellate court level. In the District Court, Plaintiffs argued that the Proposals for Settlement were unenforceable because they were ambiguous and not made in good faith. [ECF No. 25, pp. 6-7, 14-17]. Plaintiffs also argued that Defendant failed to comply with Local Rule 7.3. *Id.* at 13-14. At the appellate level, Plaintiffs argued that the Proposals for Settlement "were impermissibly conditioned on nonmonetary terms of settlement and were thus invalid." [ECF No. 37-2 in Case No. 22-11290, p. 4]. The Undersigned will address Plaintiffs' arguments in turn.

### 1.    Compliance with Local Rule 7.3

At the outset, the Undersigned will address Plaintiffs' argument that Defendant failed to comply with the Local Rules. Per Plaintiffs, Scottsdale's fees motion failed to comply with Local Rule 7.3 because it purportedly:

> (a) fail[ed] to disclose the terms of any applicable fee agreement, to wit, the Defendant has failed to provide a copy of any retainer agreement or fee contract entered into between defense counsel's firm and Scottsdale Insurance Company; (b) the Defendant's motion fail[ed] to provide the identity, experience and qualifications for each time keeper, to wit, the Defendant's motion provides no level of specificity in this regard, and

11

provides no curriculum vitae for the timekeepers; (c) the Defendant's motion fail[ed] to provide any itemized timesheets delineating the tasks performed, time expended and hourly rates sought for the time expended as required by the local rule; (d) the Defendant's motion fail[ed] to provide invoices for the incurred and claimed expenses taxable under 28 U.S.C. § 1920.

[ECF No. 25, p. 14].

Plaintiff's non-compliance arguments lack merit. Scottsdale's verified fees motion states that "an hourly rate of $180.00 was charged to Scottsdale for the work performed by both attorney Robert L. Rogers, Esq. and attorney Andrew Rock, Esq." and that its "fee agreement with The Rock Law Group, P.A. required Scottsdale to pay these hourly rates for the services performed by its attorneys." [ECF No. 24, p. 8]. There is no requirement in the Local Rules that a copy of the actual agreement be provided, although sometimes the Court will direct a party to file it. *See, e.g., Asbun v. Resende*, No. 15-CV-61370, 2016 WL 4272372, at *2 (S.D. Fla. Aug. 4, 2016) (directing party to file the fee agreement but noting that "Local Rule 7.3 does not explicitly require that a fee agreement be filed with a motion for attorney's fees; rather the Rule requires a party seeking attorney's fees to disclose the terms of any applicable fee agreement, 'regardless of whether the party attaches a copy of the agreement to its motion'" (quoting *Morris v. Arizona Beverage Co., LLC*, No. 03-60807-CIV, 2005 WL 5544961, at *9 (S.D. Fla. Feb. 9, 2005)).

Defendant attached to its fees motion law firm bios for Mr. Rogers and Mr. Rock from The Rock Law Group, P.A.'s website. [ECF No. 24-3].[7] The firm bios disclose the attorneys' positions in the firm, the dates of admission to the Florida bar, their educational background, and professional memberships. *Id.* Additionally, in Mr. Rogers' case, the verified motion states that "he has practiced entirely in first-party property insurance litigation or other types of business litigation." [ECF No. 24, p. 9].

In *Shor v. Storm Tight Windows, Inc.*, this Court determined that the moving party's disclosure that the attorney timekeeper had "over ten years' experience practicing in the applicable field" was sufficient and "such formalities as a CV or resume are not required, even if including such documents is advised." No. 19-62784-CIV, 2021 WL 6427481, at *1 (S.D. Fla. Dec. 21, 2021), report and recommendation adopted, No. 19-62784-CIV, 2022 WL 110725 (S.D. Fla. Jan. 12, 2022).

Scottsdale attached billing invoices to its motion. [ECF No. 24-2]. The billing invoices are sufficiently detailed in that they disclose the attorney timekeeper, the date each task was performed, provide a description of the work performed, and state the number of hours expended. *Id.* Thus, Plaintiffs' argument that Defendant failed to provide itemized timesheets is not supported by the record.

---

[7]     Scottsdale attached CVs for Mr. Rogers and Mr. Rock as "Exhibit 1" to its reply brief. [ECF No. 26-1]. Because these CVs were not part of Scottsdale's initial fees motion and because, as discussed below, the attorney hourly rate in this case is more than reasonable, the Undersigned will not rely on the CVs in addressing Scottsdale's requested fees.

Lastly, Plaintiffs contend that "Defendant's motion fail[ed] to provide invoices for the incurred and claimed expenses taxable under 28 U.S.C. § 1920." [ECF No. 25, p. 14]. Local Rule 7.3(a)(6) requires that a fees motion "describe and document with invoices all incurred and claimed fees and expenses **not taxable** under 28 U.S.C. § 1920." S.D. Fla. L.R. 7.3(a)(6) (emphasis added). Scottsdale's request for non-taxable costs is supported by invoices attached to its motion. *See* [ECF No. 24-4]. Scottsdale also filed a separate bill of costs and supporting memorandum, which includes an email from the Court confirming payment of the removal fee (the only taxable cost listed by Scottsdale). [ECF Nos. 22-23]. Thus, Scottsdale has supported its request for taxable and nontaxable costs with documentation.

In sum, Plaintiffs' argument that Defendant has failed to comply with the Local Rules lacks merit.

## 2. Purported Ambiguity

Plaintiffs also argue that the Proposals for Settlement are ambiguous as to which claims they intend to resolve. [ECF No. 25, p. 10]. Plaintiffs highlight the following language from the proposals:

> 2.    This Proposal is intended to resolve any and all claims against SCOTTSDALE as claimed and set forth in [PLAINTIFF]'s Complaint in this action (Case No. 2019-030409-CA-01), arising out of or relating to alleged property damage.

***

14

6.     The underlying claims relative to this Proposal do not include a claim for punitive damages and, accordingly, no portion of the proposed settlement amount relates to punitive damages.

*Id.* at 8-9.

They further note that each Proposal for Settlement was conditioned upon the execution and return of the accompanying General Release. Plaintiffs note that the General Release contained the following language:

> NOW, THEREFORE, in consideration of the total sum of [PROFFERRED AMOUNT], (which includes attorneys' fees and costs) receipt and sufficiency of which payment is hereby acknowledged by the undersigned, [PLAINTIFF], hereby fully and forever releases and discharges SCOTTSDALE, its officers, directors, employees, agents, adjusters, attorneys, successors, and assigns, **from any and all claims, contractual, extra-contractual, and/or bad faith, arising from the above-mentioned loss, whether known or unknown, through the date of this Release, any claim for attorney's fees, costs, interest, and any claim regarding any activity or action(s) of SCOTTSDALE, its officers, directors, employees, agents, adjusters, and attorneys, including claim settlement and handling procedures, libel, slander, any claim pursuant to any assignment of benefits, and any other action, claim, and demand of whatever nature that [PLAINTIFF] has, may have, or might have in the future as a result or consequence of the above-mentioned loss**.

*Id.* at 9 (emphasis in Response).

Plaintiffs note that, at the time the Proposals for Settlement were served, any "potential claim for bad faith/extra-contractual damages had not yet vested and could not have been asserted in the subject action." *Id.* at 10.

Plaintiffs thus argue that each Proposal for Settlement and their corresponding General Release are "contradictory" because

> **Defendant's proposal was served in an attempt to resolve all claims that Plaintiffs ha[d] asserted or could have asserted against Defendant in the above captioned action. Yet simultaneously, acceptance of the proposal was conditioned upon the execution of a general release which stated in pertinent part [that it] release[d] and forever discharge[d] Defendant from any and all state, local, and federal claims, causes of action, demands, damages, liabilities, claims for attorney fees and cost, suits and judgments of every type and description**. The proposal clearly runs in direct contradiction to the release upon which it is conditioned.

*Id.* (emphasis added).

> Plaintiffs state that:

> Defendant's Proposal for Settlement suffered latent ambiguity when it failed to clearly specify which of . . . Plaintiff's claims were to be extinguished and stated that it had no effect on a punitive claim and that there were no other conditions, while failing to mention a potential [b]ad [f]aith claim even though . . . Defendant clearly knew that Plaintiff planned to bring a [b]ad [f]aith action since Plaintiff had filed a Civil Remedy Notice (CRN).

*Id.* at 11. Per Plaintiffs, "reasonable minds could very easily differ as to whether the Defendant's Proposals for Settlement were intended to extinguish any potential bad faith claim, so as to render the proposals unenforceable." *Id.* at 13.

As expected, Scottsdale maintains that its Proposals for Settlement ("PFS" or "PFSes") are enforceable pursuant to Fla. Stat. § 768.79 and Fla. R. Civ. P. 1.442. Scottsdale states that:

> Any suggestion that Scottsdale's PFSes failed to clearly identify what claims were to be extinguished if Plaintiffs accepted those PFSes is unfounded and contradicted by the PFSes . . . . **Critically, in each PFS, Scottsdale did not simply require Plaintiffs to execute a release agreement without describing the terms to be included in those release agreements—Scottsdale instead attached to each PFS the exact release agreements to be**

16

**executed by Plaintiffs.** *See* Doc. 24-1. Accordingly, **Plaintiffs were able to see the release agreements that they were required to sign if they accepted the PFSes.** *See id.* **Those release agreements also specified the causes of action Plaintiffs were being asked to release or extinguish if they accepted the PFSes.** *See id.* Specifically, **Scottsdale explained in each release agreement that the release pertained only to "a loss at the above-mentioned property [1111 N.W. 43rd Avenue, Miami, Florida 33126] on or about May 6, 2019" to which Scottsdale "assigned claim no. 01892450."** *See id.* Scottsdale then made clear (on the second page of each release agreement) that each Plaintiff would release Scottsdale and its officers, employees and agents from **"all claims, contractual, extra-contractual, and/or bad faith arising from the above-mentioned loss, whether known or unknown, through the date of this Release,"** as well as any claim for attorneys' fees, costs, interest, or claims against the releasees **that were related to the "above-mentioned loss."** *Id.*

[ECF No. 26, pp. 2-3 (emphasis added; alteration in original)].

Scottsdale further states that:

The text of each PFS also does not suggest that it somehow does not require Plaintiffs to release their potential bad faith action(s) simply because no specific mention is made of the CRN served by Plaintiffs—Instead [sic], the release agreements attached to the PFSes made clear that in order for Plaintiffs to accept those PFSes, they must release any "extra-contractual" or "bad faith" actions related to claim no. no [sic] 01892450.

*Id.* at 3-4.

In *Ramirez v. Scottsdale Ins. Co.*, this Court addressed a similar challenge to a proposal for settlement. No. 1:20-CV-22324-JEM, 2022 WL 4096728, at *2 (S.D. Fla. Aug. 18, 2022), report and recommendation adopted, No. 20-22324-CIV, 2022 WL 4094562 (S.D. Fla. Sept. 7, 2022).[8] In *Ramirez*, Scottsdale served an offer of judgment with an attached

---

[8]     Scottsdale was the defendant in *Ramirez* and some of the attorneys representing the plaintiffs in that case represent Plaintiffs in the instant case. Despite the similarities

17

general release. *Id.* at *1. The offer was contingent upon the plaintiff's execution of the general release. *Id.* It expired without acceptance. After Scottsdale prevailed at the summary judgment stage, it filed a motion for attorney's fees and costs pursuant to Fla. Stat. § 768.79. *Id.*

The plaintiff in *Ramirez* argued that "the [o]ffer was ambiguous because, when read in conjunction with the [g]eneral [r]elease, it did not make clear whether a subsequent bad faith action would be barred upon [the] [p]laintiff's acceptance of the [o]ffer." *Id.* at *2. Specifically, the plaintiff took issue with paragraph 2 of the offer and paragraph 2 of the general release.

Paragraph 2 of the offer stated: "This Proposal for Settlement/Offer of Judgment is made in an attempt to resolve all claims that [the plaintiff] has asserted or could have asserted against [Scottsdale] in the above captioned action." *Id.* at *4. Paragraph 2 of the attached general release stated:

> [The plaintiff] voluntarily and knowingly generally releases and forever discharges [Scottsdale] from any and all state, local, and federal claims, causes of action, demands, damages, liabilities, claims for attorney fees and cost, suits and judgments of every type and description (including but not limited to, all claims in equity, under local, federal, or state tort, contract both oral or extra-contractual, **bad faith**, § 624.155, Fla. Stat., unfair claims practices statutes or regulations), whether known or unknown, that [the

---

between the issue addressed by the Court in *Ramirez* and the issues presented here, neither party filed a notice of supplemental authority advising the Court of the *Ramirez* decision, as permitted by the Local Rules. *See* S.D. Fla. L.R. 7.8 ("If one or more pertinent and significant authorities come to a party's attention after the party's motion or memorandum of law has been filed or after oral argument but before a decision has been rendered, a party may promptly file a notice of supplemental authority.").

plaintiff] has, may have, or may ever claim to have against [Scottsdale] in any way relating to the claims asserted by the lawsuit filed against [Scottsdale] in the U.S. District Court for the Southern District of Florida, *Julio Ramirez v. Scottsdale Insurance Company*, Case No. 1:20-cv-22324-CIV-JEM and any claims arising out of and/or related to those claims, and/or the adjustment of those claims.

*Id.* (emphasis in original).

The *Ramirez* Court found no ambiguity between the two provisions:

[T]he [o]ffer is not ambiguous. [The] [p]laintiff is correct that under Florida law, a bad faith action against an insurer does not accrue until the underlying claim for benefits is resolved. *See Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991) ("[A]n insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue."). Standing alone, then, paragraph 2 of the [o]ffer does not squarely address whether waiver of a subsequent bad faith claim was included. However, paragraph 2 of the [g]eneral [r]elease resolves any possible ambiguity by explicitly releasing claims for "bad faith, § 624.155, Fla. Stat." that [the] [p]laintiff "has, may have, **or may ever claim to have against [Scottsdale] in any way relating to the claims** asserted by the [instant action] and any claims arising out of and/or related to those claims, and/or the adjustment of those claims." When read as a whole, it is clear that the [o]ffer barred any bad faith action related to the instant action, even if such an action had not yet accrued at the time that the [o]ffer was served, because the [g]eneral [r]elease language specifically included it.

*Id.* (some alterations and emphasis in original; record citation omitted).

The *Ramirez* Court further stated:

[The] [p]laintiff's [o]pposition heavily relies on *Saenz v. Campos* for the argument that the language of the [o]ffer and [g]eneral [r]elease conflict and must be deemed ambiguous. *See Saenz v. Campos*, 967 So. 2d 1114, 1117 (Fla. 4th DCA 2007). However, the proposal for settlement in *Saenz* is readily distinguishable from the instant [o]ffer. The Saenz proposal stated that it was "meant to resolve **all claims** by the [p]laintiff . . . against the

[d]efendant," and that it was "in full settlement of **the claims raised in the suit** against [the] [d]efendant." [*Id.*] at 1115 (emphasis added). The *Saenz* defendant argued, and the court agreed, that when read in conjunction, those two statements did not clearly state whether a bad faith claim noticed by [the] [p]laintiff but accruing only after the resolution of the underlying claim would be barred under the proposal. *Id.* at 1117. However, the language within the *Saenz* proposal made no mention of bad faith, the accompanying statute, future claims, or claims arising out of the suit, whereas the instant [o]ffer, by way of the [g]eneral [r]elease, clearly states the exact claims to be barred. *Id.* at 1115; *see also* [*State Farm Mut. Auto. Ins. Co. v. Nichols*, 932 So. 2d 1067, 1079 (Fla. 2006)] (finding a proposal for settlement ambiguous where language was conflicting and did not mention whether a separate pending uninsured motorist claim would be barred); *Dryden v. Pedemonti*, 910 So. 2d 854 (Fla. 5th DCA 2005) (finding a proposal for settlement ambiguous where broad language did not make clear whether a personal injury protection and first-party claim would be extinguished).

*Id.* (emphasis in *Ramirez*; record citations omitted).[9]

The District Court should follow *Ramirez* and similarly conclude that there is no ambiguity between the Proposals for Settlement and the accompanying General Releases. The challenged language of the offer and general release in *Ramirez* is similar to the challenged language in the Proposals for Settlement and attached General Releases in the instant case.

Paragraph 2 of the instant Proposals for Settlement states: "This Proposal is intended to resolve any and all claims against SCOTTSDALE as claimed and set forth in [PLAINTIFF]'s Complaint in this action (Case No. 2019-030409-CA-01), arising out of or

---

[9]     Plaintiffs also cite to *Saenz*, *Nichols*, and *Dryden*. [ECF No. 25]. Those cases are distinguishable from the instant case for the same reasons as stated in *Ramirez*.

relating to alleged property damage." [ECF No. 24-1, pp. 2, 10, 18]. Paragraph 6 states the

proposal does not include a claim for punitive damages. *Id.* at 3, 11, 19 ("The underlying

claims relative to this Proposal do not include a claim for punitive damages and,

accordingly, no portion of the proposed settlement amount relates to punitive

damages.").

> The General Release contains the following provision:
>
> NOW, THEREFORE, in consideration of the total sum of [PROFFFERED AMOUNT], (which includes attorneys' fees and costs) receipt and sufficiency of which payment is hereby acknowledged by the undersigned, [PLAINTIFF], hereby fully and forever releases and discharges SCOTTSDALE, its officers, directors, employees, agents, adjusters, attorneys, successors, and assigns, from **any and all claims, contractual, extra-contractual, and/or bad faith, arising from the abovementioned loss**, whether known or unknown, through the date of this Release, any claim for attorney's fees, costs, interest, and any claim regarding any activity or action(s) of SCOTTSDALE, its officers, directors, employees, agents, adjusters, and attorneys, including claim settlement and handling procedures, libel, slander, any claim pursuant to any assignment of benefits, and any other action, claim, and demand of whatever nature that [PLAINTIFF] has, may have, or might have in the future as a result or consequence of the abovementioned loss.

*Id.* at 6, 14, 22 (emphasis added).

The preceding paragraphs of the General Release identify the policy ("a policy of

insurance to M&M SISTERS, LLC, BERTHA MENENDEZ GARCIA, and MARIA

MENENDEZ ("the INSUREDS"), bearing policy number CPS3064779, for real property

located at 1111 NW 43rd Avenue, Miami, Florida 33126"), describe the loss ("on or about

May 9, 2019, the INSUREDS' public adjuster, American Premier Claim Consultants, Inc.,

reported to SCOTTSDALE that a loss occurred at the above-mentioned location on or about May 6, 2019, resulting in claimed real property damage at the above-mentioned location"), and identify the claim number ("Claim No. 01892450"). Thus, there can be no question as to which claims ("any and all claims, contractual, extra-contractual, and/or bad faith, arising from the abovementioned loss") the General Release seeks to extinguish.

> In *SB Holdings I, LLC v. Indian Harbor Ins. Co.*, the court noted that:
>
> a general release tied to a specific claim for insurance—i.e., the Hurricane Irma Claim or the Pipe Leak Claim—would not prevent a plaintiff from bringing a lawsuit for unpaid damages from a future hurricane or water leak as it would arise from a completely different claim, even if the harm was similar. As such, the fear that the release is so broad as to undermine the clarity of what claims are being released does not exist here.

No. 6:19-CV-668-PGB-DCI, 2022 WL 3711770, at *5 (M.D. Fla. Aug. 15, 2022). Similarly here, the claims Scottsdale sought to extinguish (had Plaintiffs accepted the Proposals for Settlement) are expressly tied to the loss at issue in this case and were, therefore, easily ascertainable.

The fact that the General Releases specifically mentioned bad faith claims (and the Proposals for Settlement did not) does not create an ambiguity. When read together, the Proposals for Settlement and the General Releases make clear that any subsequent bad faith claim arising from the subject loss would be barred. *See Ramirez*, 2022 WL 4096728, at *4 ("When read as a whole, it is clear that the [o]ffer barred any bad faith action related

to the instant action, even if such an action had not yet accrued at the time that the [o]ffer was served, because the [g]eneral [r]elease language specifically included it.").

Additionally, the Proposals for Settlement's reference to punitive damages did not create an ambiguity. As one Florida court noted:

> [E]ven though [the plaintiff's] complaint did not seek punitive damages, the language in the offer about punitive damages should not have been confusing because it emanates from Rule 1.442(c)(2)(E), which requires an offer to "state with particularity the amount proposed to settle a claim for punitive damages, if any." When read together with the rest of the proposal and the attached release, [the plaintiff] could not have reasonably thought that the settlement would resolve all claims except one for punitive damages. This conclusion is reinforced by the fact that a claim for punitive damages is not a distinct cause of action, but instead is a sanction tethered to an underlying cause of action. *See Soffer v. R.J. Reynolds Tobacco Co.*, 187 So. 3d 1219, 1221–22 (Fla. 2016); [*Ambeca, Inc. v. Marina Cove Vill. Townhome Ass'n, Inc.*, 880 So. 2d 811, 813 (Fla. 1st DCA 2004)].

*Burns v. Turnage*, 348 So. 3d 1215, 1220 (Fla. 1st DCA 2022).

A "settlement proposal [must] be sufficiently clear and definite to allow the offeree to make an informed decision without needing clarification." *Nichols*, 932 So. 2d at 1079. The Proposals for Settlement in the instant case met that requirement.

"Both section 768.79 and rule 1.442 are in derogation of the common law rule that each party is responsible for its own attorney's fees which requires that we strictly construe both the statute and the rule." *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 376 (Fla. 2013). At the same time, courts have "not required the elimination of every ambiguity—only reasonable [ones]." *Allen v. Nunez*, 258 So. 3d 1207, 1211 (Fla. 2018). The Florida Supreme Court has stated that "[p]roposals for settlement are intended

23

to end judicial labor, not create more" and has "discouraged [courts] from 'nitpicking' proposals for settlement to search for ambiguity." *Id.* (quoting *Nichols*, 932 So. 2d at 1079).

Here, the Proposals for Settlement: (1) were in writing; (2) stated that they were made pursuant to Fla. R. Civ. P. 1.442 and Fla. Stat. § 768.79; (3) named Scottsdale as the offeror and named the Plaintiff to which the offer was being extended as the offeree; (4) stated the total amount of the offer; and (5) stated that there was no claim for punitive damages and therefore no portion of the proffered amount related to punitive damages. [ECF No. 24-1]. Additionally, for the reasons discussed above, the District Court should find no ambiguity between the proposals for settlement and the General Releases.

### 3.    Good Faith Offer

Plaintiffs also contend that the nominal offers in the Proposals for Settlement were not made in good faith because:

> i.    The offers were made at the infancy of the case and before any meaningful discovery was conducted in relation to the operative issues of fact and law; the terms and conditions of the "Release" which the offer was conditioned upon and required . . . Plaintiff to attest that it was agreeing to each and every claim which could have been or should have been brought by Plaintiff to the extent those claims arise from the same set of facts alleged in the Complaint in this case, including any claim for bad faith or extra-contractual damages, whether accrued or unaccrued, pending or not pending.

> ii.    Moreover, in equal form and in conjunction with the aforementioned non-party third-parties, over whom . . . Plaintiff exercised no control, acceptance of the Defendant's offer would have (at the time) required . . . Plaintiff to resolve any and all claims for damages, which would have course [sic] included punitive damages, bad faith, attorneys' fees, costs, unknown claims and so on.

[ECF No. 25, pp. 17-18].

Defendant maintains that the amounts offered to Plaintiffs were reasonable given the "material facts" of the case. [ECF No. 26, p. 8]. Defendant disputes that the proposals for settlement were made "at the infancy of the case," noting that more than 15 months had transpired between the filing of the lawsuit on October 16, 2019 and the June 21, 2021 Proposals for Settlement. *Id.*

It further notes that during that time, Scottsdale had obtained the property inspection report prepared by a professional engineering company, which had "determined there was no damage to the roof of the insured property caused by wind or any other covered cause and no damage to the interior caused by an opening in the roof caused by wind." *Id.*[10] Defendant states that "[b]ecause [it] had already received the report of an expert who opined in writing that the insured property had not sustained any damage resulting from a cause covered by Plaintiffs' policy, Scottsdale was justified in believing on June 21, 2021 that Plaintiffs' action lacked merit." *Id.* at 9. Scottsdale also notes that, at the time of service of the Proposals for Settlement, Plaintiffs had not refuted the expert report. *Id.*

Scottsdale further states that Plaintiffs never alleged a covered loss in this case. *Id.* at 8 (noting that the Amended Complaint was dismissed on October 21, 2021 due to

---

[10]     Scottsdale attached a copy of this report (dated December 10, 2020) to its reply. [ECF No. 26-3].

"Plaintiffs' failure to allege their damage and the cause of their alleged loss"; the Second

Amended Complaint was dismissed on January 26, 2022 and Plaintiffs were ordered "to

amend their Complaint to add facts explaining what roof damage or ensuring water

damage occurred and how that covered loss caused damage to the roof or interior of the

property"; and the Third Amended Complaint was dismissed with prejudice (on March

28, 2022) because Plaintiffs had "again failed to sufficiently allege a cause of action"

(internal quotation marks omitted)).

The Court may refuse to award fees and costs if the offer was not made in good

faith. Fla. Stat. § 768.79(7)(a) ("If a party is entitled to costs and fees pursuant to the

provisions of this section, the court may, in its discretion, determine that an offer was not

made in good faith. In such case, the court may disallow an award of costs and attorney's

fees."). The burden is on Plaintiffs to establish that the offer of judgment was not made

in good faith. *Concrete Works & Paving, Inc. v. Great Midwest Ins. Co.*, No. 19-60312-CIV,

2021 WL 4522498, at *1 (S.D. Fla. Jan. 29, 2021).

Here, there is no record evidence supporting a finding of bad faith. A nominal

amount does not, in and of itself, establish that an offer was made in bad faith. *See Zendejas*

*v. Redman*, 334 F. Supp. 3d 1249, 1258 (S.D. Fla. 2018) ("'[N]ominal offers of judgment are

not alone determinative of bad faith.' The mere fact a plaintiff seeks a high amount of

damages does not undermine a defendant's reasonable belief of minimal exposure."

(quoting *Fox v. McCaw Cellular Commc'ns of Fla., Inc.*, 745 So. 2d 330, 333 (Fla. 4th DCA

1998) (internal citation omitted))); *McMahan*, 311 F.3d at 1083 (affirming finding that $100 offer was made in good faith).

Moreover, Scottsdale had reasonable grounds for its $334.00 and $333.00 offers. At the time it made these offers, Scottsdale's expert had already inspected the property and had prepared a report determining that the property had not sustained a covered loss. Additionally, the operative complaint at the time did not allege a covered loss (ultimately, Plaintiffs were unable to cure this pleading deficiency and their claim was dismissed with prejudice).

"The obligation of good faith merely insists that the offeror have some reasonable foundation on which to base an offer." *McMahan*, 311 F.3d at 1083 (quoting *Schmidt v. Fortner*, 629 So. 2d 1036, 1039 (Fla. 4th DCA 1993)). Scottsdale's Proposals for Settlement satisfy this standard.

### 4.    Nonmonetary Terms

Plaintiffs raised one argument in response to Scottsdale's request for appellate attorney's fees. [ECF No. 37 in Case No. 22-11290]. Plaintiffs argued that the Proposals for Settlement were unenforceable because they "were impermissibly conditioned on nonmonetary terms of settlement and were thus invalid." *Id.* at 4. Specifically, Plaintiffs argued that the Proposals for Settlement were invalid because they "were conditioned on [Plaintiffs'] agreement to a 'General Release Agreement and Settlement Agreement' that required [Plaintiffs] to fully release [Scottsdale] 'from any and all claims . . . arising from

27

the . . . loss.'" *Id.* They also required Plaintiffs "to 'hold harmless' and 'indemnify' [Scottsdale] from claims asserted against the settlement proceeds, and to maintain confidentiality regarding the settlement." *Id.*

Per Plaintiffs, these nonmonetary conditions could not be included in a valid proposal for settlement because, "as the Florida Supreme Court recently ruled, section 768.79 'does not provide for the inclusion of nonmonetary terms in a proposal for settlement'" and "section 768.79 'simply contemplates a comparison of monetary amounts.'" *Id.* (quoting *In re Amends. to Fla. R. Civ. P. 1.442*, 345 So. 3d 845, 845 (Fla. 2022)).

Plaintiffs state that the Florida Supreme Court acknowledged that section 768.79 does not permit proposals for settlement to include nonmonetary conditions when it "amended Florida Rule of Civil Procedure 1.442 to make clear that proposals for settlement must 'exclude nonmonetary terms' aside from the condition of voluntary dismissal (or other terms expressly provided by statute)." *Id.* at 5.

Plaintiffs further state that "the proposals for settlement did not 'allow immediate enforcement upon acceptance,' because they required a further act of 'fully execut[ing]' the additional and impermissible nonmonetary conditions of settlement." *Id.* at 6 (alterations in original); *see Bush Leasing, Inc. v. Gallo*, 634 So. 2d 737, 741–42 (Fla. 1st DCA 1994) ("An offer of judgment that contains conditions not permitted by the statute and which will not allow immediate enforcement upon acceptance is invalid.").

28

In its reply, Scottsdale notes that "it is well established that offers of judgment may be conditioned on the offerees releasing related claims by executing confidential release and settlement agreements attached to those offers of judgment" and cites to cases where valid and enforceable offers of judgment were conditioned upon the execution of a release. [ECF No. 34, pp. 3-4 (citing *Nichols*, 932 So. 2d at 1078-79; *Tower Hill Signature Ins. Co. v. Kushch*, 335 So. 3d 743, 751-53 (Fla. 4th DCA 2022); *SB Holdings LLC*, 2022 WL 3711770, at *3-6].

Plaintiffs' argument is not persuasive. First, the Undersigned notes that the proposals for settlement were served on Plaintiffs on June 21, 2021, thus the 2022 amendments to Rule 1.442 have no effect on this case. *See Ramirez*, 2022 WL 4096728, at *2 (noting that the 2022 Amendments had an effective date of July 1, 2022 and did not apply to an offer of judgment made on February 18, 2021).

Second, there is simply no basis for Plaintiffs' argument that an amendment to a procedural rule (Fla. R. Civ. P. 1.442) had the effect of overruling prior cases affirming proposals for settlement conditioned up on the execution of a release.

In *Nichols*, for instance, the Florida Supreme Court "determine[d] whether a general release qualifie[d] as one of the 'relevant conditions' or 'nonmonetary terms' of a settlement proposal, which must be described with particularity under rule 1.442." 932 So. 2d at 1078. The supreme court concluded that it did. *Id.* ("Applying the plain meaning of rule 1.442, we agree with those courts that have treated releases as conditions or

29

nonmonetary terms that must be described with particularity."). It also considered "what degree of particularity the rule require[d]" and concluded that "a summary of the proposed release can be sufficient to satisfy rule 1.442, as long as it eliminates any reasonable ambiguity about its scope." *Id.* at 1079.

Intermediate appellate courts in Florida have enforced offers of judgment conditioned upon the execution of a release. *See, e.g., Am. Integrity Ins. Co. of Fla. v. Branford*, 312 So. 3d 91, 97 (Fla. 4th DCA 2021) (reversing a trial court's denial of a motion for attorney's fees because "when read as a whole, the defendant's proposal and accompanying release contained no ambiguity that could reasonably affect the [plaintiff] offeree's decision on whether to accept the settlement proposal" (alteration in original; internal quotation marks omitted)); *Jessla Const. Corp. v. Miami-Dade Cnty. Sch. Bd.*, 48 So. 3d 127, 128 (Fla. 3d DCA 2010) (affirming fee award in case involving a proposal for settlement requiring the execution of an unconditional general release); *Carey-All Transp., Inc. v. Newby*, 989 So. 2d 1201, 1204 (Fla. 2d DCA 2008) (reversing denial of fee award in case involving a proposal for settlement requiring the execution of a general release); *Palm Beach Polo Holdings, Inc. v. Vill. of Wellington*, 904 So. 2d 652, 653 (Fla. 4th DCA 2005) ("The language of the proposed release, or a summary of the substance of the release, must be included with the offer to comply with the requirement that it be particular." (citing *Nichols*, 851 So. 2d at 746)).

Federal courts applying Florida law have also enforced proposals for settlement conditioned upon the execution of a release. *See, e.g., Embroidme.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 12-81250-CIV, 2015 WL 419879, at *3 (S.D. Fla. Jan. 22, 2015) ("Florida case law indicates that the nonmonetary terms of a proposal for settlement may be particularly stated by attaching an incorporated release to the proposal."); *Landi v. Home Depot USA, Inc.*, No. 217CV701FTM38MRM, 2020 WL 2933033, at *2 (M.D. Fla. June 3, 2020) (enforcing proposal for settlement which was conditioned upon the execution of an attached general release).

Both federal and state courts in Florida have enforced offers of judgment which are conditioned upon the execution of a general release. The proposals for settlement in the instant case are enforceable for the reasons stated above.

In sum, because the proposals for settlement meet the requirements of Fla. Stat § 768.79 and Fla. R. Civ. P. 1.442, they are valid and enforceable. Under section 768.79, "a prevailing party is entitled to recover their attorney's fees going back to the date the offer of judgment was served." *Tiara Condo. Ass'n, Inc.*, 697 F. Supp. 2d at 1360 (citations omitted). This includes appellate fees. *See United Auto. Ins. Co. v. Comprehensive Health Ctr.*, 173 So. 3d 1061, 1069 (Fla. 3d DCA 2015) ("It is well settled that '[t]he plain and mandatory terms of the proposal for settlement statute encompass all costs and attorneys' fees incurred leading up to a final judgment,' including fees incurred on appeal.") (quoting *State Farm Fire & Cas. Co. v. Rembrandt Mobile Diagnostics, Inc.*, 93 So. 3d 1161, 1162 (Fla.

4th DCA 2012)); *Mama Jo's Inc. v. Sparta Ins. Co.*, No. 1:17-CV-23362-KMM, 2021 WL 2682261, at *1 (S.D. Fla. June 30, 2021) (adopting report and recommendations awarding appellate attorneys' fees under Fla. Stat. § 768.79).

Here, Scottsdale served its Proposals for Settlement on June 21, 2021 [ECF No. 24-1] and is seeking attorneys' fees incurred from that date. [ECF No. 24-2]. Having determined that Defendant is entitled to recover attorneys' fees through the appeal, the Undersigned will now address the reasonableness of the requested fees.

### ii.      Amount

The Court must determine whether the requested amount of fees is reasonable. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). This amount is typically referred to as the "lodestar." *Thornton v. Wolpoff & Abramson, L.L.P.*, 312 F. App'x 161, 163-64 (11th Cir. 2008).

The resulting fee carries a presumption that it is reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). This lodestar amount may then be adjusted upward or downward based upon other considerations. *Hensley*, 461 U.S. at 433-37. The moving party bears the burden of documenting the reasonableness of the hours expended and the hourly rate. *Barnes*, 168 F.3d at 427.

Plaintiffs do not address the reasonableness of the hourly rates sought in this case or the number of hours expended. Nonetheless, the Court must still ensure that the fees it awards are reasonable. *See Valley v. Ocean Sky Limo*, 82 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015) ("[T]he Court has an independent obligation to review fee motions and bills of costs to independently determine whether the hourly rates sought are reasonable, the number of attorney hours sought are reasonable, and that the costs sought to be taxed are properly taxable pursuant to the cost statute."); *see also Kelly v. Lee Cnty. R.V. Sales Co.*, No. 8:18-CV-424-T-27JSS, 2021 WL 3111553, at *2 (M.D. Fla. July 22, 2021) (reducing hourly rates of two timekeepers despite no challenge to the hourly rates by the opposing party); *United States v. Harris*, No. 16-21152-CIV, 2018 WL 6978634, at *2 (S.D. Fla. Dec. 17, 2018) (noting that "the Court must still determine whether the requested amount of fees is reasonable" even in instances where the fees motion is unopposed).

### 1.  Reasonable Hourly Rate

The Court must evaluate the reasonableness of counsel's hourly rate. The Eleventh Circuit defines a "reasonable hourly rate" as "the prevailing market rate in the relevant legal community for similar services by attorneys with reasonably comparable skills, experience, and reputation. *Norman*, 836 F.2d at 1299 (citing *Blum*, 465 U.S. at 895-96 n.11). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Id.* at 1302 (internal citation omitted).

33

In determining the prevailing market rate, the Court should consider several factors, including: "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (discussing factors set out in *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974)).

Scottsdale seeks an hourly rate of $180.00 for its two timekeepers, Robert L. Rogers, Esq. and Andrew Rock, Esq. of The Rock Law Group, P.A. [ECF No. 24, p. 8]. The attorney hourly rate sought by Scottsdale is the same for work performed at the trial level and at the appellate level.

Local Rule 7.3(a)(5)(A) requires the party moving for fees to state "the identity, experience, and qualifications for each timekeeper for whom fees are sought." S.D. Fla. L.R. 7.3(a)(5)(A). Scottsdale has filed firm bios from The Rock Law Group, P.A.'s website. [ECF No. 24-3].

Mr. Rogers was the lead attorney on this case. The firm bio for Mr. Rogers reflects that he is an associate at the firm and was admitted to the Florida Bar in 2004. *Id.* Scottsdale's verified motion states that Mr. Rogers' professional experience consists entirely of first-party property insurance litigation and other business litigation. [ECF No. 24, p. 9]. Mr. Rogers "graduated with honors from the Florida State University College of

Law in 2003[] and graduated [with] high honors from the University of Florida with a Bachelor of Science in 1998." *Id.* The bio for Mr. Rock states that he is the firm owner and was admitted to the Florida Bar in 1987. [ECF No. 24-3].

The Undersigned has no difficulty concluding that an hourly rate of $180.00 is *more* than reasonable for both Mr. Rogers and Mr. Rock. In fact, the attorney hourly rates could likely have been twice the hourly rate sought (or even more) per hour and still have been deemed reasonable.

Attorneys with less experience than Mr. Rogers and Mr. Rock have been awarded higher hourly rates in insurance cases filed in this District. *See, e.g., Capitol Specialty Ins. Corp. v. Ortiz*, No. 17-23329-CIV, 2019 WL 383868, at *6 (S.D. Fla. Jan. 15, 2019) (awarding $275.00 per hour to an attorney with eleven years of experience in an insurance coverage action), report and recommendation adopted sub nom. *Capitol Specialty Ins. Corp. v Ortiz by & Through Corona*, No. 17-23329-CIV, 2019 WL 367916 (S.D. Fla. Jan. 30, 2019); *Atain Specialty Ins. Co. v. Henry's Carpet & Interiors, Inc.*, No. 20-62089-CIV, 2021 WL 4976228, at *3 (S.D. Fla. July 12, 2021) (awarding hourly rate of $375.00 to attorney with twelve years of experience who worked mostly on insurance-related disputes), report and recommendation adopted, No. 20-62089-CIV, 2021 WL 4472081 (S.D. Fla. Sept. 30, 2021); *GBS Inv. Grp. v. United Specialty Ins. Co.*, No. 18-23310-CIV, 2020 WL 5356562, at *6 (S.D. Fla. Aug. 11, 2020), report and recommendation adopted, No. 18-23310-CIV, 2020 WL 5355966 (S.D. Fla. Sept. 6, 2020) (finding hourly rate of $200.00 to $215.00 "*more than*

35

reasonable" for attorney who "practiced insurance defense and insurance coverage litigation for more than 24 years" (emphasis in original)).

### 2.    Reasonable Hours Expended

The Court must next evaluate the reasonableness of the total hours expended by Scottsdale's counsel. The moving party bears the burden of providing the Court with sufficiently detailed records so that the Court can assess the time claimed for each activity. *Norman*, 836 F.2d at 1303; *see also Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952, at *14 (S.D. Fla. July 15, 2011) ("A party seeking to recover attorneys' fees bears the burden of providing specific and detailed evidence so that a determination can be made of the necessity of the action and the reasonableness of the time claimed for the action." (citing *Barnes*, 168 F.3d at 427, 432-33)).

The party requesting fees must exercise "billing judgment" and must exclude from its fees motion hours that would be unreasonable to bill a client, and therefore to one's adversary, "irrespective of the skill, reputation, or experience of counsel." *Norman*, 836 F.2d at 1301.

In determining the number of hours reasonably expended, the Court must exclude "excessive, redundant or otherwise unnecessary hours" from those claimed. *Id.* at 1303. This task may be accomplished by either applying an hour-by-hour analysis or making an across-the-board cut. *See Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). Judges "need not, and indeed should not, become green-eyeshade accountants. The

essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436).

The Undersigned will separately discuss the time entries for the district court fees and the appellate fees.

### a.      District Court Fees

Scottsdale seeks to recover $17,136.50 in attorney's fees at the trial level. [ECF No. 24, p. 2]. Scottsdale does not identify the total number of hours it seeks in its fees motion but that number can be calculated by dividing the amount of fees sought ($17,136.50) by the requested hourly rate ($180.00). Therefore, Scottsdale is seeking to recover 95.20 hours.[11]

Scottsdale explains that the $17,136.50 amount is broken down as follows: "$14,976.50 for fees incurred and billed to Scottsdale by its attorneys from June 21, 2021 through April 5, 2022, which are described in detail in the . . . attorney bills" plus an additional, estimated

> $2,160.00 for . . . work performed or to be performed in relation to this Motion and its associated request for taxable costs, including good faith conferences required by the Local Rules, review of a potential written

---

[11]      This number is rounded down from 95.2027778.

opposition that may be filed by Plaintiffs, preparation of a reply to that opposition, and other associated fees.

*Id.* at 8.

But there is a 7.60-hour discrepancy between the number of hours reflected in the billing records (90.80) and the number of hours Scottsdale claims in its motion are included in the billing records (83.20).[12] These hours are separate from the number of hours (12.0, calculated by dividing $2,160.00 by $180.00) which Scottsdale states were not reflected in the billing records but are an estimate of to-be-incurred fees.[13]

The Undersigned has reviewed the billing records submitted in support of the district court fees -- spanning from June 21, 2021 through April 5, 2022 -- and finds that some reductions are warranted to account for block billing, excessive time spent on certain tasks, duplicative entries, a few redacted time entries, and separately billed emails (likely chain emails).

Counsel's billing records reflect numerous block-billed time entries. "Block billing is the practice of including multiple distinct tasks within the same time entry." *Bioresource*

---

[12]    Again, because Scottsdale does not state in its motion the total number of hours it is seeking, this amount was calculated by dividing $14,976.50 by $180.00. The resulting number (83.2027778) was rounded down to 83.20.

[13]    There is also a minor (0.30 hour) discrepancy between the number of hours reflected in Scottsdale's time entries and the fees sought by Scottsdale in its motion. Scottsdale's billing records reflect a total of 90.80 hours. [ECF No. 24-2, p. 27]. The fee summary at the end of the billing records reflects 0.30 hours billed by Mr. Rock and 90.20 hours billed by Mr. Rogers, which total 90.50 hours (not 90.80 hours). *Id.* at 27-28.

*Tech., Inc. v. High*, No. 21-CV-60854, 2022 WL 4287599, at *4 (S.D. Fla. Aug. 8, 2022), report and recommendation adopted, No. 21-60854-CIV, 2022 WL 3907902 (S.D. Fla. Aug. 31, 2022) (citation and internal quotation marks omitted) "Block billing is impermissible because it frustrates the Court's ability to determine which portion of the fees billed at a particular time are recoverable." *Behav. Analyst Certification Bd., Inc. v. Rodriguez*, No. 1:21-CV-22834, 2022 WL 4468606, at *16 (S.D. Fla. July 29, 2022), report and recommendation adopted as modified, No. 21-22834-CIV, 2022 WL 4466621 (S.D. Fla. Sept. 26, 2022) (citing *Filippova v. Mogilevsky*, No. 18-80044-CIV, 2019 WL 1216150, at *6 (S.D. Fla. Feb. 14, 2019)).

For instance, on August 23, 2021, attorney Rogers billed 2.30 hours to:

> Review/analyze Analyze [sic] court order compelling discovery responses within 30 days, communications with plaintiffs' counsel re same, history of frivolous motions and hearings from plaintiffs' new attorneys, and Florida law governing range of sanctions for violations of court orders compelling discovery, to prepare motion for sanctions for plaintiffs' failure to comply with order compelling discovery responses, to hold plaintiffs in contempt of discovery order, and to again compel overdue discovery responses and exhibits to same.

[ECF No. 24-2, p. 8]. Because these tasks were grouped together in one entry, it is not possible to determine how much time was spent on each task and, in turn, whether that time was reasonable.

The Undersigned is also unable to determine the reasonableness of the time billed for the redacted time entries. [ECF No. 24-2, pp. 17-19; 25].

There were also instances of excessive time spent on tasks. For example, on March 10, 2022, Mr. Rogers spend 4.30 hours reviewing and analyzing Plaintiffs' response to

Defendant's motion to dismiss the Third Amended Complaint, including reviewing the cases cited in the response, the briefs related to the *prior* motion to dismiss, and the procedural history of the case. The next day Mr. Rogers billed 2.40 hours to prepare Scottsdale's 10-page reply brief.

The Undersigned has reviewed the response brief and the reply brief for the motion to dismiss the Third Amended Complaint and finds that the amount of time billed by Mr. Rogers (a total of 6.70 hours) is excessive for the tasks performed.

The billing records also reflect duplicate time entries. On November 22, 2021, Mr. Rogers twice billed 1.90 hours for drafting/revising Scottsdale's motion to dismiss the second amended complaint. *Id.* at 20. On November 19, 2021, Mr. Rogers twice billed 1.50 hours for preparing the notice of removal. *Id.* The Undersigned further finds that 1.50 hours for the 6-page notice of removal and 663-pages of attachments is excessive and warrants reduction.

The Court should also reduce the fees sought by Scottsdale to account for counsel's practice of separately billing related emails (sent or received on the same day). In *Alexandre v. Millenia Hous. Mgmt., Ltd.,* this Court observed that a fee petition where there were "over fifty entries where the timekeeper billed 0.1 hour to 'receive and review' correspondence from their client and defense counsel, 'receive and review' paperless orders, and 'receive and review' single page orders" was excessive and "reduce[d] these hours by two-thirds." No. 19-80612-CIV, 2020 WL 9458895, at *5 (S.D. Fla. Mar. 4, 2020),

report and recommendation adopted, No. 19-80612-CIV, 2020 WL 9458738 (S.D. Fla. Mar. 23, 2020).

Counsel employed a similar practice here. For example, on November 19, 2021, Mr. Rogers billed 0.10 six times (for a total of 0.60) for exchanging emails with the same individual. [ECF No. 24-2, p. 19]. These emails appear related and are likely part of an email chain. It is doubtful that each email took six minutes to draft or review. Thus, billing 0.60 hours, or 36 minutes, for sending/reviewing six emails is excessive and does not demonstrate good billing judgment.

Lastly, the Undersigned finds that the estimated 12.0 additional hours sought by Scottsdale for fees-to-be-incurred after the billing records' April 5, 2022 end date is excessive in light of Plaintiffs' opposition response and Scottsdale's reply and should be reduced.

Rather than make line-by-line reductions in hours, a court "may engage in 'an across-the-board cut' so long as it provides adequate explanation for the decrease." *Bivins*, 548 F.3d at 1350.

Here, the Undersigned respectfully **recommends** an across-the-board **20 percent** reduction to the fees sought at the district court level to account for block billing, excessive time, duplicative entries, redacted time entries, separately billed emails, and excessive estimated hours. *See, e.g., Celasco v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 19-20818-CIV, 2020 WL 7493079, at *6 (S.D. Fla. Mar. 20, 2020) (reducing requested fees

41

by 20 percent "to account for excessive attorney time spent on certain tasks"), report and recommendation adopted, 2020 WL 7492852 (S.D. Fla. Apr. 7, 2020); *Atl. Marine Fla., LLC v. Evanston Ins. Co.*, No. 3:08-CV-538-HES-JBT, 2016 WL 3407825, at *1 (M.D. Fla. June 16, 2016) (affirming magistrate judge's recommendation of a 20 percent reduction in the requested fees due to excessive number of hours billed); *Baby Buddies, Inc. v. Toys R Us, Inc.*, No. 8:03-CV-1377-T-17MAP, 2011 WL 4382450, at *10 (M.D. Fla. Aug. 9, 2011) (applying a 20 percent reduction to the requested fees to account for excessive number of timekeepers and excessive amount of time billed), report and recommendation adopted, 2011 WL 4382285 (M.D. Fla. Sept. 20, 2011).

Scottsdale should be permitted to recover **$13,709.20** ($3,427.30 less than the amount requested) for district court fees.

### b.    Appellate Court Fees

Scottsdale seeks to recover $17,478.00 in appellate fees it incurred in light of Plaintiffs' unsuccessful appeal of Judge Moreno's dismissal with prejudice. [ECF No. 32 in Case No. 22-11290]. This amount consists of $15,678.00 (87.10 hours) reflected in the billing records plus an additional estimated $1,800.00 (10 hours) to finalize the appellate fees motion and related documents. *Id.* at 12-13. In support of this fee request, Scottsdale has submitted itemized timesheets, attorney bios, Forms to Accompany Application for

Attorney's Fees for each attorney timekeeper,[14] and an affidavit from attorney Andrew Rock. *Id.* at 41-65.

The Undersigned has reviewed the documents submitted in support of the requested appellate fees and finds that the number of hours sought is excessive and must be reduced. Scottsdale was the appellee and filed a 38-page response brief. The issue on appeal was limited: whether the District Court erred in dismissing Plaintiffs' Third Amended Complaint with Prejudice. This was not a novel or complex appeal. The facts and the law were straightforward. Thus, the 12.00 hours spent on research and 33.90 hours spent writing the 38-page response brief were excessive and must be reduced.

There are other examples of excessive time as well as duplicative time entries and block billing. For example, on April 19, 2022, Mr. Rogers billed 0.20 hours for "[a]nalyz[ing] court records suggesting that [P]laintiffs has [sic] appealed [the] order dismissing action with prejudice, as well as communications with litigation team re same, to assess impact of same on motion for attorney['s] fees and costs." [ECF No. 32 in Case No. 22-11290, p. 41]. In two additional time entries (one on April 19, 2022 and one on April 20, 2022), Mr. Rogers also billed for reviewing the notice of appeal and a docket entry related to the notice of appeal: 0.10 hours for "[r]eview of Plaintiffs' Notice of

---

[14]     There is an error in Mr. Rock's form. [ECF No. 32, p. 59]. The form states that the total number of hours sought by Mr. Rock is 9.0 hours, but the amounts broken down by category reflect only 7.0 hours (1.60 plus 0.70 plus 3.50 plus 1.20). Thus, 2.0 hours are unaccounted for on Mr. Rock's form.

Appeal" and 0.10 hours for "[r]eview of Transmission of Notice of Appeal, Order under appeal and Docket Sheet to U[.]S[.] Court of Appeals." *Id.* Billing a total of 0.40 hours for the one-paragraph Notice of Appeal and a Clerk's note on the docket (the Transmission of Notice of Appeal) is excessive.

Mr. Rock also billed for "review and analysis of [the] Notice of Appeal." *Id.* He billed 0.30 hours (18 minutes) for what is tantamount to a *pro forma* document. *Id.* This time entry is both duplicative and excessive.

Other examples of excessive and duplicative time entries by Mr. Rock include billing 0.30 hours for "[r]eview and analysis of Notice of Appearance" on May 11, 2022, June 2, 2022, and June 9, 2022. *Id.* at 41, 44, 45. The Eleventh Circuit docket reflects two (not three) notices of appearance filed by Plaintiffs' counsel. Moreover, the Undersigned is at a loss as to what analysis is required of a notice of appearance or how Mr. Rock could have devoted 0.30 hours (on three separate dates) to this task.

A court should exclude from the fees award compensation for hours that are "excessive, redundant or otherwise unnecessary." *Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 434). Here, the Undersigned respectfully **recommends** that the District Court apply a **30 percent** across-the-board reduction to account for duplicate time entries and excessive time spent on a particular task. *See, e.g., St. Fleur v. City of Fort Lauderdale*, 149 F. App'x 849, 854 (11th Cir. 2005) (affirming 30 percent across-the-board reduction); *Odes v. Harris*, No. 12-CV-61561, 2014 WL 11531573, at *5 (S.D. Fla. Jan. 6, 2014)

(applying 30 percent reduction to account for block billing and excessive, redundant, or duplicative time entries); *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, No. 09-60351-CIV, 2011 WL 2535258, at *7 (S.D. Fla. June 27, 2011) (reducing requested fees by 30 percent "to account for billing entries that [were] excessive, duplicative, clerical in nature, unnecessary or otherwise unreasonable," included "block billing and multiple attorneys," and certain discovery hearings).

Scottsdale should be permitted to recover **$12,234.60** ($5,243.40 less than the amount requested) for appellate fees.

### b.    Expenses (Non-Taxable Costs)

Scottsdale also seeks to recover $1,072.00 for the non-taxable expenses it incurred after the June 21, 2021 proposals for settlement. [ECF No. 24, p. 2]. This amount consists of an $840.00 mediation fee, $105.00 for a court reporter attendance fee at a hearing on July 14, 2021 on Scottsdale's Emergency Motion to Postpone Mediation, and a $127.00 court reporter cancellation fee for an October 7, 2021 discovery/sanctions hearing. *Id.* at 9. Scottsdale has submitted invoices supporting these amounts. [ECF No. 24-4].

"The amount and nature of costs to be awarded in federal actions is governed by federal law, even in diversity cases such as this one." *Endurance Am. Specialty Ins. Co. v. Liberty Mut. Ins. Co.*, No. 8:17-CV-2832-T-33CPT, 2020 WL 9597125, at *8 (M.D. Fla. June 4, 2020), report and recommendation adopted sub nom., *Endurance Am. Specialty Ins. Co. v. Safeco Ins. Co. of Illinois*, No. 8:17-CV-2832-T-33CPT, 2020 WL 9597127 (M.D. Fla. Aug.

6, 2020). "Federal courts can only tax costs outside of 18 U.S.C. § 1920 where a statute 'explicitly' authorizes it to do so, or a court explicitly declares that the statute creates a substantive right to costs." *Kearney v. Auto-Owners Ins. Co.*, No. 8:06-CV-00595-T-24, 2010 WL 3062420, at *2 (M.D. Fla. Aug. 4, 2010).

Florida's offer of judgment statute does not provide explicit authorization for the award of non-taxable costs in federal court. *Id.* ("[F]ind[ing] that [movant] can not [sic] receive any costs under Florida Statute § 768.79 beyond those already awarded under § 1920."); *Illoominate Media, Inc. v. CAIR Fla., Inc.*, No. 9:19-CV-81179-RAR, 2021 WL 4030008, at *7 (S.D. Fla. Aug. 4, 2021) ("[C]osts not enumerated under 28 U.S.C. § 1920, such as travel expenses and expert fees, are not allowed, even under Section 768.79.").

In *Moody v. Integon Nat'l Ins. Co.*, Chief Magistrate Judge Torres explained that:

> Absent explicit statutory authorization, courts are limited to awarding the costs enumerated in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S.C. 437, 445 (1987). . . . Courts can only tax outside of Section 1920 if a statute "explicitly" authorizes a court to do so or a court explicitly declares that the statute creates a substantive right to costs. *Kearney v. Auto-Owners Ins. Co.*, No. 8:06-cv-00595-T-24-TGW, 2010 WL 3062420, at *2 (M.D. Fla. Aug. 4, 2010). Non-taxable costs are not recoverable under Section 768.79 because the statute does not explicitly authorize courts to award such costs.

No. 18-23094-CIV, 2019 WL 4731983, at *5 (S.D. Fla. July 30, 2019), report and recommendation adopted, No. 18-23094-CIV, 2019 WL 7943750 (S.D. Fla. Oct. 7, 2019). The Undersigned finds this reasoning persuasive.

46

The Supreme Court has interpreted Rule 54(d) to include those costs already made taxable by statute, namely, 28 U.S.C. § 1920. *See Crawford Fitting Co.*, 482 U.S. at 441–442; *see also Rosolen v. Home Performance All., Inc.*, No. 2:19-CV-24-JLB-NPM, 2021 WL 4822561, at *3 (M.D. Fla. Aug. 26, 2021) ("Section 1920 of Title 28 of the United States Code limits a district court's discretion under Rule 54(d)(1) by listing costs a court may allow."), report and recommendation adopted, No. 2:19-CV-24-JLB-NPM, 2021 WL 4399119 (M.D. Fla. Sept. 27, 2021); *King v. CVS Health Corp.*, No. 1:12-CV-1715-KOB, 2017 WL 6336323, at *10 (N.D. Ala. Dec. 12, 2017) ("Title 28 U.S.C. § 1920 specifies the categories of costs that are taxable under Rule 54(d)(1).").

Scottsdale has not argued that its non-taxable costs are otherwise taxable under 28 U.S.C. § 1920. The Undersigned will not *sua sponte* raise this argument for Scottsdale. *See Oakes v. Collier Cnty.*, No. 220CV568FTM38NPM, 2020 WL 6591194, at *5 (M.D. Fla. Nov. 11, 2020) ("Because Defendant makes no argument to dismiss the trespass claim for a pleading deficiency, the Court will not do its work for it.").

Scottsdale has not shown entitlement to non-taxable costs. Accordingly, the Undersigned respectfully **recommends** that the District Court **deny** Scottsdale's request for non-taxable costs.

c.      **Taxable Costs**[15]

Scottsdale also seeks taxable costs in the amount of $402.00 for the filing fee for the notice of removal [ECF No. 1]. The payment of this removal fee is reflected on the Court's CM/ECF docket. Scottsdale also attached a copy of an email confirming payment. [ECF No. 23-1, p. 3]. Plaintiffs do not dispute that Scottsdale is entitled to taxable costs. [ECF No. 25, p. 2].

Under § 1920, the following costs are taxable against the losing party:

(1)     Fees of the clerk and marshal;

(2)     Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)     Fees and disbursements for printing and witnesses;

(4)     Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)     Docket fees under section 1923 of this title;

(6)     Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

---

[15]     Scottsdale filed bills of costs in the District Court [ECF No. 22] and the Eleventh Circuit [ECF No. 33 in Case No. 22-11290]. The appellate costs were taxed by the Clerk of the Eleventh Circuit, [ECF No. 34 in Case No. 22-11290], and will not be addressed here.

Because removal fees are taxable under section 1920(1), Scottsdale is entitled to $402.00 in taxable costs. *See Karpovtseva v. AIG Prop. Cas. Co.*, No. 21-CV-62537, 2022 WL 4238230, at *2 (S.D. Fla. Aug. 20, 2022), report and recommendation adopted, No. 21-CV-62537-RAR, 2022 WL 4235069 (S.D. Fla. Sept. 14, 2022) ("[T]he $402 filing fee [the] [d]efendant paid upon removal is clearly taxable under § 1920(1) and should be awarded.").

## III.    CONCLUSION

The Undersigned **respectfully recommends** that the District Court **grant in part and deny in part** Scottsdale's motions for attorney's fees, expenses, and costs [ECF No. 23-24; 32] and award Scottsdale at total of **$26,345.80** ($13,709.20 in district court attorney's fees**,** $12,234.60 in appellate court attorney's fees and $402.00 in taxable costs).

## IV.    OBJECTIONS

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the United States District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of

justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

    **RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on December 19, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Federico A. Moreno
All Counsel of Record